1 | Michael S. Kogan (SBN 128500)
Michael V. Mancini (SBN 263799)
2 | **ERVIN, COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
3 | Beverly Hills, California 90212-2974
Telephone (310) 273-6333
4 | Facsimile (310) 859-2325
mkogan@ecjlaw.com
5 |

6 | Attorneys for Debtor

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 |

| | | |
|---|---|---|
| In re CENTERSTONE DIAMONDS, INC., | ) | Case No. 2:09-bk-23944-VZ |
| Debtor. | ) | Chapter 11 |
| *Jointly Administered with* | ) | (Jointly Administered With 2:09-bk-23945-VZ) |
| In re MICHAEL BEAUDRY, INC., | ) | **SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.** |
| Debtor. | ) | |
| ☐ Applies only to Centerstone Diamonds, Inc. | ) | |
| ☐ Applies only to Michael Beaudry, Inc. | ) | Date: December 16, 2010<br>Time: 1:30 p.m.<br>Place: Courtroom 1368 |

**I.**

**INTRODUCTION**

On June 4, 2009, Centerstone Diamonds, Inc. ("CDI") and Michael Beaudry Inc. ("MBI"), the debtors and debtors in possession herein in these jointly administered bankruptcy cases (collectively, the "Debtor" or "Beaudry") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). The document you are reading is both the Second Amended Joint Plan of Reorganization (the "Plan") and the Second Amended Joint Disclosure Statement (the "Disclosure Statement"). The Debtor (the "Proponent" or "Plan Proponent") has proposed the

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or

2  partners and to reorganize the Debtor's business affairs.  A disclosure statement describes the

3  assumptions that underlie the Plan and how the Plan will be executed.  The Debtor estimates that

4  such distributions will be accomplished within two (2) years from the Effective Date of the Plan.

5  In addition, the Plan will substantively consolidate the CDI and MBI estates for the sole purpose

6  of paying creditors.  Payments under the Plan will be made from cash on hand and the proceeds of

7  the operation of the Debtor's business.  The Bankruptcy Court ("Court") has approved the form of

8  this document as an adequate disclosure statement, containing enough information to enable

9  parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet

10  confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

11      The Proponent has reserved _____, 2011 in Courtroom 1368 for a hearing to

12  determine whether the Court will confirm the Plan.

13      Any interested party desiring further information should contact bankruptcy counsel for the

14  Debtor: Michael S. Kogan, Esq., Ervin, Cohen & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor,

15  Beverly Hills, California 90212, telephone 310.273.6333; facsimile 310.859.2325, or email

16  mkogan@ecjlaw.com.

17                                          **II.**

18              **GENERAL DISCLAIMER AND VOTING PROCEDURE**

19      PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS,

20  CAREFULLY.  IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT

21  EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO

22  TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT

23  TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE

24  PLAN BE CONFIRMED BY THE COURT.

25      THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS

26  DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW.  ALL

27  REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

28      NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE

1   INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT

2   TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

3        After carefully reviewing this document and the attached exhibits, please vote on the

4   enclosed ballot and return it in the enclosed envelope to:  Michael S. Kogan, Esq., Ervin, Cohen &

5   Jessup LLP, 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212, or email

6   mkogan@ecjlaw.com.  The Debtor will file with the Court and serve the results of voting by

7   _____, 2011

8        Your ballot must be received by 4:00 p.m. on _____, 2011, or it may not be

9   counted.  The Debtor will file with the Court and serve its confirmation brief by _____,

10  2011.

11       The Proponent has reserved a hearing date for a hearing to determine whether the Court

12  will confirm the Plan.  Please refer to Section I above for the specific hearing date.  If, after

13  receiving the ballots, it appears that the Proponent has the requisite number of votes required by

14  the Code, the proponent will file a motion for an order confirming the Plan.

15       The Motion shall at least be served on all impaired creditors and partners or shareholders

16  who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion

17  shall be filed and served on the Proponent and Committee no later than eleven days prior to the

18  hearing date.  Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's

19  confirmation.

20                                    **III.**

21              **WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

22       Any party in interest may object to confirmation of the Plan, but as explained below not

23  everyone is entitled to vote to accept or reject the Plan.

24                                    **IV.**

25              **WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN**

26       It requires both an allowed and impaired claim or interest in order to vote either to accept

27  or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor.

28  An interest represents an ownership stake in the Debtor.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    In order to vote a creditor or interest-holder must first have an <u>allowed claim or interest</u>.

2    With the exceptions explained below, a claim is allowed if proof of the claim or interest is

3    properly filed before any bar date and no party in interest has objected, or if the court has entered

4    an order allowing the claim or interest.  Please refer to Section VI below for specific information

5    regarding bar dates in this case.

6    Under certain circumstances a creditor may have an allowed claim even if a proof of claim

7    was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if

8    the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or

9    unliquidated.  Exhibit "A" contains a list of claims that are not scheduled as disputed, contingent,

10   or unliquidated.

11   Similarly, an interest is deemed allowed if it is shown on the list of equity security holders

12   filed by the Debtor with the court and is not scheduled as disputed.

13   In order to vote, an allowed claim or interest must also be impaired by the Plan.

14   <u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered

15   by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a

16   creditor to accelerated payment upon default does not, however, necessarily render the claimant

17   impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated

18   payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the

19   maturity of such claim as it existed before default, compensates for any damages incurred as a

20   result of reasonable reliance upon the acceleration clause, and (except for a default arising from

21   failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006))

22   compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-

23   monetary obligation.

24   <u>Impaired interest-holders</u> include those whose legal, equitable, and contractual rights are

25   altered by the Plan, even if the alteration is beneficial to the interest holder.

26   There are also some types of claims that the Code requires be treated a certain way.  For

27   that reason they are considered unimpaired and therefore holders of these claims cannot vote.

28   <u>To summarize, there are two prerequisites to voting: a claim or interest must be both</u>

ERVIN COHEN & JESSUP LLP

1  allowed and impaired under the Plan.

2         If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she

3  may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed

4  to have accepted the Plan). Impaired claims or interests are placed in classes and it is the class that

5  must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they

6  may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the

7  Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by

8  the Code. Please refer to Section VI below for information regarding impaired and unimpaired

9  classes in this case.

10        Section IX sets forth which claims are in which class. Secured claims are placed in

11 separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose

12 claim has been allowed in part as a secured claim and in part as an unsecured claim shall be

13 entitled to accept or reject a plan in both capacities."

14                                    **V.**

15                **VOTES NECESSARY TO CONFIRM THE PLAN**

16        The Court may confirm the Plan if at least one noninsider impaired class of claims has

17 accepted and certain statutory requirements are met as to both nonconsenting members within a

18 consenting class and as to dissenting classes. A class of claims has accepted the Plan when more

19 than one-half in number and at least two-thirds in amount of the allowed claims actually voting,

20 vote in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in

21 amount of the allowed interests of such class actually voting have accepted it. It is important to

22 remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will

23 not bind the parties unless and until the Court makes an independent determination that

24 confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

25                                   **VI.**

26             **INFORMATION REGARDING VOTING IN THIS CASE**

27        The bar date for filing a proof of claim in this case was October 30, 2009.

28        The bar date for objecting to claims was March 15, 2010.

IDOCS:12999.3:1114103.2                        5

ERVIN COHEN & JESSUP LLP

1    In this case the Proponent believes that class 2 is impaired and therefore entitled to vote.

2    Class 1 is unimpaired due to the Settlement Agreement and Mutual Release of Claims (the

3    "Settlement Agreement") between FCC, LLC, a Florida limited liability company doing business

4    as First Capital Western Region, LLC ("FCC"), CDI, MBI, Michael Beaudry ("M. Beaudry"),

5    Laura Beaudry ("L. Beaudry"), and MGB – 8th Street, L.P. ("MGB") (each a "Party" and,

6    collectively, the "Parties"), which was approved by the Order Granting Motion of Debtor for Sale

7    of Property Free and Clear of Liens, entered July 13, 2010 (the "Sale Order"), and by the Order

8    Granting Motion to Approve Compromise of Controversy with FCC, LLC, entered June 25, 2010

9    (the "Compromise Order").  The Settlement Agreement resolves FCC's claims against the

10   bankruptcy estates and parties related to M. Beaudry, and completes a sale of the Debtors'

11   inventory, which provides for the continued ability of the Debtors to sell the inventory for certain

12   periods of time and for payment of enough funds to enable the Debtors to continue their business

13   operation and to reorganize.  Therefore, Class 1 is unimpaired and does not vote.

14   Class 3 and 4 are claims of insiders and are not entitled to vote.

15   A party that disputes the Proponent's characterization of its claim or interest as unimpaired

16   may request a finding of impairment from the Court in order to obtain the right to vote.

17   Ballots must be received by the Proponent, addressed to the Debtor's counsel on the

18   enclosed ballot, and returned in the enclosed envelope to:  Michael S. Kogan, Esq., Ervin, Cohen

19   & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212, or email

20   mkogan@ecjlaw.com by _____, 2011.

21   ## VII.

22   ## DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS

23   ## PRECIPITATING BANKRUPTCY FILING

24   **Structure of the Debtor**. The Debtor is a corporation, and is not a small business

25   corporation as defined in 11 U.S.C. § 101 (51D).  The Debtor's headquarters are located at 323

26   West 8th Street in the Jewelry District in downtown Los Angeles, California.  At its peak in sales,

27   the Debtor employed approximately seventy (70) employees and another 10 to 25 independent

28   craftsmen contractors to manufacture and market its jewelry.  As of the Petition Date, the Debtor

ERVIN COHEN & JESSUP LLP

1  employed approximately twenty (20) employees.

2      CDI, as the manufacturing company of "Beaudry" and MBI, as the sales and marketing

3  company of "Beaudry", are one of the finest designer and manufacturers of unique handcrafted,

4  custom, one-of-a kind jewelry in the world.  Beaudry's products are marketed through a variety of

5  channels ("Sales Channels"), including upscale department stores, jewelry stores, a sales team and

6  internet auction sites, with many products placed in sales outlets on consignment.  Michael

7  Beaudry, the President of the Debtor and sole shareholder of CDI and MBI, is a master diamond

8  cutter, and considered a visionary designer and manufacturer.

9  **Events Precipitating the Chapter 11 Filing**.  What follows is a brief summary of the dates

10  and circumstances that led Debtor to file bankruptcy.

11      From 2001 to 2004, Beaudry experienced business growth of a rough average of 20% per

12  annum.  From 2004 to 2007, Beaudry's business had been relatively stable, with gross earnings

13  averaging approximately $20,000,000 and taxable income surpassing $1,000,000 or more.  In

14  2008, despite a historic decline in the U.S. retail market, Beaudry's business was relatively stable

15  showing a slight overall decline of approximately 10 to 15% through October of 2008.

16  Unfortunately, starting in October of 2008 and continuing to the Petition Date, Beaudry's business

17  declined over 50% from its five year historical averages.

18      Compared to prior years, the Debtor had been impacted by a sharp drop in sales primarily

19  due to (i) reduced consumer discretionary spending, given the national economic downturn; (ii)

20  lower inventory selection as a result of the Debtors' tight liquidity position and reduced, less

21  favorable payment terms from its vendors; (iii) the Debtors' inability to devote sufficient resources

22  to marketing and advertising due to liquidity constraints; (iv) the amount of time, energy and focus

23  that has been devoted necessarily to the issues and negotiations by and between the Debtor and

24  FCC, LLC, a Florida limited liability company dba First Capital Western Region, LLC ("FCC"),

25  its secured creditor, prior to and during this bankruptcy case; and (v) the further tightening of the

26  Debtors' liquidity resulting from FCC's adjustments and reductions of the formulas used to

27  calculate what funds would be advanced to the Debtor under the loans with FCC.  Moreover, poor

28  capital market conditions severely hindered the Debtors' ability to raise new capital to restructure

ERVIN COHEN & JESSUP LLP

1  their operations.

2          In approximately June of 2008, the Debtor retained Cappello Capital Corp. ("Cappello"),

3  an investment banking firm, to consider sale, merger, and capital options for the Debtor.  In

4  addition, the Debtor was also able to restructure its corporate operations and reduce its operating

5  overhead.  However, it was unable to secure a new investor or lender willing to refinance its

6  existing obligations despite spending substantial time, energy and attention to this effort.  In 2007

7  and 2008, the Debtor also sought to refinance its existing secured obligations through most of the

8  lenders specializing in the finance of luxury goods retailers.  Those efforts were unsuccessful.

9          Ultimately, based on the foregoing circumstances, the Debtor commenced this Chapter 11

10  case to avail itself of the provisions of the Bankruptcy Code and to preserve the status quo of its

11  business pending its contemplated business changes and turnaround to profitability.

12          **Business and Future Plans**.  What follows is a brief description of the Debtor's business

13  and future business plans.  Further details relating to the Debtor's financial condition and post-

14  confirmation operation of the Debtor are found in sections X, XI, XII, XVI, and XV.

15          Given the worsening condition in 2008, the Debtor began implementing various measures

16  designed to stabilize the business and increase profitability, including (i) refocusing their

17  marketing strategies and branding; (ii) cutting operational costs, particularly labor costs through

18  reductions in workforce and outsourcing production and manufacturing of jewelry; (iii) reworking

19  any inventory that was deemed not easily marketable and scrapping some inventory for sale at

20  commodity value as diamonds and/or precious metal; (iv) focusing more strongly on the special

21  order Beaudry business; and (v) selling some of their aged or lower priced inventory at smaller

22  margins through special events, private buyer sales and other extraordinary efforts, and marketing

23  to retailers with customers in markets commensurate with the nation's economic environment.

24  Continuing these efforts should facilitate the ongoing operations of the Debtors' business in an

25  efficient and productive manner.  Based on current indications that the economic climate is

26  improving, increasing number of sales and inquiries about new production, and discussions with

27  existing Beaudry accounts, the Debtor now expects their 2010 performance to substantially exceed

28  2009's performance.  In fact, in 2009 the Debtor earned total income of $3,848,435.16.  In 2010,

IDOCS:12999.3:1114103.2                                8

1  the Debtor has already earned total income of $3,692,038.78 as of September 30, 2010, and the

2  Debtor expects to earn substantially more income during the historically successful holiday

3  months of November and December, during which the Debtor has historically enjoyed sales of

4  jewelry orders of magnitude greater than in other months.  Because of the Debtor's success since

5  filing bankruptcy, the Debtor anticipates business growth.  Thus, the Debtor expects income to

6  continue to increase because the numbers relating to 2010 indicate increased sales as compared to

7  2009, and the Debtor is confident that the final two months of 2010 will comport with the holiday

8  sales trends the Debtor has observed prior to filing bankruptcy.

9      Moreover, the Debtor has made significant adjustments to the operation of its business, as

10  outlined immediately below.  As part of the Plan, the Debtor has significantly restructured its

11  operations with respect to three key areas, resulting in (1) new merchandising methodology to sell

12  its inventory; (2) updated marketing strategies and structures; and (3) a leaner, more efficient cost

13  structure.

14      With respect to the selling of inventory, the Debtor has entered into the Settlement

15  Agreement, pursuant to which the Debtor is enabled to pursue a cost-effective consignment sale of

16  merchandise through the improved branding and marketing efforts undertaken by the Debtor.  This

17  method of selling merchandise provides the Debtor with a feasible means of selling its inventory

18  while enabling the Debtor to make payments to Unsecured Creditors well in excess of the

19  liquidation value of such claims.  Please refer to Sections XVII(D)-(E) herein for a full

20  explanation of the settlement and consignment arrangement between the Debtor and FCC.

21      In addition to this new merchandising plan, the Debtor has undertaken a revamped

22  marketing strategy.  For example, the Debtor recently reached an agreement with OPT, a business-

23  to-business specialist company, that will enable the Debtor to market its inventory online to a wide

24  variety of retailers at little cost.  In addition, OPT will be managing many aspects of the Debtor's

25  internet operations, including updating the Debtor's website on a regular basis with the latest

26  technologies and layouts.  The Debtor has also modified its advertising strategy and replaced

27  traditional print media with a more focused and less expensive online campaign, including

28  capitalizing on new media opportunities provided by Twitter and Facebook.  These mediums

ERVIN COHEN & JESSUP LLP

1  allow the Debtor to virally reach many of its customers at little or no cost, directing them to

2  purchase goods online with the new infrastructure provided by OPT.

3  　　　The Debtor's restructured marketing strategy also involves leveraging its celebrity and

4  financially elite client-base.  For example, pieces of jewelry designed by Michael Beaudry were

5  recently worn by celebrities at the Academy Awards, providing the Debtor with a peerless

6  advertising opportunity.  In addition, the Debtor is also working on an initiative that will target its

7  jewelry to professional athletes and personality-centric entertainers, thereby increasing the

8  Debtor's brand-name and image.

9  　　　Furthermore, the Chapter 11 process has enabled the Debtor to efficiently trim its

10  operations to more accurately meet current demand and reduce its cost structure.  For example, it

11  has shed employees, and many executive-level employees have taken pay cuts of approximately

12  20% or more.  In addition, it has replaced some of its more expensive trunk show travel with

13  focused VIP events.

14  **VIII.**

15  **CRITICAL PLAN PROVISIONS**

16  　　　Listed below are the sources of money earmarked to pay creditors:

17  　　　a.　　　Proceeds from the sale of the consigned inventory and from sales following the

18  production of new items for sale.

19  　　　Most likely, general unsecured creditors (Class 2) holding allowed claims can expect

20  payment:

21  　　　a.　　　commencing one year following the Effective Date of the Plan;

22  　　　b.　　　in the total amount of $500,000, with the first and second payments in the amount

23  of $250,000 on a pro rata basis; and

24  　　　c.　　　payments will be made following one year and two years from the Effective Date

25  of the Plan.

26  　　　The definition of "pro rata" as used in connection with the Plan means proportionately so

27  that the ratio of the amount of payment made on account of a particular allowed claim in Class 2 is

28  the same as the ratio of the amount of such particular allowed claim to the total amount of allowed

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1 claims in Class 2.  The source of all payments under the Plan will be the accrued earnings of the

2 Debtor from the ongoing operation of the Debtor's business, which the Debtor forecasts to be

3 large enough to allow the payments contemplated in the Plan.  The source of money available for

4 payment of administrative expenses or claims, on the Effective Date, will be the accrued income

5 of the Debtor from the continuing sales of the Consignment Inventory and any other inventory

6 produced by the Debtor and sold.

7      The Debtor anticipates making payments from the income of the Debtor because the

8 Debtor's income is expected to increase.  Based on current indications that the economic climate is

9 improving, increasing sales, inquiries about new production, and discussions with existing

10 Beaudry accounts, the Debtor now expects their 2010 performance to substantially exceed 2009's

11 performance.  In fact, in 2009 the Debtor earned total income of $3,848,435.16.  In 2010, the

12 Debtor has already earned total income of $3,692,038.78 as of September 30, 2010, and the

13 Debtor expects to earn substantially more income during the historically successful holiday

14 months of November and December, during which the Debtor has historically enjoyed sales of

15 jewelry orders of magnitude greater than in other months.  Because the new marketing and cost-

16 cutting strategies, coupled with the consignment arrangement with FCC have proven successful,

17 the Debtor expects that trend to continue.  The Debtor therefore expects to pay all claims as

18 outlined in the Plan from the sales it makes as it continues to operate the business.

19      The FCC Class 1 claim has been settled, pursuant to the Settlement Agreement and

20 approved by the Compromise Order and the Sale Order, and no distributions will be made under

21 the Plan to FCC.  Please refer to Sections XVII(D)-(E) herein for a full explanation of the

22 settlement and consignment arrangement between the Debtor and FCC.

**IX.**

**DESCRIPTION AND TREATMENT OF CLAIMS**

25    A.   <u>Overview of Plan Payments</u>

26      Below is a summary of who gets paid what and when and from what source.  The identity

27 of members within a particular class is explained beginning on the next page.  The second column

28 lists the estimate total amounts to be paid (excluding interest payments).  <u>The Proponent is usually</u>

ERVIN COHEN & JESSUP LLP

1    not required by law to pay an unsecured creditor or interest holder everything it would otherwise

2    be entitled to, had a bankruptcy case not commenced.  The "Payment Due Date" column states the

3    frequency with which payments will be made and the starting and ending dates.  Look at the

4    starting date to figure out who will be paid before and after you and in what amount.  The "Source

5    of Payment" column describes the expected source of payment.  Further details regarding the

6    source of payment are found in sections X and XI.

7         The timing of payments to many creditors is determined by the "Effective Date."

8    Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of

9    payments to impaired creditors is measured from the Effective Date.  In this case, the Effective

10   Date shall be the first business day thirty (30) days after entry of the Court's order confirming the

11   Plan.

| Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date | Source of Payment |
|---|---|---|---|
| 1.  Debtor's Bankruptcy Counsel (Ervin Cohen & Jessup LLP) | $200,000 | Effective Date | Income of Debtor |
| 2.  Debtor's Accountants (Gumbiner Savett, Inc.) | $25,000 | Effective Date | Income of Debtor |
| 3.  Creditors' Committee Counsel (Arent Fox LLC) | $60,000 | Effective Date | Income of Debtor |
| 4.  Debtor's Financial Advisor (Stonepine Holdings, Ltd.) | $0 | Effective Date | Income of Debtor |
| 5.  Tax Claim of Internal Revenue Service[2] | $20,402 | The IRS shall be paid in full over three and one-half | Income of Debtor |

---

[1] These amounts are estimates. For example, with regard to professionals, the estimated amount of the paid to professionals may be substantially greater or less than projected depending on the extent of litigation and/or other opposition presented with respect to the Plan and/or other matters in the case. Further, the amounts may be substantially greater or less depending on the amount of payments received by professionals prior to confirmation of the Plan.

[2] The IRS filed a priority claim of $507,285.28 on July 29, 2010, arising from unpaid income tax liability of the Debtor for tax year 2008 (the "IRS Claim").  In response to the IRS

ERVIN COHEN & JESSUP LLP

| Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date | Source of Payment |
|---|---|---|---|
| | | (3$\frac{1}{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made semi-annually, due on the 5th day of the first month following the Effective Date, and every six (6) months thereafter until satisfied. | |
| 6.    Tax Claim of Franchise Tax Board | $28,287 | The FTB shall be paid in full over three and one-half (3$\frac{1}{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance with section 511 of the | Income of Debtor |

Claim, the Debtor timely filed for a net operating loss ("NOL") carryback against the tax liability for tax year 2008, and calculated the outstanding tax liability.  The Debtor's income tax liability for the 2008 taxable year was $479,387, which amount is reduced by $458,985 as a result of the NOL carryback, leaving a balance due of $20,402.  The $20,402 balance due for the taxable year 2008 is a result of the application of the Alternative Minimum Tax.  The Debtor's position is that the IRS should be a holder of an allowed priority tax claim in the amount of $20,402.  However, if the IRS Claim is not reduced by the Effective Date, the IRS Claim will be considered to be a disputed claim and the Debtor will object to the IRS Claim within sixty (60) days of the Effective Date.

ERVIN COHEN & JESSUP LLP

| Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date | Source of Payment |
|---|---|---|---|
| | | Bankruptcy Code. Payments will be made semi-annually, due on the 5th day of the first month following the Effective Date, and every six (6) months thereafter until satisfied. | |
| 6.  Class One — FCC, LLC, dba First Capital Western Region, LLC (Secured Claim) | $0 (this claim was settled as between FCC and the Debtor, and no distributions under the Plan will be made to FCC) | N/A due to the settlement of this claim | N/A due to the settlement of this claim |
| 7.  Class Two — General Unsecured Creditors | $500,000 | Commencing one year following the Effective Date of the Plan, total payments of $500,000, with first and second payments in the amount of $250,000 on a pro rata basis. Payments will be made following one year and two years from the Effective Date of the Plan. | Income of Debtor |
| 8.  Class Three — Subordinated Insider/Affiliate Claims | $ 0 | No payments under the Plan. | Income of Debtor |
| 9.  Class Four — equity interest holders | none | n/a | n/a |

### Claimants and Interest Holders who are Affiliates of the Debtor

| Name & Address of Claimant or Interest Holder | Relationship to Debtor | Amount of Claim or Interest |
|---|---|---|

| Michael Beaudry<br>323 W. 8TH ST.<br>LOS ANGELES, CA 90014 | Equity interest holder | Holds 100% interest in the Debtor |
| MBG 8TH STREET<br>323 W. 8TH ST.<br>LOS ANGELES, CA 90014 | Common ownership - landlord | $1,500,815 |
| BEAUDRY TIME INTERNATIONAL<br>323 W. 8TH ST.<br>LOS ANGELES, CA 90014 | Claimant – common ownership | $223,316 |
| BEAUDRY-BEVERLY HILLS, L.P.<br>323 W. 8TH ST.<br>LOS ANGELES, CA 90014 | Claimant – common ownership | $235,843 |
| Michael Beaudry<br>323 W. 8TH ST.<br>LOS ANGELES, CA 90014 | Claimant – common ownership | $594,145 |

Below is a detailed description and treatment of administrative expenses, claims and interests.

**B.**    **Administrative Expenses**

1.      These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.  The amounts set forth below are estimates and actual amounts required to be paid may be substantially greater or less depending on the extent of opposition and/or other litigation with respect to the Plan and/or the extent of litigation regarding claims and/or other matters in this case and the extent of services required in connection with the case.  Further, the amounts estimated may differ substantially from the amounts required to be paid on the Effective Date depending upon the amount of cash collateral used to pay such claims prior to confirmation of the Plan.  Also included within this category of administrative expenses are any allowable claims asserted pursuant to 11 U.S.C. § 503(b)(9) for the value of goods delivered within 20 days before the commencement of this Chapter 11 case.  The Debtor is not aware of any such claims.

2.      The Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1     (a)  Administrative Expense #1.

2         Claimant: Ervin Cohen & Jessup LLP

3         Debtor's bankruptcy counsel).

4         $200,000, subject to court approval

5     (b)  Administrative Expense # 2.

6         Claimant: Gumbiner Savett, Inc.

7         (Debtor's Accountants)

8         $25,000, subject to Court approval

9     (c)  Administrative Expense # 3.

10         Claimant: Arent Fox LLC

11         (Creditors' Committee Counsel)

12         $60,000, subject to Court approval

13     (d)  Administrative Expense # 4.

14         Claimant: Stonepine Holdings, Ltd.

15         (Debtor's Financial Advisor)

16         $0, subject to Court approval

17         ESTIMATED TOTAL: $285,000

18  C.  **Priority Tax Claims**

19    1.  These include certain types of property, sales, and income taxes.

20    2.  The Code requires that the holders of such claims receive regular

21 installment payments in cash over a period ending not later than five years after the date of the

22 order for relief, unless agreed otherwise.  Any such claimant has not agreed otherwise.  The total

23 cash payments must have a present value equal to the amount of the allowed claim.  The treatment

24 of any such claims must be in a manner not less favorable than the most favored nonpriority

25 unsecured claim provided in this Plan (other than any cash payments to an administratively

26 convenient class).

27    3.  The IRS filed a priority claim of $507,285.28 on July 29, 2010, arising from

28 unpaid income tax liability of the Debtor for tax year 2008 (the "IRS Claim").  In response to the

ERVIN COHEN & JESSUP LLP

1    IRS Claim, the Debtor timely filed for a net operating loss ("NOL") carryback against the tax

2    liability for tax year 2008, and calculated the outstanding tax liability.  The Debtor's income tax

3    liability for the 2008 taxable year was $479,387, which amount is reduced by $458,985 as a result

4    of the NOL carryback, leaving a balance due of $20,402.  The $20,402 balance due for the taxable

5    year 2008 is a result of the application of the Alternative Minimum Tax.  The Debtor's position is

6    that the IRS should be a holder of an allowed priority tax claim in the amount of $20,402.

7    However, if the IRS Claim is not reduced by the Effective Date, the IRS Claim will be considered

8    to be a disputed claim and the Debtor will, as described below, object to the IRS Claim within

9    sixty (60) days of the Effective Date.

10            On the Effective Date, each holder of an allowed priority tax claim equal to the amount of

11    undisputed amount of taxes owed on the Effective Date shall be paid in full over three and one-

12    half ($3^1/2$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during

13    the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance

14    with section 511 of the Bankruptcy Code.  Payments will be made semi-annually, due on the 5th

15    day of the first month following the Effective Date, and every six (6) months thereafter until

16    satisfied.  Holders of priority tax claims are not entitled to vote on the Plan.  The Plan Proponent

17    reserves the right to prepay all or any part of the principal, accrued interest, or other charges,

18    without penalty or fees. The Plan Proponent also reserves the right to dispute the IRS Claim, and

19    to defer any and all payments until the dispute is resolved. If the Debtor disputes all or part of the

20    IRS Claim it will file such objection within sixty (60) days of the Effective Date, unless extended

21    by the Bankruptcy Court.

22            4.    On September 7, 2010 the Franchise Tax Board ("FTB") filed a Proof of

23    Claim alleging a total claim of $28,287.36 (the "FTB Claim").  The Debtor's position is that the

24    FTB should be a holder of an allowed priority tax claim in the amount of $28,837.26.

25            On the Effective Date, each holder of an allowed priority tax claim equal to the amount of

26    undisputed amount of taxes owed on the Effective Date shall be paid in full over three and one-

27    half ($3^1/2$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during

28    the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance

IDOCS:12999.3:1114103.2                                17

ERVIN COHEN & JESSUP LLP

1  with section 511 of the Bankruptcy Code.  Payments will be made semi-annually, due on the 5th

2  day of the first month following the Effective Date, and every six (6) months thereafter until

3  satisfied.  Holders of priority tax claims are not entitled to vote on the Plan.  The Plan Proponent

4  reserves the right to prepay all or any part of the principal, accrued interest, or other charges,

5  without penalty or fees. The Plan Proponent also reserves the right to dispute the FTB Claim, and

6  to defer any and all payments until the dispute is resolved. If the Debtor disputes all or part of the

7  FTB Claim it will file such objection within sixty (60) days of the Effective Date, unless extended

8  by the Bankruptcy Court.

9      **D.**    <u>**Class One**</u>

10      This class, consisting of the claim of FCC, has released all claims through a settlement

11  with the Debtor, pursuant to which the inventory of finished goods, works in progress and raw

12  materials for the design and production of finished goods (collectively, "Inventory") owned by

13  Beaudry as of March 12, 2010 (the "FCC Inventory" or the "Purchased Assets"), was sold to FCC

14  free and clear of all liens, claims and interests.  The Consideration was a credit bid, pursuant to 11

15  U.S.C. § 363(k), by FCC of Seven Million Three Hundred Thousand Dollars ($7,300,000).

16  Pursuant to the settlement, FCC released all claims and accepted the Inventory and certain other

17  collateral by its credit bid sale in full satisfaction of the Debtor's indebtedness to FCC.

18      Therefore, Class One will not receive any payout under the Plan and is not impaired under

19  the Plan.  Please refer to Section XVII(D) – (E) herein for a full explanation of the settlement and

20  consignment between the Debtor and FCC.

21      **E.**    <u>**Class Two**</u>

22      This Class is impaired and includes all allowed general unsecured claims against the

23  Debtor.  The total amount of such claims is $3,893,885. See Exhibit "A" for a list of claimants and

24  amounts owed. The bar date for filing claims was October 30, 2009.  The bar date for hearings on

25  objections to claims was March 15, 2010.  The explanation of the payments to be made on the

26  allowed general unsecured claims is as follows:

27      Total amount of payments (over time) to satisfy allowed claims:  $500,000, with

28  the first and second payments in the amount of $250,000 on a pro rata basis.

IDOCS:12999.3:1114103.2

18

1    Total amount of claims:  $3,893,885

2    Total amount of payments (over time) to satisfy allowed claims:  $500,000

3    Interest Rate:  None

4    Impaired

5    First payment date:  commencing one year following the Effective Date of the Plan

6    Amount of each installment:  equal installments of $250,000

7    Frequency of payments:  payments will be made following one year and two years

8 from the Effective Date of the Plan.

9    Total yearly payments:  $250,000

10    Final payment due:  Two Years after the Effective Date

11    The Debtor shall have 10 business days to cure any payment default to members of this

12 class.

13    F.    **Class Three**

14    This Class is impaired and includes any subordinated amount of insider/affiliate claims

15 against the Debtor.  Subordinated unsecured claims are unsecured claims not entitled to priority

16 under Bankruptcy Code section 507(a).  Here, the insiders/affiliates, through the consent of the

17 Principals, have voluntarily forgiven their General Unsecured Claims, which have been

18 accordingly subordinated to Class 3 and 4 Allowed General Unsecured Claims.  The total amount

19 of such claim is undetermined at this time, however it is estimated at $2,554,119.  Allowed claims

20 in this class are to be paid $0.

21    Total amount of payments (over time) to satisfy allowed claims: $0

22    Total amount of claims:  estimated at $2,554,119

23    Total amount of payments (over time) to satisfy allowed claims:

24    $0

25    Interest Rate:  None

26    Impaired – non-voting

27    First payment date:  N/A

28    Amount of each installment:  N/A

ERVIN COHEN & JESSUP LLP

1   Frequency of payments: N/A.

2   Total yearly payments: N/A

3   Final payment due: N/A

4   **G.    Class Four**

5   This Class includes the equity interests in the Debtor. Under the Plan, equity interest-

6   holders simply retain their interests. The Plan leaves unaltered the legal, equitable, and

7   contractual rights to which the equity interests in the Debtor entitle the holders thereof.

8   Accordingly, the Debtor believes that this class is unimpaired.

9   In accordance with applicable state law, the holders of equity interests shall not receive any

10  distribution or other payment from the Debtor on account of their equity interests until after all

11  allowed claims against the Debtor have been paid in full pursuant to the Plan.

12  **X.**

13  **SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

14  The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that

15  the Proponent has timely submitted evidence establishing that the Debtor will have sufficient

16  funds available to satisfy all expenses, including the scheduled creditor payments discussed above.

17  What follows is a statement of projected cash flow for the duration of the Plan. The focus is on

18  projected cash receipts and cash disbursements. All non-cash items such as depreciation,

19  amortization, gains and losses are omitted. A positive number reflects a source of cash; a

20  (negative number) reflects a use of cash. A more detailed statement of cash flow projections for

21  the duration of Plan payments is attached as Exhibit "B."

|  | **Years of Plan Payments** | | |
|---|---|---|---|
|  | **2010[3]** | **2011** | **2012** |
| **Net cash flow** | | | |
| **From operating activities:** | | | |
| **Total Receipts** | 5,896,192 | 8,969,300 | 9,222,800 |
| **Operation Disbursements** | <4,260,050> | <7,713,900> | <7,705,900> |
| **Payroll** | <1,128,208> | <1,154,151> | <1,096,896> |
| **FCC Account Protection** | <217,570> | 0 | 0 |

[3] Includes the months of January, 2010 through July, 2010 of actual financial performance.

| | | | |
|---|---|---|---|
| Beginning Cash Available | 0 | 290,364 | 141,613 |
| Total | 290,364 | 391,613 | 561,617 |
| **Yearly plan payments:** | | | |
| **Unsecured** | 0 | 250,000 | 250,000 |
| **Net cash available to Debtor** | | | |
| **after all plan payments made:** | 290,364 | 141,613 | 311,617 |

Section XV(c) states the assumptions and details surrounding the statement of projected cash flow.

On the Effective Date, the Plan pays as set forth above.

## XI.

## FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibit "C" are three types of financial documents, including balance sheets, cash flow statements and income and expense statements, as they are maintained in the Debtor's ordinary course of business, for the current calendar year. These documents indicate that the Debtor has enjoyed an increase in sales as compared with calendar year 2009, and indicate that the Debtor's new marketing strategy and new merchandising strategy have been successful.

So that comparisons of the Debtor's performance over time can be drawn, attached as Exhibit "D" is a Combined Financial Report of the Debtor for calendar year 2009, which consists of a combined summary balance sheet, a combined profit and loss, and a combined statement of cash flow. Attached as Exhibit "E" is a Combined Financial Report of the Debtor for calendar year 2008, which consists of a combined balance sheet, a combined profit and loss and a combined statement of cash flow. Attached as Exhibit "F" is a Combined Financial Report of the Debtor for calendar year 2007, which consists of a combined balance sheet, a combined profit and loss and a combined statement of cash flow.

## XII.

## ASSETS AND LIABILITIES OF THE ESTATE

a.      Assets

1        The identity and fair market value of the estate's assets are listed in Exhibit "G," attached

2  hereto, so that the reader can assess what assets are at least theoretically available to satisfy claims

3  and to evaluate the overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any

4  of these assets is discussed in section XVI.

5        b.    <u>Liabilities</u>

6        Exhibit "G" shows the allowed claims against the estate, claims whose treatment is

7  explained in detail by section IX.

8        c.    <u>Summary</u>

9        The fair market value of all assets equals $10,439,638.[4]  Total liabilities equal

10  $12,881,816.

**XIII.**

**TREATMENT OF NONCONSENTING CLASSES**

13        As stated above, even if all classes do not consent to the proposed treatment of their claims

14  under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a

15  manner prescribed by the Code.  The process by which dissenting classes are forced to abide by

16  the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes

17  to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The

18  Code does not define discrimination, but it does provide a minimum definition of "fair and

19  equitable."  The term can mean that <u>secured claimants</u> retain their liens and receive cash payments

20  whose present value equals the value of their security interest.  For example, if a creditor lends the

21  Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair

22  and equitable" requirement means that the claimant is entitled to cash payments whose present

23  value equals $80,000 and not $100,000.  The term means that <u>unsecured claimants</u> whose claims

24  are not fully satisfied at least know that no claim or interest that is junior to theirs will receive

25  anything under the Plan, except where the Debtor is an individual, has elected to retain property

26

---

27  [4] The Debtor's possession of the FCC Consignment Inventory is valued at the Debtor's cost basis and creates an offsetting liability of $8,702,931.

28

ERVIN COHEN & JESSUP LLP

1  included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A.

2  § 1129(b)(2)(B)(ii) (West Supp. 2006). "Fair and equitable" means that each holder of an interest

3  must receive the value of such interest or else no junior interest is entitled to receive anything.

4        Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be

5  confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will

6  receive or retain any property under the Plan, unless the Plan provides that the class of general

7  unsecured claims shall be paid in full with interest. If a class of interest holders votes against the

8  Plan, the Plan cannot be confirmed where the Debtor will receive or retain any property under the

9  Plan, unless the Plan provides that the class of interest holders shall be paid in full with interest.

10  These are complex statutory provisions and the preceding paragraphs do not purport to state or

11  explain all of them.

## XIV.

### TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
### (CHAPTER 7 LIQUIDATION ANALYSIS)

15        The Plan must provide that a nonconsenting impaired claimant or interest holder of a

16  consenting class receive at least as much as would be available had the Debtor filed a Chapter 7

17  petition instead.

18        In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.

19  Unsecured creditors generally share in the proceeds of sale only after secured creditors and

20  administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured

21  creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their

22  allowed claim in relationship to the total amount of allowed claims.

23        Generally, a creditor would recover from the assets of the bankruptcy estate less under

24  Chapter 7 than under Chapter 11 for various reasons. First, the liquidation value of an asset is

25  frequently less than its fair market value when a liquidation sale would take place on an expedited

26  or short-term basis and/or under what prospective purchasers are likely to perceive as a distressed

27  sale or "fire sale" situation. The Debtor benefits from its reputation as a producer of luxury and

28  high-quality jewelry. That benefit results in profitable sales. The Debtor anticipates that a

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   liquidation sale would greatly reduce the public esteem for the Debtor's jewelry, thereby

2   significantly diminishing the return on sale that the Debtor would otherwise expect.  In this case,

3   the Debtor believes that its current business plan has been appropriately adjusted to current market

4   circumstances and is the best means under the circumstances for maximizing the value of the

5   Debtor's assets and the recoveries available for creditors and equity interest holders of the Debtor.

6   A liquidation sale would reduce the value of the sales.

7       Importantly, the Debtor believes that the value of its assets would be significantly

8   diminished if this bankruptcy case were converted to a Chapter 7 liquidation for the following

9   reasons.  There is no certainty regarding whether a Chapter 7 trustee appointed to liquidate the

10   Debtor's assets would have familiarity or expertise with regard to conducting such a liquidation.

11   Further, the Debtor fears that the general impression of prospective buyers in the context of the

12   conversion of the Debtor's Chapter 11 case to a Chapter 7 liquidation would be that the liquidation

13   is taking place in a distressed "fire sale" environment and potential buyers would likely expect a

14   substantial discount from otherwise potentially obtainable values.  This is particularly damaging to

15   the Debtor's estate because the value of each piece of jewelry designed and marketed by the

16   Debtor is intrinsically enhanced by the high esteem the Debtor enjoys in the boutique and high-

17   end jewelry markets; if jewelry designed by the Debtor were sold in a distressed environment, the

18   Debtor would no longer benefit from its high esteem in the marketplace and the pricing of the

19   Debtor's jewelry would dramatically decline.  The Debtor believes that a bulk sale (a "wholesale"

20   disposition) or more expedited sale process under a Chapter 7 liquidation would generate a smaller

21   recovery and potentially eliminate recovery by equity holders and reduce creditor recovery

22   compared to a "retail" sale of the Debtor's inventory to natural buyers as contemplated by the

23   Plan.  While difficult to quantify the expected loss of value, for purposes of the liquidation

24   analysis chart set forth below, the Debtor has reduced the value of its inventory and other non-cash

25   assets by 50%.

26       In addition, the Debtor has removed the FCC Consignment Inventory from the Chapter 7

27   liquidation assets because the FCC Consignment Inventory is no longer owned by the Debtor.

28   The FCC Consignment Inventory is now the property of FCC, pursuant to the settlement of the

ERVIN COHEN & JESSUP LLP

1  FCC Claim.  In a Chapter 7 liquidation, the Chapter 7 Trustee would not be able to sell the FCC

2  Consignment Inventory.  Therefore, the FCC Consignment Inventory has no value to the estate in

3  a Chapter 7 liquidation.  The Debtor believes the 50% reduction of the value of the Debtor's assets

4  in a Chapter 7 liquidation, and the fact that the FCC Consignment Inventory is unavailable for

5  recovery by creditors in a liquidation scenario, is a reasonable approximation of the impact of a

6  liquidation upon the estate, if the case were converted to Chapter 7.

7      Additionally, in a Chapter 7 case a trustee is appointed and is entitled to compensation

8  from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys

9  disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000

10  and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over

11  $1,000,000.  In this case, the trustee's fee would amount to approximately $100,000.  For purposes

12  of the liquidation analysis chart set forth below, the Debtor has estimated the Chapter 7 trustee's

13  fee to be $100,000.  Moreover, the Chapter 7 trustee would employ professionals adding another

14  layer of administrative expense on the estate.  This additional layer of expense could also amount

15  to a substantial outlay by the Estate.  For purposes of the liquidation analysis chart set forth below,

16  the Debtor has estimated the sum of this additional layer (Chapter 7 professional fees) of

17  administrative expense to be $75,000.  Further, for purposes of the liquidation analysis chart set

18  forth below, FCC's settled claim is not included in the analysis.

19      In this case, the Debtor believes that unsecured creditors will be paid a significant amount

20  under the Chapter 11 Plan and has serious concerns that payments would be jeopardized and

21  diminished in a Chapter 7 scenario.  The Debtor believes that payment will be made more quickly

22  and with greater certainty pursuant to the Debtor's Chapter 11 plan than in the situation where an

23  unknown Chapter 7 trustee would come in to take over control of the Debtor's assets.

| Value of Assets | Chapter 7 | Chapter 11 |
|---|---|---|
| Cash | 61,659 | 61,659 |
| FCC Consignment Inventory[5] | 0 | 8,702,931 |

[5] The FCC Consignment Inventory is the inventory of saleable goods consigned to the Debtor by FCC, pursuant to the settlement agreement between them.  In the event of a Chapter 7 liquidation, the FCC Consignment Inventory will be transferred to FCC because it is the property

| | | |
|---|---:|---:|
| Other Inventory[6] | 32,277 | 64,554 |
| A/R[7] | 284,340 | 568,681 |
| FFE[8] | 266,966 | 531,933 |
| IP | 250,000 | 500,000 |
| Other Assets | 4,940 | 9,880 |
| **Total Value of Assets** | **$1,656,550** | **$10,439,638** |

**Liabilities**

| | | |
|---|---:|---:|
| FCC Consignment Inventory[9] | 0 | 8,702,931 |
| Priority Claims | 0 | 0 |
| Unsecured Claims | 3,893,885 | 3,893,885 |
| Chapter 7 Fees and Expenses | 175,000 | 0 |
| Chapter 11 Administrative Expenses | 285,000 | 285,000 |
| **Total Claims** | **$4,353,885** | **$12,881,816** |

**% OF THEIR CLAIMS WHICH CLASS 2 GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH CLASS 2 GENERAL UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THE PLAN: = Approximately 12% cash**

      Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

---

of FCC and not of the Debtor. Therefore, the FCC Consignment Inventory is not an asset of the estate and has no value in a Chapter 7 liquidation. For purposes of the Chapter 11 analysis, the FCC Consignment Inventory is valued at the Debtor's cost basis.

    [6] At inventory cost.

    [7] Assumes 100% collectable as Chapter 11 case, and 50% in Chapter 7.

    [8] Net of accumulated depreciation, and reduced by 50% in Chapter 7.

    [9] The Debtor's ability to sell the FCC Consignment Inventory, pursuant to the settlement between the Debtor and FCC, is valued at the Debtor's cost basis and creates a liability of $8,702,931 for purposes of a Chapter 11 analysis. That liability is not present in a Chapter 7 liquidation because the FCC Consignment Inventory is the property of FCC and not of the Debtor. The FCC Consignment Inventory cannot be sold by the Chapter 7 Trustee because it is not property of the Debtor's estate. Because the Chapter 7 Trustee could not sell the FCC Consignment Inventory, it is not included in the Chapter 7 analysis.

ERVIN COHEN & JESSUP LLP

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Secured Claims | 100% | 100% |
| Priority Claims | 100% | 100% |
| Class 1 - FCC | N/A | N/A |
| Class 2 - Unsecured | 12% | 0% |
| Class 3 – Subordinated Insiders | 0% | 0% |
| Class 4 – Equity Interest Holders | 100% | 0% |

## XV.

## FUTURE DEBTOR

### A.    Management of Debtor

The Debtor will continue to be managed by Michael Beaudry (the "Manager"), the current

manager of the Debtor.

As set forth above, Michael Beaudry is the driving force behind the Debtor. The Manager

will be compensated at $20,000 per month for the first year, and $25,000 for the second year of

the Plan. The Manager is the 100% shareholder of the Debtor, and will continue to be the

President responsible for all operational decisions.

### B.    Disbursing Agent

The Manager of the Debtor, Michael Beaudry, shall serve as disbursing agent under the

Plan and is responsible for collecting money intended for distribution to claimants and

transmitting it to them. The Manager will be compensated as set forth above.

### C.    Future Financial Outlook

The Proponent believes that the Debtor's economic health will improve from its

prebankruptcy state for the following reasons.  As discussed in detail above, the development of

its marketing plan which is the basis of the Plan will provide for the economic health of the

Debtor. Moreover, by virtue of the Settlement Agreement, the Debtor now maintains its Inventory

as a consignee for sale, and anticipates a cost-effective and profitable relationship with FCC, its

former secured lender.  As Exhibits B – F hereto indicate, the Debtor has already improved its

sales over calendar year 2009, and is beginning to see improvement in the high-end jewelry

ERVIN COHEN & JESSUP LLP

1   marketplace.

2       Further, the Debtor developed the business plan discussed above and reflected in the

3   financial model embodied in Exhibits B — F hereto.  In accordance with its business plan, the

4   Debtor projects that it will have adequate funds to pay all claims.

5       Section X provides a summary of the projected cash flow of the Debtor for the duration of

6   the Plan.  The assumptions summarized in Section VII above underlie the projections.  As

7   previously stated, Plan payments will come from the continued operation of the Debtor's business

8   involving sale of consigned inventory and the production of new inventory. The financial

9   projections used in the Plan were based upon the Debtor's financial teams' (i) personal knowledge,

10  including knowledge of the accounting, finance and the retail industry, (ii) review of the Debtor's

11  financial projections, including Cash Flow Budget and other financial information, (iii) opinion

12  based upon  experience, relationship and knowledge of the Debtor's past business practices and

13  jewelry, (iv)  experience dealing with FCC and (v) experience as a business adviser and financial

14  expert.

15                          **XVI.**

16              **SALE OR TRANSFER OF PROPERTY;**

17   **ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS**

18      The Plan provides for the sale of the Inventory which has been consigned from FCC

19  pursuant to the Settlement Agreement entered into by the Debtor and FCC on or about May 21,

20  2010. Pursuant to that agreement, such inventory will be consigned back to the Debtor in order

21  that the Debtor can market and sell the consigned inventory, as well as market and sell new

22  inventory, in order to create revenues with which to pay creditors.  Please refer to Section XVII(D)

23  – (E) herein for a full explanation of the settlement, and resulting sale of assets, between the

24  Debtor and FCC.

25      Pursuant to the Plan, the Debtor may use the proceeds of sales, and any other revenue

26  generated at or from the business in accordance with its business plan and to make the payments

27  required under the Plan and or as is otherwise necessary in the ordinary course of business so long

28  as no uncured payment default exists with respect the Debtor's obligations to creditors pursuant to

1    the Plan.

2        As of the Effective Date of the Plan, all prepetition executory contracts of the Debtor not

3    otherwise previously assumed by order of the Court or subject to a pending motion to assume shall

4    be deemed rejected.

5        The Court must make certain findings of fact before approving the Plan.  The Proponent

6    will request that the Court make the appropriate findings at the confirmation hearing, based upon

7    evidence submitted in support of the confirmation motion.

8                                    XVII.

9                        **BANKRUPTCY PROCEEDINGS**

10   A.    <u>**Commencement of Case**</u>

11       The Debtor commenced its reorganization case by filing a voluntary Chapter 11 petition on

12   June 4, 2009.  Following the commencement of the Debtor's Chapter 11 case, the Court approved

13   the Debtor's employment of Ervin Cohen & Jessup LLP, as bankruptcy counsel, Gumbiner Savett,

14   Inc., as the Debtor's accountants, and Stonepine Holdings, Ltd. as the Debtor's financial advisor.

15   Pursuant to the "Notice of Appointment and Appointment of Committee of Creditors Holding

16   Unsecured Claims", the United States Trustee appointed a creditors committee in this case.  The

17   Committee's retention of Arent Fox LLC as counsel has been approved by the Court.

18       The Debtor filed emergency first day motions, accompanying notices, and declarations.

19   These included a First Day Motion For Order Determining Adequate Assurance Of Payment For

20   Postpetition Utility Services (the "Utility Motion"), an Emergency Motion For Use of Cash

21   Collateral (the "Cash Collateral Motion"), a First Day Motion for Order Limiting Scope of Notice

22   (the "Limit Notice Motion"), an Emergency Motion For Authority, But Not Requiring Debtor To

23   (1) Pay Pre Petition Accrued Employee Wages, Salaries Compensation, And Contributions to

24   Employee Benefit Plans; (2) Honor Existing Personnel Policies In the Ordinary Course of

25   Business; (3) Reimburse Pre-Petition Employee Business Expenses; (4) Make Payments for

26   Which Payroll Deductions Were Made; and (5) Pay All Costs Incident to the Foregoing, a Motion

27   for Joint Administration (the "Joint Administration Motion")(the "Prepetition Wages Motion,

28   together with the Utility Motion, The Joint Administration Motion, the Cash Collateral Motion,

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   the Limit Notice Motion, are referred to as the "First Day Motions"). The Utility Motion,

2   Prepetition Wages Motion, and Limit Notice Motion, Joint Administration Motion were granted.

3   The Cash Collateral Motion which was contested by FCC was granted on an interim basis, and

4   was continued for hearing.

5        The Court status conference was on July 16, 2009. The Court also held the continued Cash

6   Collateral hearing on July 16, 2009. Prior to the hearing counsel for the Debtor was able to reach

7   agreement for the continued use of cash collateral by the Debtor to September 2009.

8        FCC filed a Motion for Relief From Stay ("Relief Motion") in addition to its Opposition to

9   the continued use of cash collateral by the Debtor. In its Opposition and Relief Motion, FCC

10  essentially made two arguments without objection to the evidence submitted by the Debtor.  First,

11  FCC argued that it is not adequately protected because there is no evidence of an equity cushion

12  and the Debtor's postpetition financial performance has not met its prior projections.  Next, FCC

13  argued that the Debtors' conduct warrants the appointment of a trustee or conversion of the case to

14  one under Chapter 7 because the Debtor had allegedly been transferring inventory to a non-debtor

15  affiliate at or below cost and the Debtor hade been selling inventory to existing customers with

16  aged past due accounts receivable.

17       The debtor argued that the undisputed evidence showed that FCC possesses an equity

18  cushion of at least 63%, and that FCC was adequately protected by the continued operation of the

19  Debtor's business. The Court denied FCC's Motion for Relief from the Automatic Stay, and

20  approved the continued use of cash collateral by the Debtor by order to December 31, 2009. In

21  addition, the Court ordered that the Debtor should make monthly adequate protection payments to

22  FCC in the amount of $35,000 per month. As of March 1, 2010, the Debtor had paid $210,000 to

23  FCC as adequate protection payments during the postpetition period.

24       A Notice Setting the Last Date to File Proofs of Claim was filed that set October 30, 2009

25  as the last day to file claims. The Debtor filed a Motion For Order Extending Time To Assume Or

26  Reject Unexpired Nonresidential Real Property Leases Under 11 U.S.C. § 365(d)(4) (the

27  "Extension Motion"), pursuant to which the Debtor sought authority to extend the time to assume

28  or reject its business premises.

1    In addition, the Court approved the Rule 2004 examination of FCC which was scheduled

2    to be held in October 2009.

3    **B.**    **Potential Settlement with FCC**

4    On or about October 14, 2009, the Debtor met with FCC, and believed that the parties had

5    worked out a framework for resolution of all of FCC's claims against the estate, a consensual plan

6    of reorganization which would provide for the continued operation of the Debtor's business,

7    payment to unsecured creditors of the estate, and the emergence out of bankruptcy of the Debtor.

8    What followed was an audit conducted by FCC on all of the Debtor's inventory which took place

9    during late October and early November, in which FCC was able to verify that the inventory in

10   which it had a security interest was verified by an independent auditor as being owned by the

11   Debtor.  Subsequently, for the next three (3) months the Debtor and FCC were involved in

12   protracted and intense negotiations in which it appeared to the Debtor that FCC constantly either

13   changed the terms of the deal from what was originally agreed upon, or added new terms which it

14   considered "non-negotiable."

15   The compromise with FCC would have resolved FCC's claims against the bankruptcy

16   estate and parties related to Michael Beaudry, the principal of the Debtor, a sale of the Debtor's

17   inventory to FCC and consignment back to the Debtor of the inventory, which would provide for

18   the continued ability of the Debtor to sell the inventory for certain periods of time or a payment of

19   enough funds to enable the Debtor to continue its business operation and reorganize. The

20   settlement would have resolved substantially all of the issues in the bankruptcy case between the

21   Debtor and FCC, and provide for a successful reorganization, in which unsecured creditors would

22   receive a significant distribution on their claims.  The Settlement Agreement contemplated that,

23   subject to certain terms and conditions, FCC would reduce its secured claim against the Debtors'

24   chapter 11 estates (the "Estates"), stop accruing interest and other charges on the outstanding

25   indebtedness owed it by the Debtor and accept the inventory and certain other collateral by a credit

26   bid sale in full satisfaction of this indebtedness. The settlement would also afford the Debtor the

27   opportunity to take a consignment back of the foreclosed inventory for sale in the ordinary course

28   by the Debtor. Under the terms of the contemplated concurrent consignment agreement, the

ERVIN COHEN & JESSUP LLP

IDOCS:12999.3:1114103.2
SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

ERVIN COHEN & JESSUP LLP

1   Debtor would retain the profits from such sales that exceed certain established thresholds, thereby

2   providing a source of revenue to the Debtor and assets from which the unsecured creditors of the

3   Debtors' estate could be paid.

4         During the period of the negotiations, FCC consented to the continued use of its cash

5   collateral under the terms of the previous orders entered by the Court which included the monthly

6   budget submitted with the previous motions, and payment of FCC's monthly $35,000 adequate

7   protection payment. As of February 19, 2010, FCC revoked its consent to use cash collateral for a

8   period of time and then on at least 2 occasions since that time consented to the use of cash

9   collateral. Negotiations between FCC and the Debtor broke down, and at that point although FCC

10  indicated in late February 2010, that it was ready to go forward with the settlement, FCC refused

11  to conclude negotiations, finalize a settlement agreement, or even inform the Debtor as to what

12  terms and conditions it required to resolve their differences.  As a result as discussed herein the

13  Debtor filed its complaint against FCC regarding FCC's claims and equitable subordination of

14  FCC's claims against the estate.

15      **C.**     **Complaint Against FCC Filed by the Debtor**

16        In response to the actions of FCC before the bankruptcy case was filed, and the breakdown

17  of settlement negotiations, the Debtor filed an adversary action entitled, Centerstone Diamonds,

18  Inc. and Michael Beaudry, Inc. v FCC, LLC dba First Capital Western Region, LLC, Adv No.

19  2:10-ap-01345-VZ (the "Litigation"). The Litigation alleged, among other things, that the Debtor

20  sustained damages in an amount to be determined, but believed to be at least in the range of

21  approximately $2,632,625, plus all payments made by the Debtor during the pendency of the

22  Bankruptcy Case should reduce the principal balance of FCC's Claim, which were proximately

23  caused by the actions of FCC, and which should be applied as an offset to the amounts claimed

24  due by FCC, thereby reducing the allowable claim of FCC accordingly.

25        Debtor contended that it sustained damages in an amount to be determined, but believed to

26  be at least in the range of approximately $2,632,625, plus all payments made by the Debtor during

27  the pendency of the Bankruptcy Case should reduce the principal balance of FCC's Claim, which

28  were proximately caused by the actions of FCC, and which should be applied as an offset to the

1 amounts claimed due by FCC, thereby reducing the allowable claim of FCC accordingly. FCC

2 denied this contention.

3     Prior to the Petition Date, FCC, to its benefit and to the detriment of Debtor, engaged in a

4 pattern and practice of (a) delaying approvals of funding on documentation submitted to it by

5 Debtor, (b) delaying the payment of funds for the Debtor's operation when such funds were due

6 and payable, (c) making unreasonable demands of Debtor unwarranted by and in violation of the

7 Factoring Agreement as preconditions to its own compliance with the Factoring Agreement, (d)

8 charging excessive fees to the Debtor, and (e) engaging in further delay tactics which made it

9 difficult for Debtor to successfully and timely operate its Business.

10     As a result of FCC's breaches of its contractual obligations and its implied duty of good

11 faith and fair dealing arising from the Factoring Agreement, (a) the Debtor was unable to timely

12 offer its products for sale and, when they were offered for sale, was forced to sell them for lower

13 prices than they would have sold for absent FCC's misconduct; (b) Debtor was unable to pay down

14 the loan as projected; and (c) Debtor was forced into bankruptcy in order to protect itself from

15 further losses. Also as a result of FCC's breaches of its contractual obligations and breaches of its

16 implied duty of good faith and fair dealing arising from the Factoring Agreement, Debtor had

17 incurred considerable additional fees and expenses, including but not limited to (a) additional

18 payments to FCC's attorneys to review the documents, (b) increased costs and fees paid to FCC;

19 (c) increased interest under the Factoring Agreement; and (d) increased fees and costs in

20 connection with this bankruptcy. In addition. the Debtor requested that FCC's Claim be equitably

21 subordinated.

22     **D.**    **Settlement with FCC**

23     On or about May 21, 2010, the Debtor and FCC, after many months of negotiating a

24 settlement and the previous breakdown of negotiations, successfully negotiated the terms of a

25 settlement agreement designed to resolve all of the issues and disputes between the parties, subject

26 to the approval of the Court. The Settlement Agreement was approved by the Compromise Order

27 and the Sale Order. The Settlement Agreement resolves FCC's claims against the bankruptcy

28 estate and parties related to M. Beaudry, and includes a sale of the Debtor's inventory to FCC and

ERVIN COHEN & JESSUP LLP

1   consignment of the inventory back to the Debtor, which will provide for the continued ability of

2   the Debtor to sell the inventory, on consignment from FCC, for certain periods of time, the result

3   being revenues that enable the Debtor to continue its business operation and reorganize. The

4   settlement resolves substantially all of the issues in the bankruptcy case between the Parties, and

5   provides for a successful reorganization, in which unsecured creditors will receive a significant

6   distribution on their claims.

7         Pursuant to the Settlement Agreement, FCC will release all claims against the Debtor's

8   estate in exchange for a credit bid sale of the Debtor's inventory in full satisfaction of this

9   indebtedness. The Settlement Agreement also affords the Debtor the opportunity to take a

10  consignment back of the foreclosed inventory for sale in the ordinary course by the Debtor.  Under

11  the terms of a concurrent consignment agreement, the Debtor retains the profits from such sales

12  that exceed certain established thresholds, thereby providing a source of revenue to the Debtor and

13  assets from which the unsecured creditors of the Debtors' Estates can be paid.

14        The details of the Settlement Agreement are that the assets to be sold are the inventories of

15  finished goods, works in progress and raw materials for the design and production of finished

16  goods (collectively, "Inventory") owned by Beaudry as of March 12, 2010 (the "FCC Inventory"

17  or the "Purchased Assets"), free and clear of all liens, claims and interests.  The Consideration is a

18  credit bid, pursuant to 11 U.S.C. § 363(k), by FCC of Seven Million Three Hundred Thousand

19  Dollars ($7,300,000).  Under the Settlement Agreement, subject to certain terms and conditions,

20  FCC released all claims and accepts the inventory and certain other collateral by a credit bid sale

21  in full satisfaction of the Debtor's indebtedness to FCC.  Additionally, the Settlement Agreement

22  provides that FCC is granted relief from the automatic stay in the Bankruptcy Cases, pursuant to

23  Section 362 of the Bankruptcy Code, to the extent necessary to permit FCC to carry out the

24  provisions of, enforce its rights and remedies under, and enjoy the benefits of, the Settlement

25  Agreement, to the extent such relief from the automatic stay might be necessary in connection

26  with FCC's retrieval of FCC Inventory in the possession of Beaudry or any third party, so long as

27  such retrieval is in accordance with the terms of the Settlement Agreement.

28        **E.**    **Approval of the Settlement Agreement and Sale of Inventory to FCC**

ERVIN COHEN & JESSUP LLP

1       The Motion Of Debtor For Sale Of Property Free And Clear Of Liens (the "Sale Motion"),

2  and approval of the Settlement Agreement, came on for hearing on June 22, 2010. The Debtor

3  received no opposition to the Motion Of Debtor For Sale Of Property Free And Clear Of Liens,

4  and the Official Committee of Unsecured Creditors filed a joinder. No party appeared at the

5  hearing interested in overbidding the offer submitted by FCC. The Court, thereby approved the

6  sale pursuant to the Sale Motion and Settlement Agreement, which is enforced by the Sale Order.

7  Additionally, the Court entered the Compromise Order on June 25, 2010.

8  XVIII.

9  TAX CONSEQUENCES OF PLAN

10  **A.**    **Introduction**

11       The implementation of a Chapter 11 plan may have federal, state and local tax

12  consequences to the Debtor and the Debtor's creditors and equity holders. No tax opinion has

13  been sought or will be obtained with respect to any tax consequences of the Plan. This Disclosure

14  Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to

15  any person, and the summary contained herein is provided for informational purposes only.

16       The discussion below summarizes only certain of the federal income tax consequences

17  associated with the Plan's implementation. This discussion does not attempt to comment on all

18  aspects of the federal income tax consequences associated with the Plan, nor does it attempt to

19  consider various facts or limitations applicable to any particular creditor or equity interest-holder

20  which may modify or alter the consequences described herein. A creditor or equity interest-holder

21  may find that the tax consequences of the Plan to such creditor or equity holder differ materially

22  from the tax consequences discussed below because of such creditor's or equity holder's facts and

23  circumstances. This discussion does not address state, local or foreign tax consequences or the

24  consequences of any federal tax other than the federal income tax.

25       The following discussion is based upon the provisions of the Internal Revenue Code of

26  1986, as amended from time to time (the "Internal Revenue Code" or "IRC"), the Treasury

27  Income Tax regulations, as amended from time to time, promulgated thereunder, existing judicial

28  decisions and administrative rulings. In light of the rapidly-changing nature of tax law, no

ERVIN COHEN & JESSUP LLP

1   assurance can be given that legislative, judicial or administrative changes will not be forthcoming

2   that would affect the accuracy, validity or applicability of the discussion below.  Any such

3   changes could be material and could be retroactive with respect to the transactions entered into or

4   completed prior to the enactment or promulgation thereof.  The tax consequences of certain

5   aspects of the Plan are uncertain due to the lack of applicable legal authority and may be subject to

6   judicial or administrative interpretations that differ from the discussion below.

7         CREDITORS AND EQUITY INTEREST-HOLDERS ARE ADVISED TO CONSULT

8   WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM

9   OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL,

10  STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.  NOTHING CONTAINED IN THIS

11  DISCLOSURE STATEMENT WAS INTENDED OR WRITTEN TO BE USED, CAN BE USED

12  BY ANY TAXPAYER OR MAY BE RELIED UPON OR USED BY ANY TAXPAYER, FOR

13  THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THE

14  TAXPAYER UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED.  ANY

15  WRITTEN STATEMENT CONTAINED IN THIS DISCLOSURE STATEMENT RELATING

16  TO ANY FEDERAL TAX TRANSACTION OR MATTER MAY NOT BE USED BY ANY

17  PERSON IN ANY MANNER TO SUPPORT THE PROMOTION OR MARKETING OF OR TO

18  RECOMMEND ANY FEDERAL TAX TRANSACTION(S) OR MATTER(S).

19  **B.      Federal Income Tax Consequences to a Debtor**

20        1.      Utilization of a Debtor's Net Operating Losses

21        Internal Revenue Code section 382 places potentially severe limitations upon an entity's

22  use of its net operating losses and loss carryovers ("NOLs") and certain other tax attributes if an

23  "ownership change" occurs with respect to such entity's equity interests.  Any pre-effective date

24  shift (deemed or actual) in the ownership of stock of a debtor, directly or by attribution, outside

25  the scope of a Chapter 11 plan may trigger an "ownership change" that would adversely affect the

26  availability of a debtor's NOLs.  Because the federal income tax consequences of any such shift

27  would depend on the particular facts and circumstances at such time and the application of

28  complex legislation and regulations, the Debtor expresses no view as to the effect of any

ERVIN COHEN & JESSUP LLP

1  transactions outside the scope of the Plan or the survival of any NOLs or other tax attributes.

2  Parties in interest are cautioned against assuming that NOLs will be available to shelter any

3  income or gain that may be recognized as a result of Plan transactions or the Debtor's operations

4  prior to the Effective Date.

5    2.    Reduction of Debtor's Indebtedness

6    Any amount of potential discharged indebtedness for federal income tax purposes will be

7  referred to herein as a "Debt Discharge Amount." In general, the Internal Revenue Code provides

8  that a taxpayer who realizes a discharge of indebtedness must include the Debt Discharge Amount

9  in its gross income in the taxable year of discharge to the extent that the Debt Discharge Amount

10  exceeds any consideration given for such discharge.  No income from the discharge of

11  indebtedness is realized to the extent that payment of the liability being discharged would have

12  given rise to a deduction.

13    If a taxpayer is in a title 11 case (a case under the Bankruptcy Code) and the discharge of

14  indebtedness occurs pursuant to a plan approved by the court (such as the Plan in this case, if

15  confirmed), such discharge of indebtedness is specifically excluded from gross income.  If the

16  taxpayer is insolvent before a cancellation or deemed cancellation of debt and does not become

17  solvent by reason of the cancellation or deemed cancellation, such cancellation or deemed

18  cancellation of indebtedness is specifically excluded from gross income.

19    Accordingly, the Debtor believes that it will not be required to include in gross income any

20  Debt Discharge Amount as a result of the Plan.  The Internal Revenue Code requires certain tax

21  attributes of a debtor to be reduced by the Debt Discharge Amount excluded from gross income.

22  Tax attributes are reduced in the following order of priority: current year net operating losses and

23  net operating loss carryovers; general business credits; minimum tax credits; capital loss

24  carryovers; basis of property of the taxpayer; passive activity loss or credit carryovers; and foreign

25  tax credit carryovers.  Tax attributes are generally reduced by one dollar for each dollar excluded

26  from gross income, except that general tax credits, minimum tax credits and foreign tax credits are

27  reduced by 33.3 cents for each dollar excluded from gross income.  The tax attribute reduction

28  rules may eliminate a portion of a debtor's NOLs and other tax attributes.  However, such NOLs

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   and other tax attributes will not be reduced until after the determination of tax, if any, for the

2   taxable year in which a plan is confirmed and becomes effective.

3       3.      Alternative Minimum Tax

4       In general, an alternative minimum tax ("AMT") is imposed on an entity's "alternative

5   minimum taxable income" ("AMTI") at a 20 percent rate to the extent such tax exceeds the

6   corporation's regular federal income tax for the taxable year.  AMTI generally is equal to regular

7   taxable income with certain adjustments.  For purposes of computing AMTI, certain tax

8   deductions and other beneficial allowances are modified or eliminated.  In particular, even though

9   an entity otherwise may be able to shelter all of its taxable income for regular income tax purposes

10  by applying available NOLs, an entity (or consolidated group) is entitled to offset no more than 90

11  percent of its AMTI with NOLs (as recomputed for AMT purposes).  The confluence of a 20

12  percent AMT tax rate and a 90 percent (of AMTI) cap on the deduction for AMT NOLs creates an

13  effective AMT tax rate of two percent (i.e., 20 percent of the 10 percent of AMTI that is not

14  sheltered with AMT NOLs).

15      Accordingly, even if a debtor's NOLs remain available to fully shelter net income or gain,

16  if any, recognized during the tax year in which the Plan is confirmed and becomes effective, a

17  debtor may be liable for AMT even though a debtor is not liable for regular federal income tax.

18      C.      Tax Consequences to Creditors

19      The tax consequences of a Chapter 11 plan's implementation to a creditor may depend on

20  many factors, including the type of consideration received by the creditor in exchange for its

21  claim, whether the creditor reports income on the cash or accrual method, whether the creditor

22  receives consideration in more than one tax year of the creditor, and whether all the consideration

23  received by the creditor is deemed to be received by that creditor in an integrated transaction.  The

24  tax consequences upon the receipt of Cash, debt instruments or other property allocable to interest

25  are discussed below under "Receipt of Interest."  Creditors are advised to seek their own tax

26  counsel to properly assess the tax consequences in their particular situation.

27      1.      Claims Satisfied With Payment.

28      (a)     Gain/Loss on Exchange

ERVIN COHEN & JESSUP LLP

1    As a general rule, a creditor whose existing claims are satisfied with payments under a

2  Chapter 11 plan or with the receipt of equity interests in a reorganized debtor, will recognize gain

3  or loss on the actual or constructive exchange of such creditor's existing creditor claims (other

4  than claims for accrued interest) for the consideration received equal to the difference between (i)

5  the "amount realized" in respect of such claims, and (ii) the creditor's tax basis in such claims.

6  The "amount realized" will generally be equal to the sum of the cash received plush the fair

7  market value of the other consideration received.  Again, creditors are advised to seek their own

8  tax counsel to properly assess the tax consequences in their particular situation.

9    (b)    Tax Basis and Holding Period of Items Received

10    Pursuant to Internal Revenue Code Section 1223, the aggregate tax basis in the items

11  received or deemed received by a creditor will generally equal the amount realized in respect of

12  such items (other than amounts allocable to any accrued interest).  The holding period for items

13  received in the exchange will generally begin on the day following the exchange.

14    (c)    Determination of Character of Gain

15    Under the general rule governing exchanges under the Internal Revenue Code, in the case

16  of a creditor whose existing claims constitute capital assets in such creditor's hands, the gain

17  required to be recognized will generally be classified as a capital gain, except to the extent of

18  interest (including accrued market discount, if any), with any gain recognized thereon generally

19  treated as ordinary income to the extent of accrued market discount.  As a general rule, any capital

20  gain recognized by a creditor will be long-term capital gain with respect to those claims for which

21  the creditor's holding period is more than one year, and short-term capital gain with respect to

22  such claims for which the creditor's holding period is one year or less.  Again, the actual

23  characterization of gain/loss in this particular instance pursuant to the general rules governing

24  exchanges is qualified by, among other things, the qualifications noted above with respect to

25  realization of gain/loss and exchanges.  Creditors should be advised to seek their own tax counsel

26  to properly assess the tax consequences in their particular situation.

27    2.    Receipt of Interest

28    As a general rule, income attributable to accrued but unpaid interest will be treated as

SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

ERVIN COHEN & JESSUP LLP

1   ordinary income, regardless of whether the creditor's existing claims are capital assets in its hands.

2   A creditor who, under its accounting method, was not previously required to include in income

3   accrued but unpaid interest attributable to existing claims, and who exchanges its interest claim for

4   cash or other property pursuant to a chapter 11 plan, will generally be treated as receiving ordinary

5   interest income to the extent of any consideration so received allocable to such interest, regardless

6   of whether that creditor realizes an overall gain or loss as a result of the exchange of its existing

7   claims.  A creditor who had previously included in income accrued but unpaid interest attributable

8   to its existing claims will generally recognize a loss to the extent such accrued but unpaid interest

9   is not satisfied in full.  For purposes of the above discussion, "accrued" interest means interest

10  which was accrued while the underlying claim was held by the creditor.  The extent to which

11  consideration distributable under the Plan is allocable to such interest is uncertain.

12          3.      Other Tax Considerations

13          (a)     Market Discount

14          If a creditor has a lower tax basis in one of a debtor's obligations than its face amount, as a

15  general rule, the difference may constitute market discount under Internal Revenue Code section

16  1276.  (Certain obligations are excluded from the operation of this rule, such as obligations with a

17  fixed maturity date not exceeding one year from the date of issue, installment obligations to which

18  Internal Revenue Code section 453B applies and, in all likelihood, demand instruments).

19          Holders in whose hands a debtor's obligations are market discount bonds may be required

20  to treat as ordinary income any gain recognized upon the exchange of such obligations to the

21  extent of the market discount accrued during the holder's period of ownership, unless the holder

22  has elected to include such market discount in income as it accrued.  Such holders should be

23  advised to seek their own tax counsel to properly assess the tax consequences in their particular

24  situation.

25          (b)     Withholding

26          The reorganized debtor will, as a general rule, withhold any amounts required by law from

27  payments made, or deemed to be made, to creditors.  In addition, creditors may be required to

28  provide general tax information to a in order to receive distributions pursuant to a Chapter 11 plan.

ERVIN COHEN & JESSUP LLP

1   The Debtor does not believe that there are claims in this case that involve withholding issues.

2   THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX

3   CONSEQUENCE TO EACH CREDITOR.  FURTHERMORE, THE TAX CONSEQUENCES

4   OF A PLAN MAY BE COMPLEX AND, IN SOME CASES, UNCERTAIN.  THEREFORE, IT

5   IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN

6   PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH

7   CREDITOR AS A RESULT OF THE PLAN.

8   **D.      Tax Consequences to Equity Holders**

9   THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX

10  CONSEQUENCE TO EACH HOLDER OF AN EQUITY INTEREST .  FURTHERMORE, THE

11  TAX CONSEQUENCES OF A PLAN MAY BE COMPLEX AND, IN SOME CASES,

12  UNCERTAIN.  THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF AN EQUITY

13  INTEREST OR EQUITY INTEREST RELATED CLAIM OBTAIN HIS, HER OR ITS OWN

14  PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH

15  HOLDER OF AN EQUITY INTEREST AS A RESULT OF THE PLAN.

16  **XIX.**

17  **EFFECT OF CONFIRMATION OF PLAN**

18  a.      <u>General comments</u>

19  The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under

20  the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not

21  vote to accept the Plan.

22  The confirmation of the Plan vests all property of the estate in the Debtor.

23  The automatic stay is lifted upon confirmation as to property of the estate.  However, the

24  stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or

25  the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not

26  seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's

27  property terminates upon entry of the order confirming the Plan.

28  The Guarantors have guaranteed certain obligations of some of the Debtor, which

1    obligations are afforded treatment under the Plan. The Confirmation Order shall act as a temporary

2    injunction (the "Temporary Enforcement Injunction") to stay and restrain the taking of any of the

3    following actions against property in which the Guarantors hold an interest, on account of any

4    judgments, claims or causes of action that arise out of or relate to claims against the Debtor, or the

5    Debtor's estate, and which judgments, claims or causes of action if asserted or enforced against the

6    Guarantors may give rise to a claim of indemnity or contribution against the Debtor (an "Enjoined

7    Claim"): (a) commencing or continuing in any manner any such Enjoined Claim against the

8    Guarantors; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award,

9    decree, or order on account of an Enjoined Claim; and/or (c) creating, perfecting or enjoining any

10    lien or encumbrance on account of an Enjoined Claim.

11          With respect to an Enjoined Claim related to an obligation afforded treatment under this

12    Plan, the Temporary Enforcement Injunction shall continue in effect until the earliest of the

13    following: (a) all of the payments required to be made under this Plan have been paid, and all

14    Allowed Claims have been fully satisfied pursuant to the terms of this Plan, at which time the

15    Temporary Enforcement Injunction shall be terminated; (b) the Chapter 11 case are dismissed or

16    converted to a case under Chapter 7; or (c) the entry of an order by the Court terminating the

17    Enforcement Injunction on account of the Debtor having defaulted under this Plan, and having

18    failed to cure such default within ten (10) business days from default.

19          b.   <u>Discharge of liability for payment of debts; status of liens; equity security holders</u>

20          Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C. 1141(d)(3),

21    the debtor may obtain a discharge only upon specific order of the Court.  Notwithstanding the

22    foregoing, the confirmation of the Plan does not discharge the Debtor from any debt of a kind

23    specified in 11 U.S.C. § 523(2)(A) — (B) that is owed to a domestic governmental unit, or owed

24    to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any

25    similar State Statutes, or tax or custom duties with respect to which the debtor made a fraudulent

26    tax return or willfully attempted in any manner to evade or to defeat tax or custom duties.

27          c.   <u>Modification of the Plan</u>

28          The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  2006).

2        d.      Post-Confirmation Causes of Action

3        To the best knowledge of the Proponent, the estate has the following causes of action:

4  none.

5        The Debtor shall continue to act as representative of the estate under 11 U.S.C. §

6  1123(b)(3) and shall have the right to assert any causes of action possessed by the Debtor post-

7  confirmation in accordance with applicable law.

8        e.      Dissolution of Committee

9        Following the Effective Date of the Plan, the Committee shall be deemed dissolved and

10  disbanded and the duties of the Committee shall terminate.

11        f.      Post-Effective Date Employment and Compensation of Professionals

12        After the Effective Date of the Plan, the Debtor may employ, without notice, hearing or

13  order of the Court, such attorneys, accountants and other professionals as it may desire to render

14  services on such terms as it deems reasonable.  With respect to services rendered by professional

15  persons employed by the Debtor after the effective date, the Debtor shall be authorized to pay for

16  such services, related costs and expenses without notice, hearing or order of the Court; provided

17  however, that with respect to fees, costs and expenses of such professional persons for services

18  rendered after the effective date in or in connection with the this chapter 11 case, or in connection

19  with the Plan and incident to the case, in the event the Debtor disputes the reasonableness of any

20  such fees, costs or expenses, the Debtor shall pay such professional person only the undisputed

21  amount, if any, and the Debtor or the professional may file an application with the Court to

22  determine the reasonableness of the fees, costs or expenses which are in dispute.

23        G.      Post-Confirmation Operations

24        Following the Effective Date, the Debtor may operate and engage in its business free of

25  any restrictions of the Code, the Bankruptcy Rules, the Court or the Office of the United States

26  Trustee, except if and as specifically set forth in the Plan.

27        H.      Execution and Delivery of Documents

28        Following the Effective Date of the Plan, the Debtor is authorized to execute and deliver

1   documents and instruments as are necessary or appropriate to promote and implement

2   consummation of the Plan or to carry out the purposes of the Plan.

3       I.      Final Decree

4       Once the Plan has been consummated, a final decree may be entered upon motion of the

5   Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a

6   party seeking any type of relief relating to a Plan provision can seek such relief in a state court of

7   general jurisdiction.

8

9   DATED:  November 10, 2010

10

11      By: _____
                 Michael Beaudry

12

ERVIN COHEN & JESSUP

**ERVIN COHEN & JESSUP** LLP

**DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN**

1.      I, Michael Beaudry, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

2.      I am the President of Centerstone Diamonds, Inc. ("CDI"), and Michael Beaudry, Inc. ("MBI") (collectively, "Beaudry" or the "Debtor"), the debtor and debtor in possession herein in these jointly administered bankruptcy cases. I am a master diamond cutter, and considered a visionary designer and manufacturer. I worked as a master diamond cutter for over five (5) years before starting to design and manufacturer jewelry nearly twenty (20) years ago. In my capacity as President of the Debtor, I am readily familiar with the Debtor's day-to-day operations, business affairs, and books and records.

3.      During my more than twenty-five year career in the jewelry business I have learned to evaluate and analyze the costs and values associated with the production, repair and sale of high-end jewelry. I have utilized that expertise in my review of the foregoing Plan and Disclosure Statement.

4.      I have reviewed the foregoing Plan and Disclosure Statement. All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

5.      The source of all financial data is the Debtor.

6.      Michael Kogan and Michael V. Mancini of Ervin Cohen & Jessup LLP, the bankruptcy counsel for the Debtor, are the individuals who prepared this document.

7.      To the best of my knowledge, no fact material to a claimant or equity interest-holder in voting to accept or reject the proposed Plan has been omitted.

8.      The name of the person(s) who prepared the cash flow projections and the other financial documents is Mitch Allen, and such person was acting within the capacity of chief financial officer of the Debtor. I also had material input into the financial projections and information used in connection with the Debtor's business plan. Mr. Allen prepared the liquidation analysis based upon his experience in the industry and financial information filed by the Debtor and FCC in this bankruptcy case.

9.      The accounting method used to prepare the cash flow projections and the other

1  financial documents is a cash basis approach.

2       I declare under penalty of perjury under the laws of the State of California and of the

3  United States of America that the foregoing is true and correct.

4  Dated: November 10, 2010

5  _____

6      Michael Beaudry

SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

# EXHIBIT "A"

**EXHIBIT "A" – LIST OF UNSECURED CLAIMS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ERVIN COHEN & JESSUP LLP

SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

## EXHIBIT A – GENERAL UNSECURED CLAIMS CDI/MBI[1]

### UNSECURED CLAIMS

| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
|---|---|---|---|---|---|
| MBI | Microsoft Financing | 3 (MBI) | | $261,082 | |
| CDI | Olympic Diamonds Corp. | | XX | $253,137 | |
| CDI | Espeka Israel | 16 (CDI) | | $201,715 | |
| CDI | IGC Group | | XX | $158,513 | |
| MBI | Ellite Traveler | | XX | $110,500 | |
| MBI | American Express – Corporate | 11 (MBI) | | $107,589 | |
| MBI | Dell Financial Services | | XX | $108,692 | |
| CDI | Kothari Trading Co., Ltd. | | XX | $107,260 | |
| CDI | Lili Diamonds | 9 (CDI) | | $149,860 | |
| MBI | Curtco Robb Media, LLC | | XX | $104,670 | |
| MBI | American Express Publishing Corp. | | XX | $99,753 | |
| MBI | Modern Luxury, Inc. | | XX | $98,480 | |
| CDI | Diamond Investment Partners, LLC | | XX | $83,463 | |
| CDI | Penta Diamonds Ltd. | | XX | $82,896 | |
| CDI | Novell Collection | 26 (CDI); 15 (MBI) | XX | $76,310 | |
| CDI | Fancy Colors LLC | | | $76,105 | |
| MBI | Los Angeles Magazine | 1 (MBI) | | $69,188 | |
| MBI | Inga Moubaiajian | | XX | $62,720 | |
| CDI | Rosy Blue Trading Inc. (New York) | 15 (CDI); 13 (MBI) | | $66,413 | |
| MBI | Great America Leasing Corp. | 2 (MBI) | | $54,727 | |
| MBI | Premium Assignment Corporation | | XX | $54,666 | |
| MBI | C Publishing, LLC DBA C Magazine | 19 (CDI) | | $54,000 | |
| CDI | Airi Beaudry | | XX | $52,455 | |
| CDI | Superb Jewelstar | | XX | $51,429 | |
| CDI | ACG Equipment Finance LLC | | XX | $49,956 | |

1

| UNSECURED CLAIMS | | | CLAIMS | |
| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
|---|---|---|---|---|---|
| CDI | PDD Diamonds, Ltd. | | XX | $48,375 | |
| CDI | Eurostar Belgium, Inc. | 7 (MBI) | | $47,480 | |
| MBI | Entrée/Southern Accents | | XX | $46,499 | |
| CDI | Brink's Incorporated | | XX | $46,585 | |
| CDI | Federal Express | | XX | $44,250 | |
| CDI | Finesse Diamonds Corp. | 5 (MBI) | | $38,254 | |
| CDI | Crown Color | | XX | $35,818 | |
| CDI | Avles Dani | | XX | $34,705 | |
| CDI | Michael Zelichov Insurance Services, Inc. | | XX | $33,490 | |
| CDI | Wells Fargo Bank | 1 (CDI) | | $31,394 | |
| CDI | Aloni Diamonds Ltd. | | XX | $29,160 | |
| CDI | Moshe Namdar & Co. Inc. | | XX | $27,739 | |
| CDI | American Express – Corporate | 4(CDI) | | $26,476 | |
| CDI | Gumbiner Savett Inc. | | XX | $25,947 | |
| MBI | Capitol File Magazine, LLC | | XX | $25,100 | |
| MBI | Gotham Media LLC | | XX | $24,600 | |
| CDI | UPS United Parcel Service | | XX | $23,666 | |
| CDI | AIG Workers Compensation Group | | XX | $22,987 | |
| MBI | Platinum Guild International USA | | XX | $22,500 | |
| CDI | Ultimate Diamond Co. | | XX | $20,915 | |
| MBI | Gumbiner Savett Inc. | | XX | $22,341 | |
| CDI | Manatt, Phelps & Phillips | 6 (CDI) | | $19,200 | |
| MBI | McMonigle Residential Group | | XX | $18,750 | |
| CDI | E.F.D. Inc. | | XX | $18,572 | |
| CDI | Employers Compensation Insurance Group | 25 (CDI) | | $3,538 | |
| CDI | Simply Diamonds – V | 13 (CDI) | | $17,530 | |
| MBI | Action Support Inc. | 27 (CDI) | | $20,405 | |

2

LDOCS:12993.3:1019924.1

| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
|---|---|---|---|---|---|
| | | | **UNSECURED CLAIMS** | **CLAIMS** | |
| CDI | First Federal Leasing | | XX | $16,135 | |
| MBI | Ragar Company, Inc. | 4 (MBI) | | $16,040 | |
| CDI | IRS | 2 (CDI) | | $3,212 | |
| MBI | Continental Exhibit Group | | XX | $14,065 | |
| CDI | Eran Michovitz | | XX | $13,733 | |
| CDI | Tahitian South Sea Pearls | | XX | $13,575 | |
| CDI | Diamond concepts, Inc. | | XX | $11,875 | |
| CDI | Varsha Diamonds, Inc. | | XX | $11,630 | |
| MBI | Robert Siragusa | 8 & 11(CDI) | | $11,538 | |
| MBI | Citibusiness Card | | XX | $12,762 | |
| CDI | GemWave Inc. | | XX | $10,993 | |
| CDI | Disons Gems, Inc. | | XX | $10,150 | |
| CDI | H.K. Mallak Inc. | | XX | $10,041 | |
| CDI | Caron Jewelry | | XX | $11,507 | |
| CDI | S.A. Casting | 22 (CDI) | | $7,868 | |
| MBI | Quail Lodge Resort & Golf Club | | XX | $7,500 | |
| CDI | City of Los Angeles, Dept. of Public Works | | XX | $7,156 | |
| CDI | Craig Gebauer | | XX | $7,000 | |
| CDI | Manak Jewels | | XX | $6,931 | |
| CDI | Imperial Gems S.A. | | XX | $6,760 | |
| MBI | Advanta (Mastercard) | 17 (MBI) | | $7,492 | |
| CDI | Verizon Wireless-Bus | 21 (CDI) | | $3,574 | |
| MBI | Aspen Peak Magazine, LLC | | XX | $5,100 | |
| CDI | M.K. Diamond & Jewelry | | XX | $4,975 | |
| CDI | AG Healing & Air Conditioning | | XX | $5,085 | |
| MBI | Pinkerton Consulting & Investigatinos | | XX | $4,600 | |
| CDI | Staples | | XX | $4,472 | |

3

1DOCS:12993:3.1019924.1

| | | UNSECURED CLAIMS | | CLAIMS | |
|---|---|---|---|---|---|
| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
| MBI | State Board of Equalization | | XX | $4,448 | |
| CDI | SDNY | | XX | $4,357 | |
| CDI | LADWP (Power) | | XX | $4,218 | |
| CDI | Navco Security Systems | | XX | $4,074 | |
| CDI | Benefit Planning Inc. | | XX | $4,050 | |
| CDI | Yerudiam Yossi Yerushami Diamond Cutters | | XX | $3,696 | |
| CDI | Office Cleaning Pros, LLC | | XX | $3,500 | |
| CDI | Principal Financial Group | | XX | $3,362 | |
| CDI | Century Rooter | | XX | $3,285 | |
| CDI | Universal Diamonds | | XX | $3,234 | |
| CDI | FTB | 29 (CDI); 16 (MBI) | | $2,398 | |
| MBI | Nicholas G. Koontz | | XX | $2,100 | |
| CDI | Professional Security Consultants | | XX | $2,051 | |
| CDI | K. Girdharlal | | XX | $2,035 | |
| CDI | AICCO, Inc. | | XX | $1,944 | |
| CDI | GIA Gem Trade Laboratory | | XX | $1,907 | |
| CDI | The Hartford Insurance | | XX | $7,545 | |
| CDI | Positive Lab Service | | XX | $1,830 | |
| CDI | Fedex Customer | 28 (CDI) | | $43,983 | |
| CDI | Home Depot | | XX | $1,753 | |
| CDI | Pitney Bowes Purchase Power (postage) | 14 (CDI) | | $1,661 | |
| CDI | Paetec | | XX | $1,640 | |
| CDI | TimeClock Sales and Services | | XX | $1,525 | |
| MBI | Myers Dawes Andras & Sherman LLP | 10 (CDI) | | $1,471 | |
| MBI | City of LA Office of Finance | | XX | $1,384 | |
| CDI | The Bureau of National Affairs | | XX | $1,347 | |
| CDI | Truog-Ryding Company, Inc. | | XX | $1,333 | |

4

IDOCS:12999.3:1019924.1

52

| | | UNSECURED CLAIMS | | CLAIMS | |
|---|---|---|---|---|---|
| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
| MBI | PaperGirl | | XX | $1,320 | |
| CDI | LAFD (LA Fire Department) | | XX | $1,312 | |
| CDI | Detection Logic | | XX | $1,275 | |
| CDI | Schindler Elevator Corporation | 12 (MBI) | | $885 | |
| CDI | Accurate Messenger Service | | XX | $1,226 | |
| MBI | Edge Solutions Group | | XX | $1,200 | |
| MBI | Photo Basilisk | | XX | $1,102 | |
| CDI | TelePacific Communications | | XX | $1,000 | |
| MBI | Freeman Companies | 17 (CDI) | | $941 | |
| CDI | Superfit, Inc. | | XX | $922 | |
| CDI | Arrowhead | | XX | $908 | |
| CDI | MXLogic | | XX | $839 | |
| CDI | Chief Fire Protection, Inc. | | XX | $800 | |
| CDI | OMI Gems, Inc. | | XX | $798 | |
| CDI | EBI (Employment Background) | | XX | $794 | |
| MBI | AGTA American Gem Trade Association | | XX | $740 | |
| MBI | Sistems Integration, Inc. | | XX | $1,030 | |
| CDI | De Beer Watch | | XX | $669 | |
| CDI | Pitney Bowes (Lease) | | XX | $626 | |
| CDI | MBSG-Millennium Business Solutions Group | | XX | $595 | |
| CDI | Office of Finance, City of Los Angeles | | XX | $595 | |
| CDI | Encover | | XX | $587 | |
| CDI | Massimo Jewelry | | XX | $560 | |
| CDI | Artin Amirayan Jewelers | | XX | $560 | |
| MBI | Dilco Ind., Inc. | | XX | $557 | |
| CDI | AT&T | | XX | $536 | |
| CDI | Lord Jewelry | | XX | $500 | |

5

iDOCS:12999.3:1019924.1

53

| Case[2] | Name | UNSECURED CLAIMS | | CLAIMS | |
| --- | --- | --- | --- | --- | --- |
| | | Claim No. | Schedule | Amount | Comments |
| CDI | Malca-Amit Custom House Brokers, Inc. | | XX | $500 | |
| CDI | Vyacheslav Kalenyuk | | XX | $500 | |
| CDI | Uline | | XX | $495 | |
| MBI | Cappello Capital Corp. | | XX | $439 | |
| MBI | Jewelers Board of Trade | | XX | $437 | |
| CDI | JBT-Jewelers Board of Trade | | XX | $437 | |
| CDI | Sally Phillips | | XX | $437 | |
| CDI | Hostasaurus, Inc. | | XX | $429 | |
| MBI | NYSIF (Work Comp) | | XX | $413 | |
| CDI | Ceridian Benefit Services | | XX | $400 | |
| CDI | NK Supply, Inc. | | XX | $392 | |
| CDI | Royal Gem USA Inc. | | XX | $325 | |
| MBI | Bevan – Bellevue Jewelers | | XX | $312 | |
| CDI | Terminix | | XX | $465 | |
| CDI | AT&T Mobility | | XX | $308 | |
| CDI | Iron Mountain | | XX | $308 | |
| CDI | DIRECTV | | XX | $299 | |
| MBI | Design Kart | | XX | $250 | |
| CDI | Illuminex Diamonds | | XX | $236 | |
| MBI | Bergman & Dacey, Inc. | | XX | $228 | |
| CDI | A to Z Jewelry Tools & Supply | | XX | $175 | |
| CDI | Barry I. Rogoff Diamond Cutters, Inc. | | XX | $157 | |
| CDI | J & P Oxygen | | XX | $152 | |
| CDI | Calif. Chamber of Commerce | | XX | $135 | |
| CDI | Employment Development Dept. | | XX | $124 | |
| CDI | LA County Agr Comr/Wts & Meas | | XX | $120 | |
| CDI | LAPD (water) | | XX | $109 | |
| CDI | Sara Gem Corp. | | XX | $100 | |

6

54

iDOCS:12999.3:10199241

| | | | | UNSECURED CLAIMS | |
| | | | | CLAIMS | |
| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
|---|---|---|---|---|---|
| CDI | EGL USA | | XX | $90 | |
| CDI | Dunbar Armored Air | 12 (CDI) | | $64 | |
| CDI | Travelers | | XX | $63 | |
| CDI | Albert Cohen | | XX | $62 | |
| MBI | Steven Moore | | XX | $110,182 | |
| CDI | Gemelody Inc. | | XX | $50 | |
| CDI | Hershel Horowitz Corp. | | XX | $45 | |
| CDI | B. B. Miller, Inc. | | XX | $35 | |
| CDI | Gottlieb & Sons | | XX | $28 | |
| CDI | 4G's Trading Corp. | | XX | $23 | |
| CDI | County of Los Angeles (backflow permit) | | XX | $20 | |
| CDI | Humana Dental | | XX | $16 | |
| MBI | Exclusive Protection | 23 (CDI) | | $12,170 | |
| CDI | Guild Laboratories | 7 (CDI) | | $5,375 | |
| MBI | Carey International | | XX | $259 | |
| MBI | FedEx | | XX | $89 | |
| | | | | $3,893,885.00 | |

1    These claims were either filed as general unsecured claims and have not been objected to as of the date of the Disclosure Statement, or were scheduled by the Debtor as undisputed. These claims remain subject to objection under the Plan. These claims do not include claims of insiders/affliates which are subordinated under the Plan.

2    If the claims were scheduled, then the claimant filed a claim, the filed claim supersedes the scheduled claim, and is the claim included in the Plan and not included in this Schedule.

7

DOCS:129993:1019924.1

# EXHIBIT "B"

1

**EXHIBIT "B"- CASH FLOW PROJECTIONS FOR PLAN**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

57

**MBI & CDI**
**Summary Cash Flow Budget**
**2010**

| | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|
| **Receipts** | | | | | | |
| Collections on 12.31.09 AR | 273,714 | 227,714 | 181,714 | - | - | - |
| Collections on: | | | | | | |
| Sales: Existing Retail Accounts | - | 230,000 | 118,000 | 40,000 | 50,000 | 60,000 |
| Sales: Other than Existing Accounts | - | 100,000 | 110,000 | 40,000 | 225,000 | 370,000 |
| Other Income (repairs, shipping, scrap) | - | 12,500 | 16,762 | 16,246 | 3,295 | 5,565 |
| Other | - | - | - | - | - | - |
| **Total Receipts** | 273,714 | 570,214 | 426,475 | 96,246 | 278,295 | 435,565 |
| | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | |
| **Operations** | | | | | | |
| Purchases | 13,000 | 500 | 12,000 | 60,000 | 60,000 | 75,000 |
| Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 |
| Utilities | 5,000 | 6,000 | 7,250 | 5,000 | 5,000 | 6,250 |
| Marketing | 7,000 | 25,750 | 12,000 | 12,500 | 20,000 | 17,500 |
| Sales Expense- Travel | 12,000 | 12,000 | 10,250 | 9,000 | 12,000 | 13,000 |
| Other Expenses | 1,500 | 4,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees | - | - | 5,000 | 4,000 | 10,000 | 10,000 |
| Legal Fees | 14,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Rent / Mortgage - 8th Street | 15,000 | 43,000 | 29,000 | 29,000 | 29,000 | 29,000 |
| Building Maintenance | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Lease/Fixed Payments | - | 2,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Insurance | 2,700 | 2,700 | 5,000 | 5,000 | 5,000 | 5,000 |
| Bank Fees | 700 | 700 | 1,000 | 1,000 | 1,000 | 1,000 |
| US Trustee Fees | 6,000 | 6,000 | 3,500 | 3,500 | 3,500 | 3,500 |
| Shipping | 1,500 | 2,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| **Total Operations Expenses** | 108,400 | 149,150 | 149,500 | 186,500 | 203,000 | 224,750 |
| | | | | | | |
| **Payroll** | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 |
| Payroll - Commissions | - | 1,080 | - | 2,000 | 2,000 | 2,000 |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 |
| Payroll- Office | 14,014 | 14,014 | 21,021 | 12,094 | 12,094 | 12,094 |
| Payroll- Exec Mgmt | 20,000 | 20,000 | 30,000 | 6,924 | 6,924 | 6,924 |
| Payroll- Officer | 23,000 | 23,000 | 34,500 | 23,000 | 23,000 | 23,000 |
| Payroll Taxes | 8,700 | 8,808 | 13,050 | 7,401 | 7,401 | 7,401 |
| **Total Payroll Expenses** | 95,702 | 96,890 | 143,553 | 81,407 | 81,407 | 81,407 |
| | | | | | | |
| **Total Ops Disbursements** | 204,102 | 246,040 | 293,053 | 267,907 | 284,407 | 306,157 |
| | | | | | | |
| **Other Disbursement Forecast:** | | | | | | |
| FCC Adequate Protection Payment/ Cash Colla | - | - | 105,000 | - | - | 112,570 |
| **Total Other Disbursements** | - | - | 105,000 | - | - | 112,570 |
| | | | | | | |
| **Total Disbursements** | 204,102 | 246,040 | 398,053 | 267,907 | 284,407 | 418,727 |
| | | | | | | |
| **Net Change in Cash** | 69,611 | 324,173 | 28,422 | (171,660) | (6,112) | 16,838 |
| **Cumulative Change In Cash** | 69,611 | 393,785 | 422,207 | 250,547 | 244,435 | 261,273 |

Numbers and Assumptions Provided by Management
Draft - Confidential - For Discussion Purposes Only

**MBI & CDI**
**Summary Cash Flow Budget**
**2010**

| | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| Collections on 12.31.09 AR | - | - | - | - | - | - | 683,141 |
| Collections on: | | | | | | | |
| Sales: Existing Retail Accounts | 40,000 | 50,000 | 60,000 | 40,000 | 450,000 | 600,000 | 1,738,000 |
| Sales: Other than Existing Accounts | 180,000 | 575,000 | 390,000 | 260,000 | 350,000 | 770,000 | 3,370,000 |
| Other Income (repairs, shipping, scrap) | 9,760 | 4,623 | 8,000 | 12,000 | 6,500 | 9,800 | 105,051 |
| Other | - | - | - | - | - | - | - |
| Total Receipts | 229,760 | 629,623 | 458,000 | 312,000 | 806,500 | 1,379,800 | 5,896,192 |
| **Ops Disbursement Forecast:** | | | | | | | |
| **Operations** | | | | | | | |
| Purchases | 60,000 | 100,000 | 621,250 | 287,000 | 478,625 | 888,125 | 2,655,500 |
| Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 | 364,000 |
| Utilities | 5,000 | 5,000 | 6,250 | 5,000 | 5,000 | 6,250 | 67,000 |
| Marketing | 6,000 | 6,000 | 7,500 | 6,000 | 10,750 | 31,250 | 162,250 |
| Sales Expense- Travel | 10,000 | 10,000 | 13,500 | 12,000 | 15,250 | 15,000 | 144,000 |
| Other Expenses | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 60,500 |
| Professional Fees | 10,000 | 5,000 | 25,000 | - | - | - | 69,000 |
| Legal Fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 179,000 |
| Rent / Mortgage - 8th Street | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 348,000 |
| Building Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Lease/Fixed Payments | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 52,000 |
| Insurance | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 55,400 |
| Bank Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,400 |
| US Trustee Fees | 3,500 | 3,500 | 3,500 | 3,500 | - | - | 40,000 |
| Shipping | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 39,000 |
| **Total Operations Expenses** | 187,000 | 222,000 | 776,500 | 411,000 | 602,125 | 1,040,125 | 4,260,050 |
| **Payroll** | | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 | 122,070 |
| Payroll - Commissions | 2,000 | 2,000 | 2,000 | 8,000 | 8,000 | 8,000 | 37,080 |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 | 217,776 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 | 49,998 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 | 163,942 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 | 135,778 |
| Payroll- Officer | 23,000 | 23,000 | 34,500 | 23,000 | 23,000 | 23,000 | 299,000 |
| Payroll Taxes | 7,401 | 7,401 | 11,001 | 8,001 | 8,001 | 8,001 | 102,564 |
| **Total Payroll Expenses** | 81,407 | 81,407 | 121,010 | 88,007 | 88,007 | 88,007 | 1,128,208 |
| **Total Ops Disbursements** | 268,407 | 303,407 | 897,510 | 499,007 | 690,132 | 1,128,132 | 5,388,258 |
| **Other Disbursement Forecast:** | | | | | | | |
| FCC Adequate Protection Payment/ Cash Colla | - | - | - | - | - | - | 217,570 |
| **Total Other Disbursements** | - | - | - | - | - | - | 217,570 |
| **Total Disbursements** | 268,407 | 303,407 | 897,510 | 499,007 | 690,132 | 1,128,132 | 5,605,828 |
| **Net Change in Cash** | (38,647) | 326,216 | (439,510) | (187,007) | 116,368 | 251,668 | 290,363 |
| **Cumulative Change in Cash** | 222,627 | 548,843 | 109,333 | (77,673) | 38,695 | 290,363 | |

**MBI & CDI**
**Summary Cash Flow Budget**
**2011**

| | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|
| **Receipts** | | | | | | |
| Collections on 12.31.10 AR | 491,867 | 445,867 | 399,867 | - | - | - |
| Collections on: | | | | | | |
| Sales: Existing Retail Accounts | - | 300,000 | 460,000 | 240,000 | 350,000 | 500,000 |
| Sales: Other than Existing Accounts | - | 75,000 | 540,000 | 460,000 | 50,000 | 60,000 |
| Other Income (repairs, shipping, scrap) | - | 11,250 | 16,500 | 17,000 | 6,500 | 9,600 |
| Other | - | - | - | - | - | - |
| **Total Receipts** | 491,867 | 832,117 | 1,416,367 | 717,000 | 406,500 | 569,600 |
| | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | |
| **Operations** | | | | | | |
| Purchases | 822,000 | 520,000 | 564,000 | 896,000 | 297,500 | 398,000 |
| Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 |
| Utilities | 5,000 | 6,000 | 7,250 | 5,000 | 5,000 | 6,250 |
| Marketing | 7,000 | 25,750 | 12,000 | 12,500 | 20,000 | 35,000 |
| Sales Expense- Travel | 12,000 | 12,000 | 10,250 | 9,000 | 12,000 | 13,000 |
| Other Expenses | 1,500 | 4,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees | 5,000 | 5,000 | 15,000 | 15,000 | - | - |
| Legal Fees | 25,000 | 20,000 | 20,000 | 20,000 | 20,000 | 15,000 |
| Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Building Maintenance | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Lease/Fixed Payments | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Bank Fees | 700 | 700 | 1,000 | 1,000 | 1,000 | 1,000 |
| Shipping | 1,500 | 2,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| **Total Operations Expenses** | 937,200 | 652,450 | 701,500 | 1,023,500 | 420,500 | 540,250 |
| | | | | | | |
| **Payroll** | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 |
| Payroll - Commissions | - | - | - | 5,000 | 5,000 | 15,000 |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 |
| Payroll- Officer | 23,000 | 23,000 | 34,500 | 23,000 | 23,000 | 23,000 |
| Payroll Taxes | 7,201 | 7,201 | 10,801 | 7,701 | 7,701 | 8,701 |
| **Total Payroll Expenses** | 79,207 | 79,207 | 118,810 | 84,707 | 84,707 | 95,707 |
| | | | | | | |
| **Total Ops Disbursements** | 1,016,407 | 731,657 | 820,310 | 1,108,207 | 505,207 | 635,957 |
| | | | | | | |
| **Other Disbursement Forecast:** | | | | | | |
| Unsecured creditor payments | - | - | - | - | - | - |
| **Total Other Disbursements** | - | - | - | - | - | - |
| | | | | | | |
| **Total Disbursements** | 1,016,407 | 731,657 | 820,310 | 1,108,207 | 505,207 | 635,957 |
| | | | | | | |
| Net Change in Cash | (524,540) | 100,460 | 596,057 | (391,207) | (98,707) | (66,357) |
| Beginning Cash | 290,363 | (234,176) | (133,716) | 462,340 | 71,134 | (27,573) |
| Ending Cash | (234,176) | (133,716) | 462,340 | 71,134 | (27,573) | (93,929) |

**MBI & CDI**
**Summary Cash Flow Budget**
**2011**

| | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| Collections on 12.31.10 AR | - | - | - | - | - | - | 1,337,600 |
| Collections on: | | | | | | | |
| Sales: Existing Retail Accounts | 800,000 | 375,000 | 450,000 | 300,000 | 750,000 | 1,340,000 | 5,865,000 |
| Sales: Other than Existing Accounts | 40,000 | 50,000 | 60,000 | 40,000 | 50,000 | 180,000 | 1,605,000 |
| Other Income (repairs, shipping, scrap) | 14,400 | 6,750 | 18,100 | 15,400 | 18,000 | 28,200 | 161,700 |
| Other | - | - | - | - | - | - | - |
| Total Receipts | 854,400 | 431,750 | 528,100 | 355,400 | 818,000 | 1,548,200 | 8,969,300 |
| | | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | | |
| **Operations** | | | | | | | |
| Purchases | 492,000 | 308,750 | 375,500 | 267,000 | 477,500 | 797,000 | 6,215,250 |
| Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 | 364,000 |
| Utilities | 5,000 | 5,000 | 6,250 | 5,000 | 5,000 | 6,250 | 67,000 |
| Marketing | 14,000 | 14,000 | 17,500 | 14,000 | 16,750 | 31,250 | 219,750 |
| Sales Expense- Travel | 10,000 | 10,000 | 13,500 | 12,000 | 15,250 | 15,000 | 144,000 |
| Other Expenses | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 60,500 |
| Professional Fees | - | - | - | - | - | - | 40,000 |
| Legal Fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 210,000 |
| Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Building Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Lease/Fixed Payments | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Bank Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,400 |
| Shipping | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 39,000 |
| **Total Operations Expenses** | 602,000 | 418,750 | 500,750 | 384,000 | 595,500 | 937,500 | 7,713,900 |
| | | | | | | | |
| **Payroll** | | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 | 122,070 |
| Payroll - Commissions | 6,000 | 6,000 | 6,000 | 13,000 | 19,000 | 17,000 | 92,000 |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 | 217,776 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 | 49,998 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 | 157,222 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 | 90,012 |
| Payroll- Officer | 23,000 | 23,000 | 41,550 | 27,700 | 27,700 | 27,700 | 320,150 |
| Payroll Taxes | 7,801 | 7,801 | 12,106 | 8,971 | 9,571 | 9,371 | 104,923 |
| **Total Payroll Expenses** | 85,807 | 85,807 | 133,165 | 98,677 | 105,277 | 103,077 | 1,154,151 |
| | | | | | | | |
| **Total Ops Disbursements** | 687,807 | 504,557 | 633,915 | 482,677 | 700,777 | 1,040,577 | 8,868,051 |
| | | | | | | | |
| **Other Disbursement Forecast:** | | | | | | | |
| Unsecured creditor payments | - | - | - | 250,000 | - | - | 250,000 |
| **Total Other Disbursements** | - | - | - | 250,000 | - | - | 250,000 |
| | | | | | | | |
| **Total Disbursements** | 687,807 | 504,557 | 633,915 | 732,677 | 700,777 | 1,040,577 | 9,118,051 |
| | | | | | | | |
| **Net Change in Cash** | 166,593 | (72,807) | (105,815) | (377,277) | 117,223 | 507,623 | (148,751) |
| **Beginning Cash** | (93,929) | 72,664 | (143) | (105,958) | (483,234) | (366,011) | 290,363 |
| **Ending Cash** | 72,664 | (143) | (105,958) | (483,234) | (366,011) | 141,613 | 141,613 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2012**

| | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|
| **Receipts** | | | | | | |
| Collections on 12.31.11 AR | 735,200 | 367,600 | - | - | - | - |
| Collections on: | | | | | | |
|   Sales: Existing Retail Accounts | - | 350,000 | 620,000 | 280,000 | 350,000 | 540,000 |
|   Sales: Other than Existing Accounts | - | - | - | - | - | 350,000 |
|   Other Income (repairs, shipping, scrap) | - | 11,000 | 16,200 | 12,800 | 6,000 | 10,100 |
| Other | - | - | - | - | - | - |
| **Total Receipts** | **735,200** | **728,600** | **636,200** | **292,800** | **356,000** | **900,100** |
| | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | |
| **Operations** | | | | | | |
| Purchases | 528,000 | 407,500 | 429,000 | 126,000 | 157,500 | 508,600 |
| Contractors - Production | 50,000 | 50,000 | 62,500 | 50,000 | 50,000 | 62,500 |
| Utilities | 5,000 | 6,000 | 7,250 | 5,000 | 5,000 | 6,250 |
| Marketing | 14,000 | 29,000 | 25,000 | 12,500 | 20,000 | 45,000 |
| Sales Expense- Travel | 12,000 | 12,000 | 10,250 | 9,000 | 12,000 | 13,000 |
| Other Expenses | 1,500 | 4,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees | 5,000 | 5,000 | 15,000 | 15,000 | - | - |
| Legal Fees | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Building Maintenance | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Lease/Fixed Payments | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Bank Fees | 700 | 700 | 1,000 | 1,000 | 1,000 | 1,000 |
| Shipping | 1,500 | 2,500 | 3,500 | 3,500 | 3,500 | 3,500 |
|    **Total Operations Expenses** | 654,700 | 557,700 | 594,500 | 263,000 | 290,000 | 680,850 |
| | | | | | | |
| **Payroll** | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 |
| Payroll - Commissions | - | - | - | - | - | - |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 |
| Payroll- Officer | 27,700 | 27,700 | 41,550 | 27,700 | 27,700 | 27,700 |
| Payroll Taxes | 7,671 | 7,671 | 11,506 | 7,671 | 7,671 | 7,671 |
|    **Total Payroll Expenses** | 84,377 | 84,377 | 126,565 | 84,377 | 84,377 | 84,377 |
| | | | | | | |
|    **Total Ops Disbursements** | 739,077 | 642,077 | 721,065 | 347,377 | 374,377 | 765,227 |
| | | | | | | |
| **Other Disbursement Forecast:** | | | | | | |
| Unsecured creditor payments | - | - | - | - | - | - |
|    **Total Other Disbursements** | - | - | - | - | - | - |
| | | | | | | |
|    **Total Disbursements** | 739,077 | 642,077 | 721,065 | 347,377 | 374,377 | 765,227 |
| | | | | | | |
| **Net Change in Cash** | (3,877) | 86,523 | (84,865) | (54,577) | (18,377) | 134,873 |
| **Beginning Cash** | 141,613 | 137,736 | 224,259 | 139,395 | 84,818 | 66,441 |
| **Ending Cash** | 137,736 | 224,259 | 139,395 | 84,818 | 66,441 | 201,315 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2012**

| | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| Collections on 12.31.11 AR | - | - | | - | - | - | 1,102,800 |
| Collections on: | | | | | | | |
| Sales: Existing Retail Accounts | 760,000 | 400,000 | 520,000 | 480,000 | 850,000 | 2,000,000 | 7,150,000 |
| Sales: Other than Existing Accounts | - | - | - | - | 450,000 | - | 800,000 |
| Other Income (repairs, shipping, scrap) | 16,400 | 6,500 | 18,200 | 16,800 | 18,500 | 37,500 | 170,000 |
| Other | - | - | - | - | - | - | - |
| **Total Receipts** | 776,400 | 406,500 | 538,200 | 496,800 | 1,318,500 | 2,037,500 | 9,222,800 |
| | | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | | |
| **Operations** | | | | | | | |
| Purchases | 504,400 | 255,000 | 309,000 | 216,000 | 882,500 | 1,711,000 | 6,034,500 |
| Contractors - Production | 50,000 | 50,000 | 62,500 | 50,000 | 50,000 | 62,500 | 650,000 |
| Utilities | 5,000 | 5,000 | 6,250 | 5,000 | 5,000 | 6,250 | 67,000 |
| Marketing | 12,000 | 10,500 | 15,000 | 12,000 | 15,250 | 31,250 | 241,500 |
| Sales Expense- Travel | 10,000 | 10,000 | 13,500 | 12,000 | 15,250 | 15,000 | 144,000 |
| Other Expenses | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 60,500 |
| Professional Fees | - | - | - | - | - | - | 40,000 |
| Legal Fees | 5,000 | 5,000 | - | - | - | - | 45,000 |
| Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Building Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Lease/Fixed Payments | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Bank Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,400 |
| Shipping | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 39,000 |
| **Total Operations Expenses** | 626,900 | 376,000 | 446,750 | 340,500 | 1,008,500 | 1,866,500 | 7,705,900 |
| | | | | | | | |
| **Payroll** | | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 | 122,070 |
| Payroll - Commissions | - | - | - | - | - | - | - |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 | 217,776 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 | 49,998 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 | 157,222 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 | 90,012 |
| Payroll- Officer | 27,700 | 27,700 | 41,550 | 27,700 | 27,700 | 27,700 | 360,100 |
| Payroll Taxes | 7,671 | 7,671 | 11,506 | 7,671 | 7,671 | 7,671 | 99,718 |
| **Total Payroll Expenses** | 84,377 | 84,377 | 126,565 | 84,377 | 84,377 | 84,377 | 1,096,896 |
| | | | | | | | |
| **Total Ops Disbursements** | 711,277 | 460,377 | 573,315 | 424,877 | 1,092,877 | 1,950,877 | 8,802,796 |
| | | | | | | | |
| **Other Disbursement Forecast:** | | | | | | | |
| Unsecured creditor payments | - | - | - | 250,000 | - | - | 250,000 |
| **Total Other Disbursements** | - | - | - | 250,000 | - | - | 250,000 |
| | | | | | | | |
| **Total Disbursements** | 711,277 | 460,377 | 573,315 | 674,877 | 1,092,877 | 1,950,877 | 9,052,796 |
| | | | | | | | |
| **Net Change in Cash** | 65,123 | (53,877) | (35,115) | (178,077) | 225,623 | 86,623 | 170,004 |
| **Beginning Cash** | 201,315 | 266,438 | 212,562 | 177,447 | (630) | 224,993 | 141,613 |
| **Ending Cash** | 266,438 | 212,562 | 177,447 | (630) | 224,993 | 311,617 | 311,617 |

# EXHIBIT "C"

ERVIN COHEN & JESSUP LLP

1

## EXHIBIT "C" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME STATEMENT FOR CURRENT CALENDAR YEAR

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Centerstone Diamonds, Inc. & Affiliates
### Combined Balance Sheet
#### As of September 30, 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | |
| **Current Assets** | | | | | | | | | |
| **Checking/Savings** | | | | | | | | | |
| 10011 · Union Bank - Tax 2180063032 DIP | 112.35 | | | | | | | | 112.35 |
| 10010 · Union Bank - PR 2180063024 DIP | 313.62 | | | | | | | | 313.62 |
| 10009 · Union Bank - Gen 2180063016 DIP | 1,020.48 | | | | | | | | 1,020.48 |
| 10001 · Petty Cash | 51.04 | 600.00 | | 560.13 | | | | | 1,211.17 |
| 10008 · Union Bank- Misc 2180074026 | | 304.46 | | | | | | | 304.46 |
| 10007 · Union Bank- Tax 2180063067 DIP | | 77.63 | | | | | | | 77.63 |
| 10006 · Union Bank- PR 2180063059 DIP | | -14,559.79 | | | | | | | -14,559.79 |
| 10005 · Union Bank- Genf 2180063040 DIP | | 2,404.06 | | | | | | | 2,404.06 |
| 1099 · Clearing Account for FCC | | 52,075.50 | | | | | | | 52,075.50 |
| 150012 · Citibank CD 287-8094535 | | 2,455.03 | | | | | | | 2,455.03 |
| 110022 · Chase Bank - 884367285 | | | 248.83 | | | | | | 248.83 |
| 110021 · Chase - 4922747328 | | | | 32,967.93 | | | | | 32,967.93 |
| 110030 · CHASE-4012382208 | | | | | 66,098.52 | | | | 66,098.52 |
| 10005 · USB Checking Account- Swiss | | | | | | -2,918.75 | | | -2,918.75 |
| 10035 · Gen. Acct. - CHASE - 3114382449 | | | | | | | 400.39 | | 400.39 |
| **Total Checking/Savings** | 1,497.49 | 43,356.89 | 248.83 | 33,528.06 | 66,098.52 | -2,918.75 | 400.39 | | 142,211.43 |
| **Accounts Receivable** | | | | | | | | | |
| 12003 · Accounts Receivable-11 | 1,866,817.98 | 342,713.00 | | | | | | -2,102,299.83 | 107,231.15 |
| 12001 · Accounts Receivable | 954,603.89 | 201,887.91 | | 8,766.65 | 137,228.10 | 17,829.95 | | -954,603.89 | 365,712.61 |
| 12002 · Allowance for AR | | -157,677.72 | | | | | | 0.00 | -157,677.72 |
| **Total Accounts Receivable** | 2,821,421.87 | 386,923.19 | | 8,766.65 | 137,228.10 | 17,829.95 | | -3,056,903.72 | 315,266.04 |
| **Other Current Assets** | | | | | | | | | |
| 13000 · Other Current Assets | | | | | | | | | |
| 13003 · Loans Receivable | | | | | | | | | |
| 130033 · Employee Travel Advance | | 6,827.60 | | | | | | | 6,827.60 |
| Total 13003 · Loans Receivable | | 6,827.60 | | | | | | | 6,827.60 |
| Total 13000 · Other Current Assets | | 6,827.60 | | | | | | | 6,827.60 |
| 13001 · Undeposited Funds | | 58,775.57 | | 112.84 | | | | | 58,888.41 |
| 13004 · Prepaid Expenses | | | | | | | | | |
| 130042 · Prepaid Insurance | 4,121.25 | 39,498.90 | 1,703.36 | 18,142.58 | | | | | 63,466.09 |
| 130045 · Prepaid Mktg & Show Expenses | | 30,464.34 | | | | | | | 30,464.34 |
| Total 13004 · Prepaid Expenses | 4,121.25 | 69,963.24 | 1,703.36 | 18,142.58 | | | | | 93,930.43 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

## Centerstone Diamonds, Inc.& Affiliates
### Combined Balance Sheet
#### As of September 30, 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **13006 · Inventory** | | | | | | | | | |
| 130063 · Materials & Supplies | | | | | | | | | |
| 1300700 · Watches | | | | | | 384,500.21 | | | 384,500.21 |
| 1300631 · Diamonds | 8,481,137.00 | | | 50,399.10 | 246,492.44 | | | | 8,727,629.44 |
| 130061 · Finished Goods | | | | | 11,967.73 | | | | 62,366.83 |
| 1300635 · Supplies & other Inventories | | | | 3,082.43 | | | | | 3,082.43 |
| 1300650 · Beaudry Home Brand | | | | | 10,005.00 | | | | 10,005.00 |
| Total 130063 · Materials & Supplies | 8,481,137.00 | | | 53,481.53 | 268,465.17 | 384,500.21 | | | 9,187,583.91 |
| Total 13006 · Inventory | 8,481,137.00 | | | 53,481.53 | 268,465.17 | 384,500.21 | | | 9,187,583.91 |
| 13007 · Due to/from Beaudry Law Offices | | | | | | | | | 10,742.02 |
| **Total Other Current Assets** | 8,485,258.25 | 135,556.41 | 1,703.36 | 71,756.95 | 268,465.17 | 395,242.23 | | | 9,357,982.37 |
| **Total Current Assets** | 11,306,177.61 | 565,836.49 | 1,952.19 | 114,051.86 | 471,791.79 | 410,153.43 | 400.39 | -3,056,903.72 | 9,815,459.84 |
| **Fixed Assets** | | | | | | | | | |
| 14001 · Machinery & Equipment | 101,467.50 | 36,766.23 | 473,820.48 | | | | | | 611,054.21 |
| 14002 · Vehicles/Autos/Trucks | 55,810.15 | | | | | | | | 55,810.15 |
| 14031 · Computers | 138,649.98 | 326,458.89 | | 7,157.36 | | | | | 467,266.23 |
| 14032 · Office Equipment | 214,376.06 | | | | | | | | 214,376.06 |
| 14033 · Furniture & Fixtures | 51,846.27 | 71,294.50 | 14,048.00 | 23,245.50 | | | | | 160,234.27 |
| 14034 · Shop Tools & Small Equipment | 15,164.41 | | | | | | | | 15,164.41 |
| 14004 · Leasehold Improvements | 66,996.72 | 132,950.00 | | 970,237.85 | | | | | 1,190,184.57 |
| 14007 · Construction in Process | 192,659.94 | 23,033.62 | | | | | | | 215,693.56 |
| 14099 · Accumulated Depreciation | -616,833.88 | -307,534.75 | -844,682.65 | -102,641.00 | | | | | -1,871,692.28 |
| 14005 · Building | | | 2,960,072.83 | | | | | | 2,960,072.83 |
| 14006 · Building Improvements | | | 125,794.93 | | | | | | 125,794.93 |
| 14007 · Land | | | 522,385.79 | | | | | | 522,385.79 |
| 140080 · Loan Costs - Building | | | 138,059.76 | | | | | | 138,059.76 |
| 140080 · Accumulated Amort - Loan Costs | | | -33,751.84 | | | | | | -33,751.84 |
| **Total Fixed Assets** | 233,937.15 | 282,968.49 | 3,355,727.30 | 897,999.71 | | | | | 4,770,632.65 |
| **Other Assets** | | | | | | | | | |
| 150025 · Security Deposits | 3,718.87 | 3,545.52 | | 13,000.00 | | | | | 20,264.39 |
| 150011 · Centurion Jewelry B.I.O., LLC | | 2,616.00 | | | | | | | 2,616.00 |
| **Total Other Assets** | 3,718.87 | 6,161.52 | | 13,000.00 | | | | | 22,880.39 |
| **TOTAL ASSETS** | 11,545,833.63 | 854,966.50 | 3,357,679.49 | 1,025,051.37 | 471,791.79 | 410,153.43 | 400.39 | -3,056,903.72 | 14,608,972.88 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

## Centerstone Diamonds, Inc.& Affiliates
### Combined Balance Sheet
As of September 30, 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES & EQUITY** | | | | | | | | | |
| **Liabilities** | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | |
| **Accounts Payable** | | | | | | | | | |
| 210011 · Accounts Payable | 2,363,921.99 | 1,663,421.23 | 153,669.22 | 731,648.95 | -149,095.72 | 21,294.55 | 99.00 | -552,100.84 | 4,530,949.82 |
| 210015 · Intercompany Sales- 11 | | 1,550,198.99 | | | | | | -1,550,198.99 | 0.00 |
| 210012 · Intercompany Sales | | 954,603.89 | | | | | | -954,603.89 | |
| **Total Accounts Payable** | 2,363,921.99 | 4,168,224.11 | 153,669.22 | 731,648.95 | -149,095.72 | 21,294.55 | 99.00 | -3,056,903.72 | 4,530,949.82 |
| **Other Current Liabilities** | | | | | | | | | |
| **22003 · Inter-Company Accounts** | | | | | | | | | |
| 220044 · Due to/from CDI-B Time Domestic | 1,792.30 | | | | | | -1,792.30 | | |
| 220045 · Due to/from CDI - Beaudry Int'l | 1,362.60 | | | | -1,362.60 | | | | |
| 220038 · Due to/from CDI - Beaudry-BH | 222,984.67 | | | -222,984.67 | | | | | |
| 220036 · Due to/from CDI - B Time Int'l | -233,732.36 | | | | | 233,732.36 | | | |
| 220032 · Due To/from MBI-CDI | 7,314,557.86 | -7,314,557.86 | | | | | | | |
| 220034 · Due to/from CDI-8th Street | 1,500,945.25 | | -1,500,945.25 | | | | | | |
| 220039 · Due to/from MBI - Beaudry-BH | | 22,626.21 | | -22,626.21 | | | | | |
| 220037 · Due to/from MBI - B Time Int'l | | 223,316.46 | | | | -223,316.46 | | | |
| 220031 · Due to/from MBI-8th Street | | -953,628.61 | 953,628.61 | | | | | | |
| 220040 · Due to/from 8th St. - BeaudryBH | | | 94,320.00 | -94,320.00 | | | | | |
| 220046 · Due to/from BT Domestic-BBH | | | | 650.00 | | | -650.00 | | |
| 220042 · Due to/from Beaudry Int'l - BBH | | | | 216,531.30 | -216,531.30 | | | | |
| 220063 · Due to/from BT - Beaudry-BH | | | | -89,308.00 | | 89,308.00 | | | |
| 220052 · Due to/from MGB Dev - BI | | | | | -50,000.00 | | | | 50,000.00 |
| **Total 22003 · Inter-Company Accounts** | 8,807,910.32 | -8,022,243.80 | -641,636.64 | -23,417.50 | -167,893.90 | 99,723.90 | -2,442.30 | | 50,000.00 |
| **22004 · Customer Deposits** | | 250,000.00 | | 140,000.00 | | | 4,000.00 | | 394,000.00 |
| **22005 · Loans Payable - Current** | | | | | | | | | |
| 230031 · Capital Lease - Current Portion | 18,562.45 | 18,219.00 | | | | | | | 36,781.45 |
| 220057 · Microsoft-CIT Fin. Serv. | | 63,787.52 | | | | | | | 63,787.52 |
| 220054 · Loan - MB | | 15,000.00 | | | | | | | 15,000.00 |
| 220051 · GMAC Loan - Current Portion | | 12,015.92 | | | | | | | 12,015.92 |
| 220053 · LOC - First Capital | | 5,808,187.67 | | | | | | | 5,808,187.67 |
| 230023 · Loan - B of A - ST Portion | | | 309,978.55 | | | | | | 309,978.55 |
| 230024 · Loan - SBA 504 - ST Portion | | | 186,723.24 | | | | | | 186,723.24 |
| 220060 · Loan - MB3 WM Note 1 | | | | 336,125.00 | | | | | 336,125.00 |
| 220058 · Loan- WM Note 3 | | | | 65,000.00 | | | | | 65,000.00 |
| 220054 · Loan - MB1 WM Note 2 | | | | 550,000.00 | | | | | 550,000.00 |
| 220067 · Credit Card - MB3 | | | | 37,121.24 | | | | | 37,121.24 |
| **Total 22005 · Loans Payable - Current** | 18,562.45 | 5,917,210.11 | 496,701.79 | 988,246.24 | | | | | 7,420,720.59 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

## Centerstone Diamonds, Inc.& Affiliates
### Combined Balance Sheet
As of September 30, 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **22006 · Payroll Liabilities** | | | | | | | | | |
| 220061 · Accrued Payroll | 23,354.84 | 28,998.87 | | 15,200.43 | | | | | 67,554.14 |
| 220062 · Direct Deposit Liabilities | | -2,136.54 | | | | | | | -2,136.54 |
| 220066 · Federal Payroll Taxes | -4,061.47 | -2,715.36 | | | | | | | -8,776.83 |
| 220067 · California Payroll Taxes | -882.05 | -256.62 | | -535.98 | | | | | -1,674.65 |
| 22070 · Vacation Accrual | 15,581.18 | 4,017.25 | | 9,543.54 | | | | | 29,121.97 |
| 22006 · Payroll Liabilities - Other | | -146.00 | | -2,710.51 | | | | | -2,856.61 |
| **Total 22006 · Payroll Liabilities** | 33,972.50 | 27,761.60 | | 21,497.38 | | | | | 83,231.48 |
| | | | | | | | | | |
| 22007 · Sales Tax Payable | | | | 2,390.73 | | | | | 2,390.73 |
| 22008 · Income Tax Payable | 627,300.00 | | | | | | | | 627,300.00 |
| 22001 · Accrued Commisions | | 110,181.90 | | | | | | | 110,181.90 |
| 22002 · Accrued Coop Advertisement | 89,683.75 | 89,683.75 | | | | | | | 89,883.75 |
| **Total Other Current Liabilities** | 9,487,745.27 | -1,627,206.44 | -144,934.85 | 1,128,716.77 | -167,893.90 | 99,723.90 | 1,557.70 | | 8,777,708.45 |
| | | | | | | | | | |
| **Total Current Liabilities** | 11,851,667.26 | 2,541,017.57 | 8,734.37 | 1,360,265.72 | -16,798.18 | 121,918.45 | 1,656.70 | -3,056,903.72 | 13,308,658.27 |
| | | | | | | | | | |
| **Long Term Liabilities** | | | | | | | | | |
| 230030 · Equipment Lease Payable - FFL | 5,382.95 | | | | | | | | 5,382.95 |
| 230025 · Equipment Lease Payable - ACG | 27,137.41 | | | | | | | | 27,137.41 |
| 230011 · Due To/From M Beaudry Personal | 521,929.53 | 57,284.86 | 291,534.42 | -334,354.73 | 126,155.78 | | 1,000.00 | | 663,529.86 |
| 230012 · Ahl Beaudry | 52,455.07 | | | | | | | | 52,455.07 |
| 230012 · Due To/From MB (post petition) | | 70,000.00 | | | | | | | 70,000.00 |
| 230033 · Loan - Microsoft - CTT Fin.Serv | | 117,865.86 | | | | | | | 117,865.86 |
| 220041 · Leases Payable | | 10,627.18 | | | | | | | 10,627.18 |
| 230022 · GMAC Loan- Cadillac Escalade | | 21,641.82 | | | | | | | 21,641.82 |
| 230017 · Loan- RTI Properties- Long Term | | | 1,000,000.00 | | | | | | 1,000,000.00 |
| 230013 · Bank of America - 1st | | | 1,776,301.81 | | | | | | 1,776,301.81 |
| 230014 · SBA 504 (A.C. Colson Services) | | | 1,447,681.21 | | | | | | 1,447,681.21 |
| 230018 · Loan- | | | | | | 409,490.07 | | | 409,490.07 |
| **Total Long Term Liabilities** | 606,905.56 | 277,399.72 | 4,515,517.44 | -334,354.73 | 126,155.78 | 409,490.07 | 1,000.00 | | 5,602,113.84 |
| | | | | | | | | | |
| **Total Liabilities** | 12,458,572.82 | 2,818,417.39 | 4,524,251.81 | 1,525,910.99 | 107,357.60 | 530,508.52 | 2,656.70 | -3,056,903.72 | 18,910,772.11 |
| | | | | | | | | | |
| **Equity** | | | | | | | | | |
| 30002 · Common Stock | 3,000.00 | 1,000.00 | | | | | | | 4,000.00 |
| 30003 · Retained Earnings | -356,805.07 | -920,638.82 | -62,142.63 | -600,089.30 | 85,620.15 | -137,725.16 | -2,036.23 | | -1,993,817.16 |
| Net Income | -558,934.12 | -1,043,811.97 | -349,429.69 | 99,229.66 | 278,814.04 | 17,370.07 | -220.08 | | -1,556,982.07 |
| 30004 · Partner's Capital | | | 100,000.00 | | | | | | 100,000.00 |
| 30050 · Shareholders Distributions | | | -855,000.00 | | | | | | -855,000.00 |
| **Total Equity** | -912,739.19 | -1,963,450.69 | -1,166,572.32 | -500,859.62 | 364,434.19 | -120,355.09 | -2,256.31 | | -4,301,799.23 |
| | | | | | | | | | |
| **TOTAL LIABILITIES & EQUITY** | 11,545,833.63 | 854,966.50 | 3,357,679.49 | 1,025,051.37 | 471,791.79 | 410,153.43 | 400.39 | -3,056,903.72 | 14,608,972.88 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 4 of 4

## Centerstone Diamonds, Inc. & Affiliates
### Combined Profit And Loss
#### January through September 2010

| | CDI | MBI | 6th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | |
| **Income** | | | | | | | | | |
| 40009 · Other Sales and Revenue | | 22,227.54 | | 426.08 | | 17,829.95 | | | 40,483.57 |
| 40001 · Jewelry Sales | 1,662,773.29 | 1,896,110.40 | | | 481,059.98 | | | -1,908,596.35 | 2,131,347.32 |
| 40004 · Shipping Income | 20,494.00 | 20,359.30 | | 1,163.00 | -484.00 | | | -20,494.00 | 21,958.00 |
| 40006 · Recycling Income | 18,804.84 | | | | 2,882.29 | | | | 21,687.13 |
| 40002 · Loose Stone Sales | | 95,376.77 | | 18,384.19 | | | | | 113,760.96 |
| 40003 · Jewelry Repairs & Rework | | 59,519.45 | | 11,050.00 | 1,157.00 | | | | 71,768.45 |
| 40399 · Customer Discounts/Adjustments | | 50,237.30 | | -26,056.12 | | | | | 24,181.18 |
| 40007 · Rental Income | | | 284,500.00 | 139,194.75 | | | | | 423,694.75 |
| 40011 · Jewelry Sales- Interco | | | | | | | | -251,000.00 | 0.00 |
| 46000 · Merchandise Sales | | | | 1,263,332.17 | 292,100.00 | | | -431,264.75 | 1,263,332.17 |
| **Total Income** | 1,702,072.13 | 2,123,840.46 | 284,500.00 | 1,407,495.07 | 777,683.27 | 17,829.95 | | -2,621,355.10 | 3,692,935.78 |
| **Cost of Goods Sold** | | | | | | | | | |
| 50014 · Inventory Adjustment-Lost/Damag | 1,688.56 | | | -138.05 | 696.00 | | | | 2,156.51 |
| 50001 · Diamonds | 1,272,878.09 | | | 127,218.35 | | | | | 1,400,096.44 |
| 50003 · Jewelry | | 1,662,773.29 | | 159,423.00 | 95,986.56 | | | -1,662,773.29 | 255,409.96 |
| 50004 · Vendors - Misc Charges | | | | | 98.28 | | | | 98.28 |
| 50005 · Accessories | 1,284.21 | | | 1,185.96 | 81.65 | | | | 2,551.82 |
| 50008 · Metal | 2,641.00 | | | | 3,759.05 | | | | 6,400.05 |
| 50007 · Certificates | 83.00 | 108.00 | | | | | | | 191.00 |
| 50008 · Repairs & Rework | | | | 4,222.75 | 1,175.70 | | | | 5,398.45 |
| 50009 · Cost of Goods Sold- Interco | 188,363.00 | | | 257,686.00 | 230,768.81 | | | -677,117.81 | 0.00 |
| 50010 · Watches - Prototypes | | | | | | | | | |
| 5010 · Manufacturing Costs | | | | | | | | | |
|    50103 · Production | 13,316.75 | | | | | | | | 13,318.75 |
|    501032 · Production Staff Payroll | 115,943.19 | | | | | | | | 115,943.19 |
|    50104 · Setting | 110,442.77 | | | | 73,978.79 | | | | 184,421.56 |
|    50105 · Casting | 20,109.38 | | | | 31,833.57 | | | | 51,942.95 |
|    50107 · Fabricating | 71,488.53 | | | | 27,964.41 | | | | 99,442.94 |
| Total 5010 · Manufacturing Costs | 331,322.62 | | | | 133,796.77 | | | 0.00 | 465,069.39 |
| 50002 · Cost of Goods Sold | | | | | | | | | |
| **Total COGS** | 1,798,540.46 | 1,662,881.29 | | 589,598.01 | 466,243.22 | | | -2,339,891.10 | 2,177,371.90 |
| **Gross Profit** | -96,468.35 | 460,959.17 | 284,500.00 | 817,897.06 | 311,440.05 | 17,829.95 | | -281,464.00 | 1,514,663.88 |
| **Expense** | | | | | | | | | |
| 7000 · Marketing Expenses | | | | | | | | | |
|    70009 · Ambassador Program | | 841.90 | | | | | | | 841.90 |
|    70000 · Events | | 25,939.52 | | 15,431.15 | | | | | 41,370.64 |
|    70001 · Creative Services | | 5,000.00 | | 8,119.12 | 500.00 | | | | 13,619.12 |
|    70002 · Advertising | | 58,200.51 | | 18,390.79 | | | | | 76,591.30 |
|    70005 · Photography | | 11,839.15 | | 9,737.54 | 15,647.00 | | | | 37,223.69 |
|    70006 · Public Relations | | 2,975.00 | | | | | | | 2,975.00 |
|    70007 · Tradeshows | | 118,626.05 | | | | | | | 118,626.05 |
| Total 7000 · Marketing Expenses | | 223,422.13 | | 51,648.60 | 16,147.00 | | | | 291,217.73 |

**FOR INTERNAL MANAGEMENT PURPOSES ONLY**

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Seaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **8000 - Gen & Administrative - Expense** | | | | | | | | | |
| **80000 - Utilities** | | | | | | | | | |
| 800001 - Electric | -4,528.50 | 37,939.23 | 16,102.52 | | | | | | 49,713.25 |
| 800002 - Trash | 3,491.71 | | | | | | | | 3,491.71 |
| 800003 - Gas | | 339.42 | 265.26 | | | | | | 604.68 |
| 800005 - Water | | 8,176.26 | 5,417.09 | | | | | | 13,593.35 |
| Total 80000 - Utilities | -836.79 | 46,454.91 | 21,784.87 | | | | | | 67,402.99 |
| **800004 - Rent Expense** | | | | | | | | | |
| 800004 - Rent Expense - Other | | 261,000.00 | | 93,541.50 | | | | -261,000.00 | 93,541.50 |
| Total 800004 - Rent Expense | | 261,000.00 | | 93,541.50 | | | | -261,000.00 | 93,541.50 |
| **80001 - Professional Fees** | | | | | | | | | |
| 80013 - Other | 1,000.00 | | | | | | | | 1,000.00 |
| 80010 - Accounting | 18,053.00 | 13,446.00 | 9,845.50 | 35,268.53 | 13,066.00 | | | | 89,879.03 |
| 80011 - Legal Fees | 130,062.59 | 31,786.81 | 11,460.99 | 31,643.61 | | | 99.00 | | 205,052.90 |
| 800015 - Management Fees | | | 125,000.00 | 30,000.00 | | | | | 155,000.00 |
| Total 80001 - Professional Fees | 149,115.59 | 45,232.81 | 146,306.19 | 96,912.34 | 13,066.00 | | 99.00 | | 450,731.93 |
| **80002 - Depreciation Expense** | | | | | | | | | |
| 800004 - Amortization Expense | | | 13,914.00 | | | | | | 13,914.00 |
| 80002 - Depreciation Expense - Other | 36,000.00 | 31,655.76 | 118,050.00 | 22,914.00 | | | | | 208,619.75 |
| Total 80002 - Depreciation Expense | 36,000.00 | 31,625.76 | 131,994.00 | 22,914.00 | | | | | 222,533.75 |
| 80003 - Charitable Contributions | | | | 1,100.00 | | | | | 1,100.00 |
| **81001 - Travel** | | | | | | | | | |
| 810012 - Taxi Fare & Car Rental -Adm | | 564.00 | | 1,463.25 | | | | | 2,027.25 |
| 810013 - Meals & Entertainment - Adm | | 1,400.86 | | 2,474.97 | | | | | 3,875.83 |
| Total 81001 - Travel | | 1,964.86 | | 3,938.22 | | | | | 5,903.08 |
| **81002 - Auto Expense** | | | | | | | | | |
| 810021 - Employee Auto Exp. | | 290.21 | | 1,784.41 | | | | | 2,074.62 |
| 810029 - Auto Lease Payment Adm | | | | 24,674.67 | | | | | 24,674.67 |
| 810022 - Fuel - Adm | | 856.79 | | 1,317.86 | | | | | 2,174.65 |
| 810023 - Auto Ins & Registration Adm | | | | 1,614.00 | | | | | 1,614.00 |
| Total 81002 - Auto Expense | | 1,147.00 | | 29,390.94 | | | | | 30,537.94 |
| **81003 - Bank Fees - Adm** | | | | | | | | | |
| 810031 - Service Charges | 1,572.55 | 8,720.71 | 868.15 | 4,404.10 | 604.01 | 459.88 | 121.08 | | 16,750.48 |
| 810039 - Credit Card Fees | | 982.43 | | 6,531.34 | | | | | 7,513.77 |
| Total 81003 - Bank Fees - Adm | 1,572.55 | 9,703.14 | 868.15 | 10,935.44 | 604.01 | 459.88 | 121.08 | | 24,264.25 |
| **81004 - Computer- Adm** | | | | | | | | | |
| 810040 - Comp. Hardware - Adm | | 2,519.72 | | | | | | | 2,519.72 |
| 810041 - Internet Services - Adm | 509.58 | | | 656.95 | | | | | 1,166.83 |
| 810042 - Svrce, Support & Repairs-Adm | 1,120.00 | 1,827.81 | 1,756.77 | 2,999.72 | | | | | 7,704.10 |
| 810043 - Software Expenses -Adm | | 2,229.19 | | | | | | | 2,229.19 |
| Total 81004 - Computer- Adm | 1,629.58 | 6,576.52 | 1,756.77 | 3,656.67 | | | | | 13,619.84 |

FOR INTERNAL MANAGEMENT PURPOSES ONLY

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
#### January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 81005 · Transportation Exp. -Adm | | | | | | | | | |
| 81050 · Employee Parking | 5,088.24 | 1,698.00 | | 1,104.85 | | | | | 7,890.09 |
| 81051 · Mileage-Adm | 344.20 | 649.31 | | 1,306.00 | | | | | 2,399.51 |
| Total 81005 · Transportation Exp. -Adm | 5,430.44 | 2,347.31 | | 2,561.85 | | | | | 10,339.60 |
| | | | | | | | | | |
| 81006 · Employment Services - Adm | 300.00 | | | | | | | | 305.00 |
| 81060 · Benefits Administration - Adm | | | | | | | | | 300.00 |
| Total 81006 · Employment Services - Adm | 300.00 | | | | | | | | |
| | | | | | | | | | |
| 81007 · Delivery Services-Adm | | | | | | | | | |
| 81071 · Shipping -Adm | 122.60 | 12,586.61 | | | | | | | 12,709.21 |
| Total 81007 · Delivery Services-Adm | 122.60 | 12,586.61 | | | | | | | 12,709.21 |
| | | | | | | | | | |
| 81008 · Insurance | | | | | | | | | |
| 81080 · Dental Insurance | | 694.31 | | | | | | | 694.31 |
| 81083 · Medical Insurance | | 3,834.50 | | | | | | | 3,834.50 |
| 81085 · Workers' Comp -Adm | -7,404.85 | 1,000.00 | | 2,190.01 | | | | | -4,214.84 |
| 81087 · General Liability -Adm | | 1,019.90 | 3,825.76 | 8,602.47 | | | | | 13,448.09 |
| 81088 · Vision Insurance | | 24.89 | | | | | | | 24.89 |
| 81089 · Disability Insurance | | | | | | | | | |
| 81081 · Jewelers Block Ins -Adm | | 77,009.91 | | 9,420.45 | | | | | 86,430.36 |
| Total 81008 · Insurance | -7,404.85 | 83,383.47 | 3,825.76 | 20,212.93 | | | | | 100,017.31 |
| | | | | | | | | | |
| 81009 · Office Expense -Adm | | | | | | | | | |
| 81009 · Dues & Subscriptions - Adm | | 265.00 | | 988.00 | 509.00 | | | | 1,862.00 |
| 81092 · Outside Services | 24,295.30 | | | | | | | | 24,295.30 |
| 81093 · Repairs & Maint. Office -Adm | 1,496.51 | | 22,790.91 | 7,271.70 | | | | | 31,559.12 |
| 81094 · Office Supplies - Adm | 943.54 | 5,981.39 | 261.18 | 12,635.54 | 65.00 | | | | 19,886.65 |
| 81091 · Off.Tools & Sm. Eqpmt -Adm | | | | 1,198.70 | | | | | 1,198.70 |
| 81099 · Security Monitoring Expenses | | 1,600.00 | | 906.00 | | | | | 2,506.00 |
| Total 81009 · Office Expense -Adm | 26,735.35 | 7,846.39 | 23,052.09 | 22,999.94 | 664.00 | | | | 81,297.77 |
| | | | | | | | | | |
| 81010 · Payroll Expenses | | | | | | | | | |
| 8101062 · Inventory Staff | 60,166.46 | | | | | | | | 60,166.46 |
| 81103 · Payroll Tax Expense | 29,069.50 | 38,524.22 | | 1,339.08 | | | | | 68,932.80 |
| 81105 · Payroll Processing Fees | 246.75 | 287.50 | | | | | | | 534.25 |
| 81063 · Officer Compensation | | 218,500.00 | | | | | | | 218,500.00 |
| 81061 · Office Staff | 129,591.76 | 192,417.07 | | 58,249.19 | | | | | 380,258.02 |
| 81100 · Expense Reimbursements | | | | | | | | | |
| 81010 · Payroll Expenses - Other | | | | | | | | | |
| Total 81010 · Payroll Expenses | 219,074.47 | 449,728.79 | | 59,588.27 | | | | | 728,411.53 |
| | | | | | | | | | |
| 81012 · Telephone | | | | | | | | | |
| 81020 · Cellular | 12,913.95 | 3,190.28 | | | | | | | 16,104.23 |
| 81022 · Office - Long Distance | 12,538.90 | | | | | | | | 12,538.90 |
| 81021 · Telephone Office-Adm | | | | 864.37 | | | | | 864.37 |
| Total 81012 · Telephone | 25,452.85 | 3,190.28 | | 864.37 | | | | | 29,507.50 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 3 of 5

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
### January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 81013 · Licenses & Permits | | 929.00 | 376.00 | 960.48 | 2,145.00 | | | | 4,410.48 |
| 81015 · Equipment Lease/Rental | | | | 384.80 | | | | | 384.80 |
| 81019 · Misc. Expenses | | | | | | | | | |
| 81019 · Misc. Expenses - Other | | | | | | | | | |
| Total 81019 · Misc. Expenses | | | | | | | | | |
| | | | | | | | | | |
| Total 8000 · Gen & Administrative - Expense | 457,212.09 | 963,718.84 | 329,963.83 | 368,961.75 | 16,473.01 | 459.88 | 220.08 | -281,000.00 | 1,877,013.48 |
| | | | | | | | | | |
| 6000 · Selling Expense | | | | | | | | | |
| 50002 · Outside Commissions | | 3,500.00 | | 599.00 | | | | | 4,099.00 |
| 61001 · Travel -Sales | | | | | | | | | |
| 610010 · Airfare - Sales | | 36,824.80 | | 4,635.98 | | | | | 41,460.48 |
| 61011 · Hotels & Lodging- Sales | | 34,390.64 | | 2,014.59 | | | | | 36,405.23 |
| 61012 · Taxi Fares & Car Rental - Sales | | 20,253.88 | | 494.35 | | | | | 20,748.23 |
| 61013 · Meals & Entertainment - Sales | | 8,726.20 | | 11,384.67 | | | | | 20,110.87 |
| 61014 · Travel Security - Sales | | 1,147.57 | | | | | | | 1,147.57 |
| 61016 · Travel Expenses - Sales | | 4,077.57 | | 1,291.02 | | | | | 5,368.59 |
| 61017 · Travel Employee Meals - Sales | | 8,769.54 | | 347.40 | | | | | 9,116.94 |
| Total 61001 · Travel -Sales | | 114,190.20 | | 20,167.71 | | | | | 134,357.91 |
| | | | | | | | | | |
| 61002 · Auto Expense - Sales | | | | | | | | | |
| 61002 · Auto Expense - Sales - Other | | | | 122.51 | | | | | 122.51 |
| Total 61002 · Auto Expense - Sales | | | | 122.51 | | | | | 122.51 |
| | | | | | | | | | |
| 510052 · Employee Parking - Sales | | | | | | | | | |
| 61007 · Delivery Services - Sales | | | | | | | | | |
| 610071 · Shipping Expenses - Sales | | 40,410.08 | | | | | | | 40,410.08 |
| 61007 · Delivery Services - Sales | | | | | | | | | |
| Total 61007 · Delivery Services - Sales | | 40,410.08 | | | | | | | 40,410.08 |
| | | | | | | | | | |
| 610072 · Postage and Delivery - Sales | | 20,494.00 | | 279.43 | | | | -20,494.00 | 279.43 |
| 61004 · Office Supplies - Sales | | 269.48 | | 568.21 | | | | | 837.69 |
| 61010 · Payroll Expenses - Sales | | | | | | | | | |
| 510106 · Salaries & Wages - Sales | | | | | | | | | |
| 6101063 · Sales People | | 122,015.78 | | 168,875.80 | | | | | 290,691.59 |
| 610106 · Salaries & Wages - Sales - Other | | | | 2,050.00 | | | | | 2,050.00 |
| Total 510106 · Salaries & Wages - Sales | | 122,015.79 | | 170,875.80 | | | | | 292,891.59 |
| | | | | | | | | | |
| Total 61010 · Payroll Expenses - Sales | | 122,015.79 | | 170,875.80 | | | | | 292,891.59 |
| | | | | | | | | | |
| 6014 · Meals & Entertainment-Sales | | | | 496.65 | | | | | 496.65 |
| Total 6000 · Selling Expense | | 300,879.55 | | 193,109.31 | | | | -20,494.00 | 473,494.86 |
| | | | | | | | | | |
| 66000 · Payroll Expenses | | | | | | | | | |
| 99999 · Suspense | | | | | | | | | |
| Total Expense | 457,212.09 | 1,488,018.52 | 329,963.83 | 614,719.66 | 32,926.01 | 459.88 | 220.08 | -281,494.00 | 2,641,726.07 |
| Net Ordinary Income | -553,680.44 | -1,027,059.35 | -45,463.03 | 203,177.40 | 278,814.04 | 17,370.07 | -220.08 | | -1,127,062.19 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 4 of 5

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Other Income/Expense** | | | | | | | | | |
| **Other Income** | | | | | | | | | |
| 90000 · Other Income | | | | | | | | | |
| 900009 · Miscellaneous Income | | 1,645.20 | | | | | | | 1,645.20 |
| Total 90000 · Other Income | | 1,645.20 | | | | | | | 1,645.20 |
| | | | | | | | | | |
| 90001 · Gain on Sale of Fixed Assets | | | 15,851.35 | | | | | | 15,851.35 |
| Total Other Income | | 1,645.20 | 15,851.35 | | | | | | 17,496.55 |
| | | | | | | | | | |
| **Other Expense** | | | | | | | | | |
| 9100 · Other Expenses | | | | | | | | | |
| 93000 · Voided Checks | | | | | | | | | |
| Total 9100 · Other Expenses | | | | | | | | | |
| | | | | | | | | | |
| 9110 · Interest Expense | | | | | | | | | |
| 920000 · Interest Expense | | | | | | | | | |
| 920000 · Interest Expense - Other | 1,295.39 | 14,282.88 | 59,972.09 | 99,894.11 | | | | | 175,444.47 |
| Total 920000 · Interest Expense | 1,295.39 | 14,282.88 | 59,972.09 | 99,894.11 | | | | | 175,444.47 |
| | | | | | | | | | |
| 920003 · Finance Charge | | | 1,819.27 | | | | | | 1,819.27 |
| 920001 · Mortgage Expense | | | 150,680.25 | | | | | | 150,680.25 |
| 920002 · Loan Interest | | | 79,875.00 | | | | | | 79,875.00 |
| Total 9110 · Interest Expense | 1,295.39 | 14,282.88 | 292,346.61 | 99,894.11 | | | | | 407,818.99 |
| | | | | | | | | | |
| 91300 · VOIDED CHECKS | | | | | | | | | |
| 9500 · Tax Expense | | | | | | | | | |
| 95003 · State Income Tax | 909.62 | 1,600.00 | 1,595.06 | 867.82 | | | | | 4,912.50 |
| 95006 · Property Tax | 3,048.67 | 2,378.12 | 25,935.54 | 3,185.79 | | | | | 34,548.12 |
| 95004 · Local Taxes | | 136.82 | | | | | | | 136.82 |
| Total 9500 · Tax Expense | 3,958.29 | 4,114.94 | 27,470.60 | 4,053.61 | | | | | 39,597.44 |
| | | | | | | | | | |
| Total Other Income | 5,253.68 | 18,397.82 | 319,817.21 | 103,947.72 | | | | | 447,416.43 |
| | | | | | | | | | |
| Net Other Income | -5,253.68 | -16,752.62 | -303,965.86 | -103,947.72 | | | | | -429,919.88 |
| | | | | | | | | | |
| Net Income | -558,934.12 | -1,043,811.97 | -349,429.69 | 99,229.68 | 276,814.04 | 17,370.07 | -220.09 | | -1,555,982.07 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 5 of 5

74

# Michael Beaudry Inc. & Centerstone Diamonds, Inc.
## Combined Statement Of Cash Flow
### January through July 2010

| | Michael Beaudry Inc. | Centerstone Diamonds, Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **OPERATING ACTIVITIES** | | | | |
| Net Income | -819,610.65 | -430,547.81 | | -1,250,158.46 |
| Adjustments to reconcile Net Income | | | | |
| to net cash provided by operations: | | | | |
| 12003 · Accounts Receivable-11 | 242,395.86 | -468,630.30 | 418,597.50 | 192,363.06 |
| 12001 · Accounts Receivable | 576,660.70 | | | 576,660.70 |
| 12002 · Allowance for AR | -33,075.50 | | | -33,075.50 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130033 · Employee Travel Advance | -2,442.32 | | | -2,442.32 |
| 13004 · Prepaid Expenses | | 18,964.57 | | 18,964.57 |
| 13004 · Prepaid Expenses:130042 · Prepaid Insurance | -29,287.60 | -5,769.75 | | -35,057.35 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | -5,423.34 | | | -5,423.34 |
| 13004 · Prepaid Expenses:130047 · Prepaid Advertising | -12,325.00 | | | -12,325.00 |
| 210015 · Intercompany Sales- 11 | 474,053.64 | | -418,597.50 | 55,456.14 |
| 21011 · Accounts Payable | 138,414.94 | 49,191.68 | | 187,606.62 |
| 22002 · Accrued Coop Advertisement | -60,116.25 | | | -60,116.25 |
| 22003 · Inter-Company Accounts:220039 · Due to/from MBI - Beaudry-BH | -116.33 | | | -116.33 |
| 22005 · Loans Payable - Current:220057 · Microsoft-CTT Fin. Serv. | 2,856.13 | | | 2,856.13 |
| 22005 · Loans Payable - Current:230031 · Capital Lease - Current Portion | | 426.83 | | 426.83 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | -467,586.82 | | | -467,586.82 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | -4,973.12 | -2,248.55 | | -7,221.67 |
| 22006 · Payroll Liabilities:22070 · Vacation Accrual | -12,889.66 | 2,141.01 | | -10,748.65 |
| 13006 · Inventory:130063 · Materials & Supplies:1300631 · Diamonds | | 801,222.00 | | 801,222.00 |
| 22003 · Inter-Company Accounts:220045 · Due to/from CDI - Beaudry Intl | | -2,520.00 | | -2,520.00 |
| 22003 · Inter-Company Accounts:220038 · Due to/from CDI - Beaudry-BH | | 59.88 | | 59.88 |
| **Net cash provided by Operating Activities** | -13,465.32 | -37,710.44 | | -51,175.76 |
| **INVESTING ACTIVITIES** | | | | |
| 14099 · Accumulated Depreciation | 24,598.25 | 28,000.00 | | 52,598.25 |
| **Net cash provided by Investing Activities** | 24,598.25 | 28,000.00 | | 52,598.25 |
| **FINANCING ACTIVITIES** | | | | |
| 230033 · Loan - Microsoft - CTT Fin.Serv | -37,719.14 | | | -37,719.14 |
| 220041 · Leases Payable | -10,627.54 | | | -10,627.54 |
| 230011 · Due To/From M Beaudry Personal | 2,455.03 | | | 2,455.03 |
| 230030 · Equipment Lease Payable - FFL | | -2,851.97 | | -2,851.97 |
| **Net cash provided by Financing Activities** | -45,891.65 | -2,851.97 | | -48,743.62 |
| **Net cash increase for period** | -34,758.72 | -12,562.41 | | -47,321.13 |
| **Cash at beginning of period** | 94,849.85 | 14,130.96 | | 108,980.81 |
| **Cash at end of period** | 60,091.13 | 1,568.55 | | 61,659.68 |

# EXHIBIT "D"

1

## EXHIBIT "D" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME STATEMENT FOR CALENDAR YEAR 2009

2

3

4

5

6

7

8

9

ERVIN COHEN & JESSUP LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

77

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Summary Balance Sheet
As of December 31, 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| Checking/Savings | 14,130.96 | 60,779.35 | | 74,910.31 |
| Accounts Receivable | 2,115,372.58 | 1,360,086.15 | -2,115,372.58 | 1,360,086.15 |
| Other Current Assets | 9,587,672.57 | 88,622.14 | | 9,676,294.71 |
| **Total Current Assets** | 11,717,176.11 | 1,509,487.64 | -2,115,372.58 | 11,111,291.17 |
| Fixed Assets | 295,207.15 | 314,594.24 | | 609,801.39 |
| Other Assets | 3,718.87 | 6,161.52 | | 9,880.39 |
| **TOTAL ASSETS** | 12,016,102.13 | 1,830,243.40 | -2,115,372.58 | 11,730,972.95 |
| **LIABILITIES & EQUITY** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| Accounts Payable | 2,242,537.96 | 3,274,092.83 | -2,115,372.58 | 3,401,258.21 |
| Other Current Liabilities | 7,686,402.68 | 1,009,053.66 | | 8,695,456.34 |
| **Total Current Liabilities** | 9,928,940.64 | 4,283,146.49 | -2,115,372.58 | 12,096,714.55 |
| Long Term Liabilities | 615,146.56 | 266,735.83 | | 881,882.39 |
| **Total Liabilities** | 10,544,087.20 | 4,549,882.32 | -2,115,372.58 | 12,978,596.94 |
| Equity | 1,472,014.93 | -2,719,638.92 | | -1,247,623.99 |
| **TOTAL LIABILITIES & EQUITY** | 12,016,102.13 | 1,830,243.40 | -2,115,372.58 | 11,730,972.95 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| 40009 · Other Sales and Revenue | | 5,614.00 | | 5,614.00 |
| 40001 · Jewelry Sales | 3,194,590.73 | 3,642,978.91 | -3,174,249.73 | 3,663,319.91 |
| 40004 · Shipping Income | 30,676.85 | 28,467.54 | -30,676.85 | 28,467.54 |
| 40006 · Recycling Income | 12,664.63 | 66,196.73 | | 78,861.36 |
| 40002 · Loose Stone Sales | | 82,221.91 | -76,078.60 | 6,143.31 |
| 40003 · Jewelry Repairs & Rework | | 65,432.00 | | 65,432.00 |
| 40008 · Misc Customer Fees | | | | |
| 40999 · Customer Discounts/Adjustments | | 2,499.04 | | 2,499.04 |
| 40007 · Rental Income | | | | 0.00 |
| 40011 · Jewelry Sales- Interco | | | -2,102.00 | -2,102.00 |
| Total Income | 3,237,932.21 | 3,893,610.13 | -3,283,107.18 | 3,848,435.16 |
| **Cost of Goods Sold** | | | | |
| 50014 · Inventory Adjustment-Lost/Damag | 127,710.65 | | | 127,710.65 |
| 50001 · Diamonds | 2,087,859.38 | | -56,351.60 | 2,031,507.78 |
| 50003 · Jewelry | | 3,193,976.73 | -3,193,976.73 | |
| 50004 · Vendors - Misc Charges | | 175.00 | | 175.00 |
| 50005 · Accessories | 906.28 | 290.00 | | 1,196.28 |
| 50006 · Metal | 912.26 | | | 912.26 |
| 50007 · Certificates | 598.00 | 130.00 | | 728.00 |
| 5010 · Manufacturing Costs | | | | |
| 50101 · Inscription | 793.50 | | | 793.50 |
| 50103 · Production | 3,190.00 | | | 3,190.00 |
| 501032 · Production Staff Payroll | 217,464.31 | | | 217,464.31 |
| 501033 · Production Shop | 886.60 | | | 886.60 |
| 50104 · Setting | 61,035.60 | | | 61,035.60 |
| 50105 · Casting | 20,172.23 | | | 20,172.23 |
| 50106 · Engraving | 9,158.00 | | | 9,158.00 |
| 50107 · Fabricating | 28,035.85 | | | 28,035.85 |
| Total 5010 · Manufacturing Costs | 360,736.29 | | | 360,736.29 |
| 50009 · Cost of Goods Sold- Interco | | | -2,102.00 | -2,102.00 |
| Total COGS | 2,578,722.86 | 3,194,571.73 | -3,252,430.33 | 2,520,864.26 |
| **Gross Profit** | 659,209.35 | 699,038.40 | -30,676.85 | 1,327,570.90 |
| **Expense** | | | | |
| 7000 · Marketing Expenses | | | | |
| 70010 · Donations Charity Events | 5,915.09 | | | 5,915.09 |
| 70005 · Beaudry Points Program | 35,733.70 | | | 35,733.70 |
| 70009 · Ambassador Program | 932.46 | | | 932.46 |
| 70000 · Events | | 9,075.00 | | 9,075.00 |
| 70001 · Creative Services | | 3,485.62 | | 3,485.62 |
| 70002 · Advertising | | 18,312.12 | | 18,312.12 |
| 70003 · Coop Advertising | | 293,064.32 | | 293,064.32 |
| 70005 · Photography | | 2,375.00 | | 2,375.00 |
| 70006 · Public Relations | | 18,521.09 | | 18,521.09 |
| 70007 · Tradeshows | | 43,903.83 | | 43,903.83 |
| Total 7000 · Marketing Expenses | 42,581.25 | 388,736.98 | | 431,318.23 |
| 8000 · Gen & Administrative - Expense | | | | |
| 80000 · Utilities | | | | |
| 800001 · Electric | 25,789.03 | | | 25,789.03 |
| 800002 · Trash | 4,248.81 | | | 4,248.81 |
| 800003 · Gas | 234.90 | 389.06 | | 623.96 |
| 800005 · Water | 7,919.77 | 4,367.01 | | 12,286.78 |
| 800005 · Electricity | | 35,066.43 | | 35,066.43 |
| Total 80000 · Utilities | 38,192.51 | 39,822.50 | | 78,015.01 |
| 800004 · Rent Expense | | | | |
| 800004 · Rent Expense - Other | 234,000.00 | 294,000.00 | | 528,000.00 |
| Total 800004 · Rent Expense | 234,000.00 | 294,000.00 | 0.00 | 528,000.00 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **80001 · Professional Fees** | | | | |
| 800013 · Other | 9,375.00 | | | 9,375.00 |
| 800010 · Accounting | 58,345.08 | 43,283.05 | | 101,628.13 |
| 800011 · Legal Fees | 145,030.75 | 100,566.34 | | 245,597.09 |
| **Total 80001 · Professional Fees** | 212,750.83 | 143,849.39 | | 356,600.22 |
| | | | | |
| **80002 · Depreciation Expense** | | | | |
| 80002 · Depreciation Expense - Other | 47,137.00 | 42,177.00 | | 89,314.00 |
| **Total 80002 · Depreciation Expense** | 47,137.00 | 42,177.00 | | 89,314.00 |
| | | | | |
| **81001 · Travel** | | | | |
| 810010 · Airfare | | 7,476.29 | | 7,476.29 |
| 810011 · Hotel & Lodging | | 460.89 | | 460.89 |
| 810013 · Meals & Entertainment | 516.46 | | | 516.46 |
| 810016 · Travel | 3,713.67 | | | 3,713.67 |
| 810012 · Taxi Fare & Car Rental -Adm | | 804.72 | | 804.72 |
| 810013 · Meals & Entertainment - Adm | | 2,098.45 | | 2,098.45 |
| **Total 81001 · Travel** | 4,230.13 | 10,840.35 | | 15,070.48 |
| | | | | |
| **81002 · Auto Expense** | | | | |
| 810021 · Employee Auto Exp. | | 1,111.51 | | 1,111.51 |
| 810023 · Insurance | 7,573.80 | | | 7,573.80 |
| 810022 · Fuel - Adm | | 345.24 | | 345.24 |
| **Total 81002 · Auto Expense** | 7,573.80 | 1,456.75 | | 9,030.55 |
| | | | | |
| **81003 · Bank Fees - Adm** | | | | |
| 810031 · Service Charges | 8,017.02 | 13,053.66 | | 21,070.68 |
| 810030 · Credit Card Fees | | 513.60 | | 513.60 |
| **Total 81003 · Bank Fees - Adm** | 8,017.02 | 13,567.26 | | 21,584.28 |
| | | | | |
| **81004 · Computer- Adm** | | | | |
| 810040 · Comp. Hardware - Adm | | 38,741.63 | | 38,741.63 |
| 810041 · Internet Services - Adm | 590.83 | 601.71 | | 1,192.54 |
| 810042 · Svcs, Support & Repairs-Adm | 392.82 | | | 392.82 |
| **Total 81004 · Computer- Adm** | 983.65 | 39,343.34 | | 40,326.99 |
| | | | | |
| **81005 · Transportation Exp. -Adm** | | | | |
| 810050 · Employee Parking | 10,894.00 | | | 10,894.00 |
| 810051 · Mileage | 604.71 | | | 604.71 |
| 810052 · Other Transp. Exp.- Adm | 1,608.39 | | | 1,608.39 |
| **Total 81005 · Transportation Exp. -Adm** | 13,107.10 | | | 13,107.10 |
| | | | | |
| **81006 · Employment Services - Adm** | | | | |
| 810060 · Benefits Administration - Adm | 5,600.40 | | | 5,600.40 |
| 810061 · Recruiting Expenses - Adm | | 150.00 | | 150.00 |
| 8100520 · Employee Morale | 1,200.00 | | | 1,200.00 |
| 810062 · Other Emplmt Svcs - Adm | | | | |
| 810062 · Other Emplmt Svcs - Adm - Other | | 199.00 | | 199.00 |
| **Total 810062 · Other Emplmt Svcs - Adm** | | 199.00 | | 199.00 |
| | | | | |
| **Total 81006 · Employment Services - Adm** | 6,800.40 | 349.00 | | 7,149.40 |
| | | | | |
| **81007 · Delivery Services-Adm** | | | | |
| 810071 · Shipping -Adm | 34,635.51 | 9,378.50 | | 44,014.01 |
| 810072 · Postage | 1,336.54 | 211.70 | | 1,548.24 |
| 810070 · Messenger Services - Adm | | 596.20 | | 596.20 |
| **Total 81007 · Delivery Services-Adm** | 35,972.05 | 10,186.40 | | 46,158.45 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **81008 · Insurance** | | | | |
| 810080 · Dental Insurance | 3,613.76 | | | 3,613.76 |
| 810081 · Jewelers Block - Adm | 2,356.10 | | | 2,356.10 |
| 810083 · Medical Insurance | 33,463.06 | | | 33,463.06 |
| 810084 · Shipping Ins. -Adm | 28,849.48 | | | 28,849.48 |
| 810085 · Workers' Comp -Adm | 32,045.33 | | | 32,045.33 |
| 810087 · General Liability -Adm | 615.93 | | | 615.93 |
| 810081 · Jewelers Block Ins -Adm | | 48,087.04 | | 48,087.04 |
| 810087 · Gen. Liability Ins - Adm | | 2,019.40 | | 2,019.40 |
| **Total 81008 · Insurance** | 100,943.66 | 50,106.44 | | 151,050.10 |
| **81009 · Office Expense -Adm** | | | | |
| 810098 · Dues & Subscriptions - Adm | 1,447.50 | 890.00 | | 2,337.50 |
| 810093 · Repairs & Maint. Office -Adm | 8,469.04 | 1,651.94 | | 10,120.98 |
| 810094 · Office Supplies - Adm | 5,875.97 | 8,754.35 | | 14,630.32 |
| 810099 · Security Monitoring and Service | 572.08 | | | 572.08 |
| 810099 · Security Monitoring Expenses | | 10,040.00 | | 10,040.00 |
| **Total 81009 · Office Expense -Adm** | 16,364.59 | 21,336.29 | | 37,700.88 |
| **81010 · Payroll Expenses** | | | | |
| 810052 · Inventory Staff | 126,532.55 | | | 126,532.55 |
| 810103 · Payroll Tax Expense | 50,591.40 | 82,557.22 | | 133,148.62 |
| 810105 · Payroll Processing Fees | 743.25 | 1,394.09 | | 2,137.34 |
| 810101 · Office Staff | 158,838.43 | | | 158,838.43 |
| 810100 · Expense Reimbursements | | 33,213.22 | | 33,213.22 |
| 8101060 · Office | | 438,736.04 | | 438,736.04 |
| 8101061 · Officer Compensation | | 171,950.00 | | 171,950.00 |
| **Total 81010 · Payroll Expenses** | 336,705.63 | 727,850.57 | | 1,064,556.20 |
| **81012 · Telephone** | | | | |
| 810120 · Cellular | 20,385.03 | 3,188.70 | | 23,573.73 |
| 810122 · Office - Long Distance | 22,315.36 | | | 22,315.36 |
| **Total 81012 · Telephone** | 42,700.39 | 3,188.70 | | 45,889.09 |
| **81013 · Licenses & Permits** | 1,545.00 | 929.00 | | 2,474.00 |
| **81019 · Misc. Expenses** | | | | |
| 81019 · Misc. Expenses - Other | | | | |
| **Total 81019 · Misc. Expenses** | | | | |
| **Total 8000 · Gen & Administrative - Expense** | 1,107,023.76 | 1,399,002.99 | 0.00 | 2,506,026.75 |
| **6000 · Selling Expense** | | | | |
| 60002 · Outside Commissions | | 68,119.33 | | 68,119.33 |
| 60004 · Bad Debt | | | | |
| **61001 · Travel -Sales** | | | | |
| 610010 · Airfare - Sales | | 41,893.56 | | 41,893.56 |
| 610011 · Hotels & Lodging- Sales | | 34,176.49 | | 34,176.49 |
| 610012 · Taxi Fares & Car Rental - Sales | | 20,961.57 | | 20,961.57 |
| 610013 · Meals & Entertainment - Sales | | 7,301.83 | | 7,301.83 |
| 610015 · Sales Training - Sales | | 441.97 | | 441.97 |
| 610016 · Travel Expenses - Sales | | 4,766.75 | | 4,766.75 |
| 610017 · Travel Employee Meals - Sales | | 7,720.75 | | 7,720.75 |
| **Total 61001 · Travel -Sales** | | 117,262.92 | | 117,262.92 |
| 610030 · Credit Card Fees -Sales | | 687.03 | | 687.03 |
| 610052 · Employee Parking - Sales | | 10,144.00 | | 10,144.00 |
| **61007 · Delivery Services - Sales** | | | | |
| 610071 · Shipping Expenses - Sales | | 15,916.04 | | 15,916.04 |
| **Total 61007 · Delivery Services - Sales** | | 15,916.04 | | 15,916.04 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| 610072 · Postage and Delivery - Sales | | 40,996.95 | -30,676.85 | 10,320.10 |
| 61008 · Insurance - Sales | | | | |
| 610080 · Dental Insurance - Sales | | -2,190.72 | | -2,190.72 |
| 610083 · Medical Insurance - Sales | | -10,873.00 | | -10,873.00 |
| 610084 · Shipping Insurance - Sales | | 17,297.14 | | 17,297.14 |
| 610085 · Workers' Compensation - Sales | | 941.12 | | 941.12 |
| Total 61008 · Insurance - Sales | | 5,174.54 | | 5,174.54 |
| | | | | |
| 61010 · Payroll Expenses - Sales | | | | |
| 610106 · Salaries & Wages - Sales | | | | |
| 6101063 · Sales People | | 426,569.31 | | 426,569.31 |
| Total 610106 · Salaries & Wages - Sales | | 426,569.31 | | 426,569.31 |
| Total 61010 · Payroll Expenses - Sales | | 426,569.31 | | 426,569.31 |
| | | | | |
| Total 6000 · Selling Expense | | 684,870.12 | -30,676.85 | 654,193.27 |
| | | | | |
| 99999 · Suspense | | | | |
| Total Expense | 1,149,605.01 | 2,472,610.09 | -30,676.85 | 3,591,538.25 |
| Net Ordinary Income | -490,395.66 | -1,773,571.69 | | -2,263,967.35 |
| | | | | |
| Other Income/Expense | | | | |
| Other Income | | | | |
| 90000 · Other Income | | 120,000.00 | | 120,000.00 |
| 81021 · Prior Year Correction | | | | |
| 90003 · Income/Loss on Sale of Asset | 10,000.00 | | | 10,000.00 |
| Total 90000 · Other Income | 10,000.00 | 120,000.00 | | 130,000.00 |
| | | | | |
| Total Other Income | 10,000.00 | 120,000.00 | | 130,000.00 |
| | | | | |
| Other Expense | | | | |
| 9100 · Other Expenses | | | | |
| 91000 · Tax Expense | | 1,924.59 | | 1,924.59 |
| 910002 · Local Taxes | | 2,407.91 | | 2,407.91 |
| 910009 · Penalties | | 4,332.50 | | 4,332.50 |
| Total 91000 · Tax Expense | | 4,332.50 | | 4,332.50 |
| | | | | |
| 93000 · Voided Checks | | | | |
| Total 9100 · Other Expenses | | 4,332.50 | | 4,332.50 |
| | | | | |
| 9110 · Interest Expense | | | | |
| 91001 · Airl Beaudry | 1,077.51 | | | 1,077.51 |
| 920000 · Interest Expense | | | | |
| 920000 · Interest Expense - Other | 9,238.39 | 27,886.97 | | 37,125.36 |
| Total 920000 · Interest Expense | 9,238.39 | 27,886.97 | | 37,125.36 |
| | | | | |
| 920002 · Finance Charges - LOC FCC | | 583,624.60 | | 583,624.60 |
| 920005 · Interest Expense -Stephen Moore | | 4,151.90 | | 4,151.90 |
| 920006 · Interest Expense LOC-FCC | | 199,770.50 | | 199,770.50 |
| Total 9110 · Interest Expense | 10,315.90 | 815,433.97 | | 825,749.87 |
| | | | | |
| 91200 · Finance Charges | 13,749.83 | | | 13,749.83 |
| 91300 · VOIDED CHECKS | | | | |
| 9500 · Tax Expense | | | | |
| 95001 · Federal Income Taxes | -30,516.08 | | | -30,516.08 |
| 95003 · State Income Tax | 249.64 | -28,581.00 | | -28,331.36 |
| 95006 · Property Tax | 3,903.65 | 2,923.04 | | 6,826.69 |
| Total 9500 · Tax Expense | -26,362.79 | -25,657.96 | | -52,020.75 |
| | | | | |
| Total Other Expense | -2,297.06 | 794,108.51 | | 791,811.45 |
| | | | | |
| Net Other Income | 12,297.06 | -674,108.51 | | -661,811.45 |
| | | | | |
| Net Income | -478,098.60 | -2,447,680.20 | | -2,925,778.80 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Statement Of Cash Flow
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **OPERATING ACTIVITIES** | | | | |
| Net Income | -479,098.60 | -2,447,560.20 | | -2,925,778.80 |
| Adjustments to reconcile Net Income | | | | |
| to net cash provided by operations: | | | | |
| 12003 · Accounts Receivable -11 | -1,160,768.69 | -706,739.34 | 1,160,768.69 | -706,739.34 |
| 12001 · Accounts Receivable | -954,603.89 | 3,659,599.91 | 954,603.89 | 3,659,599.91 |
| 13004 · Prepaid Expenses | -18,964.57 | | | -18,964.57 |
| 13004 · Prepaid Expenses:130042 · Prepaid Insurance | | -25,962.96 | | -25,962.96 |
| 13004 · Prepaid Expenses:130049 · Prepaid Expenses -Others | 19,200.00 | | | 19,200.00 |
| 13006 · Inventory:130061 · Fin. Goods - Returns In Transit | 513,555.00 | | | 513,555.00 |
| 13006 · Inventory:130051 · Materials & Supplies:1300651 · Diamonds | 1,702,524.65 | | | 1,702,524.65 |
| 210011 · Accounts Payable | -342,946.41 | -342,738.17 | | -385,684.58 |
| 22003 · Inter-Company Accounts | 2,026.92 | | | 2,026.92 |
| 22003 · Inter-Company Accounts:220044 · Due to/from CD+B Time Domestic | 1,792.30 | | | 1,792.30 |
| 22003 · Inter-Company Accounts:220045 · Due to/from CDI - Beaudry Intl | 3,882.60 | | | 3,882.60 |
| 22003 · Inter-Company Accounts:220038 · Due to/from CDI - Beaudry-BH | 46,340.79 | | | 46,340.79 |
| 22003 · Inter-Company Accounts:220036 · Due to/from CDI - B Time Int'l | -33,888.44 | | | -33,888.44 |
| 22003 · Inter-Company Accounts:220032 · Due To/From MBI-CDI | 345,243.73 | -345,243.73 | | |
| 22003 · Inter-Company Accounts:220034 · Due to/from CDI-8th Street | 115,251.66 | | | 115,251.66 |
| 22004 · Customer Deposits | | -720,000.00 | | -720,000.00 |
| 22005 · Loans Payable - Current:230031 · Capital Lease - Current Portion | 3,383.71 | | | 3,383.71 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | -11,945.65 | -34,836.41 | | -46,782.26 |
| 22006 · Payroll Liabilities:220063 · 401K & Pension | | -2,026.92 | | -2,026.92 |
| 22006 · Payroll Liabilities:220065 · 401K Loan Payable EㆍNB | -76.58 | | | -76.58 |
| 22006 · Payroll Liabilities:220065 · AFLAC Premium Only | -676.46 | -254.30 | | -930.76 |
| 22006 · Payroll Liabilities:220066 · Federal Payroll Taxes | -495.74 | | | -495.74 |
| 22006 · Payroll Liabilities:220067 · California Payroll Taxes | -93.60 | | | -93.60 |
| 22006 · Payroll Liabilities:22070 · Vacation Accrual | 4,927.73 | -26,819.88 | | -21,892.15 |
| 22007 · Sales Tax Payable | | -3,680.31 | | -3,680.31 |
| 22008 · Income Tax Payable | -74,507.08 | -17,446.00 | | -91,953.08 |
| 11002 · Allowance for AR | | -1,024,221.82 | | -1,024,221.82 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130033 · Employee Travel Advance | | -3,557.68 | | -3,557.68 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | | 76,406.00 | | 76,406.00 |
| 13004 · Prepaid Expenses:130047 · Prepaid Advertising | | 25,000.00 | | 25,000.00 |
| 210015 · Intercompany Sales -11 | | 1,160,768.69 | -1,160,768.69 | 0.00 |
| 210012 · Intercompany Sales | | 954,603.89 | -954,603.89 | |
| 22001 · Accrued Commisions | | -15,158.10 | | -15,158.10 |
| 22002 · Accrued Coop Advertisement | | 8,820.50 | | 8,820.50 |
| 22003 · Inter-Company Accounts:220039 · Due to/from MBI - Beaudry-BH | | -17,771.34 | | -17,771.34 |
| 22003 · Inter-Company Accounts:220031 · Due to/from MSI-8th Street | | 14,900.00 | | 14,900.00 |
| 22005 · Loans Payable - Current:220057 · Microsoft-CTT Fin. Serv. | | -6,428.39 | | -6,428.39 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | | 234,509.05 | | 234,509.05 |
| Net cash provided by Operating Activities | -18,936.82 | 394,042.49 | 0.00 | 375,105.67 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Statement Of Cash Flow
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry, Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| INVESTING ACTIVITIES | | | | |
| 140034 · Shop Tools & Small Equipment | 33,016.00 | | | 33,016.00 |
| 14004 · Leasehold Improvements | 1,450.00 | | | 1,450.00 |
| 14007 · Construction in Process | 22,500.00 | | | 22,500.00 |
| 14099 · Accumulated Depreciation | 14,121.00 | 42,177.00 | | 56,298.00 |
| Net cash provided by Investing Activities | 71,087.00 | 42,177.00 | 0.00 | 113,264.00 |
| | | | | |
| FINANCING ACTIVITIES | | | | |
| 230030 · Equipment Lease Payable - FFL | -4,642.95 | | | -4,642.95 |
| 230025 · Equipment Lease Payable - ACG | -10,524.08 | | | -10,524.08 |
| 230011 · Due To/From M Beaudry Personal | -766.80 | -249,470.53 | | -250,235.33 |
| 230012 · AHI Beaudry | -2,722.49 | | | -2,722.49 |
| 230033 · Loan - Microsoft - CIT Fin.Serv | | -31,201.34 | | -31,201.34 |
| 22004 · Leases Payable | | -18,218.43 | | -18,218.43 |
| 230022 · GMAC Loan-Cadillac Escalade | | -3,211.94 | | -3,211.94 |
| Net cash provided by Financing Activities | -18,654.32 | -302,102.24 | 0.00 | -320,756.56 |
| | | | | |
| Net cash increase for period | 33,495.86 | 134,117.25 | 0.00 | 167,613.11 |
| Cash at beginning of period | -19,364.90 | -39,267.40 | 0.00 | -58,632.30 |
| Cash at end of period | 14,130.96 | 94,849.85 | 0.00 | 108,980.81 |

Page 7 of 7

# EXHIBIT "E"

1

## EXHIBIT "E" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME STATEMENT FOR CALENDAR YEAR 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

IDOCS:12999.3:1114103.2                    51

SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**CENTERSTONE DIAMONDS, INC.**
and
**MICHAEL BEAUDRY, INC.**

**COMBINED FINANCIAL REPORT**

**For the year ended December 31, 2008**

**Centerstone Diamonds, Inc. and Menachai Jewelry, Inc.**

**Combined Balance Sheet**

As of December 31, 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---:|---:|---:|---:|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| **Checking/Savings** | | | | |
| 10001 · Petty Cash | -1,000.00 | | | -1,000.00 |
| 110021 · Cathay Bank - 01128205 | -18,364.90 | | | -18,364.90 |
| 110021 · Cathay Bank -01128221 | | -41,573.94 | | -41,573.94 |
| 150012 · Citibank CD 287-0094535 | | 2,306.54 | | 2,306.54 |
| **Total Checking/Savings** | -19,364.90 | -39,267.40 | | -58,632.30 |
| | | | | |
| **Accounts Receivable** | | | | |
| 12001 · Accounts Receivable | | 4,515,723.94 | | 4,515,723.94 |
| 12002 · Allowance for AR | | -1,226,999.04 | | -1,226,999.04 |
| **Total Accounts Receivable** | | 3,288,724.90 | | 3,288,724.90 |
| | | | | |
| **Other Current Assets** | | | | |
| 13004 · Prepaid Expenses | | | | |
| 130046 · Prepaid Expenses -Others | | | | |
| 130046 · Prepaid Expenses -Others - Other | 19,200.00 | | | 19,200.00 |
| Total 130046 · Prepaid Expenses -Others | 19,200.00 | | | 19,200.00 |
| | | | | |
| 130045 · Prepaid Mktg & Show Expenses | | 101,437.00 | | 101,437.00 |
| 130047 · Prepaid Advertising | | 25,000.00 | | 25,000.00 |
| Total 13004 · Prepaid Expenses | 19,200.00 | 126,437.00 | | 145,637.00 |
| | | | | |
| 13006 · Inventory | | | | |
| 130061 · Fin. Goods - Returns in Transit | 513,555.00 | | | 513,555.00 |
| 130063 · Materials & Supplies | | | | |
| 1300631 · Diamonds | 11,271,232.65 | | | 11,271,232.65 |
| Total 130063 · Materials & Supplies | 11,271,232.65 | | | 11,271,232.65 |
| | | | | |
| Total 13006 · Inventory | 11,784,787.65 | | | 11,784,787.65 |
| | | | | |
| **Total Other Current Assets** | 11,803,987.65 | 126,437.00 | | 11,930,424.65 |
| | | | | |
| **Total Current Assets** | 11,784,622.75 | 3,375,894.50 | | 15,160,517.25 |
| | | | | |
| **Fixed Assets** | | | | |
| 14001 · Machinery & Equipment | 100,467.50 | 36,766.23 | | 137,233.73 |
| 14002 · Vehicles/Autos/Trucks | 55,810.15 | | | 55,810.15 |
| 140031 · Computers | 133,649.98 | 326,458.89 | | 460,108.87 |
| 140032 · Office Equipment | 214,376.06 | | | 214,376.06 |
| 140033 · Furniture & Fixtures | 51,646.27 | 71,294.50 | | 122,940.77 |
| 140034 · Shop Tools & Small Equipment | 48,180.41 | | | 48,180.41 |
| 14004 · Leasehold Improvements | 88,446.72 | 132,950.00 | | 221,396.72 |
| 14007 · Construction in Process | 215,159.94 | 23,033.62 | | 238,193.56 |
| 14099 · Accumulated Depreciation | -541,442.88 | -233,732.00 | | -775,174.88 |
| **Total Fixed Assets** | 366,294.15 | 356,771.24 | | 723,065.39 |
| | | | | |
| **Other Assets** | | | | |
| 150025 · Security Deposits | 3,718.87 | 3,545.52 | | 7,264.39 |
| 150011 · Centurion Jewelry B.I.O., LLC | | 2,616.00 | | 2,616.00 |
| **Total Other Assets** | 3,718.87 | 6,161.52 | | 9,880.39 |
| | | | | |
| **TOTAL ASSETS** | 12,154,635.77 | 3,738,827.26 | | 15,893,463.03 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

**Centerstone Diamonds, Inc. and Michael Beaudry, Inc.**
**Combined Balance Sheet**
As of December 31, 2008

|  | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **LIABILITIES & EQUITY** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| **Accounts Payable** | | | | |
| 210011 · Accounts Payable | 2,285,484.37 | 1,501,458.42 | | 3,786,942.79 |
| **Total Accounts Payable** | 2,285,484.37 | 1,501,458.42 | | 3,786,942.79 |
| | | | | |
| **Other Current Liabilities** | | | | |
| 22003 · Inter-Company Accounts | | | | |
| 220038 · Due to/from CDI - Beaudry-BH | 176,584.00 | | | 176,584.00 |
| 220036 · Due to/from CDI - B Time Int'l | -199,843.92 | | | -199,843.92 |
| 220032 · Due To/From MBI-CDI | 5,169,314.13 | -5,169,314.13 | | |
| 220034 · Due to/from CDI-8th Street | 1,385,693.59 | | | 1,385,693.59 |
| 220039 · Due to/from MBI - Beaudry-BH | | 33,867.34 | | 33,867.34 |
| 220037 · Due to/from MBI - B Time Int'l | | 223,316.46 | | 223,316.46 |
| 220031 · Due to/from MBI-8th Street | | -968,528.61 | | -968,528.61 |
| 22003 · Inter-Company Accounts - Other | -2,026.92 | | | -2,026.92 |
| **Total 22003 · Inter-Company Accounts** | 6,529,720.88 | -5,880,658.94 | | 649,061.94 |
| | | | | |
| 22004 · Customer Deposits | | 970,000.00 | | 970,000.00 |
| 22005 · Loans Payable - Current | | | | |
| 230031 · Capital Lease - Current Portion | 14,751.91 | 18,219.00 | | 32,970.91 |
| 220057 · Microsoft-CTT Fin. Serv. | | 67,359.78 | | 67,359.78 |
| 220054 · Loan - MB | | 15,000.00 | | 15,000.00 |
| 220051 · GMAC Loan - Current Portion | | 12,015.92 | | 12,015.92 |
| 220053 · LOC - First Capital | | 6,334,076.16 | | 6,334,076.16 |
| **Total 22005 · Loans Payable - Current** | 14,751.91 | 6,446,670.86 | | 6,461,422.77 |
| | | | | |
| 22006 · Payroll Liabilities | | | | |
| 220061 · Accrued Payroll | 31,073.62 | 64,813.11 | | 95,886.73 |
| 220063 · 401K & Pension | | 2,026.92 | | 2,026.92 |
| 2200645 · 401K-Loan Payable E-NB | 76.58 | | | 76.58 |
| 220065 · AFLAC Premium Only | 676.46 | 254.30 | | 930.76 |
| 220066 · Federal Payroll Taxes | 495.74 | | | 495.74 |
| 220067 · California Payroll Taxes | 93.60 | | | 93.60 |
| 22070 · Vacation Accrual | 7,091.12 | 49,737.43 | | 56,828.55 |
| **Total 22006 · Payroll Liabilities** | 39,507.12 | 116,831.76 | | 156,338.88 |
| | | | | |
| 22007 · Sales Tax Payable | | 3,680.31 | | 3,680.31 |
| 22008 · Income Tax Payable | 701,257.08 | 17,446.00 | | 718,703.08 |
| 22001 · Accrued Commisions | | 125,340.00 | | 125,340.00 |
| 22002 · Accrued Coop Advertisement | | 141,179.50 | | 141,179.50 |
| **Total Other Current Liabilities** | 7,285,236.99 | 1,940,489.49 | | 9,225,726.48 |
| | | | | |
| **Total Current Liabilities** | 9,570,721.36 | 3,441,947.91 | | 13,012,669.27 |
| | | | | |
| **Long Term Liabilities** | | | | |
| 230030 · Equipment Lease Payable - FFL | 13,621.07 | | | 13,621.07 |
| 230025 · Equipment Lease Payable - ACG | 42,307.32 | | | 42,307.32 |
| 230011 · Due To/From M Beaudry Personal | 522,694.33 | 304,380.36 | | 827,074.69 |
| 230012 · Airi Beaudry | 55,178.16 | | | 55,178.16 |
| 230033 · Loan - Microsoft - CTT Fin.Serv | | 197,094.36 | | 197,094.36 |
| 220041 · Leases Payable | | 42,509.59 | | 42,509.59 |
| 230022 · GMAC Loan- Cadillac Escalade | | 24,853.76 | | 24,853.76 |
| **Total Long Term Liabilities** | 633,800.88 | 568,838.07 | | 1,202,638.95 |
| | | | | |
| **Total Liabilities** | 10,204,522.24 | 4,010,785.98 | | 14,215,308.22 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

**Centerstone Diamonds, Inc. and Medusa Jewelry, Inc.**
**Combined Balance Sheet**
As of December 31, 2008

|  | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Equity** | | | | |
| 30002 · Common Stock | 3,000.00 | 1,000.00 | | 4,000.00 |
| 30003 · Retained Earnings | 1,751,616.51 | 3,689,157.34 | | 5,440,773.85 |
| Net Income | 195,497.02 | -3,962,116.06 | | -3,766,619.04 |
| **Total Equity** | 1,950,113.53 | -271,958.72 | | 1,678,154.81 |
| **TOTAL LIABILITIES & EQUITY** | 12,154,635.77 | 3,738,827.26 | | 15,893,463.03 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

**Centerstone Diamonds, Inc. and Michael Beaudry, Inc.**
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| 40009 · Other Sales and Revenue | | 2,183.00 | | 2,183.00 |
| 40001 · Jewelry Sales | 10,780,334.13 | 12,403,971.68 | -10,780,334.13 | 12,403,971.68 |
| 40004 · Shipping Income | 108,113.25 | 108,311.41 | -108,113.25 | 108,311.41 |
| 40006 · Recycling Income | 190,523.44 | 191,809.69 | | 382,333.13 |
| 40002 · Loose Stone Sales | | 730,863.35 | | 730,863.35 |
| 40003 · Jewelry Repairs & Rework | | 174,245.71 | | 174,245.71 |
| 40999 · Customer Discounts/Adjustments | | -9,035.06 | | -9,035.06 |
| 41000 · Sales Returns and Allowances | | -1,021,188.60 | | -1,021,188.60 |
| | | | 0.00 | 0.00 |
| **Total Income** | 11,078,970.82 | 12,581,161.18 | -10,888,447.38 | 12,771,684.62 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| 50014 · Inventory Adjustment-Lost/Damag | 58,409.07 | | | 58,409.07 |
| 50001 · Diamonds | 6,230,615.99 | | | 6,230,615.99 |
| 50002 · Colored Stones | 1,488.75 | | | 1,488.75 |
| 50003 · Jewelry | | 10,780,334.13 | -10,780,334.13 | 0.00 |
| 50005 · Accessories | 1,561.50 | 20,617.60 | | 22,179.10 |
| 50006 · Metal | 6,443.29 | | | 6,443.29 |
| 50007 · Certificates | 3,546.82 | | | 3,546.82 |
| 50010 · Watches - Prototypes | | | | |
| 5010 · Manufacturing Costs | | | | |
| 50101 · Inscription | 846.00 | | | 846.00 |
| 50102 · Polishing | 500.00 | | | 500.00 |
| 501031 · Cutting | 517.50 | | | 517.50 |
| 501032 · Production Staff Payroll | 1,065,393.11 | | | 1,065,393.11 |
| 501033 · Production Shop | 19,258.87 | | | 19,258.87 |
| 50104 · Setting | 350,524.78 | | | 350,524.78 |
| 50105 · Casting | 658,304.33 | | | 658,304.33 |
| 50106 · Engraving | 95,575.00 | | | 95,575.00 |
| 50107 · Fabricating | 108,547.63 | | | 108,547.63 |
| Total 5010 · Manufacturing Costs | 2,299,467.22 | | | 2,299,467.22 |
| | | | | |
| 5100 · Fixed Expenses -Production | | | | |
| 510093 · Repairs & Maint - Prod Office | 3,166.96 | | | 3,166.96 |
| 510014 · Travel Security -Prod | 623.00 | | | 623.00 |
| Total 5100 · Fixed Expenses -Production | 3,789.96 | | | 3,789.96 |
| | | | | |
| **Total COGS** | 8,605,322.60 | 10,800,951.73 | -10,780,334.13 | 8,625,940.20 |
| | | | | |
| **Gross Profit** | 2,473,648.22 | 1,780,209.45 | -108,113.25 | 4,145,744.42 |
| | | | | |
| **Expense** | | | | |
| 7000 · Marketing Expenses | | | | |
| 70005 · Beaudry Points Program | 16,917.94 | | | 16,917.94 |
| 70009 · Ambassador Program | 2,141.17 | 15,744.11 | | 17,885.28 |
| 70000 · Events | | 122,051.10 | | 122,051.10 |
| 70001 · Creative Services | | 16,334.62 | | 16,334.62 |
| 70002 · Advertising | | 224,695.77 | | 224,695.77 |
| 70003 · Coop Advertising | | 232,686.45 | | 232,686.45 |
| 70005 · Photography | | 156,864.09 | | 156,864.09 |
| 70006 · Public Relations | | 24,633.72 | | 24,633.72 |
| 70007 · Tradeshows | | 583,466.20 | | 583,466.20 |
| 710092 · Outside Services-Mktg | | 25,216.27 | | 25,216.27 |
| 71001 · Travel - Marketing | | | | |
| 710010 · Travel-Airfare - Marketing | | 24,184.13 | | 24,184.13 |
| 710011 · Travel Hotel & Lodging- Mktg. | | 44,074.08 | | 44,074.08 |
| 710012 · Taxi Fare & Car Rental - Mktg. | | 13,329.24 | | 13,329.24 |
| 710013 · Travel - Meals & Entertainment | | 27,713.07 | | 27,713.07 |
| Total 71001 · Travel - Marketing | | 109,300.52 | | 109,300.52 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Centerstone Diamonds, Inc. and General Beaudry, Inc.
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---:|---:|---:|---:|
| 71002 · Auto Expense - Marketing | | | | |
| 710024 · Auto Repairs & Maint. - Mktng. | | | | |
| Total 71002 · Auto Expense - Marketing | | | | |
| | | | | |
| Total 7000 · Marketing Expenses | 19,059.11 | 1,510,992.85 | | 1,530,051.96 |
| | | | | |
| 8000 · Gen & Administrative - Expense | | | | |
| 80000 · Utilities | | | | |
| 800001 · Electric | 54,749.74 | | | 54,749.74 |
| 800002 · Trash | 3,722.54 | | | 3,722.54 |
| 800003 · Gas | 470.42 | | | 470.42 |
| 800005 · Water | 15,289.61 | | | 15,289.61 |
| Total 80000 · Utilities | 74,232.31 | | | 74,232.31 |
| | | | | |
| 800004 · Rent Expense | | | | |
| 800004 · Rent Expense - Other | 561,600.00 | | 0.00 | 561,600.00 |
| Total 800004 · Rent Expense | 561,600.00 | | 0.00 | 561,600.00 |
| | | | | |
| 80001 · Professional Fees | | | | |
| 800010 · Accounting | 230,312.19 | 158,421.67 | | 388,733.86 |
| 800011 · Legal Fees | 31,418.25 | 4,546.03 | | 35,964.28 |
| 50011 · Management Fee | -1,050,000.00 | | | -1,050,000.00 |
| 80001 · Professional Fees - Other | | 20,000.01 | | 20,000.01 |
| Total 80001 · Professional Fees | -788,269.56 | 182,967.71 | | -605,301.85 |
| | | | | |
| 80002 · Depreciation Expense | | | | |
| 80002 · Depreciation Expense - Other | 123,599.88 | 23,136.00 | | 146,735.88 |
| Total 80002 · Depreciation Expense | 123,599.88 | 23,136.00 | | 146,735.88 |
| | | | | |
| 80003 · Charitable Contributions | 4,406.36 | 25,560.49 | | 29,966.85 |
| 81001 · Travel | | | | |
| 810010 · Airfare | | 8,275.06 | | 8,275.06 |
| 810011 · Hotel & Lodging | | 2,796.45 | | 2,796.45 |
| 810016 · Travel | 22,002.89 | | | 22,002.89 |
| 810012 · Taxi Fare & Car Rental -Adm | | 770.24 | | 770.24 |
| 810013 · Meals & Entertainment - Adm | | 60,000.49 | | 60,000.49 |
| 810016 · Misc Travel Exp -Adm | | 2,437.06 | | 2,437.06 |
| Total 81001 · Travel | 22,002.89 | 74,279.30 | | 96,282.19 |
| | | | | |
| 81002 · Auto Expense | | | | |
| 810021 · Employee Auto Exp. | 1,975.00 | 11,260.88 | | 13,235.88 |
| 810023 · Insurance | 6,942.76 | | | 6,942.76 |
| 810022 · Fuel - Adm | | 2,024.01 | | 2,024.01 |
| Total 81002 · Auto Expense | 8,917.76 | 13,284.89 | | 22,202.65 |
| | | | | |
| 81003 · Bank Fees - Adm | | | | |
| 810030 · Credit Card Fees-Adm | 625.00 | | | 625.00 |
| 810031 · Service Charges | 7,913.12 | 6,187.87 | | 14,100.99 |
| 810030 · Credit Card Fees | | 847.47 | | 847.47 |
| Total 81003 · Bank Fees - Adm | 8,538.12 | 7,035.34 | | 15,573.46 |
| | | | | |
| 81004 · Computer- Adm | | | | |
| 810040 · Comp. Hardware - Adm | | 162,593.68 | | 162,593.68 |
| 810041 · Internet Services - Adm | 2,497.46 | 764.83 | | 3,262.29 |
| 810042 · Svrce, Support & Repairs-Adm | 14,153.67 | | | 14,153.67 |
| 810043 · Comp. Software-Adm | 1,347.71 | | | 1,347.71 |
| 810044 · Comp. Supplies -Adm | 840.39 | | | 840.39 |
| Total 81004 · Computer- Adm | 18,839.23 | 163,358.51 | | 182,197.74 |
| | | | | |
| 81005 · Transportation Exp. -Adm | | | | |
| 810050 · Employee Parking | 34,343.00 | | | 34,343.00 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 6 of 10

Centerstone Diamonds, Inc. and General Beaudry, Inc.
Combined Profit And Loss
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 810051 · Mileage-Adm | 728.31 | | | 728.31 |
| 810052 · Other Transp. Exp.- Adm | 5,106.74 | | | 5,106.74 |
| Total 81005 · Transportation Exp.- Adm | 40,178.05 | | | 40,178.05 |
| | | | | |
| 81006 · Employment Services - Adm | | | | |
| 810060 · Benefits Administration - Adm | 4,967.00 | | | 4,967.00 |
| 810061 · Recruiting Expenses - Adm | 3,973.50 | 563.98 | | 4,537.48 |
| 810060 · Benefit Adm Exp -Adm | | 1,773.66 | | 1,773.66 |
| 810062 · Other Emplmt Svcs - Adm | | | | |
| 8100620 · Employee Morale-Adm | | 5,516.81 | | 5,516.81 |
| Total 810062 · Other Emplmt Svcs - Adm | | 5,516.81 | | 5,516.81 |
| | | | | |
| Total 81006 · Employment Services - Adm | 8,940.50 | 7,854.45 | | 16,794.95 |
| | | | | |
| 81007 · Delivery Services-Adm | | | | |
| 810070 · Messenger Service -Adm | 2,609.49 | | | 2,609.49 |
| 810071 · Shipping -Adm | 269,968.66 | 3,966.42 | | 273,935.08 |
| 810072 · Postage | 2,601.07 | | | 2,601.07 |
| Total 81007 · Delivery Services-Adm | 275,179.22 | 3,966.42 | | 279,145.64 |
| | | | | |
| 81008 · Insurance | | | | |
| 810080 · Dental Insurance | 927.26 | -752.76 | | 174.50 |
| 810081 · Jewelers Block - Adm | 60,062.65 | | | 60,062.65 |
| 810083 · Medical Insurance | 109,568.75 | | | 109,568.75 |
| 810084 · Shipping Ins. -Adm | 102,657.65 | | | 102,657.65 |
| 810085 · Workers' Comp -Adm | 52,355.90 | 399.08 | | 52,754.98 |
| 810087 · General Liability -Adm | 6,559.90 | | | 6,559.90 |
| 810088 · Disability Insurance | | 100.00 | | 100.00 |
| Total 81008 · Insurance | 332,132.11 | -253.68 | | 331,878.43 |
| | | | | |
| 81009 · Office Expense -Adm | | | | |
| 810098 · Dues & Subscriptions - Adm | 1,827.55 | 941.48 | | 2,769.03 |
| 810092 · Outside Services | 138,102.63 | 64,500.00 | | 202,602.63 |
| 810093 · Repairs & Maint. Office -Adm | 72,324.45 | 702.51 | | 73,026.96 |
| 810094 · Office Supplies - Adm | 21,406.11 | 21,618.39 | | 43,024.50 |
| 810095 · Furnitures / Equipment Adm | 1,082.39 | | | 1,082.39 |
| 810096 · Printing & Reproduction Adm | 1,974.11 | | | 1,974.11 |
| 810099 · Security Monitoring and Service | 19,693.84 | | | 19,693.84 |
| Total 81009 · Office Expense -Adm | 256,411.08 | 87,762.38 | | 344,173.46 |
| | | | | |
| 81010 · Payroll Expenses | | | | |
| 8101062 · Inventory Staff | 130,723.05 | | | 130,723.05 |
| 810103 · Payroll Tax Expense | 146,141.24 | 105,488.35 | | 251,629.59 |
| 810105 · Payroll Processing Fees | 2,215.83 | 919.75 | | 3,135.58 |
| 8101061 · Office Staff | 356,616.09 | 491,914.57 | | 848,530.66 |
| 810108 · Vacation Expense | | 22,357.95 | | 22,357.95 |
| 810109 · Unallocated Payroll Expense | -55,222.00 | | | -55,222.00 |
| 810100 · Expense Reimbursements | | 22,301.75 | | 22,301.75 |
| 8101062 · Office Staff b | | 36.18 | | 36.18 |
| Total 81010 · Payroll Expenses | 580,474.21 | 643,018.55 | | 1,223,492.76 |
| | | | | |
| 81012 · Telephone | | | | |
| 810120 · Cellular | 28,697.21 | 432.63 | | 29,129.84 |
| 810122 · Office - Long Distance | 25,329.38 | | | 25,329.38 |
| Total 81012 · Telephone | 54,026.59 | 432.63 | | 54,459.22 |
| | | | | |
| 81013 · Licenses & Permits | 1,780.40 | 737.20 | | 2,517.60 |
| 81014 · Meals & Entertainment | 4,478.59 | 17,041.10 | | 21,519.69 |
| 81019 · Misc. Expenses | | | | |
| 81019 · Misc. Expenses - Other | | 541.00 | | 541.00 |
| Total 81019 · Misc. Expenses | | 541.00 | | 541.00 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Centerstone Diamonds, Inc. and Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| Total 8000 · Gen & Administrative - Expense | 1,587,467.74 | 1,250,722.29 | 0.00 | 2,838,190.03 |
| | | | | |
| 6000 · Selling Expense | | | | |
| 60002 · Outside Commissions | | 62,815.50 | | 62,815.50 |
| 60004 · Bad Debt | | 205,810.44 | | 205,810.44 |
| 61001 · Travel -Sales | | | | |
| 610010 · Airfare - Sales | | 108,991.63 | | 108,991.63 |
| 610011 · Hotels & Lodging- Sales | | 169,456.17 | | 169,456.17 |
| 610012 · Taxi Fares & Car Rental - Sales | | 63,278.12 | | 63,278.12 |
| 610013 · Meals & Entertainment - Sales | | 27,456.34 | | 27,456.34 |
| 610014 · Travel Security - Sales | | 6,057.65 | | 6,057.65 |
| 610015 · Sales Training - Sales | | 23,490.26 | | 23,490.26 |
| 610016 · Travel Expenses - Sales | | 15,157.27 | | 15,157.27 |
| 610017 · Travel Employee Meals - Sales | | 17,715.51 | | 17,715.51 |
| Total 61001 · Travel -Sales | | 431,602.95 | | 431,602.95 |
| | | | | |
| 610030 · Credit Card Fees -Sales | | 6,552.52 | | 6,552.52 |
| 610052 · Employee Parking - Sales | | 11,372.25 | | 11,372.25 |
| 610072 · Postage and Delivery - Sales | | 108,363.60 | -108,113.25 | 250.35 |
| 61008 · Insurance - Sales | | | | |
| 610080 · Dental Insurance - Sales | | 752.76 | | 752.76 |
| 610083 · Medical Insurance - Sales | | | | |
| 610085 · Workers' Compensation - Sales | | | | |
| Total 61008 · Insurance - Sales | | 752.76 | | 752.76 |
| | | | | |
| 61009 · Office Expense-Sales | | | | |
| 610092 · Outside Services -  Sales | | 10,094.37 | | 10,094.37 |
| Total 61009 · Office Expense-Sales | | 10,094.37 | | 10,094.37 |
| | | | | |
| 610094 · Office Supplies - Sales | | 5,198.14 | | 5,198.14 |
| 61010 · Payroll Expenses - Sales | | | | |
| 610101 · Bonus/Commission - Sales | | 121,030.00 | | 121,030.00 |
| 610105 · Payroll Processing Fees - Sales | | 75.00 | | 75.00 |
| 610106 · Salaries & Wages - Sales | | | | |
| 6101063 · Sales People | | 924,636.31 | | 924,636.31 |
| 610106 · Salaries & Wages - Sales - Other | | 11,809.88 | | 11,809.88 |
| Total 610106 · Salaries & Wages - Sales | | 936,446.19 | | 936,446.19 |
| | | | | |
| Total 61010 · Payroll Expenses - Sales | | 1,057,551.19 | | 1,057,551.19 |
| | | | | |
| Total 6000 · Selling Expense | | 1,900,113.72 | -108,113.25 | 1,792,000.47 |
| | | | | |
| 99999 · Suspense | | | | |
| Total Expense | 1,606,526.85 | 4,661,828.86 | -108,113.25 | 6,160,242.46 |
| Net Ordinary Income | 867,121.37 | -2,881,619.41 | | -2,014,498.04 |
| | | | | |
| Other Income/Expense | | | | |
| Other Income | | | | |
| 90000 · Other Income | | | | |
| 900009 · Miscellaneous Income | 7,940.44 | 23,806.11 | | 31,746.55 |
| Total 90000 · Other Income | 7,940.44 | 23,806.11 | | 31,746.55 |
| | | | | |
| Total Other Income | 7,940.44 | 23,806.11 | | 31,746.55 |
| | | | | |
| Other Expense | | | | |
| 9100 · Other Expenses | | | | |
| 94000 · Loss From Investment | | 2,534.00 | | 2,534.00 |
| 93000 · Voided Checks | | | | |
| Total 9100 · Other Expenses | | 2,534.00 | | 2,534.00 |
| | | | | |
| 9110 · Interest Expense | | | | |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

**Centerstone Diamonds, Inc. and Michael Beaudry, Inc.**
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---:|---:|---:|---:|
| 91001 · Airi Beaudry | 3,577.20 | | | 3,577.20 |
| 91250 · Wells Fargo Credit Card | 2,713.73 | | | 2,713.73 |
| 920000 · Interest Expense | | | | |
| 920000 · Interest Expense - Other | 30,299.45 | 27,885.12 | | 58,184.57 |
| Total 920000 · Interest Expense | 30,299.45 | 27,885.12 | | 58,184.57 |
| | | | | |
| 920002 · Finance Charges - LOC FCC | | 408,379.25 | | 408,379.25 |
| 920006 · Interest Expense LOC-FCC | | 629,310.70 | | 629,310.70 |
| 920007 · Late Fee/Charges | | 62.48 | | 62.48 |
| 920008 · Interest Exp.-others | | 2,415.44 | | 2,415.44 |
| Total 9110 · Interest Expense | 36,590.38 | 1,068,052.99 | | 1,104,643.37 |
| | | | | |
| 91200 · Finance Charges | 38,755.20 | | | 38,755.20 |
| 91300 · VOIDED CHECKS | | | | |
| 9500 · Tax Expense | | | | |
| 95001 · Federal Income Taxes | 467,300.70 | | | 467,300.70 |
| 95003 · State Income Tax | 132,114.00 | 30,545.00 | | 162,659.00 |
| 95006 · Property Tax | 4,804.51 | 3,170.77 | | 7,975.28 |
| Total 9500 · Tax Expense | 604,219.21 | 33,715.77 | | 637,934.98 |
| | | | | |
| Total Other Expense | 679,564.79 | 1,104,302.76 | | 1,783,867.55 |
| | | | | |
| Net Other Income | -671,624.35 | -1,080,496.65 | | -1,752,121.00 |
| | | | | |
| Net Income | 195,497.02 | -3,962,116.06 | | -3,766,619.04 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Centerstone Diamonds, Inc. and Michael Beaudry, Inc.
### Combined Statement Of Cash Flow
January through December 2008

|  | TOTAL |
|---|---:|
| **OPERATING ACTIVITIES** | |
| Net Income | -3,766,619.04 |
| Adjustments to reconcile Net Income | |
| to net cash provided by operations: | |
| 12001 · Accounts Receivable | 1,727,463.53 |
| 13004 · Prepaid Expenses:130046 · Prepaid Expenses -Others | -19,200.00 |
| 13006 · Inventory:130061 · Fin. Goods - Returns in Transit | -513,555.00 |
| 13006 · Inventory:130063 · Materials & Supplies:1300631 · Diamonds | 4,570,182.12 |
| 210011 · Accounts Payable | -2,473,831.60 |
| 2114 · Wells Fargo 4602-7023 | -34,175.98 |
| 22003 · Inter-Company Accounts | -2,026.92 |
| 22003 · Inter-Company Accounts:220038 · Due to/from CDI - Beaudry-BH | 176,584.00 |
| 22003 · Inter-Company Accounts:220036 · Due to/from CDI - B Time Int'l | -199,843.92 |
| 22003 · Inter-Company Accounts:220034 · Due to/from CDI-8th Street | 540,731.57 |
| 22004 · Customer Deposits | 272,925.00 |
| 22005 · Loans Payable - Current:230031 · Capital Lease - Current Portion | 2,330.91 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | 7,560.87 |
| 22006 · Payroll Liabilities:220063 · 401K & Pension | 2,026.92 |
| 22006 · Payroll Liabilities:220645 · 401K-Loan Payable E-NB | 76.58 |
| 22006 · Payroll Liabilities:220065 · AFLAC Premium Only | 304.78 |
| 22006 · Payroll Liabilities:220066 · Federal Payroll Taxes | 495.74 |
| 22006 · Payroll Liabilities:220067 · California Payroll Taxes | 93.60 |
| 22006 · Payroll Liabilities:22070 · Vacation Accrual | -45,731.38 |
| 22007 · Sales Tax Payable | 1,828.52 |
| 22008 · Income Tax Payable | 494,622.08 |
| 12002 · Allowance for AR | 1,226,999.04 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130032 · Employee Loan | -15,294.91 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | -2,713.35 |
| 13004 · Prepaid Expenses:130047 · Prepaid Advertising | -25,000.00 |
| 22001 · Accrued Commisions | 123,352.00 |
| 22002 · Accrued Coop Advertisement | -34,416.83 |
| 22003 · Inter-Company Accounts:220039 · Due to/from MBI - Beaudry-BH | 33,867.34 |
| 22003 · Inter-Company Accounts:220037 · Due to/from MBI - B Time Int'l | 223,316.46 |
| 22003 · Inter-Company Accounts:220031 · Due to/from MBI-8th Street | -439,000.00 |
| 22005 · Loans Payable - Current:220057 · Microsoft-CTT Fin. Serv. | 67,359.78 |
| 22005 · Loans Payable - Current:220054 · Loan - MB | 15,000.00 |
| 22005 · Loans Payable - Current:220051 · GMAC Loan - Current Portion | -362.34 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | -2,714,481.94 |
| 22006 · Payroll Liabilities:220068 · Levies and Garnishments | -154.95 |
| **Net cash provided by Operating Activities** | -799,287.32 |
| | |
| **INVESTING ACTIVITIES** | |
| 14001 · Machinery & Equipment | -3,500.00 |
| 140031 · Computers | -148,480.70 |
| 14004 · Leasehold Improvements | -30,562.54 |
| 14099 · Accumulated Depreciation | 146,735.88 |
| 150025 · Security Deposits | -509.08 |
| **Net cash provided by Investing Activities** | -36,316.44 |
| | |
| **FINANCING ACTIVITIES** | |
| 230030 · Equipment Lease Payable - FFL | -3,585.51 |
| 230025 · Equipment Lease Payable - ACG | -11,166.42 |
| 230011 · Due To/From M Beaudry Personal | 3,083,808.63 |
| 230012 · Airi Beaudry | -7,822.80 |
| 230021 · GMAC-Yukon | -5,581.51 |
| 30003 · Retained Earnings | -956,706.00 |
| 230033 · Loan - Microsoft - CTT Fin.Serv | 197,094.36 |
| 220041 · Leases Payable | -18,218.64 |
| 230022 · GMAC Loan- Cadillac Escalade | -12,015.36 |
| 23010 · Distributions Payable - 2006 | -1,899,875.00 |
| **Net cash provided by Financing Activities** | 365,931.75 |
| | |
| **Net cash increase for period** | -469,672.01 |
| | |
| **Cash at beginning of period** | 411,039.71 |
| **Cash at end of period** | -58,632.30 |

### FOR INTERNAL MANAGEMENT
### PURPOSES ONLY

# EXHIBIT "F"

1

**EXHIBIT "F" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME
STATEMENT FOR CALENDAR YEAR 2007**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

98

**CENTERSTONE DIAMONDS, INC.**
and
**MICHAEL BEAUDRY, INC.**

**COMBINED FINANCIAL REPORT**

**For the year ended December 31, 2007**

Centennial Diamonds, Inc. and Marina Beauty, Inc.
Combined Balance Sheet
As of December 31, 2007

| ASSETS | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Current Assets** | | | | |
| **Checking/Savings** | | | | |
| 10001 · Petty Cash | 3,500.00 | | | 3,500.00 |
| 1020 · Exchange/Transfer | | 15,294.91 | | 15,294.91 |
| 110021 · Cathay Bank - 01128205 | 122,319.10 | | | 122,319.10 |
| 110021 · Cathay Bank -01128221 | | 166,369.16 | | 166,369.16 |
| 150012 · Citibank CD 287-0094535 | | 2,306.54 | | 2,306.54 |
| **Total Checking/Savings** | 125,819.10 | 183,970.61 | | 309,789.71 |
| **Accounts Receivable** | | | | |
| 12001 · Accounts Receivable | 4,520,693.25 | 6,243,187.47 | -4,520,693.25 | 6,243,187.47 |
| **Total Accounts Receivable** | 4,520,693.25 | 6,243,187.47 | -4,520,693.25 | 6,243,187.47 |
| **Other Current Assets** | | | | |
| 13000 · Other Current Assets | | | | |
| 13003 · Loans Receivable | | | | |
| 130032 · Employee Loan | | -15,294.91 | | -15,294.91 |
| Total 13003 · Loans Receivable | | -15,294.91 | | -15,294.91 |
| Total 13000 · Other Current Assets | | -15,294.91 | | -15,294.91 |
| 13001 · Undeposited Funds | | 101,250.00 | | 101,250.00 |
| 13004 · Prepaid Expenses | | | | |
| 130045 · Prepaid Mktg & Show Expenses | | 98,723.65 | | 98,723.65 |
| Total 13004 · Prepaid Expenses | | 98,723.65 | | 98,723.65 |
| 13006 · Inventory | | | | |
| 130063 · Materials & Supplies | | | | |
| 1300631 · Diamonds | 15,841,414.77 | | | 15,841,414.77 |
| Total 130063 · Materials & Supplies | 15,841,414.77 | | | 15,841,414.77 |
| Total 13006 · Inventory | 15,841,414.77 | | | 15,841,414.77 |
| **Total Other Current Assets** | 15,841,414.77 | 184,678.74 | | 16,026,093.51 |
| **Total Current Assets** | 20,487,927.12 | 6,611,836.82 | -4,520,693.25 | 22,579,070.69 |
| **Fixed Assets** | | | | |
| 14001 · Machinery & Equipment | 96,967.50 | 36,766.23 | | 133,733.73 |
| 14002 · Vehicles/Autos/Trucks | 55,810.15 | | | 55,810.15 |
| 140031 · Computers | 133,649.98 | 177,978.19 | | 311,628.17 |
| 140032 · Office Equipment | 214,376.06 | | | 214,376.06 |
| 140033 · Furniture & Fixtures | 51,646.27 | 71,294.50 | | 122,940.77 |
| 140034 · Shop Tools & Small Equipment | 48,180.41 | | | 48,180.41 |
| 14004 · Leasehold Improvements | 57,884.18 | 132,950.00 | | 190,834.18 |
| 14007 · Construction in Process | 215,159.94 | 23,033.62 | | 238,193.56 |
| 14099 · Accumulated Depreciation | -417,843.00 | -210,596.00 | | -628,439.00 |
| **Total Fixed Assets** | 455,831.49 | 231,426.54 | | 687,258.03 |
| **Other Assets** | | | | |
| 150025 · Security Deposits | 3,718.87 | 3,036.44 | | 6,755.31 |
| 150011 · Centurion Jewelry B.I.O., LLC | | 2,616.00 | | 2,616.00 |
| **Total Other Assets** | 3,718.87 | 5,652.44 | | 9,371.31 |
| **TOTAL ASSETS** | 20,947,477.48 | 6,848,915.80 | -4,520,693.25 | 23,275,700.03 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Centerstone Diamonds, Inc. and Michael Beaudry, Inc.
Combined Balance Sheet
As of December 31, 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---:|---:|---:|---:|
| **LIABILITIES & EQUITY** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| **Accounts Payable** | | | | |
| 210011 · Accounts Payable | 4,825,701.39 | 1,435,073.00 | | 6,260,774.39 |
| 210012 · Intercompany Sales | | 4,520,693.25 | -4,520,693.25 | |
| **Total Accounts Payable** | 4,825,701.39 | 5,955,766.25 | -4,520,693.25 | 6,260,774.39 |
| | | | | |
| **Credit Cards** | | | | |
| 2114 · Wells Fargo 4602-7023 | 34,175.98 | | | 34,175.98 |
| **Total Credit Cards** | 34,175.98 | | | 34,175.98 |
| | | | | |
| **Other Current Liabilities** | | | | |
| **22003 · Inter-Company Accounts** | | | | |
| 220032 · Due To/From MBI-CDI | 12,481,514.95 | -12,481,514.95 | | |
| 220034 · Due to/from CDI-8th Street | 844,962.02 | | | 844,962.02 |
| 220031 · Due to/from MBI-8th Street | | -529,528.61 | | -529,528.61 |
| **Total 22003 · Inter-Company Accounts** | 13,326,476.97 | -13,011,043.56 | | 315,433.41 |
| | | | | |
| 22004 · Customer Deposits | | 697,075.00 | | 697,075.00 |
| **22005 · Loans Payable - Current** | | | | |
| 230031 · Capital Lease - Current Portion | 12,421.00 | 18,219.00 | | 30,640.00 |
| 220051 · GMAC Loan - Current Portion | | 12,378.26 | | 12,378.26 |
| 220053 · LOC - First Capital | | 9,048,558.10 | | 9,048,558.10 |
| **Total 22005 · Loans Payable - Current** | 12,421.00 | 9,079,155.36 | | 9,091,576.36 |
| | | | | |
| **22006 · Payroll Liabilities** | | | | |
| 220061 · Accrued Payroll | 55,221.19 | 33,104.67 | | 88,325.86 |
| 220065 · AFLAC Premium Only | 371.68 | 254.30 | | 625.98 |
| 22070 · Vacation Accrual | 65,316.54 | 37,243.39 | | 102,559.93 |
| 220068 · Levies and Garnishments | | 154.95 | | 154.95 |
| **Total 22006 · Payroll Liabilities** | 120,909.41 | 70,757.31 | | 191,666.72 |
| | | | | |
| 22007 · Sales Tax Payable | | 1,851.79 | | 1,851.79 |
| 22008 · Income Tax Payable | 216,081.00 | 8,000.00 | | 224,081.00 |
| 22001 · Accrued Commisions | | 1,988.00 | | 1,988.00 |
| 22002 · Accrued Coop Advertisement | | 175,596.33 | | 175,596.33 |
| **Total Other Current Liabilities** | 13,675,888.38 | -2,976,619.77 | | 10,699,268.61 |
| | | | | |
| **Total Current Liabilities** | 18,535,765.75 | 2,979,146.48 | -4,520,693.25 | 16,994,218.98 |
| | | | | |
| **Long Term Liabilities** | | | | |
| 230030 · Equipment Lease Payable - FFL | 17,206.58 | | | 17,206.58 |
| 230025 · Equipment Lease Payable - ACG | 53,473.74 | | | 53,473.74 |
| 230011 · Due To/From M Beaudry Personal | 460,526.43 | -2,717,260.37 | | -2,256,733.94 |
| 230012 · Airi Beaudry | 63,000.96 | | | 63,000.96 |
| 230021 · GMAC-Yukon | 5,581.51 | | | 5,581.51 |
| 220041 · Leases Payable | | 60,728.23 | | 60,728.23 |
| 230022 · GMAC Loan- Cadillac Escalade | | 36,869.12 | | 36,869.12 |
| 23010 · Distributions Payable - 2006 | | 1,899,875.00 | | 1,899,875.00 |
| **Total Long Term Liabilities** | 599,789.22 | -719,788.02 | | -119,998.80 |
| | | | | |
| **Total Liabilities** | 19,135,554.97 | 2,259,358.46 | -4,520,693.25 | 16,874,220.18 |
| | | | | |
| **Equity** | | | | |
| 30002 · Common Stock | 3,000.00 | 1,000.00 | | 4,000.00 |
| 30003 · Retained Earnings | 1,802,656.46 | 3,196,005.20 | | 4,998,661.66 |
| Net Income | 6,266.05 | 1,392,552.14 | | 1,398,818.19 |
| **Total Equity** | 1,811,922.51 | 4,589,557.34 | | 6,401,479.85 |
| | | | | |
| **TOTAL LIABILITIES & EQUITY** | 20,947,477.48 | 6,848,915.80 | -4,520,693.25 | 23,275,700.03 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Centerstone Diamonds, Inc. a Perfect Beauty, Inc.
**Combined Profit And Loss**
January through December 2007

|  | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| 40009 · Other Sales and Revenue | | 3,168.33 | | 3,168.33 |
| 40001 · Jewelry Sales | 17,509,380.27 | 21,034,749.18 | -17,509,380.27 | 21,034,749.18 |
| 40004 · Shipping Income | 111,419.15 | 111,348.16 | -111,419.15 | 111,348.16 |
| 40006 · Recycling Income | 338,740.56 | 49,608.37 | | 388,348.93 |
| 40002 · Loose Stone Sales | | 932,227.20 | | 932,227.20 |
| 40003 · Jewelry Repairs & Rework | | 73,920.45 | | 73,920.45 |
| 40005 · Advertising Sales | | | | |
| 40008 · Misc Customer Fees | | 4,940.00 | | 4,940.00 |
| 40999 · Customer Discounts/Adjustments | | -11,171.33 | | -11,171.33 |
| | | | 0.00 | 0.00 |
| **Total Income** | 17,959,539.98 | 22,198,790.36 | -17,620,799.42 | 22,537,530.92 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| 50001 · Diamonds | 7,512,399.66 | 147,088.50 | | 7,659,488.16 |
| 50002 · Colored Stones | 351,675.92 | | | 351,675.92 |
| 50003 · Jewelry | 55,575.72 | 17,509,380.27 | -17,509,380.27 | 55,575.72 |
| 50004 · Vendors - Misc Charges | 4,046.93 | | | 4,046.93 |
| 50005 · Accessories | 4,317.65 | 14,390.00 | | 18,707.65 |
| 50006 · Metal | 98,803.25 | | | 98,803.25 |
| 50007 · Certificates | 5,334.00 | | | 5,334.00 |
| 50010 · Watches - Prototypes | 14,989.22 | | | 14,989.22 |
| 5010 · Manufacturing Costs | | | | |
| 50101 · Inscription | 6,876.00 | | | 6,876.00 |
| 501032 · Production Staff Payroll | 1,379,975.11 | | | 1,379,975.11 |
| 501033 · Production Shop | 31,019.32 | | | 31,019.32 |
| 50104 · Setting | 761,158.41 | | | 761,158.41 |
| 50105 · Casting | 956,944.64 | | | 956,944.64 |
| 50106 · Engraving | 186,380.00 | | | 186,380.00 |
| 50107 · Fabricating | 828,571.68 | | | 828,571.68 |
| Total 5010 · Manufacturing Costs | 4,150,925.16 | | | 4,150,925.16 |
| | | | | |
| 5100 · Fixed Expenses -Production | | | | |
| 510050 · Employee Parking - Prod2,85 | 5.10 | | | 2,855.10 |
| 51015 · Equipment Lease Rental - Prod | 2,143.02 | | | 2,143.02 |
| 51014 · Meals and Entertainment - Prod | 492.57 | | | 492.57 |
| 510094 · Office Supplies - Prod | 1,205.54 | | | 1,205.54 |
| 510092 · Outside Service - Prod | 8,536.08 | | | 8,536.08 |
| 510061 · Recruiting Expenses-Prod | 2,405.00 | | | 2,405.00 |
| 510093 · Repairs & Maint - Prod Office | 13,324.61 | | | 13,324.61 |
| 510042 · Service Support & Repairs -Prod | 14,808.75 | | | 14,808.75 |
| 510071 · Shipping Expenses - Prod | 30,210.56 | | | 30,210.56 |
| 51001 · Travel - Production | 1,001.71 | | | 1,001.71 |
| 510014 · Travel Security -Prod | 3,482.42 | | | 3,482.42 |
| Total 5100 · Fixed Expenses -Production | 80,465.36 | | | 80,465.36 |
| | | | | |
| **Total COGS** | 12,278,532.87 | 17,670,858.77 | -17,509,380.27 | 12,440,011.37 |
| | | | | |
| **Gross Profit** | 5,681,007.11 | 4,527,931.59 | -111,419.15 | 10,097,519.55 |
| | | | | |
| **Expense** | | | | |
| 7000 · Marketing Expenses | | | | |
| 70000 · Events | | 82,835.70 | | 82,835.70 |
| 70001 · Creative Services | | 34,778.14 | | 34,778.14 |
| 70002 · Advertising | | 967,500.00 | | 967,500.00 |
| 70003 · Coop Advertising | | 280,467.68 | | 280,467.68 |
| 70004 · Entertainment | | 6,967.80 | | 6,967.80 |
| 70005 · Photography | | 99,597.09 | | 99,597.09 |
| 70006 · Public Relations | | 41,440.99 | | 41,440.99 |
| 70007 · Tradeshows | | 660,034.35 | | 660,034.35 |
| 710092 · Outside Services-Mktg | | 19,109.34 | | 19,109.34 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

**Centersbone Diagnostics, Inc. and Gen-Spa Beauty, Inc.**
**Combined Profit And Loss**
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **71001 · Travel - Marketing** | | | | |
| 710010 · Travel-Airfare - Marketing | | 40,788.91 | | 40,788.91 |
| 710011 · Travel Hotel & Lodging- Mktg. | | 43,536.54 | | 43,536.54 |
| 710012 · Taxi Fare & Car Rental - Mktg. | | 12,528.83 | | 12,528.83 |
| 710013 · Travel - Meals & Entertainment | | 38,100.08 | | 38,100.08 |
| 710014 · Travel-Security | | 420.00 | | 420.00 |
| 710015 · Travel - Communications | | 2,041.00 | | 2,041.00 |
| **Total 71001 · Travel - Marketing** | | 137,415.36 | | 137,415.36 |
| | | | | |
| **71009 · Office Expenses** | | | | |
| 710094 · Office Supplies | | 175.00 | | 175.00 |
| **Total 71009 · Office Expenses** | | 175.00 | | 175.00 |
| | | | | |
| **71010 · Payroll Expense-Marketing** | | | | |
| 710103 · Payroll Tax Exp-Mktg. | | 4,075.83 | | 4,075.83 |
| 7101061 · Office Staff -Mktg | | 52,881.70 | | 52,881.70 |
| **Total 71010 · Payroll Expense-Marketing** | | 56,957.53 | | 56,957.53 |
| | | | | |
| **Total 7000 · Marketing Expenses** | | 2,387,278.98 | | 2,387,278.98 |
| | | | | |
| **8000 · Gen & Administrative - Expense** | | | | |
| **80000 · Utilities** | | | | |
| 800001 · Electric | 44,098.23 | | | 44,098.23 |
| 800002 · Trash | 4,479.32 | | | 4,479.32 |
| 800003 · Gas | 720.79 | | | 720.79 |
| 800005 · Water | 10,898.09 | | | 10,898.09 |
| **Total 80000 · Utilities** | 60,196.43 | | | 60,196.43 |
| | | | | |
| **800004 · Rent Expense** | | | | |
| 800004 · Rent Expense - Other | 561,600.00 | | 0.00 | 561,600.00 |
| **Total 800004 · Rent Expense** | 561,600.00 | | 0.00 | 561,600.00 |
| | | | | |
| **80001 · Professional Fees** | | | | |
| 800010 · Accounting | 132,362.59 | 94,672.25 | | 227,034.84 |
| 800011 · Legal Fees | 12,000.00 | 2,867.02 | | 14,867.02 |
| 50011 · Management Fee | 2,200,000.00 | -2,200,000.00 | | |
| **Total 80001 · Professional Fees** | 2,344,362.59 | -2,102,460.73 | | 241,901.86 |
| | | | | |
| **80002 · Depreciation Expense** | | | | |
| 80002 · Depreciation Expense - Other | 85,184.12 | 29,967.94 | | 115,152.06 |
| **Total 80002 · Depreciation Expense** | 85,184.12 | 29,967.94 | | 115,152.06 |
| | | | | |
| **80003 · Charitable Contributions** | 2,500.00 | 35,173.96 | | 37,673.96 |
| **81001 · Travel** | | | | |
| 810010 · Airfare | 1,223.80 | 18,099.50 | | 19,323.30 |
| 810011 · Hotel & Lodging | 2,062.17 | 4,813.45 | | 6,875.62 |
| 810012 · Taxi Fares & Car Rental | 1,574.22 | | | 1,574.22 |
| 810013 · Meals & Entertainment | 2,086.72 | | | 2,086.72 |
| **Total 81001 · Travel** | 6,946.91 | 22,912.95 | | 29,859.86 |
| | | | | |
| **81002 · Auto Expense** | | | | |
| 810020 · Lease payments | 8,137.90 | | | 8,137.90 |
| 810021 · Employee Auto Exp. | 35,510.58 | 5,940.65 | | 41,451.23 |
| 810023 · Insurance | 3,300.31 | | | 3,300.31 |
| 810025 · Repairs & Maintenance | 1,871.94 | | | 1,871.94 |
| **Total 81002 · Auto Expense** | 48,820.73 | 5,940.65 | | 54,761.38 |
| | | | | |
| **81003 · Bank Fees - Adm** | | | | |
| 810031 · Service Charges | 3,394.68 | 19,776.30 | | 23,170.98 |
| **Total 81003 · Bank Fees - Adm** | 3,394.68 | 19,776.30 | | 23,170.98 |
| | | | | |
| **81004 · Computer- Adm** | | | | |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Page 5 of 9

103

**Centerstone Diamonds, Inc. and Raffaele Beauty, Inc.**
**Combined Profit And Loss**
**January through December 2007**

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 810040 · Comp. Hardware - Adm | 2,240.90 | 70,658.39 | | 72,899.29 |
| 810041 · Internet Services - Adm | 2,638.97 | | | 2,638.97 |
| 810042 · Svrce, Support & Repairs-Adm | 40,246.52 | 3,317.22 | | 43,563.74 |
| 810044 · Comp. Supplies -Adm | 2,898.72 | | | 2,898.72 |
| 810043 · Software Expenses -Adm | | 4,503.21 | | 4,503.21 |
| **Total 81004 · Computer- Adm** | 48,025.11 | 78,478.82 | | 126,503.93 |
| | | | | |
| **81005 · Transportation Exp. -Adm** | | | | |
| 810050 · Employee Parking | 39,623.15 | 1,783.15 | | 41,406.30 |
| 810051 · Mileage-Adm | 1,410.32 | | | 1,410.32 |
| 810052 · Other Transp. Exp.- Adm | 632.00 | | | 632.00 |
| 81005 · Transportation Exp. -Adm - Other | 1,149.75 | | | 1,149.75 |
| **Total 81005 · Transportation Exp. -Adm** | 42,815.22 | 1,783.15 | | 44,598.37 |
| | | | | |
| **81006 · Employment Services - Adm** | | | | |
| 810060 · Benefits Administration - Adm | 2,896.40 | | | 2,896.40 |
| 810061 · Recruiting Expenses - Adm | 31,353.99 | | | 31,353.99 |
| 8100620 · Employee Morale | 8,482.47 | | | 8,482.47 |
| 810062 · Other Emplmt Svcs - Adm | | | | |
|     8100620 · Employee Morale-Adm | | 19,258.98 | | 19,258.98 |
|     810062 · Other Emplmt Svcs - Adm - Other | | 4,971.90 | | 4,971.90 |
|     **Total 810062 · Other Emplmt Svcs - Adm** | | 24,230.88 | | 24,230.88 |
| | | | | |
| **Total 81006 · Employment Services - Adm** | 42,732.86 | 24,230.88 | | 66,963.74 |
| | | | | |
| **81007 · Delivery Services-Adm** | | | | |
| 810070 · Messenger Service -Adm | 3,351.50 | | | 3,351.50 |
| 810071 · Shipping -Adm | 220,126.63 | | | 220,126.63 |
| 810072 · Postage | 3,325.43 | | | 3,325.43 |
| **Total 81007 · Delivery Services-Adm** | 226,803.56 | | | 226,803.56 |
| | | | | |
| **81008 · Insurance** | | | | |
| 810080 · Dental Insurance | 1,765.81 | -419.84 | | 1,345.97 |
| 810081 · Jewelers Block - Adm | 153,520.15 | | | 153,520.15 |
| 810083 · Medical Insurance | 134,617.86 | | | 134,617.86 |
| 810084 · Shipping Ins. -Adm | 22,453.50 | | | 22,453.50 |
| 810085 · Workers' Comp -Adm | 40,507.55 | | | 40,507.55 |
| 810087 · General Liability -Adm | 13,344.00 | | | 13,344.00 |
| **Total 81008 · Insurance** | 366,208.87 | -419.84 | | 365,789.03 |
| | | | | |
| **81009 · Office Expense -Adm** | | | | |
| 810098 · Dues & Subscriptions - Adm | 2,590.24 | | | 2,590.24 |
| 810092 · Outside Services | 239,599.00 | 14,385.34 | | 253,984.34 |
| 810093 · Repairs & Maint. Office -Adm | 151,744.51 | 23,884.14 | | 175,628.65 |
| 810094 · Office Supplies - Adm | 55,284.34 | 40,675.38 | | 95,959.72 |
| 810099 · Security Monitoring and Service | 11,324.83 | | | 11,324.83 |
| **Total 81009 · Office Expense -Adm** | 460,542.92 | 78,944.86 | | 539,487.78 |
| | | | | |
| **81010 · Payroll Expenses** | | | | |
| 810103 · Payroll Tax Expense | 185,754.29 | 49,599.66 | | 235,353.95 |
| 8101061 · Office Staff | 739,755.48 | 302,762.38 | | 1,042,517.86 |
| 810108 · Vacation Expense | 9,552.81 | 19,343.50 | | 28,896.31 |
| 810109 · Unallocated Payroll Expense | 55,221.19 | 33,104.67 | | 88,325.86 |
| 810100 · Expense Reimbursements | | | | |
| 8101062 · Office Staff b | | -11,550.08 | | -11,550.08 |
| **Total 81010 · Payroll Expenses** | 990,283.77 | 393,260.13 | | 1,383,543.90 |
| | | | | |
| **81012 · Telephone** | | | | |
| 810120 · Cellular | 29,379.13 | | | 29,379.13 |
| 810122 · Office - Long Distance | 22,006.56 | | | 22,006.56 |
| **Total 81012 · Telephone** | 51,385.69 | | | 51,385.69 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Page 6 of 9

Centers and Discount, Inc. and Materials Beauty, Inc.
Combined Profit And Loss
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 81013 · Licenses & Permits | 1,377.43 | 1,343.60 | | 2,721.03 |
| 81014 · Meals & Entertainment | 3,829.93 | 20,738.06 | | 24,567.99 |
| 81015 · Equipment Lease/Rental | | 22,544.76 | | 22,544.76 |
| 81019 · Misc. Expenses | | | | |
|    81019 · Misc. Expenses - Other | | | | |
| Total 81019 · Misc. Expenses | | | | |
| | | | | |
| 810191 · Miscellaneous Credits | | | | |
| Total 8000 · Gen & Administrative - Expense | 5,347,010.82 | -1,367,784.51 | 0.00 | 3,979,226.31 |
| | | | | |
| 6000 · Selling Expense | | | | |
|   60000 · Sales Discounts | | | | |
|     60000 · Sales Discounts - Other | | | | |
|   Total 60000 · Sales Discounts | | | | |
| | | | | |
|   60002 · Outside Commissions | | 10,460.36 | | 10,460.36 |
|   60004 · Bad Debt | | 1,757.00 | | 1,757.00 |
|   61001 · Travel -Sales | | | | |
|     610010 · Airfare - Sales | | 175,618.31 | | 175,618.31 |
|     610011 · Hotels & Lodging- Sales | | 220,905.90 | | 220,905.90 |
|     610012 · Taxi Fares & Car Rental - Sales | | 76,890.22 | | 76,890.22 |
|     610013 · Meals & Entertainment - Sales | | 44,695.92 | | 44,695.92 |
|     610014 · Travel Security - Sales | | 8,020.00 | | 8,020.00 |
|     610016 · Travel Expenses - Sales | | 7,859.42 | | 7,859.42 |
|   Total 61001 · Travel -Sales | | 533,989.77 | | 533,989.77 |
| | | | | |
|   610030 · Credit Card Fees -Sales | | 10,968.99 | | 10,968.99 |
|   610052 · Employee Parking - Sales | | 8,320.00 | | 8,320.00 |
|   61006 · Employment Services - Sales | | | | |
|     610061 · Recruiting Expenses - Sales | | 4,026.16 | | 4,026.16 |
|   Total 61006 · Employment Services - Sales | | 4,026.16 | | 4,026.16 |
| | | | | |
|   610072 · Postage and Delivery - Sales | | 112,000.14 | -111,419.15 | 580.99 |
|   61008 · Insurance - Sales | | | | |
|     610080 · Dental Insurance - Sales | | -896.48 | | -896.48 |
|     610083 · Medical Insurance - Sales | | -19,506.95 | | -19,506.95 |
|   Total 61008 · Insurance - Sales | | -20,403.43 | | -20,403.43 |
| | | | | |
|   61009 · Office Expense-Sales | | | | |
|     610092 · Outside Services -  Sales | | 5,316.98 | | 5,316.98 |
|   Total 61009 · Office Expense-Sales | | 5,316.98 | | 5,316.98 |
| | | | | |
|   610094 · Office Supplies - Sales | | 2,635.92 | | 2,635.92 |
|   61010 · Payroll Expenses - Sales | | | | |
|     610103 · Payroll Tax Expense - Sales | | 18,705.96 | | 18,705.96 |
|     610106 · Salaries & Wages - Sales | | | | |
|       6101061 · Office Staff - Sales | | 15,233.22 | | 15,233.22 |
|       6101062 · Sales Staff | | 16,544.32 | | 16,544.32 |
|       6101063 · Sales People | | 559,788.09 | | 559,788.09 |
|     Total 610106 · Salaries & Wages - Sales | | 591,565.63 | | 591,565.63 |
| | | | | |
|   Total 61010 · Payroll Expenses - Sales | | 610,271.59 | | 610,271.59 |
| | | | | |
|   610120 · Cellular -Sales | | 2,790.22 | | 2,790.22 |
|   61014 · Meals & Entertainment-Sales | | 14,724.57 | | 14,724.57 |
| Total 6000 · Selling Expense | | 1,296,858.27 | -111,419.15 | 1,185,439.12 |
| | | | | |
| 99999 · Suspense | | | | |
| Total Expense | 5,347,010.82 | 2,316,352.74 | -111,419.15 | 7,551,944.41 |
| Net Ordinary Income | 333,996.29 | 2,211,578.85 | | 2,545,575.14 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Center Main Documents, Inc. and Michael Beauty, Inc.
**Combined Profit And Loss**
January through December 2007

|  | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Other Income/Expense** |  |  |  |  |
| **Other Income** |  |  |  |  |
| **90000 · Other Income** |  |  |  |  |
| 81021 · Prior Year Correction | -20,246.98 | 20,006.88 |  | -240.10 |
| 900002 · Interest Income |  | 85.27 |  | 85.27 |
| 90000 · Other Income - Other |  |  |  |  |
| Total 90000 · Other Income | -20,246.98 | 20,092.15 |  | -154.83 |
| **Total Other Income** | -20,246.98 | 20,092.15 |  | -154.83 |
| **Other Expense** |  |  |  |  |
| **9110 · Interest Expense** |  |  |  |  |
| 91001 · Airi Beaudry | 4,021.64 |  |  | 4,021.64 |
| 91210 · LOC - Cathay Bank | 177,247.88 |  |  | 177,247.88 |
| **920000 · Interest Expense** |  |  |  |  |
| 920000 · Interest Expense - Other36,1 | 29.58 | 3,237.39 |  | 39,366.97 |
| Total 920000 · Interest Expense | 36,129.58 | 3,237.39 |  | 39,366.97 |
| 930000 · Factor Fees |  | 163,248.50 |  | 163,248.50 |
| 920002 · Finance Charges - LOC FCC |  | 648,293.97 |  | 648,293.97 |
| Total 9110 · Interest Expense | 217,399.10 | 814,779.86 |  | 1,032,178.96 |
| **9500 · Tax Expense** |  |  |  |  |
| 95001 · Federal Income Taxes | 84,199.66 |  |  | 84,199.66 |
| 95003 · State Income Tax | 800.00 | 24,339.00 |  | 25,139.00 |
| **95004 · Penalties** |  |  |  |  |
| 95004 · Penalties - Other | 4,954.50 |  |  | 4,954.50 |
| Total 95004 · Penalties | 4,954.50 |  |  | 4,954.50 |
| 95006 · Property Tax | 130.00 |  |  | 130.00 |
| Total 9500 · Tax Expense | 90,084.16 | 24,339.00 |  | 114,423.16 |
| **Total Other Expense** | 307,483.26 | 839,118.86 |  | 1,146,602.12 |
| **Net Other Income** | -327,730.24 | -819,026.71 |  | -1,146,756.95 |
| **Net Income** | 6,266.05 | 1,392,552.14 |  | 1,398,818.19 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

**Center Stone Imports, Inc. and Mishel Beaudry, Inc.**
**Combined Statement Of Cash Flow**
January through December 2007

|  | TOTAL |
|---|---:|
| **OPERATING ACTIVITIES** | |
| Net Income | 1,398,818.19 |
| Adjustments to reconcile Net Income | |
| to net cash provided by operations: | |
| 12001 · Accounts Receivable | 795,862.99 |
| 130031 · Employee Loan | 825.00 |
| 13006 · Inventory:130063 · Materials & Supplies:1300631 · Diamonds | -3,344,674.08 |
| 210011 · Accounts Payable | 5,291,641.49 |
| 2114 · Wells Fargo 4602-7023 | 34,000.00 |
| 210021 · American Express Corporate | -83,632.93 |
| 210013 · Accrued AP | -1,550,084.85 |
| 22003 · Inter-Company Accounts:220034 · Due to/from CDI-8th Street | 586,524.00 |
| 22004 · Customer Deposits | 11,775.00 |
| 22005 · Loans Payable - Current:230031 · Capital Lease - Current Portion | 30,640.00 |
| 22005 · Loans Payable - Current:220053 · LOC - Cathay Bank | -5,532,610.21 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | -78,834.14 |
| 22006 · Payroll Liabilities:220063 · 401K & Pension | -4,538.20 |
| 22006 · Payroll Liabilities:220641 · 401K - Loan Payable A- BF | -355.83 |
| 22006 · Payroll Liabilities:2200642 · 401K - Loan Payable B- CE | -158.19 |
| 22006 · Payroll Liabilities:220065 · AFLAC Premium Only | -81.50 |
| 22006 · Payroll Liabilities:220066 · Federal Payroll Taxes | 0.01 |
| 22006 · Payroll Liabilities:22070 · Vacation Accrual | 102,559.93 |
| 22007 · Sales Tax Payable | -12,950.96 |
| 22008 · Income Tax Payable | 140,390.00 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130031 · MD | 4,617.19 |
| 13004 · Prepaid Expenses:130044 · Prepaid CA State Income Tax | -495.00 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | -77,940.65 |
| 210012 · Intercompany Sales | -4,365,276.71 |
| 22001 · Accrued Commisions | -38,012.00 |
| 22002 · Accrued Coop Advertisement | -3,007.55 |
| 22003 · Inter-Company Accounts:220051 · Due to/from MBI-8th Street | -349,285.77 |
| 22005 · Loans Payable - Current:220051 · GMAC Loan - Current Portion | 12,058.72 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | 9,048,558.10 |
| 22006 · Payroll Liabilities:220068 · Levies and Garnishments | 154.95 |
| **Net cash provided by Operating Activities** | 2,016,487.00 |
| | |
| **INVESTING ACTIVITIES** | |
| 14001 · Machinery & Equipment | -90,347.50 |
| 140031 · Computers | -110,896.10 |
| 140033 · Furniture & Fixtures | -71,294.50 |
| 14004 · Leasehold Improvements | -57,884.18 |
| 14007 · Construction in Process | -238,193.56 |
| 14099 · Accumulated Depreciation | 115,152.06 |
| 150025 · Security Deposits | -6,155.31 |
| **Net cash provided by Investing Activities** | -459,619.09 |
| | |
| **FINANCING ACTIVITIES** | |
| 230030 · Equipment Lease Payable - FFL | 17,206.58 |
| 230025 · Equipment Lease Payable - ACG | 53,473.74 |
| 230011 · Due To/From M Beaudry Personal | -1,521,103.38 |
| 230012 · Airi Beaudry | -7,378.36 |
| 230021 · GMAC-Yukon | -11,161.92 |
| 30003 · Retained Earnings | -1,899,788.32 |
| 220041 · Leases Payable | 60,728.23 |
| 230022 · GMAC Loan- Cadillac Escalade | -24,036.73 |
| 30999 · Shareholder Distributions | 1,899,875.00 |
| **Net cash provided by Financing Activities** | -1,432,185.16 |
| | |
| **Net cash increase for period** | 124,682.75 |
| | |
| **Cash at beginning of period** | 286,356.96 |
| **Cash at end of period** | 411,039.71 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

# EXHIBIT "G"

ERVIN COHEN & JESSUP LLP

1             **EXHIBIT "G" – ASSETS AND LIABILITIES**

| Value of Assets | Chapter 11 |
|---|---|
| Cash | 61,659 |
| FCC Consignment Inventory[10] | 8,702,931 |
| Other Inventory[11] | 64,554 |
| A/R[12] | 568,681 |
| FFE[13] | 531,933 |
| IP | 500,000 |
| Other Assets | 9,880 |
| **Total Value of Assets** | **$10,439,638** |

| Liabilities | |
|---|---|
| FCC Consignment Inventory[14] | 8,702,931 |
| Priority Claims | 0 |
| Unsecured Claims | 3,893,885 |
| Chapter 7 Fees and Expenses | 0 |
| Chapter 11 Administrative Expenses | 285,000 |
| **Total Claims** | **$12,881,816** |

---

[10] The FCC Consignment Inventory is the inventory of saleable goods consigned to the Debtor by FCC, pursuant to the settlement agreement between them. In the event of a Chapter 7 liquidation, the FCC Consignment Inventory will be transferred to FCC and therefore is not an asset of the estate. The FCC Consignment Inventory is valued at the Debtor's cost basis.

[11] At inventory cost.

[12] Assumes 100% collectable as Chapter 11 case, and 50% in Chapter 7.

[13] Net of accumulated depreciation, and reduced by 50% in Chapter 7.

[14] The Debtor's possession of the FCC Consignment Inventory is valued at the Debtor's cost basis and creates a liability of $8,702,931 for purposes of a Chapter 11 analysis. That liability is not present in a Chapter 7 liquidation, because the Chapter 7 Trustee could not sell the FCC Consignment Inventory.

IDOCS:12999.3:1114103.2        53

SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**BALLOT FOR ACCEPTING OR REJECTING PLAN**

Centerstone Diamonds, Inc. ("CDI") and Michael Beaudry Inc. ("MBI"), the debtors and debtors in possession herein in these jointly administered bankruptcy cases (collectively, the "Debtor" or "Beaudry") filed a Plan of Reorganization on _____, 2011.  By this ballot you will decide whether to accept or reject this Plan.

The Plan referred to in this ballot can be confirmed by the Court and thereby bind you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan.

If the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C.A. § 1129(b) (West 2004 & Supp. 2006).

Check the appropriate line below, which describes your interest:

_____ The undersigned, a creditor with an allowed claim in the amount of $_____;

_____ The undersigned, the holder of _____ shares of _____ (explain type of stock) stock, with a certificate(s) No. _____:

[ ] Accepts the Plan

[ ] Rejects the Plan

Print or type name: _____

State which class you are a member of: _____

Signed: _____

If appropriate, by: _____ as _____
        Address:

        After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope to:  Michael S. Kogan, Esq., Ervin, Cohen & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212, or email mkogan@ecjlaw.com.  The Debtor will file with the Court and serve the results of voting by _____, 2011.

        Your ballot must be received by 4:00 p.m. on _____, 2011, or it may not be counted.  The Debtor will file with the Court and serve it confirmation brief by _____, 2011.

| In re:  CENTERSTONE DIAMONDS INC. *(Jointly Administered with)* In re: MICHAEL BEAUDRY, INC.                            Debtor(s). | CHAPTER  11 CASE NUMBER  2:09-bk-23944-VZ *(Jointly Administered with* 2:09-bk-23945-VZ ) |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.  Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  9401 Wilshire Blvd., 9th Floor, Beverly Hills, CA  90212-2974.

A true and correct copy of the foregoing document described as: **SECOND AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR CENTERSTONE DIAMONDS, INC., AND MICHAEL BEAUDRY, INC.,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **November 10, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒          Service information on attached page

**II.  SERVED BY U.S. MAIL:**  On **November 10, 2010,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒          Service information on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 10, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Bankruptcy Judge**
Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Room 1360
Los Angeles, CA  90012-3332

By Personal Delivery

☐          Service information on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 10, 2010 | CHRISTINA O'MEARA | /s/Christina O'Meara |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Dan E Chambers on behalf of Defendant Gail Levine - dan.chambers@troutmansanders.com
Glen Dresser on behalf of Creditor BANK OF AMERICA - gombd@aol.com
Elaine T Fuller on behalf of Creditor INTERNAL REVENUE SERVICE - elaine.t.fuller@irscounsel.treas.gov
Scott F Gautier on behalf of Creditor FCC LLC - sgautier@pwkllp.com
Matthew A Gold on behalf of Creditor Argo Partners - courts@argopartners.net
Julian I Gurule on behalf of Creditor First Capital Western Region, LLC - jgurule@milbank.com
Jeff D Kahane on behalf of Defendant Bernie Robbins Jewelers, Inc., a New Jersey corporation dba Bernie
Robbins Jewelers jkahane@duanemorris.com
Louis E Kempinsky on behalf of Creditor FCC LLC - lkempinsky@pwkllp.com
Andy Kong on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone
Diamonds, Inc., and Michael Beaudry, Inc. - Kong.Andy@ArentFox.com
Mette H Kurth on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone
Diamonds, Inc., and Michael Beaudry, Inc. - kurth.mette@arentfox.com
Dare Law on behalf of U.S. Trustee United States Trustee (LA) - dare.law@usdoj.gov
Jennifer Leland on behalf of Creditor FCC LLC - jleland@pwkllp.com
Monserrat Morales on behalf of Creditor First Capital Western Region, LLC - mmorales@pwkllp.com
Aram Ordubegian on behalf of Creditor Committee Official Committee of Unsecured Creditors of
Centerstone Diamonds, Inc., and Michael Beaudry, Inc. - ordubegian.aram@arentfox.com
John W Shenk on behalf of Debtor Centerstone Diamonds Inc - jshenk@ecjlaw.com
Meghan C Sherrill on behalf of Defendant Gail Levine - meghan.sherrill@troutmansanders.com
Deborah Terranova on behalf of Creditor Jason Hoffman - dterranova9@yahoo.com
United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
Kimberly S Winick on behalf of Interested Party Courtesy NEF - kwinick@clarktrev.com

## II. SERVED BY U.S. MAIL:

**Debtor**
Centerstone Diamonds, Inc.
Michael Beaudry, Inc.
323 West 8th Street
Los Angeles, CA 90014

**Creditors Committee**

Olympic Diamonds Corp.
c/o Barry R. Edwards, Atty.
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210

Modern Luxury, Inc.
Mike Eisenberg, Assistant Credit Mgr.
5455 Wilshire Blvd., #1412
Los Angeles, CA 90036

Curtco Robb Media, LLC
Chris Fabian, CFO
29160 Heathercliff Road
Malibu, CA 90265

C Publishing, LLC
1543 7th Street, 2nd Floor
Santa Monica, CA 90401

Ambrish Sethi, Executive Officer
101 Utah St., #207
San Francisco, CA 94103

**Request for Special Notice**

Yahalomei Espeika International Ltd.
c/o Benjamin Kiss
Fischer Zisblatt & Kiss
1901 Avenue of the Stars, #1020
Los Angeles, CA 90067

L.A. County Treasurer and Tax Collector
Attn: Linda D. Ramos, Tax Service Specialist
POB 54110
Los Angeles, CA 90051

EDF Resource Capital Inc.
c/o Real Estate Law Group LLP
Jason L. Hoffman
3455 American River Dr., Suite C
Sacramento, CA 95864