1  Michael S. Kogan (SBN 128500)
   Michael V. Mancini (SBN 263799)
2  **ERVIN, COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
3  Beverly Hills, California 90212-2974
   Telephone  (310) 273-6333
4  Facsimile  (310) 859-2325
   mkogan@ecjlaw.com
5

6  Attorneys for Debtor

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11

12  In re CENTERSTONE DIAMONDS, INC.,        )   Case No. 2:09-bk-23944-VZ
                                             )
13             Debtor.                       )   Chapter 11
                                             )
14  *Jointly Administered with*              )   (Jointly Administered With 2:09-bk-23945-VZ)
                                             )
15  In re MICHAEL BEAUDRY, INC.,             )   **THIRD AMENDED JOINT DISCLOSURE**
                                             )   **STATEMENT AND PLAN OF**
16             Debtor.                       )   **REORGANIZATION FOR**
                                             )   **CENTERSTONE DIAMONDS, INC. AND**
17  ☐ Applies only to Centerstone Diamonds, Inc.  )  **MICHAEL BEAUDRY, INC.**
                                             )
18  ☐ Applies only to Michael Beaudry, Inc. )   Confirmation Hearing:
                                             )   Date:    March 24, 2011
19                                           )   Time:    1:30 p.m.
                                             )   Place:   Courtroom 1368
20  _____)

21

22                            **I.**

23                      **INTRODUCTION**

24      On June 4, 2009, Centerstone Diamonds, Inc. ("CDI") and Michael Beaudry Inc. ("MBI"),

25  the debtors and debtors in possession herein in these jointly administered bankruptcy cases

26  (collectively, the "Debtor" or "Beaudry") filed a bankruptcy petition under Chapter 11 of the

27  Bankruptcy Code ("Code").  The document you are reading is both the Third Amended Joint Plan

28  of Reorganization (the "Plan") and the Third Amended Joint Disclosure Statement (the

IDOCS:12999.3:1114103.3

1    "Disclosure Statement"). The Debtor (the "Proponent" or "Plan Proponent") has proposed the

2    Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or

3    partners and to reorganize the Debtor's business affairs. A disclosure statement describes the

4    assumptions that underlie the Plan and how the Plan will be executed. The Debtor estimates that

5    such distributions will be accomplished within two (2) years from the Effective Date of the Plan.

6    In addition, the Plan will substantively consolidate the CDI and MBI estates for the sole purpose

7    of paying creditors. Payments under the Plan will be made from cash on hand and the proceeds of

8    the operation of the Debtor's business. The Bankruptcy Court ("Court") has approved the form of

9    this document as an adequate disclosure statement, containing enough information to enable

10    parties affected by the Plan to make an informed judgment about the Plan. The Court has not yet

11    confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

12       The Proponent has reserved March 24, 2011 at 1:30 p.m. in Courtroom 1368 for a hearing

13    to determine whether the Court will confirm the Plan.

14       Any interested party desiring further information should contact bankruptcy counsel for the

15    Debtor: Michael S. Kogan, Esq., Ervin, Cohen & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor,

16    Beverly Hills, California 90212, telephone 310.273.6333; facsimile 310.859.2325, or email

17    mkogan@ecjlaw.com.

18 **II.**

19 **GENERAL DISCLAIMER AND VOTING PROCEDURE**

20       PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS,

21    CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT

22    EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO

23    TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT

24    TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE

25    PLAN BE CONFIRMED BY THE COURT.

26       THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS

27    DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW. ALL

28    REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

ERVIN COHEN & JESSUP LLP

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope to:  Michael S. Kogan, Esq., Ervin, Cohen & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212, or email mkogan@ecjlaw.com.  The Debtor will file with the Court and serve the results of voting by March 1, 2011

Your ballot must be received by 4:00 p.m. on February 22, 2011, or it may not be counted. The Debtor will file with the Court and serve its confirmation brief by March 1, 2011.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will confirm the Plan.  Please refer to Section I above for the specific hearing date.  If, after receiving the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion shall be filed and served on the Proponent and Committee no later than eleven days prior to the hearing date.  Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

### III.
### WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### IV.
### WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor. An interest represents an ownership stake in the Debtor.

ERVIN COHEN & JESSUP LLP

1    In order to vote a creditor or interest-holder must first have an <u>allowed claim or interest</u>.

2    With the exceptions explained below, a claim is allowed if proof of the claim or interest is

3    properly filed before any bar date and no party in interest has objected, or if the court has entered

4    an order allowing the claim or interest.  Please refer to Section VI below for specific information

5    regarding bar dates in this case.

6    Under certain circumstances a creditor may have an allowed claim even if a proof of claim

7    was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if

8    the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or

9    unliquidated.  Exhibit "A" contains a list of claims that are not scheduled as disputed, contingent,

10   or unliquidated.

11   Similarly, an interest is deemed allowed if it is shown on the list of equity security holders

12   filed by the Debtor with the court and is not scheduled as disputed.

13   In order to vote, an allowed claim or interest must also be impaired by the Plan.

14   <u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered

15   by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a

16   creditor to accelerated payment upon default does not, however, necessarily render the claimant

17   impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated

18   payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the

19   maturity of such claim as it existed before default, compensates for any damages incurred as a

20   result of reasonable reliance upon the acceleration clause, and (except for a default arising from

21   failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006))

22   compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-

23   monetary obligation.

24   <u>Impaired interest-holders</u> include those whose legal, equitable, and contractual rights are

25   altered by the Plan, even if the alteration is beneficial to the interest holder.

26   There are also some types of claims that the Code requires be treated a certain way.  For

27   that reason they are considered unimpaired and therefore holders of these claims cannot vote.

28   <u>To summarize, there are two prerequisites to voting: a claim or interest must be both</u>

ERVIN COHEN & JESSUP LLP

4

THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

ERVIN COHEN & JESSUP LLP

1   allowed and impaired under the Plan.

2        If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she

3   may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed

4   to have accepted the Plan).  Impaired claims or interests are placed in classes and it is the class that

5   must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they

6   may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the

7   Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by

8   the Code.  Please refer to Section VI below for information regarding impaired and unimpaired

9   classes in this case.

10       Section IX sets forth which claims are in which class.  Secured claims are placed in

11  separate classes from unsecured claims.  Fed. R. Bankr. P. 3018(d) provides: "A creditor whose

12  claim has been allowed in part as a secured claim and in part as an unsecured claim shall be

13  entitled to accept or reject a plan in both capacities."

14                                          V.

15              **VOTES NECESSARY TO CONFIRM THE PLAN**

16       The Court may confirm the Plan if at least one noninsider impaired class of claims has

17  accepted and certain statutory requirements are met as to both nonconsenting members within a

18  consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more

19  than one-half in number and at least two-thirds in amount of the allowed claims actually voting,

20  vote in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in

21  amount of the allowed interests of such class actually voting have accepted it.  It is important to

22  remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will

23  not bind the parties unless and until the Court makes an independent determination that

24  confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

25                                          VI.

26          **INFORMATION REGARDING VOTING IN THIS CASE**

27       The bar date for filing a proof of claim in this case was October 30, 2009.

28       The bar date for objecting to claims was originally set as March 15, 2010. The Court has

1  extended the bar date for objecting to claims for claims that were filed or amended after the bar

2  date for filing claims, which was October 15, 2009, for an additional sixty (60) days from the

3  Effective Date.

4        In this case the Proponent believes that class 2 is impaired and therefore entitled to vote.

5        Class 1 is unimpaired due to the Settlement Agreement and Mutual Release of Claims (the

6  "Settlement Agreement") between FCC, LLC, a Florida limited liability company doing business

7  as First Capital Western Region, LLC ("FCC"), CDI, MBI, Michael Beaudry ("M. Beaudry"),

8  Laura Beaudry ("L. Beaudry"), and MGB – 8th Street, L.P. ("MGB") (each a "Party" and,

9  collectively, the "Parties"), which was approved by the Order Granting Motion of Debtor for Sale

10  of Property Free and Clear of Liens, entered July 13, 2010 (the "Sale Order"), and by the Order

11  Granting Motion to Approve Compromise of Controversy with FCC, LLC, entered June 25, 2010

12  (the "Compromise Order").  The Settlement Agreement resolves FCC's claims against the

13  bankruptcy estates and parties related to M. Beaudry, and completes a sale of the Debtors'

14  inventory, which provides for the continued ability of the Debtors to sell the inventory for certain

15  periods of time and for payment of enough funds to enable the Debtors to continue their business

16  operation and to reorganize.  Therefore, Class 1 is unimpaired and does not vote.

17        Class 3 and 4 are claims of insiders and are not entitled to vote.

18        A party that disputes the Proponent's characterization of its claim or interest as unimpaired

19  may request a finding of impairment from the Court in order to obtain the right to vote.

20        Ballots must be received by the Proponent, addressed to the Debtor's counsel on the

21  enclosed ballot, and returned in the enclosed envelope to:  Michael S. Kogan, Esq., Ervin, Cohen

22  & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212, or email

23  mkogan@ecjlaw.com by February 22, 2011.

24                                          **VII.**

25          **DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS**

26                      **PRECIPITATING BANKRUPTCY FILING**

27          **Structure of the Debtor**. The Debtor is a corporation, and is not a small business

28  corporation as defined in 11 U.S.C. § 101 (51D).  The Debtor's headquarters are located at 323

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  West 8th Street in the Jewelry District in downtown Los Angeles, California.  At its peak in sales,

2  the Debtor employed approximately seventy (70) employees and another 10 to 25 independent

3  craftsmen contractors to manufacture and market its jewelry.  As of the Petition Date, the Debtor

4  employed approximately twenty (20) employees.

5      CDI, as the manufacturing company of "Beaudry" and MBI, as the sales and marketing

6  company of "Beaudry", are one of the finest designer and manufacturers of unique handcrafted,

7  custom, one-of-a kind jewelry in the world.  Beaudry's products are marketed through a variety of

8  channels ("Sales Channels"), including upscale department stores, jewelry stores, a sales team and

9  internet auction sites, with many products placed in sales outlets on consignment.  Michael

10  Beaudry, the President of the Debtor and sole shareholder of CDI and MBI, is a master diamond

11  cutter, and considered a visionary designer and manufacturer.

12      **Events Precipitating the Chapter 11 Filing**. What follows is a brief summary of the dates

13  and circumstances that led Debtor to file bankruptcy.

14      From 2001 to 2004, Beaudry experienced business growth of a rough average of 20% per

15  annum.  From 2004 to 2007, Beaudry's business had been relatively stable, with gross earnings

16  averaging approximately $20,000,000 and taxable income surpassing $1,000,000 or more.  In

17  2008, despite a historic decline in the U.S. retail market, Beaudry's business was relatively stable

18  showing a slight overall decline of approximately 10 to 15% through October of 2008.

19  Unfortunately, starting in October of 2008 and continuing to the Petition Date, Beaudry's business

20  declined over 50% from its five year historical averages.

21      Compared to prior years, the Debtor had been impacted by a sharp drop in sales primarily

22  due to (i) reduced consumer discretionary spending, given the national economic downturn; (ii)

23  lower inventory selection as a result of the Debtors' tight liquidity position and reduced, less

24  favorable payment terms from its vendors; (iii) the Debtors' inability to devote sufficient resources

25  to marketing and advertising due to liquidity constraints; (iv) the amount of time, energy and focus

26  that has been devoted necessarily to the issues and negotiations by and between the Debtor and

27  FCC, LLC, a Florida limited liability company dba First Capital Western Region, LLC ("FCC"),

28  its secured creditor, prior to and during this bankruptcy case; and (v) the further tightening of the

ERVIN COHEN & JESSUP LLP

1   Debtors' liquidity resulting from FCC's adjustments and reductions of the formulas used to

2   calculate what funds would be advanced to the Debtor under the loans with FCC.  Moreover, poor

3   capital market conditions severely hindered the Debtors' ability to raise new capital to restructure

4   their operations.

5       In approximately June of 2008, the Debtor retained Cappello Capital Corp. ("Cappello"),

6   an investment banking firm, to consider sale, merger, and capital options for the Debtor.  In

7   addition, the Debtor was also able to restructure its corporate operations and reduce its operating

8   overhead. However, it was unable to secure a new investor or lender willing to refinance its

9   existing obligations despite spending substantial time, energy and attention to this effort.  In 2007

10  and 2008, the Debtor also sought to refinance its existing secured obligations through most of the

11  lenders specializing in the finance of luxury goods retailers.  Those efforts were unsuccessful.

12      Ultimately, based on the foregoing circumstances, the Debtor commenced this Chapter 11

13  case to avail itself of the provisions of the Bankruptcy Code and to preserve the status quo of its

14  business pending its contemplated business changes and turnaround to profitability.

15      **Business and Future Plans**. What follows is a brief description of the Debtor's business

16  and future business plans.  Further details relating to the Debtor's financial condition and post-

17  confirmation operation of the Debtor are found in sections X, XI, XII, XVI, and XV.

18      Given the worsening condition in 2008, the Debtor began implementing various measures

19  designed to stabilize the business and increase profitability, including (i) refocusing their

20  marketing strategies and branding; (ii) cutting operational costs, particularly labor costs through

21  reductions in workforce and outsourcing production and manufacturing of jewelry; (iii) reworking

22  any inventory that was deemed not easily marketable and scrapping some inventory for sale at

23  commodity value as diamonds and/or precious metal; (iv) focusing more strongly on the special

24  order Beaudry business; and (v) selling some of their aged or lower priced inventory at smaller

25  margins through special events, private buyer sales and other extraordinary efforts, and marketing

26  to retailers with customers in markets commensurate with the nation's economic environment.

27  Continuing these efforts should facilitate the ongoing operations of the Debtors' business in an

28  efficient and productive manner.  Based on current indications that the economic climate is

IDOCS:12999.3:1114103.3                    8

THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

1 improving, increasing number of sales and inquiries about new production, and discussions with

2 existing Beaudry accounts, the Debtor now expects their 2010 performance to substantially exceed

3 2009's performance. In fact, in 2009 the Debtor earned total income of $3,848,435.16. In 2010,

4 the Debtor has already earned total income of $3,692,038.78 as of September 30, 2010, and the

5 Debtor expects to earn substantially more income during the historically successful holiday

6 months of November and December, during which the Debtor has historically enjoyed sales of

7 jewelry orders of magnitude greater than in other months. Because of the Debtor's success since

8 filing bankruptcy, the Debtor anticipates business growth. Thus, the Debtor expects income to

9 continue to increase because the numbers relating to 2010 indicate increased sales as compared to

10 2009, and the Debtor is confident that the final two months of 2010 will comport with the holiday

11 sales trends the Debtor has observed prior to filing bankruptcy.

12         Moreover, the Debtor has made significant adjustments to the operation of its business, as

13 outlined immediately below. As part of the Plan, the Debtor has significantly restructured its

14 operations with respect to three key areas, resulting in (1) new merchandising methodology to sell

15 its inventory; (2) updated marketing strategies and structures; and (3) a leaner, more efficient cost

16 structure.

17         With respect to the selling of inventory, the Debtor has entered into the Settlement

18 Agreement, pursuant to which the Debtor is enabled to pursue a cost-effective consignment sale of

19 merchandise through the improved branding and marketing efforts undertaken by the Debtor. This

20 method of selling merchandise provides the Debtor with a feasible means of selling its inventory

21 while enabling the Debtor to make payments to Unsecured Creditors well in excess of the

22 liquidation value of such claims. Please refer to Sections XVII(D)-(E) herein for a full

23 explanation of the settlement and consignment arrangement between the Debtor and FCC.

24         In addition to this new merchandising plan, the Debtor has undertaken a revamped

25 marketing strategy. For example, the Debtor recently reached an agreement with OPT, a business-

26 to-business specialist company, that will enable the Debtor to market its inventory online to a wide

27 variety of retailers at little cost. In addition, OPT will be managing many aspects of the Debtor's

28 internet operations, including updating the Debtor's website on a regular basis with the latest

ERVIN COHEN & JESSUP LLP

1  technologies and layouts.  The Debtor has also modified its advertising strategy and replaced

2  traditional print media with a more focused and less expensive online campaign, including

3  capitalizing on new media opportunities provided by Twitter and Facebook.  These mediums

4  allow the Debtor to virally reach many of its customers at little or no cost, directing them to

5  purchase goods online with the new infrastructure provided by OPT.

6      The Debtor previously conducted some business operations under a lease on commercial

7  real property located at 317-323 W. 8th Street, Los Angeles, California 90014 (the "Leased

8  Premises"), between the Debtor and MGB-8th Street, L.P.  That lease has been extinguished

9  because of the November 29, 2010 foreclosure by Bank of America, N.A. ("Bank of America") on

10  that property.  The Debtor is in the process of negotiating with Bank of America new lease terms

11  on the Leased Premises, and if it is unable to do so, will be able to make an orderly transition to

12  comparable property at comparable lease rates without a significant disruption to its business.  The

13  foreclosure on the Leased Premises does not jeopardize the Debtor's ability to reorganize or

14  conduct business operations.

15      The Debtor's restructured marketing strategy also involves leveraging its celebrity and

16  financially elite client-base.  For example, pieces of jewelry designed by Michael Beaudry were

17  recently worn by celebrities at the Academy Awards, providing the Debtor with a peerless

18  advertising opportunity.  In addition, the Debtor is also working on an initiative that will target its

19  jewelry to professional athletes and personality-centric entertainers, thereby increasing the

20  Debtor's brand-name and image.

21      Furthermore, the Chapter 11 process has enabled the Debtor to efficiently trim its

22  operations to more accurately meet current demand and reduce its cost structure.  For example, it

23  has shed employees, and many executive-level employees have taken pay cuts of approximately

24  20% or more.  In addition, it has replaced some of its more expensive trunk show travel with

25  focused VIP events.

26                                    **VIII.**

27                        **CRITICAL PLAN PROVISIONS**

28      Listed below are the sources of money earmarked to pay creditors:

ERVIN COHEN & JESSUP LLP

1       a.      Proceeds from the sale of the consigned inventory and from sales following the

2   production of new items for sale.

3       Most likely, general unsecured creditors (Class 2) holding allowed claims can expect

4   payment:

5       a.      commencing one year following the Effective Date of the Plan;

6       b.      in the total amount of $500,000, with the first and second payments in the amount

7   of $250,000 on a pro rata basis; and

8       c.      payments will be made following one year and two years from the Effective Date

9   of the Plan.

10      The definition of "pro rata" as used in connection with the Plan means proportionately so

11  that the ratio of the amount of payment made on account of a particular allowed claim in Class 2 is

12  the same as the ratio of the amount of such particular allowed claim to the total amount of allowed

13  claims in Class 2.  The source of all payments under the Plan will be the accrued earnings of the

14  Debtor from the ongoing operation of the Debtor's business, which the Debtor forecasts to be

15  large enough to allow the payments contemplated in the Plan.  The source of money available for

16  payment of administrative expenses or claims, on the Effective Date, will be the accrued income

17  of the Debtor from the continuing sales of the Consignment Inventory and any other inventory

18  produced by the Debtor and sold.

19      The Debtor anticipates making payments from the income of the Debtor because the

20  Debtor's income is expected to increase.  Based on current indications that the economic climate is

21  improving, increasing sales, inquiries about new production, and discussions with existing

22  Beaudry accounts, the Debtor now expects their 2010 performance to substantially exceed 2009's

23  performance.  In fact, in 2009 the Debtor earned total income of $3,848,435.16.  In 2010, the

24  Debtor has already earned total income of $3,692,038.78 as of September 30, 2010, and the

25  Debtor expects to earn substantially more income during the historically successful holiday

26  months of November and December, during which the Debtor has historically enjoyed sales of

27  jewelry orders of magnitude greater than in other months.  Because the new marketing and cost-

28  cutting strategies, coupled with the consignment arrangement with FCC have proven successful,

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    the Debtor expects that trend to continue.  The Debtor therefore expects to pay all claims as

2    outlined in the Plan from the sales it makes as it continues to operate the business.

3         The FCC Class 1 claim has been settled, pursuant to the Settlement Agreement and

4    approved by the Compromise Order and the Sale Order, and no distributions will be made under

5    the Plan to FCC.  Please refer to Sections XVII(D)-(E) herein for a full explanation of the

6    settlement and consignment arrangement between the Debtor and FCC.

7                                            IX.

8                     **DESCRIPTION AND TREATMENT OF CLAIMS**

9    A.    <u>**Overview of Plan Payments**</u>

10        Below is a summary of who gets paid what and when and from what source.  The identity

11   of members within a particular class is explained beginning on the next page.  The second column

12   lists the estimate total amounts to be paid (excluding interest payments).  <u>The Proponent is usually</u>

13   <u>not required by law to pay an unsecured creditor or interest holder everything it would otherwise</u>

14   <u>be entitled to, had a bankruptcy case not commenced</u>.  The "Payment Due Date" column states the

15   frequency with which payments will be made and the starting and ending dates.  Look at the

16   starting date to figure out who will be paid before and after you and in what amount.  The "Source

17   of Payment" column describes the expected source of payment.  Further details regarding the

18   source of payment are found in sections X and XI.

19        The timing of payments to many creditors is determined by the "Effective Date."

20   Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of

21   payments to impaired creditors is measured from the Effective Date.  In this case, the Effective

22   Date shall be the first business day thirty (30) days after entry of the Court's order confirming the

23   Plan.

24

| Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date | Source of Payment |
|---|---|---|---|

26   ──────────────

27   [1] These amounts are estimates. For example, with regard to professionals, the estimated amount of the paid to professionals may be substantially greater or less than projected depending on the extent of litigation and/or other opposition presented with respect to the Plan and/or other

28   matters in the case. Further, the amounts may be substantially greater or less depending on the

**ERVIN COHEN & JESSUP** LLP

| | Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date | Source of Payment |
|---|---|---|---|---|
| 1. | Debtor's Bankruptcy Counsel (Ervin Cohen & Jessup LLP) | $200,000 | Effective Date | Income of Debtor |
| 2. | Debtor's Accountants (Gumbiner Savett, Inc.) | $25,000 | Effective Date | Income of Debtor |
| 3. | Creditors' Committee Counsel (Arent Fox LLC) | $60,000 | Effective Date | Income of Debtor |
| 4. | Debtor's Financial Advisor (Stonepine Holdings, Ltd.) | $0 | Effective Date | Income of Debtor |
| 5. | Tax Claim of Internal Revenue Service[2] | $27,883 | The IRS shall be paid in full over three and one-half ($3^1/_2$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made semi-annually, due on the 5th day of the first month following the Effective Date, and every six (6) months thereafter until satisfied. | Income of Debtor |

amount of payments received by professionals prior to confirmation of the Plan.

[2] Pursuant to the IRS's Third Amended Proof of Claim filed on November 17, 2010, the IRS has asserted a priority tax claim in the amount of $27,883.01, and a general unsecured claim in the amount of $129,914.76.

ERVIN COHEN & JESSUP LLP

| Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date | Source of Payment |
|---|---|---|---|
| 6.  Tax Claim of Franchise Tax Board | $28,287 | The FTB shall be paid in full over three and one-half (3$\frac{1}{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made semi-annually, due on the 5th day of the first month following the Effective Date, and every six (6) months thereafter until satisfied. | Income of Debtor |
| 6.  Class One — FCC, LLC, dba First Capital Western Region, LLC (Secured Claim) | $0 (this claim was settled as between FCC and the Debtor, and no distributions under the Plan will be made to FCC) | N/A due to the settlement of this claim | N/A due to the settlement of this claim |
| 7.  Class Two — General Unsecured Creditors | $500,000 | Commencing one year following the Effective Date of the Plan, total payments of $500,000, with first and second payments in the amount of $250,000 on a pro rata basis. Payments will be made following one year and two years from the Effective Date of the Plan. | Income of Debtor |
| 8.  Class Three — | $ 0 | No payments | Income of Debtor |

| Payment Recipient | Amount of Payment (Total amount to be paid)[1] | Payment Due Date under the Plan. | Source of Payment |
|---|---|---|---|
| Subordinated Insider/Affiliate Claims | | | |
| 9.    Class Four — equity interest holders | none | n/a | n/a |

### Claimants and Interest Holders who are Affiliates of the Debtor

| Name & Address of Claimant or Interest Holder | Relationship to Debtor | Amount of Claim or Interest |
|---|---|---|
| Michael Beaudry 323 W. 8TH ST. LOS ANGELES, CA 90014 | Equity interest holder | Holds 100% interest in the Debtor |
| MBG 8TH STREET 323 W. 8TH ST. LOS ANGELES, CA 90014 | Common ownership - landlord | $1,500,815 |
| BEAUDRY TIME INTERNATIONAL 323 W. 8TH ST. LOS ANGELES, CA 90014 | Claimant – common ownership | $223,316 |
| BEAUDRY-BEVERLY HILLS, L.P. 323 W. 8TH ST. LOS ANGELES, CA 90014 | Claimant – common ownership | $235,843 |
| Michael Beaudry 323 W. 8TH ST. LOS ANGELES, CA 90014 | Claimant – common ownership | $594,145 |

Below is a detailed description and treatment of administrative expenses, claims and interests.

### B.    Administrative Expenses

1.    These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon. The amounts set forth below are estimates and actual amounts required to be paid may be substantially greater or less depending on the extent of opposition and/or other

1 litigation with respect to the Plan and/or the extent of litigation regarding claims and/or other

2 matters in this case and the extent of services required in connection with the case.  Further, the

3 amounts estimated may differ substantially from the amounts required to be paid on the Effective

4 Date depending upon the amount of cash collateral used to pay such claims prior to confirmation

5 of the Plan.  Also included within this category of administrative expenses are any allowable

6 claims asserted pursuant to 11 U.S.C. § 503(b)(9) for the value of goods delivered within 20 days

7 before the commencement of this Chapter 11 case.  The Debtor is not aware of any such claims.

8          2.       The Code requires that allowed administrative expenses be paid on the

9 effective date unless the party holding the administrative expense agrees otherwise.

10                    (a)       Administrative Expense #1.

11                              Claimant: Ervin Cohen & Jessup LLP

12                              Debtor's bankruptcy counsel).

13                              $200,000, subject to court approval

14                    (b)       Administrative Expense # 2.

15                              Claimant: Gumbiner Savett, Inc.

16                              (Debtor's Accountants)

17                              $25,000, subject to Court approval

18                    (c)       Administrative Expense # 3.

19                              Claimant: Arent Fox LLC

20                              (Creditors' Committee Counsel)

21                              $60,000, subject to Court approval

22                    (d)       Administrative Expense # 4.

23                              Claimant: Stonepine Holdings, Ltd.

24                              (Debtor's Financial Advisor)

25                              $0, subject to Court approval

26                              ESTIMATED TOTAL: $285,000

27   C.      **Priority Tax Claims**

28          1.       These include certain types of property, sales, and income taxes.

2.      The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise.  Any such claimant has not agreed otherwise.  The total cash payments must have a present value equal to the amount of the allowed claim.  The treatment of any such claims must be in a manner not less favorable than the most favored nonpriority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class).

3.      Pursuant to the IRS's Third Amended Proof of Claim filed on November 17, 2010, the IRS has asserted a priority tax claim in the amount of $27,883.01.

On the Effective Date, each holder of an allowed priority tax claim equal to the amount of undisputed amount of taxes owed on the Effective Date shall be paid in full over three and one-half ($3^{1}/_{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made semi-annually, due on the 5th day of the first month following the Effective Date, and every six (6) months thereafter until satisfied.  Holders of priority tax claims are not entitled to vote on the Plan.  The Plan Proponent reserves the right to prepay all or any part of the principal, accrued interest, or other charges, without penalty or fees. The Plan Proponent also reserves the right to dispute the IRS Claim, and to defer any and all payments until the dispute is resolved. If the Debtor disputes all or part of the IRS Claim it will file such objection within sixty (60) days of the Effective Date, unless extended by the Bankruptcy Court.

4.      On September 7, 2010 the Franchise Tax Board ("FTB") filed a Proof of Claim alleging a total claim of $28,287.36 (the "FTB Claim").

On the Effective Date, each holder of an allowed priority tax claim equal to the amount of undisputed amount of taxes owed on the Effective Date shall be paid in full over three and one-half ($3^{1}/_{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made semi-annually, due on the 5th

ERVIN COHEN & JESSUP LLP

1   day of the first month following the Effective Date, and every six (6) months thereafter until

2   satisfied.  Holders of priority tax claims are not entitled to vote on the Plan.  The Plan Proponent

3   reserves the right to prepay all or any part of the principal, accrued interest, or other charges,

4   without penalty or fees. The Plan Proponent also reserves the right to dispute the FTB Claim, and

5   to defer any and all payments until the dispute is resolved. If the Debtor disputes all or part of the

6   FTB Claim it will file such objection within sixty (60) days of the Effective Date, unless extended

7   by the Bankruptcy Court.

8      **D.**    **<u>Class One</u>**

9      This class, consisting of the claim of FCC, has released all claims through a settlement

10   with the Debtor, pursuant to which the inventory of finished goods, works in progress and raw

11   materials for the design and production of finished goods (collectively, "Inventory") owned by

12   Beaudry as of March 12, 2010 (the "FCC Inventory" or the "Purchased Assets"), was sold to FCC

13   free and clear of all liens, claims and interests.  The Consideration was a credit bid, pursuant to 11

14   U.S.C. § 363(k), by FCC of Seven Million Three Hundred Thousand Dollars ($7,300,000).

15   Pursuant to the settlement, FCC released all claims and accepted the Inventory and certain other

16   collateral by its credit bid sale in full satisfaction of the Debtor's indebtedness to FCC.

17      Therefore, Class One will not receive any payout under the Plan and is not impaired under

18   the Plan.  Please refer to Section XVII(D) – (E) herein for a full explanation of the settlement and

19   consignment between the Debtor and FCC.

20      **E.**    **<u>Class Two</u>**

21      This Class is impaired and includes all allowed general unsecured claims against the

22   Debtor.  The total amount of such claims is $5,545,322. See Exhibit "A" for a list of claimants and

23   amounts owed.  The bar date for filing claims was October 30, 2009.  The bar date for hearings on

24   objections to claims was March 15, 2010.  The explanation of the payments to be made on the

25   allowed general unsecured claims is as follows:

26      Total amount of payments (over time) to satisfy allowed claims:  $500,000, with

27   the first and second payments in the amount of $250,000 on a pro rata basis.

28      Total amount of claims:  $5,545,322

ERVIN COHEN & JESSUP LLP

1   Total amount of payments (over time) to satisfy allowed claims: $500,000

2   Interest Rate:  None

3   Impaired

4   First payment date:  commencing one year following the Effective Date of the Plan

5   Amount of each installment:  equal installments of $250,000

6   Frequency of payments:  payments will be made following one year and two years

7   from the Effective Date of the Plan.

8   Total yearly payments:  $250,000

9   Final payment due:  Two Years after the Effective Date

10  The Debtor shall have 10 business days to cure any payment default to members of this

11  class.

12  **F.    Class Three**

13  This Class is impaired and includes any subordinated amount of insider/affiliate claims

14  against the Debtor.  Subordinated unsecured claims are unsecured claims not entitled to priority

15  under Bankruptcy Code section 507(a).  Here, the insiders/affiliates, through the consent of the

16  Principals, have voluntarily forgiven their General Unsecured Claims, which have been

17  accordingly subordinated to Class 3 and 4 Allowed General Unsecured Claims.  The total amount

18  of such claim is undetermined at this time, however it is estimated at $2,554,119.  Allowed claims

19  in this class are to be paid $0.

20  Total amount of payments (over time) to satisfy allowed claims: $0

21  Total amount of claims:  estimated at $2,554,119

22  Total amount of payments (over time) to satisfy allowed claims:

23  $0

24  Interest Rate:  None

25  Impaired – non-voting

26  First payment date: N/A

27  Amount of each installment:  N/A

28  Frequency of payments:  N/A.

ERVIN COHEN & JESSUP LLP

1  Total yearly payments: N/A

2  Final payment due: N/A

3  **G.    Class Four**

4  This Class includes the equity interests in the Debtor. Under the Plan, equity interest-

5  holders simply retain their interests. The Plan leaves unaltered the legal, equitable, and

6  contractual rights to which the equity interests in the Debtor entitle the holders thereof.

7  Accordingly, the Debtor believes that this class is unimpaired.

8  In accordance with applicable state law, the holders of equity interests shall not receive any

9  distribution or other payment from the Debtor on account of their equity interests until after all

10  allowed claims against the Debtor have been paid in full pursuant to the Plan.

11  **X.**

12  **SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

13  The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that

14  the Proponent has timely submitted evidence establishing that the Debtor will have sufficient

15  funds available to satisfy all expenses, including the scheduled creditor payments discussed above.

16  What follows is a statement of projected cash flow for the duration of the Plan. The focus is on

17  projected cash receipts and cash disbursements. All non-cash items such as depreciation,

18  amortization, gains and losses are omitted. A positive number reflects a source of cash; a

19  (negative number) reflects a use of cash. A more detailed statement of cash flow projections for

20  the duration of Plan payments is attached as Exhibit "B."

21  **Years of Plan Payments**

22  **Net cash flow**

| | **2010[3]** | **2011** | **2012** |
|---|---|---|---|
| **From operating activities:** | | | |
| **Total Receipts** | 5,896,192 | 8,969,300 | 9,222,800 |
| **Operation Disbursements** | <4,260,050> | <7,713,900> | <7,705,900> |
| **Payroll** | <1,128,208> | <1,154,151> | <1,096,896> |
| **FCC Account Protection** | <217,570> | 0 | 0 |
| **Beginning Cash Available** | 0 | 290,364 | 141,613 |
| **Total** | 290,364 | 391,613 | 561,617 |

[3] Includes the months of January, 2010 through July, 2010 of actual financial performance.

ERVIN COHEN & JESSUP LLP

**Yearly plan payments:**

| | | | |
|---|---|---|---|
| **Unsecured** | 0 | 250,000 | 250,000 |

**Net cash available to Debtor**

| | | | |
|---|---|---|---|
| after all plan payments made: | 290,364 | 141,613 | 311,617 |

Section XV(c) states the assumptions and details surrounding the statement of projected cash flow.

On the Effective Date, the Plan pays as set forth above.

## XI.

## FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibit "C" are three types of financial documents, including balance sheets, cash flow statements and income and expense statements, as they are maintained in the Debtor's ordinary course of business, for the current calendar year. These documents indicate that the Debtor has enjoyed an increase in sales as compared with calendar year 2009, and indicate that the Debtor's new marketing strategy and new merchandising strategy have been successful.

So that comparisons of the Debtor's performance over time can be drawn, attached as Exhibit "D" is a Combined Financial Report of the Debtor for calendar year 2009, which consists of a combined summary balance sheet, a combined profit and loss, and a combined statement of cash flow. Attached as Exhibit "E" is a Combined Financial Report of the Debtor for calendar year 2008, which consists of a combined balance sheet, a combined profit and loss and a combined statement of cash flow. Attached as Exhibit "F" is a Combined Financial Report of the Debtor for calendar year 2007, which consists of a combined balance sheet, a combined profit and loss and a combined statement of cash flow.

## XII.

## ASSETS AND LIABILITIES OF THE ESTATE

a.    Assets

The identity and fair market value of the estate's assets are listed in Exhibit "G," attached

ERVIN COHEN & JESSUP LLP

**ERVIN COHEN & JESSUP** LLP

1   hereto, so that the reader can assess what assets are at least theoretically available to satisfy claims

2   and to evaluate the overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any

3   of these assets is discussed in section XVI.

4         b.    <u>Liabilities</u>

5         Exhibit "G" shows the allowed claims against the estate, claims whose treatment is

6   explained in detail by section IX.

7         c.    <u>Summary</u>

8         The fair market value of all assets equals $10,439,638.[4]  Total liabilities equal

9   $12,881,816.

10               **XIII.**

11      **TREATMENT OF NONCONSENTING CLASSES**

12         As stated above, even if all classes do not consent to the proposed treatment of their claims

13   under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a

14   manner prescribed by the Code.  The process by which dissenting classes are forced to abide by

15   the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes

16   to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The

17   Code does not define discrimination, but it does provide a minimum definition of "fair and

18   equitable."  The term can mean that <u>secured claimants</u> retain their liens and receive cash payments

19   whose present value equals the value of their security interest.  For example, if a creditor lends the

20   Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair

21   and equitable" requirement means that the claimant is entitled to cash payments whose present

22   value equals $80,000 and not $100,000.  The term means that <u>unsecured claimants</u> whose claims

23   are not fully satisfied at least know that no claim or interest that is junior to theirs will receive

24   anything under the Plan, except where the Debtor is an individual, has elected to retain property

25   included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A.

26

27         [4] The Debtor's possession of the FCC Consignment Inventory is valued at the Debtor's
cost basis and creates an offsetting liability of $8,702,931.

28

ERVIN COHEN & JESSUP LLP

1    § 1129(b)(2)(B)(ii) (West Supp. 2006).  "Fair and equitable" means that each <u>holder of an interest</u>

2    must receive the value of such interest or else no junior interest is entitled to receive anything.

3          Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be

4    confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will

5    receive or retain any property under the Plan, <u>unless</u> the Plan provides that the class of general

6    unsecured claims shall be paid in full with interest. If a class of interest holders votes against the

7    Plan, the Plan cannot be confirmed where the Debtor will receive or retain any property under the

8    Plan, unless the Plan provides that the class of interest holders shall be paid in full with interest.

9    These are complex statutory provisions and the preceding paragraphs do not purport to state or

10   explain all of them.

## XIV.

## TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS

## (CHAPTER 7 LIQUIDATION ANALYSIS)

14         The Plan must provide that a nonconsenting impaired claimant or interest holder of a

15   consenting class receive at least as much as would be available had the Debtor filed a Chapter 7

16   petition instead.

17         In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.

18   Unsecured creditors generally share in the proceeds of sale only after secured creditors and

19   administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured

20   creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their

21   allowed claim in relationship to the total amount of allowed claims.

22         Generally, a creditor would recover from the assets of the bankruptcy estate less under

23   Chapter 7 than under Chapter 11 for various reasons.  First, the liquidation value of an asset is

24   frequently less than its fair market value when a liquidation sale would take place on an expedited

25   or short-term basis and/or under what prospective purchasers are likely to perceive as a distressed

26   sale or "fire sale" situation.  The Debtor benefits from its reputation as a producer of luxury and

27   high-quality jewelry.  That benefit results in profitable sales.  The Debtor anticipates that a

28   liquidation sale would greatly reduce the public esteem for the Debtor's jewelry, thereby

1 significantly diminishing the return on sale that the Debtor would otherwise expect. In this case,

2 the Debtor believes that its current business plan has been appropriately adjusted to current market

3 circumstances and is the best means under the circumstances for maximizing the value of the

4 Debtor's assets and the recoveries available for creditors and equity interest holders of the Debtor.

5 A liquidation sale would reduce the value of the sales.

6   Importantly, the Debtor believes that the value of its assets would be significantly

7 diminished if this bankruptcy case were converted to a Chapter 7 liquidation for the following

8 reasons. There is no certainty regarding whether a Chapter 7 trustee appointed to liquidate the

9 Debtor's assets would have familiarity or expertise with regard to conducting such a liquidation.

10 Further, the Debtor fears that the general impression of prospective buyers in the context of the

11 conversion of the Debtor's Chapter 11 case to a Chapter 7 liquidation would be that the liquidation

12 is taking place in a distressed "fire sale" environment and potential buyers would likely expect a

13 substantial discount from otherwise potentially obtainable values. This is particularly damaging to

14 the Debtor's estate because the value of each piece of jewelry designed and marketed by the

15 Debtor is intrinsically enhanced by the high esteem the Debtor enjoys in the boutique and high-

16 end jewelry markets; if jewelry designed by the Debtor were sold in a distressed environment, the

17 Debtor would no longer benefit from its high esteem in the marketplace and the pricing of the

18 Debtor's jewelry would dramatically decline. The Debtor believes that a bulk sale (a "wholesale"

19 disposition) or more expedited sale process under a Chapter 7 liquidation would generate a smaller

20 recovery and potentially eliminate recovery by equity holders and reduce creditor recovery

21 compared to a "retail" sale of the Debtor's inventory to natural buyers as contemplated by the

22 Plan. While difficult to quantify the expected loss of value, for purposes of the liquidation

23 analysis chart set forth below, the Debtor has reduced the value of its inventory and other non-cash

24 assets by 50%.

25   In addition, the Debtor has removed the FCC Consignment Inventory from the Chapter 7

26 liquidation assets because the FCC Consignment Inventory is no longer owned by the Debtor.

27 The FCC Consignment Inventory is now the property of FCC, pursuant to the settlement of the

28 FCC Claim. In a Chapter 7 liquidation, the Chapter 7 Trustee would not be able to sell the FCC

ERVIN COHEN & JESSUP LLP

24
THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**ERVIN COHEN & JESSUP** LLP

Consignment Inventory. Therefore, the FCC Consignment Inventory has no value to the estate in a Chapter 7 liquidation. The Debtor believes the 50% reduction of the value of the Debtor's assets in a Chapter 7 liquidation, and the fact that the FCC Consignment Inventory is unavailable for recovery by creditors in a liquidation scenario, is a reasonable approximation of the impact of a liquidation upon the estate, if the case were converted to Chapter 7.

Additionally, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000. In this case, the trustee's fee would amount to approximately $100,000. For purposes of the liquidation analysis chart set forth below, the Debtor has estimated the Chapter 7 trustee's fee to be $100,000. Moreover, the Chapter 7 trustee would employ professionals adding another layer of administrative expense on the estate. This additional layer of expense could also amount to a substantial outlay by the Estate. For purposes of the liquidation analysis chart set forth below, the Debtor has estimated the sum of this additional layer (Chapter 7 professional fees) of administrative expense to be $75,000. Further, for purposes of the liquidation analysis chart set forth below, FCC's settled claim is not included in the analysis.

In this case, the Debtor believes that unsecured creditors will be paid a significant amount under the Chapter 11 Plan and has serious concerns that payments would be jeopardized and diminished in a Chapter 7 scenario. The Debtor believes that payment will be made more quickly and with greater certainty pursuant to the Debtor's Chapter 11 plan than in the situation where an unknown Chapter 7 trustee would come in to take over control of the Debtor's assets.

| Value of Assets | Chapter 7 | Chapter 11 |
|---|---|---|
| Cash | 61,659 | 61,659 |
| FCC Consignment Inventory[5] | 0 | 8,702,931 |

---

[5] The FCC Consignment Inventory is the inventory of saleable goods consigned to the Debtor by FCC, pursuant to the settlement agreement between them. In the event of a Chapter 7 liquidation, the FCC Consignment Inventory will be transferred to FCC because it is the property of FCC and not of the Debtor. Therefore, the FCC Consignment Inventory is not an asset of the estate and has no value in a Chapter 7 liquidation. For purposes of the Chapter 11 analysis, the

| | | |
|---|---:|---:|
| Other Inventory[6] | 32,277 | 64,554 |
| A/R[7] | 284,340 | 568,681 |
| FFE[8] | 266,966 | 531,933 |
| IP | 250,000 | 500,000 |
| Other Assets | 4,940 | 9,880 |
| **Total Value of Assets** | **$1,656,550** | **$10,439,638** |

**Liabilities**

| | | |
|---|---:|---:|
| FCC Consignment Inventory[9] | 0 | 8,702,931 |
| Priority Claims | 0 | 0 |
| Unsecured Claims | 5,545,322 | 5,545,322 |
| Chapter 7 Fees and Expenses | 175,000 | 0 |
| Chapter 11 Administrative Expenses | 285,000 | 285,000 |
| **Total Claims** | **$6,005,322** | **$14,533,253** |

**% OF THEIR CLAIMS WHICH CLASS 2 GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH CLASS 2 GENERAL UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THE PLAN: = Approximately 9% cash**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|:---:|:---:|
| **Administrative Claims** | 100% | 100% |
| **Secured Claims** | 100% | 100% |
| **Priority Claims** | 100% | 100% |

FCC Consignment Inventory is valued at the Debtor's cost basis.

[6] At inventory cost.

[7] Assumes 100% collectable as Chapter 11 case, and 50% in Chapter 7.

[8] Net of accumulated depreciation, and reduced by 50% in Chapter 7.

[9] The Debtor's ability to sell the FCC Consignment Inventory, pursuant to the settlement between the Debtor and FCC, is valued at the Debtor's cost basis and creates a liability of $8,702,931 for purposes of a Chapter 11 analysis. That liability is not present in a Chapter 7 liquidation because the FCC Consignment Inventory is the property of FCC and not of the Debtor. The FCC Consignment Inventory cannot be sold by the Chapter 7 Trustee because it is not property of the Debtor's estate. Because the Chapter 7 Trustee could not sell the FCC Consignment Inventory, it is not included in the Chapter 7 analysis.

ERVIN COHEN & JESSUP LLP

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Class 1 - FCC | N/A | N/A |
| Class 2 - Unsecured | 9% | 0% |
| Class 3 – Subordinated Insiders | 0% | 0% |
| Class 4 – Equity Interest Holders | 100% | 0% |

## XV.

## FUTURE DEBTOR

### A.    Management of Debtor

The Debtor will continue to be managed by Michael Beaudry (the "Manager"), the current manager of the Debtor.

As set forth above, Michael Beaudry is the driving force behind the Debtor. The Manager will be compensated at $20,000 per month for the first year, and $25,000 for the second year of the Plan. The Manager is the 100% shareholder of the Debtor, and will continue to be the President responsible for all operational decisions.

### B.    Disbursing Agent

The Manager of the Debtor, Michael Beaudry, shall serve as disbursing agent under the Plan and is responsible for collecting money intended for distribution to claimants and transmitting it to them. The Manager will be compensated as set forth above.

### C.    Future Financial Outlook

The Proponent believes that the Debtor's economic health will improve from its prebankruptcy state for the following reasons.  As discussed in detail above, the development of its marketing plan which is the basis of the Plan will provide for the economic health of the Debtor. Moreover, by virtue of the Settlement Agreement, the Debtor now maintains its Inventory as a consignee for sale, and anticipates a cost-effective and profitable relationship with FCC, its former secured lender.  As Exhibits B – F hereto indicate, the Debtor has already improved its sales over calendar year 2009, and is beginning to see improvement in the high-end jewelry marketplace.

Further, the Debtor developed the business plan discussed above and reflected in the

ERVIN COHEN & JESSUP LLP

1    financial model embodied in Exhibits B — F hereto.  In accordance with its business plan, the

2    Debtor projects that it will have adequate funds to pay all claims.

3        Section X provides a summary of the projected cash flow of the Debtor for the duration of

4    the Plan.  The assumptions summarized in Section VII above underlie the projections.  As

5    previously stated, Plan payments will come from the continued operation of the Debtor's business

6    involving sale of consigned inventory and the production of new inventory. The financial

7    projections used in the Plan were based upon the Debtor's financial teams' (i) personal knowledge,

8    including knowledge of the accounting, finance and the retail industry, (ii) review of the Debtor's

9    financial projections, including Cash Flow Budget and other financial information, (iii) opinion

10    based upon  experience, relationship and knowledge of the Debtor's past business practices and

11    jewelry, (iv)  experience dealing with FCC and (v) experience as a business adviser and financial

12    expert.

13                 **XVI.**

14          **SALE OR TRANSFER OF PROPERTY;**

15    **ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS**

16        The Plan provides for the sale of the Inventory which has been consigned from FCC

17    pursuant to the Settlement Agreement entered into by the Debtor and FCC on or about May 21,

18    2010. Pursuant to that agreement, such inventory will be consigned back to the Debtor in order

19    that the Debtor can market and sell the consigned inventory, as well as market and sell new

20    inventory, in order to create revenues with which to pay creditors.  Please refer to Section XVII(D)

21    – (E) herein for a full explanation of the settlement, and resulting sale of assets, between the

22    Debtor and FCC.

23        Pursuant to the Plan, the Debtor may use the proceeds of sales, and any other revenue

24    generated at or from the business in accordance with its business plan and to make the payments

25    required under the Plan and or as is otherwise necessary in the ordinary course of business so long

26    as no uncured payment default exists with respect the Debtor's obligations to creditors pursuant to

27    the Plan.

28        As of the Effective Date of the Plan, all prepetition executory contracts of the Debtor not

ERVIN COHEN & JESSUP LLP

1  otherwise previously assumed by order of the Court or subject to a pending motion to assume shall

2  be deemed rejected.

3      The Court must make certain findings of fact before approving the Plan.  The Proponent

4  will request that the Court make the appropriate findings at the confirmation hearing, based upon

5  evidence submitted in support of the confirmation motion.

6                                          **XVII.**

7                          **BANKRUPTCY PROCEEDINGS**

8  A.      <u>**Commencement of Case**</u>

9      The Debtor commenced its reorganization case by filing a voluntary Chapter 11 petition on

10  June 4, 2009.  Following the commencement of the Debtor's Chapter 11 case, the Court approved

11  the Debtor's employment of Ervin Cohen & Jessup LLP, as bankruptcy counsel, Gumbiner Savett,

12  Inc., as the Debtor's accountants, and Stonepine Holdings, Ltd. as the Debtor's financial advisor.

13  Pursuant to the "Notice of Appointment and Appointment of Committee of Creditors Holding

14  Unsecured Claims", the United States Trustee appointed a creditors committee in this case.  The

15  Committee's retention of Arent Fox LLC as counsel has been approved by the Court.

16      The Debtor filed emergency first day motions, accompanying notices, and declarations.

17  These included a First Day Motion For Order Determining Adequate Assurance Of Payment For

18  Postpetition Utility Services (the "Utility Motion"), an Emergency Motion For Use of Cash

19  Collateral (the "Cash Collateral Motion"), a First Day Motion for Order Limiting Scope of Notice

20  (the "Limit Notice Motion"), an Emergency Motion For Authority, But Not Requiring Debtor To

21  (1) Pay Pre Petition Accrued Employee Wages, Salaries Compensation, And Contributions to

22  Employee Benefit Plans; (2) Honor Existing Personnel Policies In the Ordinary Course of

23  Business; (3) Reimburse Pre-Petition Employee Business Expenses; (4) Make Payments for

24  Which Payroll Deductions Were Made; and (5) Pay All Costs Incident to the Foregoing, a Motion

25  for Joint Administration (the "Joint Administration Motion")(the "Prepetition Wages Motion,

26  together with the Utility Motion, The Joint Administration Motion, the Cash Collateral Motion,

27  the Limit Notice Motion, are referred to as the "First Day Motions"). The Utility Motion,

28  Prepetition Wages Motion, and Limit Notice Motion, Joint Administration Motion were granted.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    The Cash Collateral Motion which was contested by FCC was granted on an interim basis, and

2    was continued for hearing.

3        The Court status conference was on July 16, 2009. The Court also held the continued Cash

4    Collateral hearing on July 16, 2009. Prior to the hearing counsel for the Debtor was able to reach

5    agreement for the continued use of cash collateral by the Debtor to September 2009.

6        FCC filed a Motion for Relief From Stay ("Relief Motion") in addition to its Opposition to

7    the continued use of cash collateral by the Debtor. In its Opposition and Relief Motion, FCC

8    essentially made two arguments without objection to the evidence submitted by the Debtor.  First,

9    FCC argued that it is not adequately protected because there is no evidence of an equity cushion

10   and the Debtor's postpetition financial performance has not met its prior projections.  Next, FCC

11   argued that the Debtors' conduct warrants the appointment of a trustee or conversion of the case to

12   one under Chapter 7 because the Debtor had allegedly been transferring inventory to a non-debtor

13   affiliate at or below cost and the Debtor hade been selling inventory to existing customers with

14   aged past due accounts receivable.

15       The debtor argued that the undisputed evidence showed that FCC possesses an equity

16   cushion of at least 63%, and that FCC was adequately protected by the continued operation of the

17   Debtor's business. The Court denied FCC's Motion for Relief from the Automatic Stay, and

18   approved the continued use of cash collateral by the Debtor by order to December 31, 2009. In

19   addition, the Court ordered that the Debtor should make monthly adequate protection payments to

20   FCC in the amount of $35,000 per month. As of March 1, 2010, the Debtor had paid $210,000 to

21   FCC as adequate protection payments during the postpetition period.

22       A Notice Setting the Last Date to File Proofs of Claim was filed that set October 30, 2009

23   as the last day to file claims. The Debtor filed a Motion For Order Extending Time To Assume Or

24   Reject Unexpired Nonresidential Real Property Leases Under 11 U.S.C. § 365(d)(4) (the

25   "Extension Motion"), pursuant to which the Debtor sought authority to extend the time to assume

26   or reject its business premises.

27       In addition, the Court approved the Rule 2004 examination of FCC which was scheduled

28   to be held in October 2009.

ERVIN COHEN & JESSUP LLP

### B.     Potential Settlement with FCC

1       On or about October 14, 2009, the Debtor met with FCC, and believed that the parties had
2 worked out a framework for resolution of all of FCC's claims against the estate, a consensual plan
3 of reorganization which would provide for the continued operation of the Debtor's business,
4 payment to unsecured creditors of the estate, and the emergence out of bankruptcy of the Debtor.
5 What followed was an audit conducted by FCC on all of the Debtor's inventory which took place
6 during late October and early November, in which FCC was able to verify that the inventory in
7 which it had a security interest was verified by an independent auditor as being owned by the
8 Debtor.  Subsequently, for the next three (3) months the Debtor and FCC were involved in
9 protracted and intense negotiations in which it appeared to the Debtor that FCC constantly either
10 changed the terms of the deal from what was originally agreed upon, or added new terms which it
11 considered "non-negotiable."

12       The compromise with FCC would have resolved FCC's claims against the bankruptcy
13 estate and parties related to Michael Beaudry, the principal of the Debtor, a sale of the Debtor's
14 inventory to FCC and consignment back to the Debtor of the inventory, which would provide for
15 the continued ability of the Debtor to sell the inventory for certain periods of time or a payment of
16 enough funds to enable the Debtor to continue its business operation and reorganize. The
17 settlement would have resolved substantially all of the issues in the bankruptcy case between the
18 Debtor and FCC, and provide for a successful reorganization, in which unsecured creditors would
19 receive a significant distribution on their claims.  The Settlement Agreement contemplated that,
20 subject to certain terms and conditions, FCC would reduce its secured claim against the Debtors'
21 chapter 11 estates (the "Estates"), stop accruing interest and other charges on the outstanding
22 indebtedness owed it by the Debtor and accept the inventory and certain other collateral by a credit
23 bid sale in full satisfaction of this indebtedness. The settlement would also afford the Debtor the
24 opportunity to take a consignment back of the foreclosed inventory for sale in the ordinary course
25 by the Debtor. Under the terms of the contemplated concurrent consignment agreement, the
26 Debtor would retain the profits from such sales that exceed certain established thresholds, thereby
27 providing a source of revenue to the Debtor and assets from which the unsecured creditors of the

1  Debtors' estate could be paid.

2          During the period of the negotiations, FCC consented to the continued use of its cash

3  collateral under the terms of the previous orders entered by the Court which included the monthly

4  budget submitted with the previous motions, and payment of FCC's monthly $35,000 adequate

5  protection payment. As of February 19, 2010, FCC revoked its consent to use cash collateral for a

6  period of time and then on at least 2 occasions since that time consented to the use of cash

7  collateral. Negotiations between FCC and the Debtor broke down, and at that point although FCC

8  indicated in late February 2010, that it was ready to go forward with the settlement, FCC refused

9  to conclude negotiations, finalize a settlement agreement, or even inform the Debtor as to what

10  terms and conditions it required to resolve their differences.  As a result as discussed herein the

11  Debtor filed its complaint against FCC regarding FCC's claims and equitable subordination of

12  FCC's claims against the estate.

13          C.    **Complaint Against FCC Filed by the Debtor**

14          In response to the actions of FCC before the bankruptcy case was filed, and the breakdown

15  of settlement negotiations, the Debtor filed an adversary action entitled, Centerstone Diamonds,

16  Inc. and Michael Beaudry, Inc. v FCC, LLC dba First Capital Western Region, LLC, Adv No.

17  2:10-ap-01345-VZ (the "Litigation"). The Litigation alleged, among other things, that the Debtor

18  sustained damages in an amount to be determined, but believed to be at least in the range of

19  approximately $2,632,625, plus all payments made by the Debtor during the pendency of the

20  Bankruptcy Case should reduce the principal balance of FCC's Claim, which were proximately

21  caused by the actions of FCC, and which should be applied as an offset to the amounts claimed

22  due by FCC, thereby reducing the allowable claim of FCC accordingly.

23          Debtor contended that it sustained damages in an amount to be determined, but believed to

24  be at least in the range of approximately $2,632,625, plus all payments made by the Debtor during

25  the pendency of the Bankruptcy Case should reduce the principal balance of FCC's Claim, which

26  were proximately caused by the actions of FCC, and which should be applied as an offset to the

27  amounts claimed due by FCC, thereby reducing the allowable claim of FCC accordingly. FCC

28  denied this contention.

ERVIN COHEN & JESSUP LLP

1    Prior to the Petition Date, FCC, to its benefit and to the detriment of Debtor, engaged in a

2  pattern and practice of (a) delaying approvals of funding on documentation submitted to it by

3  Debtor, (b) delaying the payment of funds for the Debtor's operation when such funds were due

4  and payable, (c) making unreasonable demands of Debtor unwarranted by and in violation of the

5  Factoring Agreement as preconditions to its own compliance with the Factoring Agreement, (d)

6  charging excessive fees to the Debtor, and (e) engaging in further delay tactics which made it

7  difficult for Debtor to successfully and timely operate its Business.

8    As a result of FCC's breaches of its contractual obligations and its implied duty of good

9  faith and fair dealing arising from the Factoring Agreement, (a) the Debtor was unable to timely

10 offer its products for sale and, when they were offered for sale, was forced to sell them for lower

11 prices than they would have sold for absent FCC's misconduct; (b) Debtor was unable to pay down

12 the loan as projected; and (c) Debtor was forced into bankruptcy in order to protect itself from

13 further losses. Also as a result of FCC's breaches of its contractual obligations and breaches of its

14 implied duty of good faith and fair dealing arising from the Factoring Agreement, Debtor had

15 incurred considerable additional fees and expenses, including but not limited to (a) additional

16 payments to FCC's attorneys to review the documents, (b) increased costs and fees paid to FCC;

17 (c) increased interest under the Factoring Agreement; and (d) increased fees and costs in

18 connection with this bankruptcy.  In addition. the Debtor requested that FCC's Claim be equitably

19 subordinated.

20    **D.    Settlement with FCC**

21    On or about May 21, 2010, the Debtor and FCC, after many months of negotiating a

22 settlement and the previous breakdown of negotiations, successfully negotiated the terms of a

23 settlement agreement designed to resolve all of the issues and disputes between the parties, subject

24 to the approval of the Court. The Settlement Agreement was approved by the Compromise Order

25 and the Sale Order.  The Settlement Agreement resolves FCC's claims against the bankruptcy

26 estate and parties related to M. Beaudry, and includes a sale of the Debtor's inventory to FCC and

27 consignment of the inventory back to the Debtor, which will provide for the continued ability of

28 the Debtor to sell the inventory, on consignment from FCC, for certain periods of time, the result

ERVIN COHEN & JESSUP LLP

1  being revenues that enable the Debtor to continue its business operation and reorganize. The

2  settlement resolves substantially all of the issues in the bankruptcy case between the Parties, and

3  provides for a successful reorganization, in which unsecured creditors will receive a significant

4  distribution on their claims.

5       Pursuant to the Settlement Agreement, FCC will release all claims against the Debtor's

6  estate in exchange for a credit bid sale of the Debtor's inventory in full satisfaction of this

7  indebtedness. The Settlement Agreement also affords the Debtor the opportunity to take a

8  consignment back of the foreclosed inventory for sale in the ordinary course by the Debtor.  Under

9  the terms of a concurrent consignment agreement, the Debtor retains the profits from such sales

10 that exceed certain established thresholds, thereby providing a source of revenue to the Debtor and

11 assets from which the unsecured creditors of the Debtors' Estates can be paid.[10]

12      The details of the Settlement Agreement are that the assets to be sold are the inventories of

13 finished goods, works in progress and raw materials for the design and production of finished

14 goods (collectively, "Inventory") owned by Beaudry as of March 12, 2010 (the "FCC Inventory"

15 or the "Purchased Assets"), free and clear of all liens, claims and interests.  The Consideration is a

16 credit bid, pursuant to 11 U.S.C. § 363(k), by FCC of Seven Million Three Hundred Thousand

17 Dollars ($7,300,000).  Under the Settlement Agreement, subject to certain terms and conditions,

18 FCC released all claims and accepts the inventory and certain other collateral by a credit bid sale

19 in full satisfaction of the Debtor's indebtedness to FCC.  Additionally, the Settlement Agreement

20 provides that FCC is granted relief from the automatic stay in the Bankruptcy Cases, pursuant to

21 Section 362 of the Bankruptcy Code, to the extent necessary to permit FCC to carry out the

22 provisions of, enforce its rights and remedies under, and enjoy the benefits of, the Settlement

23 Agreement, to the extent such relief from the automatic stay might be necessary in connection

24 with FCC's retrieval of FCC Inventory in the possession of Beaudry or any third party, so long as

25

---

26     [10] Under the concurrent consignment agreement, the Debtor is required to sell inventory
that is allocated into three separate lots.  FCC will receive certain percentages of the proceeds
27 resulting from the sale of each lot of inventory.  Pursuant to its agreement with FCC, the Debtor
can receive up to 100% of the profit above cost on the FCC inventory.

28

ERVIN COHEN & JESSUP LLP

1   such retrieval is in accordance with the terms of the Settlement Agreement.

2   **E.    Approval of the Settlement Agreement and Sale of Inventory to FCC**

3   The Motion Of Debtor For Sale Of Property Free And Clear Of Liens (the "Sale Motion"),

4   and approval of the Settlement Agreement, came on for hearing on June 22, 2010. The Debtor

5   received no opposition to the Motion Of Debtor For Sale Of Property Free And Clear Of Liens,

6   and the Official Committee of Unsecured Creditors filed a joinder. No party appeared at the

7   hearing interested in overbidding the offer submitted by FCC. The Court, thereby approved the

8   sale pursuant to the Sale Motion and Settlement Agreement, which is enforced by the Sale Order.

9   Additionally, the Court entered the Compromise Order on June 25, 2010.

10                                  **XVIII.**

11                      **TAX CONSEQUENCES OF PLAN**

12  **A.    Introduction**

13  The implementation of a Chapter 11 plan may have federal, state and local tax

14  consequences to the Debtor and the Debtor's creditors and equity holders. No tax opinion has

15  been sought or will be obtained with respect to any tax consequences of the Plan. This Disclosure

16  Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to

17  any person, and the summary contained herein is provided for informational purposes only.

18  The discussion below summarizes only certain of the federal income tax consequences

19  associated with the Plan's implementation. This discussion does not attempt to comment on all

20  aspects of the federal income tax consequences associated with the Plan, nor does it attempt to

21  consider various facts or limitations applicable to any particular creditor or equity interest-holder

22  which may modify or alter the consequences described herein. A creditor or equity interest-holder

23  may find that the tax consequences of the Plan to such creditor or equity holder differ materially

24  from the tax consequences discussed below because of such creditor's or equity holder's facts and

25  circumstances. This discussion does not address state, local or foreign tax consequences or the

26  consequences of any federal tax other than the federal income tax.

27  The following discussion is based upon the provisions of the Internal Revenue Code of

28  1986, as amended from time to time (the "Internal Revenue Code" or "IRC"), the Treasury

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   Income Tax regulations, as amended from time to time, promulgated thereunder, existing judicial

2   decisions and administrative rulings.  In light of the rapidly-changing nature of tax law, no

3   assurance can be given that legislative, judicial or administrative changes will not be forthcoming

4   that would affect the accuracy, validity or applicability of the discussion below.  Any such

5   changes could be material and could be retroactive with respect to the transactions entered into or

6   completed prior to the enactment or promulgation thereof.  The tax consequences of certain

7   aspects of the Plan are uncertain due to the lack of applicable legal authority and may be subject to

8   judicial or administrative interpretations that differ from the discussion below.

9   CREDITORS AND EQUITY INTEREST-HOLDERS ARE ADVISED TO CONSULT

10  WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM

11  OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL,

12  STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.  NOTHING CONTAINED IN THIS

13  DISCLOSURE STATEMENT WAS INTENDED OR WRITTEN TO BE USED, CAN BE USED

14  BY ANY TAXPAYER OR MAY BE RELIED UPON OR USED BY ANY TAXPAYER, FOR

15  THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THE

16  TAXPAYER UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED.  ANY

17  WRITTEN STATEMENT CONTAINED IN THIS DISCLOSURE STATEMENT RELATING

18  TO ANY FEDERAL TAX TRANSACTION OR MATTER MAY NOT BE USED BY ANY

19  PERSON IN ANY MANNER TO SUPPORT THE PROMOTION OR MARKETING OF OR TO

20  RECOMMEND ANY FEDERAL TAX TRANSACTION(S) OR MATTER(S).

21      **B.      Federal Income Tax Consequences to a Debtor**

22      1.      Utilization of a Debtor's Net Operating Losses

23  Internal Revenue Code section 382 places potentially severe limitations upon an entity's

24  use of its net operating losses and loss carryovers ("NOLs") and certain other tax attributes if an

25  "ownership change" occurs with respect to such entity's equity interests.  Any pre-effective date

26  shift (deemed or actual) in the ownership of stock of a debtor, directly or by attribution, outside

27  the scope of a Chapter 11 plan may trigger an "ownership change" that would adversely affect the

28  availability of a debtor's NOLs.  Because the federal income tax consequences of any such shift

1    would depend on the particular facts and circumstances at such time and the application of

2    complex legislation and regulations, the Debtor expresses no view as to the effect of any

3    transactions outside the scope of the Plan or the survival of any NOLs or other tax attributes.

4    Parties in interest are cautioned against assuming that NOLs will be available to shelter any

5    income or gain that may be recognized as a result of Plan transactions or the Debtor's operations

6    prior to the Effective Date.

7        2.    Reduction of Debtor's Indebtedness

8        Any amount of potential discharged indebtedness for federal income tax purposes will be

9    referred to herein as a "Debt Discharge Amount." In general, the Internal Revenue Code provides

10   that a taxpayer who realizes a discharge of indebtedness must include the Debt Discharge Amount

11   in its gross income in the taxable year of discharge to the extent that the Debt Discharge Amount

12   exceeds any consideration given for such discharge.  No income from the discharge of

13   indebtedness is realized to the extent that payment of the liability being discharged would have

14   given rise to a deduction.

15       If a taxpayer is in a title 11 case (a case under the Bankruptcy Code) and the discharge of

16   indebtedness occurs pursuant to a plan approved by the court (such as the Plan in this case, if

17   confirmed), such discharge of indebtedness is specifically excluded from gross income.  If the

18   taxpayer is insolvent before a cancellation or deemed cancellation of debt and does not become

19   solvent by reason of the cancellation or deemed cancellation, such cancellation or deemed

20   cancellation of indebtedness is specifically excluded from gross income.

21       Accordingly, the Debtor believes that it will not be required to include in gross income any

22   Debt Discharge Amount as a result of the Plan.  The Internal Revenue Code requires certain tax

23   attributes of a debtor to be reduced by the Debt Discharge Amount excluded from gross income.

24   Tax attributes are reduced in the following order of priority: current year net operating losses and

25   net operating loss carryovers; general business credits; minimum tax credits; capital loss

26   carryovers; basis of property of the taxpayer; passive activity loss or credit carryovers; and foreign

27   tax credit carryovers. Tax attributes are generally reduced by one dollar for each dollar excluded

28   from gross income, except that general tax credits, minimum tax credits and foreign tax credits are

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  reduced by 33.3 cents for each dollar excluded from gross income. The tax attribute reduction

2  rules may eliminate a portion of a debtor's NOLs and other tax attributes. However, such NOLs

3  and other tax attributes will not be reduced until after the determination of tax, if any, for the

4  taxable year in which a plan is confirmed and becomes effective.

5        3.    Alternative Minimum Tax

6        In general, an alternative minimum tax ("AMT") is imposed on an entity's "alternative

7  minimum taxable income" ("AMTI") at a 20 percent rate to the extent such tax exceeds the

8  corporation's regular federal income tax for the taxable year. AMTI generally is equal to regular

9  taxable income with certain adjustments. For purposes of computing AMTI, certain tax

10 deductions and other beneficial allowances are modified or eliminated. In particular, even though

11 an entity otherwise may be able to shelter all of its taxable income for regular income tax purposes

12 by applying available NOLs, an entity (or consolidated group) is entitled to offset no more than 90

13 percent of its AMTI with NOLs (as recomputed for AMT purposes). The confluence of a 20

14 percent AMT tax rate and a 90 percent (of AMTI) cap on the deduction for AMT NOLs creates an

15 effective AMT tax rate of two percent (i.e., 20 percent of the 10 percent of AMTI that is not

16 sheltered with AMT NOLs).

17       Accordingly, even if a debtor's NOLs remain available to fully shelter net income or gain,

18 if any, recognized during the tax year in which the Plan is confirmed and becomes effective, a

19 debtor may be liable for AMT even though a debtor is not liable for regular federal income tax.

20  **C.    Tax Consequences to Creditors**

21       The tax consequences of a Chapter 11 plan's implementation to a creditor may depend on

22 many factors, including the type of consideration received by the creditor in exchange for its

23 claim, whether the creditor reports income on the cash or accrual method, whether the creditor

24 receives consideration in more than one tax year of the creditor, and whether all the consideration

25 received by the creditor is deemed to be received by that creditor in an integrated transaction. The

26 tax consequences upon the receipt of Cash, debt instruments or other property allocable to interest

27 are discussed below under "Receipt of Interest." Creditors are advised to seek their own tax

28 counsel to properly assess the tax consequences in their particular situation.

1.    Claims Satisfied With Payment.

(a)    Gain/Loss on Exchange

As a general rule, a creditor whose existing claims are satisfied with payments under a Chapter 11 plan or with the receipt of equity interests in a reorganized debtor, will recognize gain or loss on the actual or constructive exchange of such creditor's existing creditor claims (other than claims for accrued interest) for the consideration received equal to the difference between (i) the "amount realized" in respect of such claims, and (ii) the creditor's tax basis in such claims. The "amount realized" will generally be equal to the sum of the cash received plush the fair market value of the other consideration received.  Again, creditors are advised to seek their own tax counsel to properly assess the tax consequences in their particular situation.

(b)    Tax Basis and Holding Period of Items Received

Pursuant to Internal Revenue Code Section 1223, the aggregate tax basis in the items received or deemed received by a creditor will generally equal the amount realized in respect of such items (other than amounts allocable to any accrued interest).  The holding period for items received in the exchange will generally begin on the day following the exchange.

(c)    Determination of Character of Gain

Under the general rule governing exchanges under the Internal Revenue Code, in the case of a creditor whose existing claims constitute capital assets in such creditor's hands, the gain required to be recognized will generally be classified as a capital gain, except to the extent of interest (including accrued market discount, if any), with any gain recognized thereon generally treated as ordinary income to the extent of accrued market discount.  As a general rule, any capital gain recognized by a creditor will be long-term capital gain with respect to those claims for which the creditor's holding period is more than one year, and short-term capital gain with respect to such claims for which the creditor's holding period is one year or less.  Again, the actual characterization of gain/loss in this particular instance pursuant to the general rules governing exchanges is qualified by, among other things, the qualifications noted above with respect to realization of gain/loss and exchanges.  Creditors should be advised to seek their own tax counsel to properly assess the tax consequences in their particular situation.

ERVIN COHEN & JESSUP LLP

**2.      Receipt of Interest**

As a general rule, income attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the creditor's existing claims are capital assets in its hands. A creditor who, under its accounting method, was not previously required to include in income accrued but unpaid interest attributable to existing claims, and who exchanges its interest claim for cash or other property pursuant to a chapter 11 plan, will generally be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that creditor realizes an overall gain or loss as a result of the exchange of its existing claims. A creditor who had previously included in income accrued but unpaid interest attributable to its existing claims will generally recognize a loss to the extent such accrued but unpaid interest is not satisfied in full. For purposes of the above discussion, "accrued" interest means interest which was accrued while the underlying claim was held by the creditor. The extent to which consideration distributable under the Plan is allocable to such interest is uncertain.

**3.      Other Tax Considerations**

**(a)      Market Discount**

If a creditor has a lower tax basis in one of a debtor's obligations than its face amount, as a general rule, the difference may constitute market discount under Internal Revenue Code section 1276. (Certain obligations are excluded from the operation of this rule, such as obligations with a fixed maturity date not exceeding one year from the date of issue, installment obligations to which Internal Revenue Code section 453B applies and, in all likelihood, demand instruments).

Holders in whose hands a debtor's obligations are market discount bonds may be required to treat as ordinary income any gain recognized upon the exchange of such obligations to the extent of the market discount accrued during the holder's period of ownership, unless the holder has elected to include such market discount in income as it accrued. Such holders should be advised to seek their own tax counsel to properly assess the tax consequences in their particular situation.

**(b)      Withholding**

The reorganized debtor will, as a general rule, withhold any amounts required by law from

ERVIN COHEN & JESSUP LLP

1  payments made, or deemed to be made, to creditors.  In addition, creditors may be required to

2  provide general tax information to a in order to receive distributions pursuant to a Chapter 11 plan.

3  The Debtor does not believe that there are claims in this case that involve withholding issues.

4      THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX

5  CONSEQUENCE TO EACH CREDITOR.  FURTHERMORE, THE TAX CONSEQUENCES

6  OF A PLAN MAY BE COMPLEX AND, IN SOME CASES, UNCERTAIN.  THEREFORE, IT

7  IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN

8  PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH

9  CREDITOR AS A RESULT OF THE PLAN.

10      **D.**    **Tax Consequences to Equity Holders**

11      THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX

12  CONSEQUENCE TO EACH HOLDER OF AN EQUITY INTEREST . FURTHERMORE, THE

13  TAX CONSEQUENCES OF A PLAN MAY BE COMPLEX AND, IN SOME CASES,

14  UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF AN EQUITY

15  INTEREST OR EQUITY INTEREST RELATED CLAIM OBTAIN HIS, HER OR ITS OWN

16  PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH

17  HOLDER OF AN EQUITY INTEREST AS A RESULT OF THE PLAN.

18              **XIX.**

19      **EFFECT OF CONFIRMATION OF PLAN**

20      a.    <u>General comments</u>

21      The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under

22  the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not

23  vote to accept the Plan.

24      The confirmation of the Plan vests all property of the estate in the Debtor.

25      The automatic stay is lifted upon confirmation as to property of the estate.  However, the

26  stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or

27  the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not

28  seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   property terminates upon entry of the order confirming the Plan.

2        The Guarantors have guaranteed certain obligations of some of the Debtor, which

3   obligations are afforded treatment under the Plan. The Confirmation Order shall act as a temporary

4   injunction (the "Temporary Enforcement Injunction") to stay and restrain the taking of any of the

5   following actions against property in which the Guarantors hold an interest, on account of any

6   judgments, claims or causes of action that arise out of or relate to claims against the Debtor, or the

7   Debtor's estate, and which judgments, claims or causes of action if asserted or enforced against the

8   Guarantors may give rise to a claim of indemnity or contribution against the Debtor (an "Enjoined

9   Claim"): (a) commencing or continuing in any manner any such Enjoined Claim against the

10  Guarantors; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award,

11  decree, or order on account of an Enjoined Claim; and/or (c) creating, perfecting or enjoining any

12  lien or encumbrance on account of an Enjoined Claim.

13       With respect to an Enjoined Claim related to an obligation afforded treatment under this

14  Plan, the Temporary Enforcement Injunction shall continue in effect until the earliest of the

15  following: (a) all of the payments required to be made under this Plan have been paid, and all

16  Allowed Claims have been fully satisfied pursuant to the terms of this Plan, at which time the

17  Temporary Enforcement Injunction shall be terminated; (b) the Chapter 11 case are dismissed or

18  converted to a case under Chapter 7; or (c) the entry of an order by the Court terminating the

19  Enforcement Injunction on account of the Debtor having defaulted under this Plan, and having

20  failed to cure such default within ten (10) business days from default.

21       b.    <u>Discharge of liability for payment of debts; status of liens; equity security holders</u>

22       Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C. 1141(d)(3),

23  the debtor may obtain a discharge only upon specific order of the Court.  Notwithstanding the

24  foregoing, the confirmation of the Plan does not discharge the Debtor from any debt of a kind

25  specified in 11 U.S.C. § 523(2)(A) — (B) that is owed to a domestic governmental unit, or owed

26  to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any

27  similar State Statutes, or tax or custom duties with respect to which the debtor made a fraudulent

28  tax return or willfully attempted in any manner to evade or to defeat tax or custom duties.

c.    Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp. 2006).

d.    Post-Confirmation Causes of Action

To the best knowledge of the Proponent, the estate has the following causes of action: none.

The Debtor shall continue to act as representative of the estate under 11 U.S.C. § 1123(b)(3) and shall have the right to assert any causes of action possessed by the Debtor post-confirmation in accordance with applicable law.

e.    Dissolution of Committee

Following the Effective Date of the Plan, the Committee shall be deemed dissolved and disbanded and the duties of the Committee shall terminate.

f.    Post-Effective Date Employment and Compensation of Professionals

After the Effective Date of the Plan, the Debtor may employ, without notice, hearing or order of the Court, such attorneys, accountants and other professionals as it may desire to render services on such terms as it deems reasonable.  With respect to services rendered by professional persons employed by the Debtor after the effective date, the Debtor shall be authorized to pay for such services, related costs and expenses without notice, hearing or order of the Court; provided however, that with respect to fees, costs and expenses of such professional persons for services rendered after the effective date in or in connection with the this chapter 11 case, or in connection with the Plan and incident to the case, in the event the Debtor disputes the reasonableness of any such fees, costs or expenses, the Debtor shall pay such professional person only the undisputed amount, if any, and the Debtor or the professional may file an application with the Court to determine the reasonableness of the fees, costs or expenses which are in dispute.

G.    Post-Confirmation Operations

Following the Effective Date, the Debtor may operate and engage in its business free of any restrictions of the Code, the Bankruptcy Rules, the Court or the Office of the United States Trustee, except if and as specifically set forth in the Plan.

ERVIN COHEN & JESSUP LLP

H.    Execution and Delivery of Documents

Following the Effective Date of the Plan, the Debtor is authorized to execute and deliver documents and instruments as are necessary or appropriate to promote and implement consummation of the Plan or to carry out the purposes of the Plan.

I.    Final Decree

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

DATED:  November 10, 2010

By: _____
        Michael Beaudry

ERVIN COHEN & JESSUP LLP

**DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN**

1.    I, Michael Beaudry, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

2.    I am the President of Centerstone Diamonds, Inc. ("CDI"), and Michael Beaudry, Inc. ("MBI") (collectively, "Beaudry" or the "Debtor"), the debtor and debtor in possession herein in these jointly administered bankruptcy cases. I am a master diamond cutter, and considered a visionary designer and manufacturer. I worked as a master diamond cutter for over five (5) years before starting to design and manufacturer jewelry nearly twenty (20) years ago. In my capacity as President of the Debtor, I am readily familiar with the Debtor's day-to-day operations, business affairs, and books and records.

3.    During my more than twenty-five year career in the jewelry business I have learned to evaluate and analyze the costs and values associated with the production, repair and sale of high-end jewelry. I have utilized that expertise in my review of the foregoing Plan and Disclosure Statement.

4.    I have reviewed the foregoing Plan and Disclosure Statement. All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

5.    The source of all financial data is the Debtor.

6.    Michael Kogan and Michael V. Mancini of Ervin Cohen & Jessup LLP, the bankruptcy counsel for the Debtor, are the individuals who prepared this document.

7.    To the best of my knowledge, no fact material to a claimant or equity interest-holder in voting to accept or reject the proposed Plan has been omitted.

8.    The name of the person(s) who prepared the cash flow projections and the other financial documents is Mitch Allen, and such person was acting within the capacity of chief financial officer of the Debtor. I also had material input into the financial projections and information used in connection with the Debtor's business plan. Mr. Allen prepared the liquidation analysis based upon his experience in the industry and financial information filed by the Debtor and FCC in this bankruptcy case.

9.    The accounting method used to prepare the cash flow projections and the other

1  financial documents is a cash basis approach.

2          I declare under penalty of perjury under the laws of the State of California and of the

3  United States of America that the foregoing is true and correct.

4  Dated:  November 10, 2010

5

6                                              Michael Beaudry

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

# EXHIBIT "A"

1

**EXHIBIT "A" – LIST OF UNSECURED CLAIMS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

'EXHIBIT A – GENERAL UNSECURED CLAIMS CDI/MBI[1]

| Case[2] | Name | UNSECURED CLAIMS | | CLAIMS | |
| | | Claim No. | Schedule | Amount | Comments |
| --- | --- | --- | --- | --- | --- |
| MBI | Microsoft Financing | 3 (MBI) | | $261,082 | |
| CDI | Olympic Diamonds Corp. | | XX | $253,137 | |
| CDI | Espeka Israel | 16 (CDI) | | $201,715 | |
| CDI | IGC Group | | XX | $158,513 | |
| MBI | Elite Traveler | | XX | $110,500 | |
| MBI | American Express – Corporate | 11 (MBI) | | $107,589 | |
| MBI | Dell Financial Services | | XX | $108,692 | |
| CDI | Kothari Trading Co., Ltd. | | XX | $107,260 | |
| CDI | Lili Diamonds | 9 (CDI) | | $149,860 | |
| MBI | Curtco Robb Media, LLC | | XX | $104,670 | |
| MBI | American Express Publishing Corp. | | XX | $99,753 | |
| MBI | Modern Luxury, Inc. | | XX | $98,480 | |
| CDI | Diamond Investment Partners, LLC | | XX | $83,463 | |
| CDI | Penta Diamonds Ltd. | | XX | $82,896 | |
| CDI | Novell Collection | 26 (CDI); 15 (MBI) | XX | $76,310 | |
| CDI | Fancy Colors LLC | | XX | $76,105 | |
| MBI | Los Angeles Magazine | 1 (MBI) | | $69,188 | |
| MBI | Inga Moubaiajian | | XX | $62,720 | |
| CDI | Rosy Blue Trading Inc. (New York) | 15 (CDI); 13 (MBI) | | $66,413 | |
| MBI | Great America Leasing Corp. | 2 (MBI) | | $54,727 | |
| MBI | Premium Assignment Corporation | | XX | $54,666 | |
| MBI | C Publishing, LLC DBA C Magazine | 19 (CDI) | | $54,000 | |
| CDI | Airi Beaudry | | XX | $52,455 | |
| CDI | Superb Jewelstar | | XX | $51,429 | |
| CDI | ACG Equipment Finance LLC | | XX | $49,956 | |

1

| Case[2] | Name | UNSECURED CLAIMS | | CLAIMS | |
|---|---|---|---|---|---|
| | | Claim No. | Schedule | Amount | Comments |
| CDI | PDD Diamonds, Ltd. | | XX | $48,375 | |
| CDI | Eurostar Belgium, Inc. | 7 (MBI) | | $47,480 | |
| MBI | Entrée/Southern Accents | | XX | $46,499 | |
| CDI | Brink's Incorporated | | XX | $46,585 | |
| CDI | Federal Express | | XX | $44,250 | |
| CDI | Finesse Diamonds Corp. | 5 (MBI) | | $38,254 | |
| CDI | Crown Color | | XX | $35,818 | |
| CDI | Avles Dani | | XX | $34,705 | |
| CDI | Michael Zelichov Insurance Services, Inc. | | XX | $33,490 | |
| CDI | Wells Fargo Bank | 1 (CDI) | | $31,394 | |
| CDI | Aloni Diamonds Ltd. | | XX | $29,160 | |
| CDI | Moshe Namdar & Co. Inc. | | XX | $27,739 | |
| CDI | American Express – Corporate | 4 (CDI) | | $26,476 | |
| CDI | Gumbiner Savett Inc. | | XX | $25,947 | |
| MBI | Capitol File Magazine, LLC | | XX | $25,100 | |
| MBI | Gotham Media LLC | | XX | $24,600 | |
| CDI | UPS United Parcel Service | | XX | $23,666 | |
| CDI | AIG Workers Compensation Group | | XX | $22,987 | |
| MBI | Platinum Guild International USA | | XX | $22,500 | |
| CDI | Ultimate Diamond Co. | | XX | $20,915 | |
| MBI | Gumbiner Savett Inc. | | XX | $22,341 | |
| CDI | Manatt, Phelps & Phillips | 6 (CDI) | | $19,200 | |
| MBI | McMonigle Residential Group | | XX | $18,750 | |
| CDI | E.F.D. Inc. | | XX | $18,572 | |
| CDI | Employers Compensation Insurance Group | 25 (CDI) | | $3,538 | |
| CDI | Simply Diamonds – V | 13 (CDI) | | $17,530 | |
| MBI | Action Support Inc. | 27 (CDI) | | $20,405 | |

2

IDOCS\12999.3\1019924.2

| Case[2] | Name | UNSECURED CLAIMS | | CLAIMS | |
| --- | --- | --- | --- | --- | --- |
| | | Claim No. | Schedule | Amount | Comments |
| CDI | First Federal Leasing | | XX | $16,135 | |
| MBI | Ragar Company, Inc. | 4 (MBI) | | $16,040 | |
| CDI | IRS | 2 (CDI) | | $3,212 | |
| MBI | Continental Exhibit Group | | XX | $14,065 | |
| CDI | Eran Michovitz | | XX | $13,733 | |
| CDI | Tahitian South Sea Pearls | | XX | $13,575 | |
| CDI | Diamond concepts, Inc. | | XX | $11,875 | |
| CDI | Varsha Diamonds, Inc. | | XX | $11,630 | |
| MBI | Robert Siragusa | 8 & 11(CDI) | | $11,538 | |
| MBI | Citibusiness Card | | XX | $12,762 | |
| CDI | GemWave Inc. | | XX | $10,993 | |
| CDI | Disons Gems, Inc. | | XX | $10,150 | |
| CDI | H.K. Mallak Inc. | | XX | $10,041 | |
| CDI | Caron Jewelry | | XX | $11,507 | |
| CDI | S.A. Casting | 22 (CDI) | | $7,868 | |
| MBI | Quail Lodge Resort & Golf Club | | XX | $7,500 | |
| CDI | City of Los Angeles, Dept. of Public Works | | XX | $7,156 | |
| CDI | Craig Gebauer | | XX | $7,000 | |
| CDI | Manak Jewels | | XX | $6,931 | |
| CDI | Imperial Gems S.A. | | XX | $6,760 | |
| MBI | Advanta (Mastercard) | 17 (MBI) | | $7,492 | |
| CDI | Verizon Wireless-Bus | 21 (CDI) | | $3,574 | |
| MBI | Aspen Peak Magazine, LLC | | XX | $5,100 | |
| CDI | M.K. Diamond & Jewelry | | XX | $4,975 | |
| CDI | AG Healing & Air Conditioning | | XX | $5,085 | |
| MBI | Pinkerton Consulting & Investigatinos | | XX | $4,600 | |
| CDI | Staples | | XX | $4,472 | |

IDOCS:12999.3:1019924.2

| | | UNSECURED CLAIMS | | CLAIMS | |
| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
|---|---|---|---|---|---|
| MBI | State Board of Equalization | | XX | $4,448 | |
| CDI | SDNY | | XX | $4,357 | |
| CDI | LADWP (Power) | | XX | $4,218 | |
| CDI | Navco Security Systems | | XX | $4,074 | |
| CDI | Benefit Planning Inc. | | XX | $4,050 | |
| CDI | Yerudiam Yossi Yerushami Diamond Cutters | | XX | $3,696 | |
| CDI | Office Cleaning Pros, LLC | | XX | $3,500 | |
| CDI | Principal Financial Group | | XX | $3,362 | |
| CDI | Century Rooter | | XX | $3,285 | |
| CDI | Universal Diamonds | | XX | $3,234 | |
| CDI | FTB | 29 (CDI); 16 (MBI) | | $2,398 | |
| MBI | Nicholas G. Koontz | | XX | $2,100 | |
| CDI | Professional Security Consultants | | XX | $2,051 | |
| CDI | K. Girdharlal | | XX | $2,035 | |
| CDI | AICCO, Inc. | | XX | $1,944 | |
| CDI | GIA Gem Trade Laboratory | | XX | $1,907 | |
| CDI | The Hartford Insurance | | XX | $7,545 | |
| CDI | Positive Lab Service | | XX | $1,830 | |
| CDI | Fedex Customer | 28 (CDI) | | $43,983 | |
| CDI | Home Depot | | XX | $1,753 | |
| CDI | Pitney Bowes Purchase Power (postage) | 14 (CDI) | | $1,661 | |
| CDI | Paetec | | XX | $1,640 | |
| CDI | TimeClock Sales and Services | | XX | $1,525 | |
| MBI | Myers Dawes Andras & Sherman LLP | 10 (CDI) | | $1,471 | |
| MBI | City of LA Office of Finance | | XX | $1,384 | |
| CDI | The Bureau of National Affairs | | XX | $1,347 | |
| CDI | Truog-Ryding Company, Inc. | | XX | $1,333 | |

4

IDOCS:12999.3:1019924.2

| Case[2] | Name | UNSECURED CLAIMS | | CLAIMS | |
|---|---|---|---|---|---|
| | | Claim No. | Schedule | Amount | Comments |
| MBI | PaperGirl | | XX | $1,320 | |
| CDI | LAFD (LA Fire Department) | | XX | $1,312 | |
| CDI | Detection Logic | | XX | $1,275 | |
| CDI | Schindler Elevator Corporation | 12 (MBI) | | $885 | |
| CDI | Accurate Messenger Service | | XX | $1,226 | |
| MBI | Edge Solutions Group | | XX | $1,200 | |
| MBI | Photo Basilisk | | XX | $1,102 | |
| CDI | TelePacific Communications | | XX | $1,000 | |
| MBI | Freeman Companies | 17 (CDI) | | $941 | |
| CDI | Superfit, Inc. | | XX | $922 | |
| CDI | Arrowhead | | XX | $908 | |
| CDI | MXLogic | | XX | $839 | |
| CDI | Chief Fire Protection, Inc. | | XX | $800 | |
| CDI | OMI Gems, Inc. | | XX | $798 | |
| CDI | EBI (Employment Background) | | XX | $794 | |
| MBI | AGTA American Gem Trade Association | | XX | $740 | |
| MBI | Sistems Integration, Inc. | | XX | $1,030 | |
| CDI | De Beer Watch | | XX | $669 | |
| CDI | Pitney Bowes (Lease) | | XX | $626 | |
| CDI | MBSG-Millennium Business Solutions Group | | XX | $595 | |
| CDI | Office of Finance, City of Los Angeles | | XX | $595 | |
| CDI | Encover | | XX | $587 | |
| CDI | Massimo Jewelry | | XX | $560 | |
| CDI | Artin Amirayan Jewelers | | XX | $560 | |
| MBI | Dilco Ind., Inc. | | XX | $557 | |
| CDI | AT&T | | XX | $536 | |
| CDI | Lord Jewelry | | XX | $500 | |

| Case[2] | Name | Claim No. | Schedule | Amount | Comments |
|---|---|---|---|---|---|
| | | **UNSECURED CLAIMS** | | | **CLAIMS** |
| CDI | Malca-Amit Custom House Brokers, Inc. | | XX | $500 | |
| CDI | Vyacheslav Kalenyuk | | XX | $500 | |
| CDI | Uline | | XX | $495 | |
| MBI | Cappello Capital Corp. | | XX | $439 | |
| MBI | Jewelers Board of Trade | | XX | $437 | |
| CDI | JBT-Jewelers Board of Trade | | XX | $437 | |
| CDI | Sally Phillips | | XX | $429 | |
| CDI | Hostasaurus, Inc. | | XX | $413 | |
| MBI | NYSIF (Work Comp) | | XX | $400 | |
| CDI | Ceridian Benefit Services | | XX | $392 | |
| CDI | NK Supply, Inc. | | XX | $325 | |
| CDI | Royal Gem USA Inc. | | XX | $312 | |
| MBI | Bevan – Bellevue Jewelers | | XX | $465 | |
| CDI | Terminix | | XX | $308 | |
| CDI | AT&T Mobility | | XX | $308 | |
| CDI | Iron Mountain | | XX | $299 | |
| MBI | DIRECTV | | XX | $250 | |
| CDI | Design Kart | | XX | $236 | |
| MBI | Illuminex Diamonds | | XX | $228 | |
| CDI | Bergman & Dacey, Inc. | | XX | $175 | |
| CDI | A to Z Jewelry Tools & Supply | | XX | $157 | |
| CDI | Barry I. Rogoff Diamond Cutters, Inc. | | XX | $152 | |
| CDI | J & P Oxygen | | XX | $135 | |
| CDI | Calif. Chamber of Commerce | | XX | $124 | |
| CDI | Employment Development Dept. | | XX | $120 | |
| CDI | LA County Agr Comr/Wts & Meas | | XX | $109 | |
| CDI | LAPD (water) | | XX | $100 | |
| CDI | Sara Gem Corp. | | XX | | |

6

| Case[2] | Name | UNSECURED CLAIMS | | CLAIMS | |
|---|---|---|---|---|---|
| | | Claim No. | Schedule | Amount | Comments |
| CDI | EGL USA | | XX | $90 | |
| CDI | Dunbar Armored Air | 12 (CDI) | | $64 | |
| CDI | Travelers | | XX | $63 | |
| CDI | Albert Cohen | | XX | $62 | |
| MBI | Steven Moore | | XX | $110,182 | |
| CDI | Gemelody Inc. | | XX | $50 | |
| CDI | Hershel Horowitz Corp. | | XX | $45 | |
| CDI | B. B. Miller, Inc. | | XX | $35 | |
| CDI | Gottlieb & Sons | | XX | $28 | |
| CDI | 4G's Trading Corp. | | XX | $23 | |
| CDI | County of Los Angeles (backflow permit) | | XX | $20 | |
| CDI | Humana Dental | | XX | $16 | |
| MBI | Exclusive Protection | 23 (CDI) | | $12,170 | |
| CDI | Guild Laboratories | 7 (CDI) | | $5,375 | |
| MBI | Carey International | | XX | $259 | |
| MBI | FedEx | | XX | $89 | |
| MBI/CDI | EDF Resource Capital, Inc. | | | $1,521,523 | |
| MBI/CDI | IRS | | | $129,915 | |
| | | | | $5,545,323.00 | |

[1] These claims were either filed as general unsecured claims and have not been objected to as of the date of the Disclosure Statement, or were scheduled by the Debtor as undisputed. These claims remain subject to objection under the Plan. These claims do not include claims of insiders/affiates which are subordinated under the Plan.

[2] If the claims were scheduled, then the claimant filed a claim, the filed claim supersedes the scheduled claim, and is the claim included in the Plan and not included in this Schedule.

7

# EXHIBIT "B"

1

## **EXHIBIT "B"- CASH FLOW PROJECTIONS FOR PLAN**

2

3    Included in the cash flow projections are collections on FCC Consigned Inventory as well as

4    reductions to FCC Consigned Inventory.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

**MBI & CDI**
**Summary Cash Flow Budget**
**2010**

| | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|
| **Receipts** | | | | | | |
| Collections on 12.31.09 AR | 273,714 | 227,714 | 181,714 | - | - | - |
| Collections on: | | | | | | |
| Sales: MBI Inventory Sales | - | - | - | - | - | - |
| Sales: FCC Consigned Inventory | - | 330,000 | 228,000 | 80,000 | 275,000 | 430,000 |
| Other Income (repairs, shipping, scrap) | - | 12,500 | 16,762 | 16,246 | 3,295 | 5,565 |
| Other | - | - | - | - | - | - |
| Total Receipts | 273,714 | 570,214 | 426,475 | 96,246 | 278,295 | 435,565 |
| | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | |
| **Operations** | | | | | | |
| Purchases | 13,000 | 500 | 12,000 | 60,000 | 60,000 | 75,000 |
| Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 |
| Utilities | 5,000 | 6,000 | 7,250 | 5,000 | 5,000 | 6,250 |
| Marketing | 7,000 | 25,750 | 12,000 | 12,500 | 20,000 | 17,500 |
| Sales Expense- Travel | 12,000 | 12,000 | 10,250 | 9,000 | 12,000 | 13,000 |
| Other Expenses | 1,500 | 4,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees | - | - | 5,000 | 4,000 | 10,000 | 10,000 |
| Legal Fees | 14,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Rent / Mortgage - 8th Street | 15,000 | 43,000 | 29,000 | 29,000 | 29,000 | 29,000 |
| Building Maintenance | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Lease/Fixed Payments | - | 2,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Insurance | 2,700 | 2,700 | 5,000 | 5,000 | 5,000 | 5,000 |
| Bank Fees | 700 | 700 | 1,000 | 1,000 | 1,000 | 1,000 |
| US Trustee Fees | 6,000 | 6,000 | 3,500 | 3,500 | 3,500 | 3,500 |
| Shipping | 1,500 | 2,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Total Operations Expenses | 108,400 | 149,150 | 149,500 | 186,500 | 203,000 | 224,750 |
| | | | | | | |
| **Payroll** | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 |
| Payroll - Commissions | - | 1,080 | - | 2,000 | 2,000 | 2,000 |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 |
| Payroll- Office | 14,014 | 14,014 | 21,021 | 12,094 | 12,094 | 12,094 |
| Payroll- Exec Mgmt | 20,000 | 20,000 | 30,000 | 6,924 | 6,924 | 6,924 |
| Payroll- Officer | 23,000 | 23,000 | 34,500 | 23,000 | 23,000 | 23,000 |
| Payroll Taxes | 8,700 | 8,808 | 13,050 | 7,401 | 7,401 | 7,401 |
| Total Payroll Expenses | 95,702 | 96,890 | 143,553 | 81,407 | 81,407 | 81,407 |
| | | | | | | |
| Total Ops Disbursements | 204,102 | 246,040 | 293,053 | 267,907 | 284,407 | 306,157 |
| | | | | | | |
| **Other Disbursement Forecast:** | | | | | | |
| FCC Adequate Protection Payment/ Cash Colla | - | - | 105,000 | - | - | 112,570 |
| | | | | | | |
| Total Other Disbursements | - | - | 105,000 | - | - | 112,570 |
| | | | | | | |
| Total Disbursements | 204,102 | 246,040 | 398,053 | 267,907 | 284,407 | 418,727 |
| | | | | | | |
| **Net Change in Cash** | 69,611 | 324,173 | 28,422 | (171,660) | (6,112) | 16,838 |
| **Cumulative Change in Cash** | 69,611 | 393,785 | 422,207 | 250,547 | 244,435 | 261,273 |

Numbers and Assumptions Provided by Management
Draft - Confidential - For Discussion Purposes Only

**MBI & CDI**
**Summary Cash Flow Budget**
**2010**

|  |  | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | |
| | MBI Traditional Sales | 0 | 0 | 0 | 0 | 0 | 0 |
| | FCC Consigned Lot Sales | 330,000 | 208,000 | 100,000 | 275,000 | 375,000 | 275,000 |
| | MBI Other Income (repairs, shipping, scrap) | 12,500 | 12,700 | 20,308 | 3,295 | 3,125 | 12,200 |
| | Total Sales | 342,500 | 220,700 | 120,308 | 278,295 | 378,125 | 287,200 |
| | | | | | | | |
| **Collateral** | | | | | | | |
| | Beginning Inventory | 9,568,708 | 9,441,208 | 9,600,377 | 9,592,377 | 9,474,127 | 9,265,877 |
| | Purchases | 41,000 | 28,500 | 47,000 | 88,000 | 88,000 | 110,000 |
| | Court Ordered Returns | - | 244,269 | - | - | - | - |
| | COGS- MBI New Mfg Sales | - | - | - | - | - | - |
| | COGS- FCC Consigned Lot Sales | 168,500 | 113,600 | 55,000 | 206,250 | 296,250 | 206,250 |
| | Ending Inventory | 9,441,208 | 9,600,377 | 9,592,377 | 9,474,127 | 9,265,877 | 9,169,627 |
| | | | | | | | |
| | Beg A/R | 683,141 | 751,927 | 402,414 | 96,246 | 278,295 | 378,125 |
| | Sales | 342,500 | 220,700 | 120,308 | 278,295 | 378,125 | 287,200 |
| | Collections | (273,714) | (570,214) | (426,475) | (96,246) | (278,295) | (435,565) |
| | End A/R | 751,927 | 402,414 | 96,246 | 278,295 | 378,125 | 229,760 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2010**

| | | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | |
| | Collections on 12.31.09 AR | - | - | - | - | - | - | 683,141 |
| | Collections on: | | | | | | | |
| | Sales: MBI Inventory Sales | - | - | - | - | 250,000 | 360,000 | 610,000 |
| | Sales: FCC Consigned Inventory | 220,000 | 625,000 | 450,000 | 300,000 | 550,000 | 1,010,000 | 4,498,000 |
| | Other Income (repairs, shipping, scrap) | 9,760 | 4,623 | 8,000 | 12,000 | 6,500 | 9,800 | 105,051 |
| | Other | - | - | - | - | - | - | |
| | **Total Receipts** | **229,760** | **629,623** | **458,000** | **312,000** | **806,500** | **1,379,800** | **5,896,192** |
| | | | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | | | |
| | **Operations** | | | | | | | |
| | Purchases | 60,000 | 100,000 | 621,250 | 287,000 | 478,625 | 888,125 | 2,655,500 |
| | Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 | 364,000 |
| | Utilities | 5,000 | 5,000 | 6,250 | 5,000 | 5,000 | 6,250 | 67,000 |
| | Marketing | 6,000 | 6,000 | 7,500 | 6,000 | 10,750 | 31,250 | 162,250 |
| | Sales Expense- Travel | 10,000 | 10,000 | 13,500 | 12,000 | 15,250 | 15,000 | 144,000 |
| | Other Expenses | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 60,500 |
| | Professional Fees | 10,000 | 5,000 | 25,000 | - | - | - | 69,000 |
| | Legal Fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 179,000 |
| | Rent / Mortgage - 8th Street | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 348,000 |
| | Building Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| | Lease/Fixed Payments | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 52,000 |
| | Insurance | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 55,400 |
| | Bank Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,400 |
| | US Trustee Fees | 3,500 | 3,500 | 3,500 | 3,500 | | | 40,000 |
| | Shipping | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 39,000 |
| | **Total Operations Expenses** | **187,000** | **222,000** | **776,500** | **411,000** | **602,125** | **1,040,125** | **4,260,050** |
| | | | | | | | | |
| | **Payroll** | | | | | | | |
| | Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 | 122,070 |
| | Payroll - Commissions | 2,000 | 2,000 | 2,000 | 8,000 | 8,000 | 8,000 | 37,080 |
| | Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 | 217,776 |
| | Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 | 49,998 |
| | Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 | 163,942 |
| | Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 | 135,778 |
| | Payroll- Officer | 23,000 | 23,000 | 34,500 | 23,000 | 23,000 | 23,000 | 299,000 |
| | Payroll Taxes | 7,401 | 7,401 | 11,001 | 8,001 | 8,001 | 8,001 | 102,564 |
| | **Total Payroll Expenses** | **81,407** | **81,407** | **121,010** | **88,007** | **88,007** | **88,007** | **1,128,208** |
| | | | | | | | | |
| | **Total Ops Disbursements** | **268,407** | **303,407** | **897,510** | **499,007** | **690,132** | **1,128,132** | **5,388,258** |
| | | | | | | | | |
| **Other Disbursement Forecast:** | | | | | | | | |
| | FCC Adequate Protection Payment/ Cash Colla | - | - | - | - | - | - | 217,570 |
| | **Total Other Disbursements** | **-** | **-** | **-** | **-** | **-** | **-** | **217,570** |
| | | | | | | | | |
| | **Total Disbursements** | **268,407** | **303,407** | **897,510** | **499,007** | **690,132** | **1,128,132** | **5,605,828** |
| | | | | | | | | |
| **Net Change in Cash** | | (38,647) | 326,216 | (439,510) | (187,007) | 116,368 | 251,668 | 290,363 |
| **Cumulative Change in Cash** | | 222,627 | 548,843 | 109,333 | (77,673) | 38,695 | 290,363 | |

**MBI & CDI**
**Summary Cash Flow Budget**
**2010**

| | | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | |
| | MBI Traditional Sales | 0 | 0 | 0 | 250,000 | 300,000 | 300,000 | 850,000 |
| | FCC Consigned Lot Sales | 375,000 | 625,000 | 375,000 | 550,000 | 800,000 | 1,050,000 | 5,338,000 |
| | MBI Other Income (repairs, shipping, scrap) | 4,623 | 5,000 | 15,000 | 6,500 | 6,500 | 16,500 | 118,251 |
| | Total Sales | 379,623 | 630,000 | 390,000 | 806,500 | 1,106,500 | 1,366,500 | 6,306,251 |
| **Collateral** | | | | | | | | |
| | Beginning Inventory | 9,169,627 | 8,961,377 | 8,543,127 | 8,356,877 | 7,942,377 | 7,305,377 | 9,568,708 |
| | Purchases | 88,000 | 128,000 | 110,000 | 78,000 | 78,000 | 85,000 | 969,500 |
| | Court Ordered Returns | - | - | - | - | - | - | 244,269 |
| | COGS- MBI New Mfg Sales | - | - | - | 112,500 | 135,000 | 135,000 | 382,500 |
| | COGS- FCC Consigned Lot Sales | 296,250 | 546,250 | 296,250 | 380,000 | 580,000 | 767,500 | 3,912,100 |
| | Ending Inventory | 8,961,377 | 8,543,127 | 8,356,877 | 7,942,377 | 7,305,377 | 6,487,877 | 6,487,877 |
| | Beg A/R | 229,760 | 379,623 | 380,000 | 312,000 | 806,500 | 1,106,500 | 683,141 |
| | Sales | 379,623 | 630,000 | 390,000 | 806,500 | 1,106,500 | 1,366,500 | 6,306,251 |
| | Collections | (229,760) | (629,623) | (458,000) | (312,000) | (806,500) | (1,379,800) | (5,896,192) |
| | End A/R | 379,623 | 380,000 | 312,000 | 806,500 | 1,106,500 | 1,093,200 | 1,093,200 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2011**

| | | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| | Collections on 12.31.10 AR | 410,400 | 364,400 | 318,400 | - | - | - |
| | Collections on: | | | | | | |
| | Sales: MBI Inventory Sales | - | 50,000 | 60,000 | 40,000 | 100,000 | 100,000 |
| | Sales: FCC Consigned Inventory | - | 325,000 | 940,000 | 660,000 | 300,000 | 460,000 |
| | Other Income (repairs, shipping, scrap) | - | 11,250 | 16,500 | 17,000 | 6,500 | 9,600 |
| | Other | - | - | - | - | - | - |
| | **Total Receipts** | 410,400 | 750,650 | 1,334,900 | 717,000 | 406,500 | 569,600 |
| | | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | | |
| | **Operations** | | | | | | |
| | Purchases | 822,000 | 295,000 | 564,000 | 896,000 | 297,500 | 398,000 |
| | Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 |
| | Utilities | 5,000 | 6,000 | 7,250 | 5,000 | 5,000 | 6,250 |
| | Marketing | 7,000 | 25,750 | 12,000 | 12,500 | 20,000 | 35,000 |
| | Sales Expense- Travel | 12,000 | 12,000 | 10,250 | 9,000 | 12,000 | 13,000 |
| | Other Expenses | 1,500 | 4,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | Professional Fees | 5,000 | 5,000 | 15,000 | 15,000 | - | - |
| | Legal Fees | 25,000 | 20,000 | 20,000 | 20,000 | 20,000 | 15,000 |
| | Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| | Building Maintenance | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | Lease/Fixed Payments | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| | Bank Fees | 700 | 700 | 1,000 | 1,000 | 1,000 | 1,000 |
| | Shipping | 1,500 | 2,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| | **Total Operations Expenses** | 937,200 | 427,450 | 701,500 | 1,023,500 | 420,500 | 540,250 |
| | | | | | | | |
| | **Payroll** | | | | | | |
| | Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 |
| | Payroll - Commissions | - | - | - | 5,000 | 5,000 | 15,000 |
| | Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 |
| | Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 |
| | Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 |
| | Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 |
| | Payroll- Officer | 23,000 | 23,000 | 34,500 | 23,000 | 23,000 | 23,000 |
| | Payroll Taxes | 7,201 | 7,201 | 10,801 | 7,701 | 7,701 | 8,701 |
| | **Total Payroll Expenses** | 79,207 | 79,207 | 118,810 | 84,707 | 84,707 | 95,707 |
| | | | | | | | |
| | **Total Ops Disbursements** | 1,016,407 | 506,657 | 820,310 | 1,108,207 | 505,207 | 635,957 |
| | | | | | | | |
| **Other Disbursement Forecast:** | | | | | | | |
| | Unsecured creditor payments | - | - | - | - | - | - |
| | | | | | | | |
| | **Total Other Disbursements** | - | - | - | - | - | - |
| | | | | | | | |
| | **Total Disbursements** | 1,016,407 | 506,657 | 820,310 | 1,108,207 | 505,207 | 635,957 |
| | | | | | | | |
| **Net Change in Cash** | | (606,007) | 243,993 | 514,590 | (391,207) | (98,707) | (66,357) |
| **Beginning Cash** | | 290,363 | (315,643) | (71,650) | 442,940 | 51,734 | (46,973) |
| **Ending Cash** | | (315,643) | (71,650) | 442,940 | 51,734 | (46,973) | (113,329) |

**MBI & CDI**
**Summary Cash Flow Budget**
**2011**

| | | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | |
| | MBI Traditional Sales | 50,000 | 50,000 | 50,000 | 100,000 | 50,000 | 250,000 |
| | FCC Consigned Lot Sales | 325,000 | 425,000 | 1,175,000 | 300,000 | 300,000 | 800,000 |
| | Other Income (repairs, shipping, scrap) | 11,250 | 12,250 | 21,250 | 6,500 | 6,000 | 18,000 |
| | Total Sales | 386,250 | 487,250 | 1,246,250 | 406,500 | 356,000 | 1,068,000 |
| | | | | | | | |
| **Collateral** | | | | | | | |
| | Beginning Inventory | 6,487,877 | 6,420,877 | 6,128,377 | 5,293,377 | 5,223,877 | 5,176,877 |
| | Purchases | 128,000 | (52,500) | 160,000 | 128,000 | 128,000 | 160,000 |
| | COGS- MBI New Mfg Sales | 22,500 | 22,500 | 22,500 | 45,000 | 22,500 | 112,500 |
| | COGS- FCC Consigned Lot Sales | 172,500 | 217,500 | 972,500 | 152,500 | 152,500 | 377,500 |
| | COGS- MBI Masterpiece/Extraordinary Sales | - | - | - | - | - | - |
| | COGS- MBI New Couture | - | - | - | - | - | - |
| | Ending Inventory | 6,420,877 | 6,128,377 | 5,293,377 | 5,223,877 | 5,176,877 | 4,846,877 |
| | | | | | | | |
| | Beg A/R | 1,093,200 | 1,069,050 | 805,650 | 717,000 | 406,500 | 356,000 |
| | Sales | 386,250 | 487,250 | 1,246,250 | 406,500 | 356,000 | 1,068,000 |
| | Collections | (410,400) | (750,650) | (1,334,900) | (717,000) | (406,500) | (569,600) |
| | End A/R | 1,069,050 | 805,650 | 717,000 | 406,500 | 356,000 | 854,400 |

Numbers and Assumptions Provided by Management
Draft - Confidential - For Discussion Purposes Only

**MBI & CDI**
**Summary Cash Flow Budget**
**2011**

| | | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | |
| | Collections on 12.31.10 AR | - | - | - | - | - | - | 1,093,200 |
| | Collections on: | | | | | | | |
| | Sales: MBI Inventory Sales | 200,000 | 75,000 | 90,000 | 60,000 | 100,000 | 220,000 | 1,095,000 |
| | Sales: FCC Consigned Inventory | 640,000 | 350,000 | 420,000 | 280,000 | 700,000 | 1,300,000 | 6,375,000 |
| | Other Income (repairs, shipping, scrap) | 14,400 | 6,750 | 18,100 | 15,400 | 18,000 | 28,200 | 161,700 |
| | Other | - | - | - | - | - | - | |
| | Total Receipts | 854,400 | 431,750 | 528,100 | 355,400 | 818,000 | 1,548,200 | 8,724,900 |
| | | | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | | | |
| | Operations | | | | | | | |
| | Purchases | 492,000 | 308,750 | 375,500 | 267,000 | 477,500 | 797,000 | 5,990,250 |
| | Contractors - Production | 28,000 | 28,000 | 35,000 | 28,000 | 28,000 | 35,000 | 364,000 |
| | Utilities | 5,000 | 5,000 | 6,250 | 5,000 | 5,000 | 6,250 | 67,000 |
| | Marketing | 14,000 | 14,000 | 17,500 | 14,000 | 16,750 | 31,250 | 219,750 |
| | Sales Expense- Travel | 10,000 | 10,000 | 13,500 | 12,000 | 15,250 | 15,000 | 144,000 |
| | Other Expenses | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 60,500 |
| | Professional Fees | - | - | - | - | - | - | 40,000 |
| | Legal Fees | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 210,000 |
| | Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| | Building Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| | Lease/Fixed Payments | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| | Bank Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,400 |
| | Shipping | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 39,000 |
| | **Total Operations Expenses** | 602,000 | 418,750 | 500,750 | 384,000 | 595,500 | 937,500 | 7,488,900 |
| | | | | | | | | |
| | Payroll | | | | | | | |
| | Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 | 122,070 |
| | Payroll - Commissions | 6,000 | 6,000 | 6,000 | 13,000 | 19,000 | 17,000 | 92,000 |
| | Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 | 217,776 |
| | Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 | 49,998 |
| | Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 | 157,222 |
| | Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 | 90,012 |
| | Payroll- Officer | 23,000 | 23,000 | 41,550 | 27,700 | 27,700 | 27,700 | 320,150 |
| | Payroll Taxes | 7,801 | 7,801 | 12,106 | 8,971 | 9,571 | 9,371 | 104,923 |
| | **Total Payroll Expenses** | 85,807 | 85,807 | 133,165 | 98,677 | 105,277 | 103,077 | 1,154,151 |
| | | | | | | | | |
| | **Total Ops Disbursements** | 687,807 | 504,557 | 633,915 | 482,677 | 700,777 | 1,040,577 | 8,643,051 |
| | | | | | | | | |
| **Other Disbursement Forecast:** | | | | | | | | |
| | Unsecured creditor payments | - | - | - | 250,000 | - | - | 250,000 |
| | | | | | | | | |
| | **Total Other Disbursements** | - | - | - | 250,000 | - | - | 250,000 |
| | **Total Disbursements** | 687,807 | 504,557 | 633,915 | 732,677 | 700,777 | 1,040,577 | 8,893,051 |
| | | | | | | | | |
| **Net Change in Cash** | | 166,593 | (72,807) | (105,815) | (377,277) | 117,223 | 507,623 | (168,151) |
| **Beginning Cash** | | (113,329) | 53,264 | (19,543) | (125,358) | (502,634) | (385,411) | 290,363 |
| **Ending Cash** | | 53,264 | (19,543) | (125,358) | (502,634) | (385,411) | 122,213 | 122,213 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2011**

| | | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | |
| | MBI Traditional Sales | 75,000 | 75,000 | 75,000 | 100,000 | 150,000 | 350,000 | 1,375,000 |
| | FCC Consigned Lot Sales | 350,000 | 350,000 | 350,000 | 700,000 | 1,100,000 | 1,000,000 | 7,175,000 |
| | Other Income (repairs, shipping, scrap) | 6,750 | 14,250 | 19,250 | 18,000 | 22,500 | 28,500 | 184,500 |
| | Total Sales | 431,750 | 439,250 | 444,250 | 818,000 | 1,272,500 | 1,378,500 | 8,734,500 |
| | | | | | | | | |
| **Collateral** | | | | | | | | |
| | Beginning Inventory | 4,846,877 | 4,766,127 | 4,685,377 | 4,636,627 | 4,387,127 | 3,900,127 | 6,487,877 |
| | Purchases | 128,000 | 128,000 | 160,000 | 128,000 | 128,000 | 85,000 | 1,408,500 |
| | COGS- MBI New Mfg Sales | 33,750 | 33,750 | 33,750 | 45,000 | 67,500 | 157,500 | 618,750 |
| | COGS- FCC Consigned Lot Sales | 175,000 | 175,000 | 175,000 | 332,500 | 547,500 | 502,500 | 3,952,500 |
| | COGS- MBI Masterpiece/Extraordinary Sales | - | - | - | - | - | - | - |
| | COGS- MBI New Couture | - | - | - | - | - | - | - |
| | Ending Inventory | 4,766,127 | 4,685,377 | 4,636,627 | 4,387,127 | 3,900,127 | 3,325,127 | 3,325,127 |
| | | | | | | | | |
| | Beg A/R | 854,400 | 431,750 | 439,250 | 355,400 | 818,000 | 1,272,500 | 1,093,200 |
| | Sales | 431,750 | 439,250 | 444,250 | 818,000 | 1,272,500 | 1,378,500 | 8,734,500 |
| | Collections | (854,400) | (431,750) | (528,100) | (355,400) | (818,000) | (1,548,200) | (8,724,900) |
| | End A/R | 431,750 | 439,250 | 355,400 | 818,000 | 1,272,500 | 1,102,800 | 1,102,800 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2012**

| | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|
| **Receipts** | | | | | | |
| Collections on 12.31.11 AR | 735,200 | 367,600 | - | - | - | - |
| Collections on: | | | | | | |
|    Sales: MBI Inventory Sales | - | 350,000 | 620,000 | 280,000 | 350,000 | 890,000 |
|    Sales: FCC Consigned Inventory | - | - | - | - | - | - |
|    MBI Other Income (repairs, shipping, scra | - | 11,000 | 16,200 | 12,800 | 6,000 | 10,100 |
| Total Receipts | 735,200 | 728,600 | 636,200 | 292,800 | 356,000 | 900,100 |
| | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | |
| **Operations** | | | | | | |
| Purchases | 528,000 | 407,500 | 429,000 | 126,000 | 157,500 | 508,600 |
| Contractors - Production | 50,000 | 50,000 | 62,500 | 50,000 | 50,000 | 62,500 |
| Utilities | 5,000 | 6,000 | 7,250 | 5,000 | 5,000 | 6,250 |
| Marketing | 14,000 | 29,000 | 25,000 | 12,500 | 20,000 | 45,000 |
| Sales Expense- Travel | 12,000 | 12,000 | 10,250 | 9,000 | 12,000 | 13,000 |
| Other Expenses | 1,500 | 4,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees | 5,000 | 5,000 | 15,000 | 15,000 | - | - |
| Legal Fees | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Building Maintenance | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Lease/Fixed Payments | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Bank Fees | 700 | 700 | 1,000 | 1,000 | 1,000 | 1,000 |
| Shipping | 1,500 | 2,500 | 3,500 | 3,500 | 3,500 | 3,500 |
|    **Total Operations Expenses** | 654,700 | 557,700 | 594,500 | 263,000 | 290,000 | 680,850 |
| | | | | | | |
| **Payroll** | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 |
| Payroll - Commissions | - | - | - | - | - | - |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 |
| Payroll- Officer | 27,700 | 27,700 | 41,550 | 27,700 | 27,700 | 27,700 |
| Payroll Taxes | 7,671 | 7,671 | 11,506 | 7,671 | 7,671 | 7,671 |
|    **Total Payroll Expenses** | 84,377 | 84,377 | 126,565 | 84,377 | 84,377 | 84,377 |
| | | | | | | |
|    **Total Ops Disbursements** | 739,077 | 642,077 | 721,065 | 347,377 | 374,377 | 765,227 |
| | | | | | | |
| **Other Disbursement Forecast:** | | | | | | |
| Unsecured creditor payments | - | - | - | - | - | - |
| | | | | | | |
|    **Total Other Disbursements** | - | - | - | - | - | - |
| | | | | | | |
|    **Total Disbursements** | 739,077 | 642,077 | 721,065 | 347,377 | 374,377 | 765,227 |
| | | | | | | |
| **Net Change in Cash** | (3,877) | 86,523 | (84,865) | (54,577) | (18,377) | 134,873 |
| **Beginning Cash** | 122,213 | 118,336 | 204,859 | 119,995 | 65,418 | 47,041 |
| **Ending Cash** | 118,336 | 204,859 | 119,995 | 65,418 | 47,041 | 181,915 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2012**

|  |  | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | |
| | MBI Traditional Sales | 350,000 | 550,000 | 350,000 | 350,000 | 350,000 | 950,000 |
| | FCC Consigned Lot Sales | 0 | 0 | 0 | 0 | 0 | 0 |
| | MBI Masterpiece/Extraordinary Sales | 0 | 0 | 0 | 0 | 0 | 350,000 |
| | MBI Other Income (repairs, shipping, scrap) | 11,000 | 13,000 | 16,000 | 6,000 | 6,000 | 20,500 |
| | Total Sales | 361,000 | 563,000 | 366,000 | 356,000 | 356,000 | 1,320,500 |
| | | | | | | | |
| **Collateral** | | | | | | | |
| | Beginning Inventory | 3,325,127 | 3,217,627 | 3,270,127 | 3,325,127 | 3,217,627 | 3,110,127 |
| | Purchases | 50,000 | 300,000 | 212,500 | 50,000 | 50,000 | 287,500 |
| | COGS- MBI New Mfg Sales | 157,500 | 247,500 | 157,500 | 157,500 | 157,500 | 427,500 |
| | COGS- FCC Consigned Lot Sales | - | - | - | - | - | - |
| | COGS- MBI Masterpiece/Extraordinary Sales | - | - | - | - | - | 203,000 |
| | Ending Inventory | 3,217,627 | 3,270,127 | 3,325,127 | 3,217,627 | 3,110,127 | 2,767,127 |
| | | | | | | | |
| | Beg A/R | 1,102,800 | 728,600 | 563,000 | 292,800 | 356,000 | 356,000 |
| | Sales | 361,000 | 563,000 | 366,000 | 356,000 | 356,000 | 1,320,500 |
| | Collections | (735,200) | (728,600) | (636,200) | (292,800) | (356,000) | (900,100) |
| | End A/R | 728,600 | 563,000 | 292,800 | 356,000 | 356,000 | 776,400 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2012**

| | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| Collections on 12.31.11 AR | - | - | - | - | - | - | 1,102,800 |
| Collections on: | | | | | | | |
| Sales: MBI Inventory Sales | 760,000 | 400,000 | 520,000 | 480,000 | 1,300,000 | 2,000,000 | 7,950,000 |
| Sales: FCC Consigned Inventory | - | - | - | - | - | - | - |
| MBI Other Income (repairs, shipping, scra | 16,400 | 6,500 | 18,200 | 16,800 | 18,500 | 37,500 | 170,000 |
| Total Receipts | 776,400 | 406,500 | 538,200 | 496,800 | 1,318,500 | 2,037,500 | 9,222,800 |
| | | | | | | | |
| **Ops Disbursement Forecast:** | | | | | | | |
| **Operations** | | | | | | | |
| Purchases | 504,400 | 255,000 | 309,000 | 216,000 | 882,500 | 1,711,000 | 6,034,500 |
| Contractors - Production | 50,000 | 50,000 | 62,500 | 50,000 | 50,000 | 62,500 | 650,000 |
| Utilities | 5,000 | 5,000 | 6,250 | 5,000 | 5,000 | 6,250 | 67,000 |
| Marketing | 12,000 | 10,500 | 15,000 | 12,000 | 15,250 | 31,250 | 241,500 |
| Sales Expense- Travel | 10,000 | 10,000 | 13,500 | 12,000 | 15,250 | 15,000 | 144,000 |
| Other Expenses | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 60,500 |
| Professional Fees | - | - | - | - | - | - | 40,000 |
| Legal Fees | 5,000 | 5,000 | - | - | - | - | 45,000 |
| Rent / Mortgage - 8th Street | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Building Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Lease/Fixed Payments | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Insurance | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Bank Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,400 |
| Shipping | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 39,000 |
| **Total Operations Expenses** | 626,900 | 376,000 | 446,750 | 340,500 | 1,008,500 | 1,866,500 | 7,705,900 |
| | | | | | | | |
| **Payroll** | | | | | | | |
| Payroll - Production | 9,390 | 9,390 | 14,085 | 9,390 | 9,390 | 9,390 | 122,070 |
| Payroll - Commissions | - | - | - | - | - | - | - |
| Payroll- Sales | 16,752 | 16,752 | 25,128 | 16,752 | 16,752 | 16,752 | 217,776 |
| Payroll- Inventory | 3,846 | 3,846 | 5,769 | 3,846 | 3,846 | 3,846 | 49,998 |
| Payroll- Office | 12,094 | 12,094 | 18,141 | 12,094 | 12,094 | 12,094 | 157,222 |
| Payroll- Exec Mgmt | 6,924 | 6,924 | 10,386 | 6,924 | 6,924 | 6,924 | 90,012 |
| Payroll- Officer | 27,700 | 27,700 | 41,550 | 27,700 | 27,700 | 27,700 | 360,100 |
| Payroll Taxes | 7,671 | 7,671 | 11,506 | 7,671 | 7,671 | 7,671 | 99,718 |
| **Total Payroll Expenses** | 84,377 | 84,377 | 126,565 | 84,377 | 84,377 | 84,377 | 1,096,896 |
| | | | | | | | |
| **Total Ops Disbursements** | 711,277 | 460,377 | 573,315 | 424,877 | 1,092,877 | 1,950,877 | 8,802,796 |
| | | | | | | | |
| **Other Disbursement Forecast:** | | | | | | | |
| Unsecured creditor payments | - | - | - | 250,000 | - | - | 250,000 |
| | | | | | | | |
| **Total Other Disbursements** | - | - | - | 250,000 | - | - | 250,000 |
| | | | | | | | |
| **Total Disbursements** | 711,277 | 460,377 | 573,315 | 674,877 | 1,092,877 | 1,950,877 | 9,052,796 |
| | | | | | | | |
| **Net Change in Cash** | 65,123 | (53,877) | (35,115) | (178,077) | 225,623 | 86,623 | 170,004 |
| **Beginning Cash** | 181,915 | 247,038 | 193,162 | 158,047 | (20,030) | 205,593 | 122,213 |
| **Ending Cash** | 247,038 | 193,162 | 158,047 | (20,030) | 205,593 | 292,217 | 292,217 |

**MBI & CDI**
**Summary Cash Flow Budget**
**2012**

|  |  | Jul | Aug | Sept | Oct | Nov | Dec | Jan-Dec |
|---|---|---|---|---|---|---|---|---|
| **Sales** |  |  |  |  |  |  |  |  |
|  | MBI Traditional Sales | 400,000 | 400,000 | 600,000 | 850,000 | 1,500,000 | 2,500,000 | 9,150,000 |
|  | FCC Consigned Lot Sales | 0 | 0 | 0 | 0 | 0 | 0 | - |
|  | MBI Masterpiece/Extraordinary Sales | 0 | 0 | 0 | 0 | 450,000 | 0 | 800,000 |
|  | MBI Other Income (repairs, shipping, scrap) | 6,500 | 14,000 | 21,000 | 18,500 | 29,500 | 40,000 | 202,000 |
|  | Total Sales | 406,500 | 414,000 | 621,000 | 868,500 | 1,979,500 | 2,540,000 | 10,152,000 |
|  |  |  |  |  |  |  |  |  |
| **Collateral** |  |  |  |  |  |  |  |  |
|  | Beginning Inventory | 2,767,127 | 2,637,127 | 2,582,127 | 2,449,627 | 2,117,127 | 1,731,127 | 3,325,127 |
|  | Purchases | 50,000 | 125,000 | 137,500 | 50,000 | 550,000 | 612,500 | 2,475,000 |
|  | COGS- MBI New Mfg Sales | 180,000 | 180,000 | 270,000 | 382,500 | 675,000 | 1,125,000 | 4,117,500 |
|  | COGS- FCC Consigned Lot Sales | - | - | - | - | - | - | - |
|  | COGS- MBI Masterpiece/Extraordinary Sales | - | - | - | - | 261,000 | - | 464,000 |
|  | Ending Inventory | 2,637,127 | 2,582,127 | 2,449,627 | 2,117,127 | 1,731,127 | 1,218,627 | 1,218,627 |
|  |  |  |  |  |  |  |  |  |
|  | Beg A/R | 776,400 | 406,500 | 414,000 | 496,800 | 868,500 | 1,529,500 | 1,102,800 |
|  | Sales | 406,500 | 414,000 | 621,000 | 868,500 | 1,979,500 | 2,540,000 | 10,152,000 |
|  | Collections | (776,400) | (406,500) | (538,200) | (496,800) | (1,318,500) | (2,037,500) | (9,222,800) |
|  | End A/R | 406,500 | 414,000 | 496,800 | 868,500 | 1,529,500 | 2,032,000 | 2,032,000 |

# EXHIBIT "C"

1

**EXHIBIT "C" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME
STATEMENT FOR CURRENT CALENDAR YEAR**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

SECONDTHIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

## Centerstone Diamonds, Inc.& Affiliates
### Combined Balance Sheet
### As of September 30, 2010

| | CDI | MBI | BEVERLY HILLS | 8th Street | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | |
| **Current Assets** | | | | | | | | | |
| **Checking/Savings** | | | | | | | | | |
| 10011 · Union Bank · Tax 2180063032 DIP | 112.35 | | | | | | | | 112.35 |
| 10010 · Union Bank · PR 2180063024 DIP | 313.62 | | | | | | | | 313.62 |
| 10009 · Union Bank · Gen 2180063016 DIP | 1,020.48 | | | | | | | | 1,020.48 |
| 10001 · Petty Cash | 51.04 | 600.00 | 560.13 | | | | | | 1,211.17 |
| 10008 · Union Bank· Misc 2180074026 | | 304.46 | | | | | | | 304.46 |
| 10007 · Union Bank· Tax 2180063067 DIP | | 77.63 | | | | | | | 77.63 |
| 10006 · Union Bank· PR 2180063059 DIP | | -14,559.79 | | | | | | | -14,559.79 |
| 10005 · Union Bank· Gent 2180063040 DIP | | 2,404.06 | | | | | | | 2,404.06 |
| 1099 · Clearing Account for FDC | | 52,075.50 | | | | | | | 52,075.50 |
| 150012 · Citibank CD 287-0094535 | | 2,455.03 | | | | | | | 2,455.03 |
| 110021 · Chase Bank · 8843877285 | | | | 248.83 | | | | | 248.83 |
| 110024 · Chase · 4922747328 | | | 32,967.93 | | | | | | 32,967.93 |
| 10030 · CHASE-4012392208 | | | | | 86,098.52 | | | | 86,098.52 |
| 10005 · USB Checking Account- Swiss | | | | | | -2,918.75 | | | -2,918.75 |
| 10035 · Gen. Acct. · CHASE · 3114312449 | | | | | | | 400.39 | | 400.39 |
| **Total Checking/Savings** | 1,487.49 | 43,356.89 | 33,528.06 | 248.83 | 86,098.52 | -2,918.75 | 400.39 | | 142,211.43 |
| **Accounts Receivable** | | | | | | | | | |
| 12003 · Accounts Receivable-11 | 1,866,817.98 | 342,713.00 | | | | | | -2,102,299.83 | 107,231.15 |
| 12001 · Accounts Receivable | 954,603.89 | 201,807.91 | 8,766.65 | | 137,228.10 | 17,829.95 | | -954,603.89 | 365,712.61 |
| 12002 · Allowance for AR | | -157,677.72 | | | | | | 0.00 | -157,677.72 |
| **Total Accounts Receivable** | 2,821,421.87 | 386,923.19 | 8,766.65 | | 137,228.10 | 17,829.95 | | -3,056,903.72 | 315,266.04 |
| **Other Current Assets** | | | | | | | | | |
| **13000 · Other Current Assets** | | | | | | | | | |
| 13003 · Employee Travel Advance | | 6,827.60 | | | | | | | 6,827.60 |
| 130033 · Loans Receivable | | | | | | | | | |
| **Total 13003 · Loans Receivable** | | 6,827.60 | | | | | | | 6,827.60 |
| **Total 13000 · Other Current Assets** | | 6,827.60 | | | | | | | 6,827.60 |
| 13001 · Undeposited Funds | | 58,775.57 | 112.84 | | | | | | 58,888.41 |
| **13004 · Prepaid Expenses** | | | | | | | | | |
| 13042 · Prepaid Insurance | 4,121.25 | 39,498.90 | 18,162.58 | 1,703.36 | | | | | 63,486.09 |
| 130045 · Prepaid Mktg & Show Expenses | | 30,464.34 | | | | | | | 30,464.34 |
| **Total 13004 · Prepaid Expenses** | 4,121.25 | 69,963.24 | 18,162.58 | 1,703.36 | | | | | 93,940.43 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 1 of 4

66

## Centerstone Diamonds, Inc.& Affiliates
### Combined Balance Sheet
#### As of September 30, 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **13006 · Inventory** | | | | | | | | | |
| 1300053 · Materials & Supplies | 8,481,137.00 | | | | 246,492.44 | | | | 8,727,629.44 |
| 1300700 · Watches | | | | | | 384,500.21 | | | 384,500.21 |
| 1300631 · Diamonds | | | | 50,398.10 | 11,967.73 | | | | 62,386.83 |
| 1300061 · Finished Goods | | | | 3,082.43 | | | | | 3,082.43 |
| 1300635 · Supplies & other Inventories | | | | | 10,005.00 | | | | 10,005.00 |
| 1300650 · Beaudry Home Brand | | | | | | | | | |
| Total 130063 · Materials & Supplies | 8,481,137.00 | | | 53,481.53 | 268,465.17 | 384,500.21 | | | 9,187,593.91 |
| | | | | | | | | | |
| Total 13006 · Inventory | 8,481,137.00 | | | 53,481.53 | 268,465.17 | 384,500.21 | | | 9,187,593.91 |
| 13007 · Due to/from Beaudry Law Offices | | | | | | 10,742.02 | | | 10,742.02 |
| Total Other Current Assets | 8,495,258.25 | 135,556.41 | 1,703.36 | 71,756.95 | 268,465.17 | 395,242.23 | | | 9,357,982.37 |
| | | | | | | | | | |
| Total Current Assets | 11,308,177.61 | 565,836.49 | 1,952.19 | 116,051.66 | 471,791.79 | 410,153.43 | 400.39 | -3,056,903.72 | 9,815,659.84 |
| | | | | | | | | | |
| **Fixed Assets** | | | | | | | | | |
| 14001 · Machinery & Equipment | 100,467.50 | 36,766.23 | 473,820.48 | | | | | | 611,054.21 |
| 14002 · Vehicles/Autos/Trucks | 55,810.15 | | | | | | | | 55,810.15 |
| 140031 · Computers | 133,649.98 | 326,458.89 | | 7,157.36 | | | | | 467,266.23 |
| 140032 · Office Equipment | 214,376.06 | | | | | | | | 214,376.06 |
| 140033 · Furniture & Fixtures | 51,946.27 | 71,294.50 | 14,048.00 | 23,245.50 | | | | | 160,234.27 |
| 140034 · Shop Tools & Small Equipment | 15,164.41 | | | | | | | | 15,164.41 |
| 14004 · Leasehold Improvements | 66,996.72 | 132,950.00 | | 970,237.85 | | | | | 1,190,184.57 |
| 14007 · Construction In Process | 192,659.94 | 23,033.62 | | | | | | | 215,693.56 |
| 14009P · Accumulated Depreciation | -616,833.88 | -307,634.75 | -844,682.65 | -102,641.00 | | | | | -1,871,892.28 |
| 14005 · Building | | | 2,960,072.83 | | | | | | 2,960,072.83 |
| 14006 · Building Improvements | | | 125,794.63 | | | | | | 125,794.63 |
| 14007 · Land | | | 522,385.79 | | | | | | 522,385.79 |
| 14008 · Loan Costs - Building | | | 138,059.76 | | | | | | 138,059.76 |
| 140080 · Accumulated Amort - Loan Costs | | | -33,751.64 | | | | | | -33,751.64 |
| Total Fixed Assets | 233,937.15 | 282,968.49 | 3,355,727.30 | 897,999.71 | | | | | 4,770,632.65 |
| | | | | | | | | | |
| **Other Assets** | | | | | | | | | |
| 150025 · Security Deposits | 3,718.87 | 3,545.52 | | 13,000.00 | | | | | 20,264.39 |
| 150011 · Centurion Jewelry B.I.O., LLC | | 2,616.00 | | | | | | | 2,616.00 |
| Total Other Assets | 3,718.87 | 6,161.52 | | 13,000.00 | | | | | 22,980.39 |
| | | | | | | | | | |
| **TOTAL ASSETS** | 11,548,833.63 | 854,966.50 | 3,357,679.49 | 1,025,051.37 | 471,791.79 | 410,153.43 | 400.39 | -3,056,903.72 | 14,608,072.88 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 2 of 4

## Centerstone Diamonds, Inc.& Affiliates
### Combined Balance Sheet
As of September 30, 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES & EQUITY** | | | | | | | | | |
| **Liabilities** | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | |
| **Accounts Payable** | | | | | | | | | |
| 210011 · Accounts Payable | 2,383,921.99 | 1,663,421.23 | 153,669.22 | 731,548.95 | 149,095.72 | 21,294.55 | 99.00 | -552,100.84 | 4,530,949.82 |
| 210015 · Intercompany Sales- 11 | | 1,550,198.99 | | | | | | -1,550,198.99 | 0.00 |
| 210012 · Intercompany Sales | | 954,603.89 | | | | | | -954,603.89 | |
| **Total Accounts Payable** | 2,383,921.99 | 4,168,224.11 | 153,669.22 | 731,548.95 | 149,095.72 | 21,294.55 | 89.00 | -3,056,903.72 | 4,530,949.82 |
| **Other Current Liabilities** | | | | | | | | | |
| 22003 · Inter-Company Accounts | | | | | | | | | |
| 220044 · Due to/from CDI-B Time Domestic | 1,782.30 | | | | | | -1,782.30 | | |
| 220065 · Due to/from CDI - Beaudry Int'l | 1,362.60 | | | | -1,362.60 | | | | |
| 220038 · Due to/from CDI - Beaudry-BH | 222,984.67 | | | -222,984.67 | | | | | |
| 220036 · Due to/from CDI - B Time Int'l | -233,732.36 | | | | | 233,732.36 | | | |
| 220032 · Due To/From MBI-CDI | 7,314,557.86 | -7,314,557.86 | | | | | | | |
| 220034 · Due to/from CDI-8th Street | 1,500,945.25 | | -1,500,945.25 | | | | | | |
| 220039 · Due to/from MBI - Beaudry-BH | | 22,628.21 | | -22,628.21 | | | | | |
| 220037 · Due to/from MBI - B Time Int'l | | 223,316.46 | | | | -223,316.46 | | | |
| 220031 · Due to/from MBI-8th Street | | -953,628.61 | 953,628.61 | | | | | | |
| 220060 · Due to/from 8th St. - BeaudryBH | | | -94,320.00 | 94,320.00 | | | | | |
| 220048 · Due to/from BT Domestic-BBH | | | | 650.00 | | | -650.00 | | |
| 220042 · Due to/from Beaudry Int'l - BBH | | | | 216,531.30 | -216,531.30 | | | | |
| 220043 · Due to/from BT - Beaudry-BH | | | | -89,308.00 | | 89,308.00 | | | |
| 220052 · Due to/from MGB Dev - BI | | | | | -50,000.00 | | | | 50,000.00 |
| **Total 22003 · Inter-Company Accounts** | 8,807,910.32 | -8,022,243.80 | -641,636.64 | -23,417.58 | -167,893.90 | 99,723.90 | -2,442.30 | | 50,000.00 |
| 22004 · Customer Deposits | | 250,000.00 | | 140,000.00 | | | 4,000.00 | | 384,000.00 |
| 22005 · Loans Payable - Current | | | | | | | | | |
| 230091 · Capital Lease - Current Portion | 18,562.45 | 18,219.00 | | | | | | | 36,781.46 |
| 220057 · Microsoft-CTT Fin. Serv. | | 63,787.52 | | | | | | | 63,787.52 |
| 220054 · Loan - MB | | 15,000.00 | | | | | | | 15,000.00 |
| 220051 · GMAC Loan - Current Portion | | 12,015.92 | | | | | | | 12,015.92 |
| 220053 · LOC - Fleet Capital | | 5,808,187.67 | | | | | | | 5,808,187.67 |
| 230023 · Loan - B of A - ST Portion | | | 309,978.55 | | | | | | 309,078.55 |
| 230026 · Loan - SBA 504 - ST Portion | | | 186,723.24 | | | | | | 186,723.24 |
| 220060 · Loan - MB3 WM Note 1 | | | | 336,125.00 | | | | | 336,125.00 |
| 220059 · Loan - WM Note 3 | | | | 65,000.00 | | | | | 65,000.00 |
| 220054 · Loan - MB1 WM Note 2 | | | | 550,000.00 | | | | | 550,000.00 |
| 220057 · Credit Card - MB3 | | | | 37,121.24 | | | | | 37,121.24 |
| **Total 22005 · Loans Payable - Current** | 18,562.45 | 5,917,210.11 | 496,701.79 | 988,246.24 | | | | | 7,420,720.59 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

## Centerstone Diamonds, Inc. & Affiliates
### Combined Balance Sheet
As of September 30, 2010

| Account | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **22006 · Payroll Liabilities** | | | | | | | | | |
| 220061 · Accrued Payroll | 23,354.84 | 28,998.87 | 15,200.43 | | | | | | 67,554.14 |
| 220082 · Direct Deposit Liabilities | -2,138.54 | -2,138.54 | | | | | | | -2,138.54 |
| 220066 · Federal Payroll Taxes | -4,081.47 | -2,716.36 | -635.98 | | | | | | -8,776.83 |
| 220087 · California Payroll Taxes | -882.05 | -256.62 | | | | | | | -1,674.65 |
| 22070 · Vacation Accrual | 15,561.18 | 4,017.25 | 9,543.54 | | | | | | 29,121.97 |
| 22006 · Payroll Liabilities - Other | -146.00 | -146.00 | -2,710.61 | | | | | | -2,856.61 |
| **Total 22006 · Payroll Liabilities** | 33,972.50 | 27,761.60 | 21,497.38 | | | | | | 83,231.48 |
| 22007 · Sales Tax Payable | | | | 2,390.73 | | | | | 2,390.73 |
| 22008 · Income Tax Payable | 627,300.00 | | | | | | | | 627,300.00 |
| 22001 · Accrued Commissions | 110,181.90 | | | | | | | | 110,181.90 |
| 22002 · Accrued Coop Advertisement | 89,883.75 | | | | | | | | 89,883.75 |
| **Total Other Current Liabilities** | 9,487,745.27 | -1,827,205.44 | -144,934.85 | 1,128,718.77 | -167,983.90 | 99,723.90 | 1,557.70 | | 8,777,708.45 |
| **Total Current Liabilities** | 11,851,607.25 | 2,541,017.07 | 8,734.37 | 1,860,265.72 | -16,798.18 | 121,018.45 | 1,656.70 | -3,056,903.72 | 13,308,658.27 |
| **Long Term Liabilities** | | | | | | | | | |
| 230030 · Equipment Lease Payable - FFL | 5,382.95 | | | | | | | | 5,382.95 |
| 230025 · Equipment Lease Payable - ACG | 27,137.41 | | | | | | | | 27,137.41 |
| 230011 · Due To/From M Beaudry Personal | 521,929.53 | 57,284.88 | 291,534.42 | -334,354.73 | 126,155.78 | | | | 663,529.86 |
| 230012 · AH Beaudry | 52,455.57 | | | | | | | | 52,455.57 |
| 230012 · Due To/From MB (post petition) | | 70,000.00 | | | | | | | 70,000.00 |
| 230033 · Loan - Microsoft - CTT Fin.Serv | | 117,865.86 | | | | | | | 117,865.86 |
| 230041 · Lease Payable | | 10,627.18 | | | | | | | 10,627.18 |
| 230022 · GMAC Loan- Cadillac Escalade | | 21,641.82 | | | | | | | 21,641.82 |
| 230017 · Loan- RTI Properties- Long Term | | | 1,000,000.00 | | | | | | 1,000,000.00 |
| 230013 · Bank of America - 1st | | | 1,776,301.81 | | | | | | 1,776,301.81 |
| 230014 · SBA 504 (A.C. Colson Services) | | | 1,447,681.21 | | | | | | 1,447,681.21 |
| 230018 · Loan- | | | | | | 409,490.07 | | | 409,490.07 |
| **Total Long Term Liabilities** | 606,905.56 | 277,399.72 | 4,515,517.44 | | | 409,490.07 | 1,000.00 | | 5,602,113.84 |
| **Total Liabilities** | 12,458,572.82 | 2,818,417.39 | 4,524,251.81 | 1,525,910.99 | 107,357.60 | 530,508.52 | 2,656.70 | -3,056,903.72 | 18,910,772.11 |
| **Equity** | | | | | | | | | |
| 30002 · Common Stock | 3,000.00 | 1,000.00 | | | | | | | 4,000.00 |
| 30003 · Retained Earnings | -356,805.07 | -920,638.82 | -62,142.63 | -600,089.30 | 85,620.15 | -137,725.16 | -2,026.23 | | -1,993,817.18 |
| Net Income | -558,934.12 | -1,043,811.97 | -349,029.69 | 90,229.68 | 278,814.04 | 17,370.07 | -220.08 | | -1,558,982.07 |
| 30004 · Partner's Capital | | | 100,000.00 | | | | | | 100,000.00 |
| 30060 · Shareholders Distributions | | | -855,000.00 | | | | | | -855,000.00 |
| **Total Equity** | -912,739.19 | -1,963,450.69 | -1,166,572.32 | -509,859.62 | 364,434.19 | -120,355.09 | -2,256.31 | | -4,301,799.23 |
| **TOTAL LIABILITIES & EQUITY** | 11,545,833.63 | 854,966.70 | 3,357,679.49 | 1,025,051.37 | 471,791.79 | 410,153.43 | 400.39 | -3,056,903.72 | 14,608,972.88 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
#### January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | |
| **Income** | | | | | | | | | |
| 40009 · Other Sales and Revenue | | 22,227.54 | | 426.09 | | 17,829.95 | | | 40,483.67 |
| 40001 · Jewelry Sales | 1,692,773.29 | 1,806,110.40 | | | 481,059.98 | | | -1,908,596.35 | 2,191,347.32 |
| 40004 · Shipping Income | 20,494.00 | 20,309.00 | | 1,193.00 | 484.00 | | | -20,494.00 | 21,559.00 |
| 40006 · Recycling Income | 16,604.84 | | | | 2,682.20 | | | | 21,687.13 |
| 40002 · Loose Stone Sales | | 95,376.77 | | 18,394.19 | 1,157.00 | | | | 113,780.93 |
| 40003 · Jewelry Repairs & Rework | | 58,579.45 | | 11,050.00 | | | | | 71,786.45 |
| 40099 · Customer Discounts/Adjustments | | 30,237.30 | | -20,055.12 | | | | | 4,182.18 |
| 40007 · Rental Income | | | 284,500.00 | | | | | -261,000.00 | 23,500.00 |
| 40011 · Jewelry Sales- Interco | | | | 139,194.75 | 292,100.00 | | | -431,294.75 | 0.00 |
| 40005 · Merchandise Sales | | | | 1,263,332.17 | | | | | 1,263,332.17 |
| **Total Income** | 1,702,072.13 | 2,123,940.46 | 284,500.00 | 1,407,495.07 | 777,983.27 | 17,829.95 | | -2,621,385.10 | 3,692,035.78 |
| **Cost of Goods Sold** | | | | | | | | | |
| 50014 · Inventory Adjustment-Lost/Damag | 1,698.56 | | | -130.05 | 606.00 | | | | 2,158.51 |
| 50001 · Diamonds | 1,272,976.09 | 1,662,773.29 | | 127,218.35 | 95,995.93 | | | -1,962,773.29 | 1,400,069.44 |
| 50003 · Jewelry | | | | 196,423.00 | | | | | 286,409.86 |
| 50004 · Vendors - Misc Charges | | | | | 98.28 | | | | 98.28 |
| 50005 · Accessories | 1,254.21 | | | 1,185.96 | 81.66 | | | | 2,551.82 |
| 50006 · Metal | 2,641.00 | | | | 3,799.05 | | | | 6,430.05 |
| 50007 · Certificates | 63.00 | | | | | | | | 191.00 |
| 50008 · Repairs & Rework | | | | 4,222.75 | 1,175.70 | | | | 5,398.45 |
| 50009 · Cost of Goods Sold- Interco | 188,693.00 | 108.00 | | 257,686.00 | | | | -377,117.81 | 0.00 |
| 50010 · Watches - Prototypes | | | | 230,768.81 | | | | | |
| **5010 · Manufacturing Costs** | | | | | | | | | |
| 50103 · Production | 13,318.75 | | | | | | | | 13,318.75 |
| 501032 · Production Staff Payroll | 115,943.19 | | | | | | | | 115,943.19 |
| 50104 · Setting | 110,442.77 | | | | 73,978.79 | | | | 184,421.56 |
| 50105 · Casting | 20,109.38 | | | | 31,833.67 | | | | 51,942.95 |
| 50107 · Fabricating | 71,488.53 | | | | 27,954.41 | | | | 99,442.84 |
| Total 5010 · Manufacturing Costs | 331,302.62 | | | | 133,766.77 | | | | 465,069.29 |
| 50002 · Cost of Goods Sold | | | | | | | | | |
| **Total COGS** | 1,798,540.46 | 1,662,861.29 | | 817,897.05 | 311,440.05 | | | -2,339,891.10 | 2,177,371.90 |
| **Gross Profit** | -96,468.35 | 460,569.17 | 284,500.00 | 589,098.01 | 466,243.22 | 17,829.95 | | -281,494.00 | 1,514,663.88 |
| **Expense** | | | | | | | | | |
| **7000 · Marketing Expenses** | | | | | | | | | |
| 70009 · Ambassador Program | 841.90 | | | | | | | | 841.90 |
| 70000 · Events | 26,939.52 | | | 15,431.15 | | | | | 41,370.67 |
| 70001 · Creative Services | 5,000.00 | | | 8,119.12 | 500.00 | | | | 13,619.12 |
| 70002 · Advertising | 58,200.51 | | | 18,300.79 | | | | | 76,561.30 |
| 70003 · Photography | 11,639.15 | | | 9,737.84 | 15,847.00 | | | | 37,223.69 |
| 70008 · Public Relations | 2,975.00 | | | | | | | | 2,975.00 |
| 70007 · Tradeshows | 118,626.05 | | | | | | | | 118,026.05 |
| **Total 7000 · Marketing Expenses** | 223,422.13 | | | 51,648.90 | 16,147.00 | | | | 291,217.73 |

**FOR INTERNAL MANAGEMENT PURPOSES ONLY**

## Centerstone Diamonds, Inc. & Affiliates
### Combined Profit And Loss
January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **8000 - Gen & Administrative - Expense** | | | | | | | | | |
| **80000 · Utilities** | | | | | | | | | |
| 800001 · Electric | -4,328.50 | 37,939.23 | 16,102.52 | | | | | | 49,713.25 |
| 800002 · Trash | 3,491.71 | | | | | | | | 3,491.71 |
| 800003 · Gas | | 339.42 | 265.26 | | | | | | 604.68 |
| 800005 · Water | | 8,176.20 | 5,417.09 | | | | | | 13,593.35 |
| Total 80000 · Utilities | -836.79 | 46,454.91 | 21,784.87 | | | | | | 67,402.99 |
| **800004 · Rent Expense** | | | | | | | | | |
| 800004 · Rent Expense - Other | | 261,000.00 | | 93,541.50 | | | | -261,000.00 | 93,541.50 |
| Total 800004 · Rent Expense | | 261,000.00 | | 93,541.50 | | | | -261,000.00 | 93,541.50 |
| **81001 · Professional Fees** | | | | | | | | | |
| 810013 · Other | 1,000.00 | | | | | | | | 1,000.00 |
| 810010 · Accounting | 18,058.00 | 13,446.00 | 9,645.60 | 35,288.89 | 13,066.00 | | 09.00 | | 89,878.03 |
| 810011 · Legal Fees | 130,002.59 | 31,796.81 | 11,460.89 | 31,843.81 | | | | | 205,052.90 |
| 800015 · Management Fees | | | 125,000.00 | 30,000.00 | | | 99.00 | | 155,000.00 |
| Total 81001 · Professional Fees | 148,115.59 | 45,233.81 | 148,906.10 | 90,912.34 | 13,066.00 | | | | 450,731.93 |
| **8002 · Depreciation Expense** | | | | | | | | | |
| 80004 · Amortization Expense | | | 13,914.00 | | | | | | 13,914.00 |
| 80002 · Depreciation Expense - Other | 36,000.00 | 31,625.75 | 118,060.00 | 22,914.00 | | | | | 206,619.75 |
| Total 80002 · Depreciation Expense | 38,000.00 | 31,625.75 | 131,994.00 | 22,914.00 | | | | | 222,533.75 |
| **80003 · Charitable Contributions** | | | | 1,100.00 | | | | | 1,100.00 |
| **81001 · Travel** | | | | | | | | | |
| 810012 · Taxi Fare & Car Rental - Adm | | 584.00 | | 1,483.25 | | | | | 2,027.25 |
| 810013 · Meals & Entertainment - Adm | | 1,400.86 | | 2,474.97 | | | | | 3,876.83 |
| Total 81001 · Travel | | 1,984.86 | | 3,938.22 | | | | | 5,903.08 |
| **81002 · Auto Expense** | | | | | | | | | |
| 810021 · Employee Auto Exp. | | 290.21 | | 1,784.41 | | | | | 2,074.62 |
| 810020 · Auto Lease Payment Adm | | | | 24,674.07 | | | | | 24,674.07 |
| 810022 · Fuel - Adm | | 856.79 | | 1,317.86 | | | | | 2,174.65 |
| 810023 · Auto Ins & Registration Adm | | | | 1,614.00 | | | | | 1,614.00 |
| Total 81002 · Auto Expense | | 1,147.00 | | 28,390.94 | | | | | 30,537.94 |
| **81003 · Bank Fees - Adm** | | | | | | | | | |
| 810031 · Service Charges | 1,672.55 | 8,720.71 | 868.15 | 4,404.10 | 600.01 | 469.88 | 121.08 | | 16,750.48 |
| 810039 · Credit Card Fees | | 982.43 | | 6,531.34 | | | | | 7,513.77 |
| Total 81003 · Bank Fees - Adm | 1,672.55 | 9,703.14 | 868.15 | 10,935.44 | 600.01 | 469.88 | 121.08 | | 24,264.25 |
| **81004 · Computer- Adm** | | | | | | | | | |
| 810040 · Comp, Hardware - Adm | | 2,519.72 | | | | | | | 2,519.72 |
| 810041 · Internal Services - Adm | 509.88 | | | 656.95 | | | | | 1,168.83 |
| 810042 · Svrcs, Support & Repairs-Adm | 1,180.00 | 1,827.61 | 1,756.77 | 2,998.72 | | | | | 7,794.10 |
| 810043 · Software Expenses -Adm | | 2,229.19 | | | | | | | 2,228.19 |
| Total 81004 · Computer- Adm | 1,529.88 | 8,576.52 | 1,756.77 | 3,658.67 | | | | | 13,619.84 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
#### January through September 2010

| | COI | MBI | 8th Street | BEVERLY HILLS | Beaudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 81005 · Transportation Exp. -Adm | | | | | | | | | |
| 810060 · Employee Parking | 5,088.34 | 1,698.00 | | 1,105.85 | | | | | 7,860.09 |
| 81051 · Mileage-Adm | 344.20 | 849.31 | | 1,366.00 | | | | | 2,559.51 |
| Total 81005 · Transportation Exp. -Adm | 5,430.44 | 2,347.31 | | 2,501.85 | | | | | 10,339.00 |
| | | | | | | | | | |
| 81005 · Employment Services - Adm | 300.00 | | | | | | | | 300.00 |
| 810060 · Benefits Administration - Adm | | | | | | | | | |
| Total 81006 · Employment Services - Adm | 300.00 | | | | | | | | 300.00 |
| | | | | | | | | | |
| 81007 · Delivery Services-Adm | | | | | | | | | |
| 81071 · Shipping -Adm | 122.00 | 12,596.61 | | | | | | | 12,709.21 |
| Total 81007 · Delivery Services-Adm | 122.50 | 12,596.61 | | | | | | | 12,709.21 |
| | | | | | | | | | |
| 81008 · Insurance | | | | | | | | | |
| 810060 · Dental Insurance | | 864.31 | | | | | | | 864.31 |
| 810083 · Medical Insurance | | 3,634.50 | | | | | | | 3,634.50 |
| 810085 · Workers' Comp.-Adm | -7,404.85 | 1,903.00 | | 2,190.01 | | | | | -4,214.84 |
| 810087 · General Liability -Adm | | 1,019.80 | 3,825.70 | 8,602.47 | | | | | 13,448.09 |
| 810089 · Vision Insurance | | 24.89 | | | | | | | 24.89 |
| 810088 · Disability Insurance | | | | 808.00 | | | | | 808.00 |
| 810081 · Jewelers Block Ins -Adm | | 77,009.91 | | 9,620.45 | | | | | 86,430.36 |
| Total 81008 · Insurance | -7,404.85 | 83,293.47 | 3,825.70 | 20,212.03 | | | | | 100,617.31 |
| | | | | | | | | | |
| 81009 · Office Expense -Adm | | | | | | | | | |
| 810088 · Dues & Subscriptions - Adm | | 265.00 | | 988.00 | 599.00 | | | | 1,852.00 |
| 810092 · Outside Services | 24,295.30 | | | | | | | | 24,295.30 |
| 810093 · Repairs & Maint. Office -Adm | 1,496.51 | | 22,790.91 | 7,271.70 | | | | | 31,559.12 |
| 810084 · Office Supplies - Adm | 943.54 | 5,981.39 | 201.18 | 12,035.54 | | 65.00 | | | 19,086.65 |
| 810091 · Off.Tools & Sm. Eqpmt -Adm | | | | 1,198.70 | | | | | 1,198.70 |
| 810069 · Security Monitoring Expenses | | 1,800.00 | | 806.00 | | | | | 2,606.00 |
| Total 81009 · Office Expense -Adm | 26,735.35 | 7,846.39 | 23,052.06 | 22,989.94 | 694.00 | | | | 81,297.77 |
| | | | | | | | | | |
| 81010 · Payroll Expenses | | | | | | | | | |
| 8101002 · Inventory Staff | 60,168.46 | | | | | | | | 60,185.46 |
| 810103 · Payroll Tax Expense | 29,069.50 | 38,574.22 | | 1,339.08 | | | | | 68,932.80 |
| 810105 · Payroll Processing Fees | 246.75 | 287.50 | | | | | | | 534.25 |
| 810063 · Officer Compensation | | 218,500.00 | | | | | | | 218,500.00 |
| 810061 · Office Staff | 129,591.76 | 192,417.07 | | 58,249.19 | | | | | 360,258.02 |
| 810100 · Expense Reimbursements | | | | | | | | | |
| 81010 · Payroll Expenses - Other | | | | | | | | | |
| Total 81010 · Payroll Expenses | 219,094.47 | 449,728.79 | | 59,598.27 | | | | | 728,411.53 |
| | | | | | | | | | |
| 81012 · Telephone | | | | | | | | | |
| 810120 · Cellular | 12,913.85 | 3,190.38 | | | | | | | 16,104.23 |
| 810122 · Office - Long Distance | 12,538.00 | | | | | | | | 12,538.00 |
| 810121 · Telephone Office-Adm | | | | 864.37 | | | | | 864.37 |
| Total 81012 · Telephone | 25,452.85 | 3,190.38 | | 864.37 | | | | | 29,507.60 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Page 3 of 5

72

**Centerstone Diamonds, Inc.& Affiliates**
**Combined Profit And Loss**
January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Beauty Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 61013 · Licenses & Permits | | 929.00 | 376.00 | 960.48 | 2,145.00 | | | | 4,419.48 |
| 61015 · Equipment Lease/Rental | | | | 384.80 | | | | | 384.80 |
| 61019 · Misc. Expenses | | | | | | | | | |
| 61019 · Misc. Expenses · Other | | | | | | | | | |
| Total 61019 · Misc. Expenses | | | | | | | | | |
| | | | | | | | | | |
| Total 6000 · Gen & Administrative - Expense | 457,212.09 | 963,718.84 | 329,903.83 | 369,061.75 | 16,473.01 | 459.88 | 220.09 | -261,000.00 | 1,877,013.48 |
| | | | | | | | | | |
| 6000 · Selling Expense | | | | | | | | | |
| 60002 · Outside Commissions | | 3,500.00 | | 599.00 | | | | | 4,099.00 |
| 61001 · Travel - Sales | | | | | | | | | |
| 610010 · Airfare - Sales | | 36,824.80 | | 4,635.68 | | | | | 41,460.48 |
| 610011 · Hotels & Lodging- Sales | | 34,390.64 | | 2,014.59 | | | | | 36,405.23 |
| 610012 · Taxi Fares & Car Rental - Sales | | 20,253.88 | | 494.35 | | | | | 20,748.23 |
| 610013 · Meals & Entertainment - Sales | | 8,726.20 | | 11,384.67 | | | | | 20,110.87 |
| 610014 · Travel Security - Sales | | 1,147.57 | | | | | | | 1,147.57 |
| 610016 · Travel Expenses - Sales | | 4,077.51 | | 1,291.02 | | | | | 5,368.53 |
| 610017 · Travel Employee Meals - Sales | | 8,769.54 | | 347.40 | | | | | 9,116.94 |
| Total 61001 · Travel - Sales | | 114,190.20 | | 20,167.71 | | | | | 134,357.91 |
| | | | | | | | | | |
| 61002 · Auto Expense - Sales | | | | | | | | | |
| 61002 · Auto Expense - Sales - Other | | | | 122.51 | | | | | 122.51 |
| Total 61002 · Auto Expense - Sales | | | | 122.51 | | | | | 122.51 |
| | | | | | | | | | |
| 610052 · Employee Parking - Sales | | | | | | | | | |
| 61007 · Delivery Services - Sales | | | | | | | | | |
| 61007I · Shipping Expenses - Sales | | 40,410.08 | | | | | | | 40,410.08 |
| Total 61007 · Delivery Services - Sales | | 40,410.08 | | | | | | | 40,410.08 |
| | | | | | | | | | |
| 610072 · Postage and Delivery - Sales | | 20,494.00 | | 279.43 | | | | -20,494.00 | 279.43 |
| 610064 · Office Supplies - Sales | | 269.48 | | 568.21 | | | | | 837.69 |
| 61010 · Payroll Expenses - Sales | | | | | | | | | |
| 610106 · Salaries & Wages - Sales | | 122,015.79 | | 168,875.80 | | | | | 290,891.59 |
| 610063 · Sales People | | | | 2,000.00 | | | | | 2,000.00 |
| 610106 · Salaries & Wages - Sales - Other | | | | | | | | | |
| Total 610106 · Salaries & Wages - Sales | | 122,015.79 | | 170,875.80 | | | | | 292,891.59 |
| | | | | | | | | | |
| Total 61010 · Payroll Expenses - Sales | | 122,015.79 | | 170,875.80 | | | | | 292,891.59 |
| | | | | | | | | | |
| 61014 · Meals & Entertainment-Sales | | | | 496.85 | | | | | 496.85 |
| Total 6000 · Selling Expense | | 300,879.95 | | 193,109.31 | | | | -20,494.00 | 473,494.86 |
| | | | | | | | | | |
| 66000 · Payroll Expenses | | | | | | | | | |
| 99999 · Suspense | | | | | | | | | |
| Total Expense | 457,212.09 | 1,468,018.52 | 329,903.83 | 614,719.68 | 32,626.01 | 459.88 | 220.09 | -281,494.00 | 2,641,726.07 |
| Net Ordinary Income | -553,680.44 | -1,027,098.33 | -45,493.83 | 203,177.40 | 276,814.04 | 17,570.07 | -220.09 | | -1,127,082.19 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Page 4 of 5

73

## Centerstone Diamonds, Inc.& Affiliates
### Combined Profit And Loss
January through September 2010

| | CDI | MBI | 8th Street | BEVERLY HILLS | Benudry Int'l | BT Int'l | BT Dom | Interco. Elim. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Other Income/Expense** | | | | | | | | | |
| Other Income | | | | | | | | | |
| 90000 · Other Income | | | | | | | | | |
| 90009 · Miscellaneous Income | | 1,845.20 | | | | | | | 1,845.20 |
| Total 90000 · Other Income | | 1,645.20 | | | | | | | 1,645.20 |
| 90001 · Gain on Sale of Fixed Assets | | | 15,851.35 | | | | | | 15,851.35 |
| **Total Other Income** | | 1,645.20 | 15,851.35 | | | | | | 17,496.55 |
| **Other Expense** | | | | | | | | | |
| 9100 · Other Expenses | | | | | | | | | |
| 93000 · Voided Checks | | | | | | | | | |
| Total 9100 · Other Expenses | | | | | | | | | |
| 9110 · Interest Expense | | | | | | | | | |
| 920000 · Interest Expense | | | | | | | | | |
| 920000 · Interest Expense - Other | 1,295.39 | 14,282.88 | 59,072.00 | 99,894.11 | | | | | 175,444.47 |
| Total 920000 · Interest Expense | 1,295.39 | 14,282.88 | 59,072.00 | 99,894.11 | | | | | 175,444.47 |
| 920001 · Finance Charge | | | 1,919.27 | | | | | | 1,919.27 |
| 920001 · Mortgage Expense | | | 150,680.25 | | | | | | 150,680.25 |
| 920002 · Loan Interest | | | 79,875.00 | | | | | | 79,875.00 |
| Total 9110 · Interest Expense | 1,295.39 | 14,282.88 | 292,346.51 | 99,894.11 | | | | | 407,818.89 |
| 91300 · VOIDED CHECKS | | | | | | | | | |
| 9500 · Tax Expense | | | | | | | | | |
| 95003 · State Income Tax | 909.62 | 1,600.00 | 1,535.06 | 867.82 | | | | | 4,912.50 |
| 95006 · Property Tax | 3,048.67 | 2,379.12 | 29,935.54 | 3,185.79 | | | | | 34,548.12 |
| 95004 · Local Taxes | | 135.82 | | | | | | | 135.82 |
| Total 9500 · Tax Expense | 3,958.29 | 4,114.94 | 27,470.60 | 4,053.61 | | | | | 39,597.44 |
| **Total Other Expense** | 5,253.68 | 18,397.82 | 319,817.21 | 103,947.72 | | | | | 447,416.43 |
| **Net Other Income** | -5,253.68 | -16,752.62 | -303,965.86 | -103,947.72 | | | | | -429,919.88 |
| **Net Income** | -588,934.12 | -1,043,811.97 | -349,428.69 | 99,229.58 | 278,814.04 | 17,370.07 | -220.08 | | -1,556,982.07 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

# Michael Beaudry Inc. & Centerstone Diamonds, Inc.
## Combined Statement Of Cash Flow
### January through July 2010

| | Michael Beaudry Inc. | Centerstone Diamonds, Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **OPERATING ACTIVITIES** | | | | |
| Net Income | -819,610.65 | -430,547.81 | | -1,250,158.46 |
| Adjustments to reconcile Net Income | | | | |
| to net cash provided by operations: | | | | |
| 12003 · Accounts Receivable-11 | 242,395.86 | -468,630.30 | 418,597.50 | 192,363.06 |
| 12001 · Accounts Receivable | 576,660.70 | | | 576,660.70 |
| 12002 · Allowance for AR | -33,075.50 | | | -33,075.50 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130033 · Employee Travel Advance | -2,442.32 | | | -2,442.32 |
| 13004 · Prepaid Expenses | | 18,964.57 | | 18,964.57 |
| 13004 · Prepaid Expenses:130042 · Prepaid Insurance | -29,287.60 | -5,769.75 | | -35,057.35 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | -5,423.34 | | | -5,423.34 |
| 13004 · Prepaid Expenses:130047 · Prepaid Advertising | -12,325.00 | | | -12,325. |
| 210015 · Intercompany Sales- 11 | 474,053.64 | 49,191.68 | -418,597.50 | 55,456. |
| 210011 · Accounts Payable | 138,414.94 | | | 187,606.54 |
| 22002 · Accrued Coop Advertisement | -60,116.25 | | | -60,116.25 |
| 22003 · Inter-Company Accounts:220039 · Due to/from MBI - Beaudry-BH | -116.33 | | | -116.33 |
| 22005 · Loans Payable - Current:220057 · Microsoft-CTT Fin. Serv. | 2,856.13 | | | 2,856.13 |
| 22005 · Loans Payable - Current:220051 · Capital Lease - Current Portion | | 426.83 | | 426.83 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | -467,586.82 | | | -467,586.82 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | -4,973.12 | -2,248.55 | | -7,221.67 |
| 22006 · Payroll Liabilities:220070 · Vacation Accrual | -12,889.66 | 2,141.01 | | -10,748.65 |
| 13006 · Inventory:130063 · Materials & Supplies:1300631 · Diamonds | | 801,222.00 | | 801,222.00 |
| 22003 · Inter-Company Accounts:220045 · Due to/from CDI - Beaudry Intl | | -2,520.00 | | -2,520.00 |
| 22003 · Inter-Company Accounts:220038 · Due to/from CDI - Beaudry-BH | | 59.88 | | 59.88 |
| **Net cash provided by Operating Activities** | -13,465.32 | -37,710.44 | | -51,175.76 |
| **INVESTING ACTIVITIES** | | | | |
| 14099 · Accumulated Depreciation | 24,598.25 | 28,000.00 | | 52,598.25 |
| **Net cash provided by Investing Activities** | 24,598.25 | 28,000.00 | | 52,598.25 |
| **FINANCING ACTIVITIES** | | | | |
| 230033 · Loan - Microsoft - CTT Fin.Serv | -37,719.14 | | | -37,719... |
| 220041 · Leases Payable | -10,627.54 | | | -10,627.54 |
| 230011 · Due To/from M Beaudry Personal | 2,455.03 | | | 2,455.03 |
| 230030 · Equipment Lease Payable - FFL | | -2,851.97 | | -2,851.97 |
| **Net cash provided by Financing Activities** | -45,891.65 | -2,851.97 | | -48,743.62 |
| **Net cash increase for period** | -34,758.72 | -12,552.41 | | -47,321.13 |
| **Cash at beginning of period** | 94,849.85 | 14,130.96 | | 108,980.81 |
| **Cash at end of period** | 60,091.13 | 1,568.55 | | 61,659.68 |

# EXHIBIT "D"

1

## EXHIBIT "D" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME STATEMENT FOR CALENDAR YEAR 2009

2

3

4

5

6

7

8

9

ERVIN COHEN & JESSUP LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

77

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Summary Balance Sheet
As of December 31, 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Current Assets | | | | |
| Checking/Savings | 14,130.96 | 60,779.35 | | 74,910.31 |
| Accounts Receivable | 2,115,372.58 | 1,360,086.15 | -2,115,372.58 | 1,360,086.15 |
| Other Current Assets | 9,587,672.57 | 88,622.14 | | 9,676,294.71 |
| Total Current Assets | 11,717,176.11 | 1,509,487.64 | -2,115,372.58 | 11,111,291.17 |
| Fixed Assets | 295,207.15 | 314,594.24 | | 609,801.39 |
| Other Assets | 3,718.87 | 6,161.52 | | 9,880.39 |
| TOTAL ASSETS | 12,016,102.13 | 1,830,243.40 | -2,115,372.58 | 11,730,972.95 |
| **LIABILITIES & EQUITY** | | | | |
| Liabilities | | | | |
| Current Liabilities | | | | |
| Accounts Payable | 2,242,537.96 | 3,274,092.83 | -2,115,372.58 | 3,401,258.21 |
| Other Current Liabilities | 7,686,402.68 | 1,009,053.66 | | 8,695,456.34 |
| Total Current Liabilities | 9,928,940.64 | 4,283,146.49 | -2,115,372.58 | 12,096,714.55 |
| Long Term Liabilities | 615,146.56 | 266,735.83 | | 881,882.39 |
| Total Liabilities | 10,544,087.20 | 4,549,882.32 | -2,115,372.58 | 12,978,596.94 |
| Equity | 1,472,014.93 | -2,719,638.92 | | -1,247,623.99 |
| TOTAL LIABILITIES & EQUITY | 12,016,102.13 | 1,830,243.40 | -2,115,372.58 | 11,730,972.95 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| 40009 · Other Sales and Revenue | | 5,814.00 | | 5,814.00 |
| 40001 · Jewelry Sales | 3,194,590.73 | 3,642,978.91 | -3,174,249.73 | 3,663,319.91 |
| 40004 · Shipping Income | 30,676.85 | 28,467.54 | -30,676.85 | 28,467.54 |
| 40006 · Recycling Income | 12,664.63 | 66,196.73 | | 78,861.36 |
| 40002 · Loose Stone Sales | | 82,221.91 | -76,078.60 | 6,143.31 |
| 40003 · Jewelry Repairs & Rework | | 65,432.00 | | 65,432.00 |
| 40008 · Misc Customer Fees | | | | |
| 40999 · Customer Discounts/Adjustments | | 2,499.04 | | 2,499.04 |
| 40007 · Rental Income | | | | 0.00 |
| 40011 · Jewelry Sales- Interco | | | -2,102.00 | -2,102.00 |
| **Total Income** | 3,237,932.21 | 3,893,610.13 | -3,283,107.18 | 3,848,435.16 |
| **Cost of Goods Sold** | | | | |
| 50014 · Inventory Adjustment-Lost/Damag | 127,710.65 | | | 127,710.65 |
| 50001 · Diamonds | 2,087,859.38 | | -56,351.60 | 2,031,507.78 |
| 50003 · Jewelry | | 3,193,976.73 | -3,193,976.73 | |
| 50004 · Vendors - Misc Charges | | 175.00 | | 175.00 |
| 50005 · Accessories | 906.28 | 290.00 | | 1,196.28 |
| 50006 · Metal | 912.26 | | | 912.26 |
| 50007 · Certificates | 598.00 | 130.00 | | 728.00 |
| **5010 · Manufacturing Costs** | | | | |
| 50101 · Inscription | 793.50 | | | 793.50 |
| 50103 · Production | 3,190.00 | | | 3,190.00 |
| 501032 · Production Staff Payroll | 217,464.31 | | | 217,464.31 |
| 501033 · Production Shop | 686.60 | | | 686.60 |
| 50104 · Setting | 81,035.80 | | | 81,035.80 |
| 50105 · Casting | 20,172.23 | | | 20,172.23 |
| 50106 · Engraving | 9,158.00 | | | 9,158.00 |
| 50107 · Fabricating | 28,035.85 | | | 28,035.85 |
| **Total 5010 · Manufacturing Costs** | 360,736.29 | | | 360,736.29 |
| 50009 · Cost of Goods Sold- Interco | | | -2,102.00 | -2,102.00 |
| **Total COGS** | 2,578,722.86 | 3,194,571.73 | -3,252,430.33 | 2,520,864.26 |
| **Gross Profit** | 659,209.35 | 699,038.40 | -30,676.85 | 1,327,570.90 |
| | | | | |
| **Expense** | | | | |
| **7000 · Marketing Expenses** | | | | |
| 70010 · Donations Charity Events | 5,915.09 | | | 5,915.09 |
| 70005 · Beaudry Points Program | 35,733.70 | | | 35,733.70 |
| 70009 · Ambassador Program | 932.46 | | | 932.46 |
| 70000 · Events | | 9,075.00 | | 9,075.00 |
| 70001 · Creative Services | | 3,465.62 | | 3,465.62 |
| 70002 · Advertising | | 18,312.12 | | 18,312.12 |
| 70003 · Coop Advertising | | 293,064.32 | | 293,064.32 |
| 70005 · Photography | | 2,375.00 | | 2,375.00 |
| 70006 · Public Relations | | 18,521.09 | | 18,521.09 |
| 70007 · Tradeshows | | 43,903.83 | | 43,903.83 |
| **Total 7000 · Marketing Expenses** | 42,581.25 | 388,735.98 | | 431,318.23 |
| | | | | |
| **8000 · Gen & Administrative - Expense** | | | | |
| **80000 · Utilities** | | | | |
| 800001 · Electric | 25,789.03 | | | 25,789.03 |
| 800002 · Trash | 4,248.61 | | | 4,248.61 |
| 800003 · Gas | 234.90 | 389.06 | | 623.96 |
| 600005 · Water | 7,919.77 | 4,367.01 | | 12,286.78 |
| 800001 · Electricity | | 35,066.43 | | 35,066.43 |
| **Total 80000 · Utilities** | 38,192.51 | 39,822.50 | | 78,015.01 |
| | | | | |
| **800004 · Rent Expense** | | | | |
| 800004 · Rent Expense - Other | 234,000.00 | 294,000.00 | | 528,000.00 |
| **Total 800004 · Rent Expense** | 234,000.00 | 294,000.00 | 0.00 | 528,000.00 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **60001 · Professional Fees** | | | | |
| 600013 · Other | 9,375.00 | | | 9,375.00 |
| 800010 · Accounting | 58,345.08 | 43,283.05 | | 101,628.13 |
| 800011 · Legal Fees | 145,030.75 | 100,566.34 | | 245,597.09 |
| Total 60001 · Professional Fees | 212,750.83 | 143,849.39 | | 356,600.22 |
| | | | | |
| **60002 · Depreciation Expense** | | | | |
| 60002 · Depreciation Expense - Other | 47,137.00 | 42,177.00 | | 89,314.00 |
| Total 60002 · Depreciation Expense | 47,137.00 | 42,177.00 | | 89,314.00 |
| | | | | |
| **81001 · Travel** | | | | |
| 810010 · Airfare | | 7,476.29 | | 7,476.29 |
| 810011 · Hotel & Lodging | | 460.89 | | 460.89 |
| 810013 · Meals & Entertainment | 516.46 | | | 516.46 |
| 810016 · Travel | 3,713.67 | | | 3,713.67 |
| 810012 · Taxi Fare & Car Rental -Adm | | 604.72 | | 604.72 |
| 810013 · Meals & Entertainment - Adm | | 2,098.45 | | 2,098.45 |
| Total 81001 · Travel | 4,230.13 | 10,840.35 | | 15,070.48 |
| | | | | |
| **81002 · Auto Expense** | | | | |
| 810021 · Employee Auto Exp. | | 1,111.51 | | 1,111.51 |
| 810023 · Insurance | 7,573.80 | | | 7,573.80 |
| 810022 · Fuel - Adm | | 345.24 | | 345.24 |
| Total 81002 · Auto Expense | 7,573.80 | 1,456.75 | | 9,030.55 |
| | | | | |
| **81003 · Bank Fees - Adm** | | | | |
| 810031 · Service Charges | 8,017.02 | 13,053.66 | | 21,070.68 |
| 810030 · Credit Card Fees | | 513.60 | | 513.60 |
| Total 81003 · Bank Fees - Adm | 8,017.02 | 13,567.26 | | 21,584.28 |
| | | | | |
| **81004 · Computer- Adm** | | | | |
| 810040 · Comp. Hardware - Adm | | 38,741.63 | | 38,741.63 |
| 810041 · Internet Services - Adm | 590.83 | 601.71 | | 1,192.54 |
| 810042 · Svcs, Support & Repairs-Adm | 392.82 | | | 392.82 |
| Total 81004 · Computer- Adm | 983.65 | 39,343.34 | | 40,326.99 |
| | | | | |
| **81005 · Transportation Exp. -Adm** | | | | |
| 810050 · Employee Parking | 10,894.00 | | | 10,894.00 |
| 810051 · Mileage | 604.71 | | | 604.71 |
| 810052 · Other Transp. Exp.- Adm | 1,608.39 | | | 1,608.39 |
| Total 81005 · Transportation Exp. -Adm | 13,107.10 | | | 13,107.10 |
| | | | | |
| **81006 · Employment Services - Adm** | | | | |
| 810060 · Benefits Administration - Adm | 5,600.40 | | | 5,600.40 |
| 810061 · Recruiting Expenses - Adm | | 150.00 | | 150.00 |
| 810620 · Employee Morale | 1,200.00 | | | 1,200.00 |
| 810062 · Other Emplmt Svcs - Adm | | | | |
| 810062 · Other Emplmt Svcs - Adm - Other | | 199.00 | | 199.00 |
| Total 810062 · Other Emplmt Svcs - Adm | | 199.00 | | 199.00 |
| | | | | |
| Total 81006 · Employment Services - Adm | 6,800.40 | 349.00 | | 7,149.40 |
| | | | | |
| **81007 · Delivery Services-Adm** | | | | |
| 810071 · Shipping -Adm | 34,635.51 | 9,378.50 | | 44,014.01 |
| 810072 · Postage | 1,336.54 | 211.70 | | 1,548.24 |
| 810070 · Messenger Services - Adm | | 596.20 | | 596.20 |
| Total 81007 · Delivery Services-Adm | 35,972.05 | 10,186.40 | | 46,158.45 |

80

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **81008 · Insurance** | | | | |
| 810060 · Dental Insurance | 3,613.76 | | | 3,613.76 |
| 810061 · Jewelers Block - Adm | 2,356.10 | | | 2,356.10 |
| 810063 · Medical Insurance | 33,463.06 | | | 33,463.06 |
| 810084 · Shipping Ins. -Adm | 28,849.48 | | | 28,849.48 |
| 810085 · Workers' Comp -Adm | 32,045.33 | | | 32,045.33 |
| 810087 · General Liability -Adm | 615.93 | | | 615.93 |
| 810081 · Jewelers Block Ins -Adm | | 48,087.04 | | 48,087.04 |
| 810087 · Gen. Liability Ins – Adm | | 2,019.40 | | 2,019.40 |
| Total 81008 · Insurance | 100,943.66 | 50,106.44 | | 151,050.10 |
| | | | | |
| **81009 · Office Expense -Adm** | | | | |
| 810096 · Dues & Subscriptions - Adm | 1,447.50 | 890.00 | | 2,337.50 |
| 810093 · Repairs & Maint. Office -Adm | 8,469.04 | 1,651.94 | | 10,120.98 |
| 810094 · Office Supplies - Adm | 5,875.97 | 8,754.35 | | 14,630.32 |
| 810099 · Security Monitoring and Service | 572.08 | | | 572.08 |
| 810099 · Security Monitoring Expenses | | 10,040.00 | | 10,040.00 |
| Total 81009 · Office Expense -Adm | 16,364.59 | 21,336.29 | | 37,700.88 |
| | | | | |
| **81010 · Payroll Expenses** | | | | |
| 8101062 · Inventory Staff | 126,532.55 | | | 126,532.55 |
| 810103 · Payroll Tax Expense | 50,591.40 | 82,557.22 | | 133,148.62 |
| 810105 · Payroll Processing Fees | 743.25 | 1,394.09 | | 2,137.34 |
| 8101061 · Office Staff | 158,838.43 | | | 158,838.43 |
| 810100 · Expense Reimbursements | | 33,213.22 | | 33,213.22 |
| 8101060 · Office | | 438,736.04 | | 438,736.04 |
| 8101061 · Officer Compensation | | 171,950.00 | | 171,950.00 |
| Total 81010 · Payroll Expenses | 336,705.63 | 727,850.57 | | 1,064,556.20 |
| | | | | |
| **81012 · Telephone** | | | | |
| 810120 · Cellular | 20,385.03 | 3,188.70 | | 23,573.73 |
| 810122 · Office – Long Distance | 22,315.36 | | | 22,315.36 |
| Total 81012 · Telephone | 42,700.39 | 3,188.70 | | 45,889.09 |
| | | | | |
| 81013 · Licenses & Permits | 1,545.00 | 929.00 | | 2,474.00 |
| **81019 · Misc. Expenses** | | | | |
| 81019 · Misc. Expenses - Other | | | | |
| Total 81019 · Misc. Expenses | | | | |
| | | | | |
| **Total 8000 · Gen & Administrative - Expense** | 1,107,023.76 | 1,399,002.99 | 0.00 | 2,506,026.75 |
| | | | | |
| **6000 · Selling Expense** | | | | |
| 60002 · Outside Commissions | | | | |
| 60004 · Bad Debt | | 68,119.33 | | 68,119.33 |
| **61001 · Travel -Sales** | | | | |
| 610010 · Airfare - Sales | 41,893.56 | | | 41,893.56 |
| 610011 · Hotels & Lodging- Sales | 34,176.49 | | | 34,176.49 |
| 610012 · Taxi Fares & Car Rental - Sales | 20,961.57 | | | 20,961.57 |
| 610013 · Meals & Entertainment - Sales | 7,301.83 | | | 7,301.83 |
| 610015 · Sales Training - Sales | 441.97 | | | 441.97 |
| 610016 · Travel Expenses - Sales | 4,766.75 | | | 4,766.75 |
| 610017 · Travel Employee Meals - Sales | 7,720.75 | | | 7,720.75 |
| Total 61001 · Travel -Sales | 117,262.92 | | | 117,262.92 |
| | | | | |
| 610030 · Credit Card Fees -Sales | 687.03 | | | 687.03 |
| 610052 · Employee Parking - Sales | 10,144.00 | | | 10,144.00 |
| **61007 · Delivery Services - Sales** | | | | |
| 610071 · Shipping Expenses - Sales | 15,916.04 | | | 15,916.04 |
| Total 61007 · Delivery Services - Sales | 15,916.04 | | | 15,916.04 |

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Profit And Loss
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| 610072 · Postage and Delivery - Sales | | 40,996.95 | -30,676.85 | 10,320.10 |
| 61098 · Insurance - Sales | | | | |
| 610080 · Dental Insurance - Sales | | -2,190.72 | | -2,190.72 |
| 610083 · Medical Insurance - Sales | | -10,873.00 | | -10,873.00 |
| 610084 · Shipping Insurance - Sales | | 17,297.14 | | 17,297.14 |
| 610085 · Workers' Compensation - Sales | | 941.12 | | 941.12 |
| Total 61098 · Insurance - Sales | | 5,174.54 | | 5,174.54 |
| 61010 · Payroll Expenses - Sales | | | | |
| 610106 · Salaries & Wages - Sales | | 426,569.31 | | 426,569.31 |
| 6101063 · Sales People | | 426,569.31 | | 426,569.31 |
| Total 610106 · Salaries & Wages - Sales | | 426,569.31 | | 426,569.31 |
| Total 61010 · Payroll Expenses - Sales | | 426,569.31 | | 426,569.31 |
| Total 6000 · Selling Expense | | 684,870.12 | -30,676.85 | 654,193.27 |
| 99999 · Suspense | 1,149,605.01 | 2,472,610.09 | -30,676.85 | 3,591,538.25 |
| Total Expense | | | | |
| Net Ordinary Income | -490,395.66 | -1,773,571.69 | | -2,263,967.35 |
| Other Income/Expense | | | | |
| Other Income | | | | |
| 90000 · Other Income | | 120,000.00 | | 120,000.00 |
| 81021 · Prior Year Correction | | | | |
| 90003 · Income/Loss on Sale of Asset | 10,000.00 | | | 10,000.00 |
| Total 90000 · Other Income | 10,000.00 | 120,000.00 | | 130,000.00 |
| Total Other Income | 10,000.00 | 120,000.00 | | 130,000.00 |
| Other Expense | | | | |
| 9100 · Other Expenses | | | | |
| 91000 · Tax Expense | | | | |
| 910002 · Local Taxes | | 1,924.59 | | 1,924.59 |
| 910009 · Penalties | | 2,407.91 | | 2,407.91 |
| Total 91000 · Tax Expense | | 4,332.50 | | 4,332.50 |
| 93000 · Voided Checks | | | | |
| Total 9100 · Other Expenses | | 4,332.50 | | 4,332.50 |
| 9110 · Interest Expense | | | | |
| 91001 · Aki Beaudry | 1,077.51 | | | 1,077.51 |
| 920000 · Interest Expense | | | | |
| 920000 · Interest Expense - Other | 9,238.39 | 27,886.97 | | 37,125.36 |
| Total 920000 · Interest Expense | 9,238.39 | 27,886.97 | | 37,125.35 |
| 920002 · Finance Charges - LOC FCC | | 583,624.60 | | 583,624.60 |
| 920005 · Interest Expense -Stephen Moore | | 4,151.90 | | 4,151.90 |
| 920006 · Interest Expense LOC-FCC | | 199,770.50 | | 199,770.50 |
| Total 9110 · Interest Expense | 10,315.90 | 815,433.97 | | 825,749.87 |
| 91280 · Finance Charges | 13,749.83 | | | 13,749.83 |
| 91300 · VOIDED CHECKS | | | | |
| 9500 · Tax Expense | -30,516.08 | | | -30,516.08 |
| 95001 · Federal Income Taxes | 249.64 | -28,581.00 | | -28,331.36 |
| 95003 · State Income Tax | 3,903.65 | 2,923.04 | | 6,826.69 |
| 95006 · Property Tax | | -25,657.96 | | -52,020.75 |
| Total 9500 · Tax Expense | -26,362.79 | -25,657.96 | | -52,020.75 |
| Total Other Expense | -2,297.06 | 794,108.51 | | 791,811.45 |
| Net Other Income | 12,297.06 | -674,108.51 | | -661,811.45 |
| Net Income | -478,098.60 | -2,447,680.20 | | -2,925,778.80 |

82

**Centerstone Diamonds, Inc. & Michael Beaudry, Inc.**
**Combined Statement Of Cash Flow**
**January through December 2009**

| | Centerstone Diamonds, Inc. | Michael Beaudry Inc. | Intercompany Elimination | TOTAL |
|---|---:|---:|---:|---:|
| **OPERATING ACTIVITIES** | | | | |
| Net Income | -478,098.80 | -2,447,680.20 | | -2,925,778.80 |
| Adjustments to reconcile Net Income | | | | |
| to net cash provided by operations: | | | | |
| 12003 · Accounts Receivable-11 | -1,160,768.69 | -708,793.34 | 1,160,768.69 | -706,739.34 |
| 12001 · Accounts Receivable | -954,603.89 | 3,659,599.91 | 654,603.89 | 3,659,599.91 |
| 12004 · Prepaid Expenses | -16,984.57 | | | -16,984.57 |
| 13004 · Prepaid Expenses:13042 · Prepaid Insurance | | -25,982.96 | | -25,982.96 |
| 13004 · Prepaid Expenses:130048 · Prepaid Expenses -Others | 19,200.00 | | | 19,200.00 |
| 13006 · Inventory:130051 · Fin. Goods - Returns in Transit | 513,555.00 | | | 513,555.00 |
| 13006 · Inventory:130052 · Materials & Supplies:130051 · Diamonds | 1,702,524.65 | | | 1,702,524.65 |
| 210011 · Accounts Payable | -42,946.41 | -342,738.17 | | -385,684.58 |
| 22003 · Inter-Company Accounts | 2,026.92 | | | 2,026.92 |
| 22003 · Inter-Company Accounts:22044 · Due to/from CDI-8 Time Domestic | 1,792.30 | | | 1,792.30 |
| 22003 · Inter-Company Accounts:220045 · Due to/from CDI - Beaudry Intl | 3,882.60 | | | 3,892.60 |
| 22003 · Inter-Company Accounts:22038 · Due to/from CDI - Beaudry-BH | 46,340.79 | | | 46,340.79 |
| 22003 · Inter-Company Accounts:220039 · Due to/from CDI - 8 Time Int'l | -33,888.44 | | | -33,888.44 |
| 22003 · Inter-Company Accounts:220032 · Due To/From MBI-CDI | 345,243.73 | -345,243.73 | | |
| 22003 · Inter-Company Accounts:22034 · Due to/from CDI-8th Street | 115,251.66 | | | 115,251.66 |
| 22004 · Customer Deposits | | -720,000.00 | | -720,000.00 |
| 22005 · Loans Payable - Current:220051 · Capital Lease - Current Portion | 3,383.71 | | | 3,383.71 |
| 22000 · Payroll Liabilities:220061 · Accrued Payroll | -11,945.65 | -34,836.41 | | -46,782.26 |
| 22000 · Payroll Liabilities:220063 · 401K & Pension | | -2,026.92 | | -2,026.92 |
| 22006 · Payroll Liabilities:220064S · 401K-Loan Payable E-HIB | -78.58 | | | -78.58 |
| 22006 · Payroll Liabilities:220065 · AFLAC Premium Only | -676.46 | -254.30 | | -930.76 |
| 22006 · Payroll Liabilities:220066 · Federal Payroll Taxes | -495.74 | | | -495.74 |
| 22006 · Payroll Liabilities:220067 · California Payroll Taxes | -93.60 | | | -93.60 |
| 22005 · Payroll Liabilities:220070 · Vacation Accrual | 4,927.73 | -26,819.88 | | -21,892.15 |
| 22007 · Sales Tax Payable | | -3,680.31 | | -3,680.31 |
| 22008 · Income Tax Payable | -74,507.08 | -17,446.00 | | -91,953.08 |
| 12002 · Allowance for AR | | -1,024,221.82 | | -1,024,221.82 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130033 · Employee Travel Advance | | -3,557.68 | | -3,557.68 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | | 76,406.00 | | 76,406.00 |
| 13004 · Prepaid Expenses:130047 · Prepaid Advertising | | 25,000.00 | | 25,000.00 |
| 210015 · Intercompany Sales-11 | | 1,160,768.69 | -1,160,768.69 | 0.00 |
| 210012 · Intercompany Sales | | 854,603.89 | -954,603.89 | |
| 22001 · Accrued Commissions | | -15,158.10 | | -15,158.10 |
| 22002 · Accrued Coop Advertisement | | 8,820.50 | | 8,820.50 |
| 22003 · Inter-Company Accounts:220039 · Due to/from MBI - Beaudry-BH | | -17,771.34 | | -17,771.34 |
| 22003 · Inter-Company Accounts:220031 · Due to/from MBI-8th Street | | 14,600.00 | | 14,600.00 |
| 22005 · Loans Payable - Current:220057 · Microsoft-CTT Fin. Serv. | | -6,428.39 | | -6,428.39 |
| 22005 · Loans Payable - Current:22053 · LCC - First Capital | | 234,509.05 | | 234,509.05 |
| Net cash provided by Operating Activities | -15,935.82 | 384,042.48 | 0.00 | 375,105.67 |

Page 6 of 7

83

Centerstone Diamonds, Inc. & Michael Beaudry, Inc.
Combined Statement Of Cash Flow
January through December 2009

| | Centerstone Diamonds, Inc. | Michael Beaudry, Inc. | Intercompany Elimination | TOTAL |
|---|---|---|---|---|
| **INVESTING ACTIVITIES** | | | | |
| 140014 · Shop Tools & Small Equipment | 33,016.00 | | | 33,016.00 |
| 14004 · Leasehold Improvements | 1,450.00 | | | 1,450.00 |
| 14007 · Construction in Process | 22,500.00 | | | 22,500.00 |
| 14099 · Accumulated Depreciation | 14,121.00 | 42,177.00 | | 56,298.00 |
| Net cash provided by Investing Activities | 71,087.00 | 42,177.00 | 0.00 | 113,264.00 |
| | | | | |
| **FINANCING ACTIVITIES** | | | | |
| 230030 · Equipment Lease Payable - FFL | -4,642.95 | | | -4,642.95 |
| 230025 · Equipment Lease Payable - ACG | -10,524.08 | | | -10,524.08 |
| 230011 · Due To/From M Beaudry Personal | -794.80 | -249,470.53 | | -250,265.33 |
| 230012 · Ahl Beaudry | -2,722.49 | | | -2,722.49 |
| 230033 · Loan - Microsoft - CIT Fin.Serv | | -31,201.34 | | -31,201.34 |
| 220041 · Lease Payable | | -18,218.43 | | -18,218.43 |
| 230022 · GMAC Loan- Cadillac Escalade | | -3,211.94 | | -3,211.94 |
| | -18,684.32 | -302,102.24 | | -320,786.56 |
| Net cash provided by Financing Activities | 33,495.86 | 134,117.25 | 0.00 | 167,613.11 |
| | | | | |
| Net cash increase for period | -19,364.90 | -39,287.40 | 0.00 | -58,632.30 |
| Cash at beginning of period | | | | |
| Cash at end of period | 14,130.96 | 94,849.85 | 0.00 | 108,980.81 |

Page 7 of 7

84

# EXHIBIT "E"

1

## EXHIBIT "E" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME STATEMENT FOR CALENDAR YEAR 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

86

**CENTERSTONE DIAMONDS, INC.**
**and**
**MICHAEL BEAUDRY, INC.**


**COMBINED FINANCIAL REPORT**

**For the year ended December 31, 2008**

Centurion Diamonds, Inc. and MBI Import Export, Inc.

**Combined Balance Sheet**
As of December 31, 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| **Checking/Savings** | | | | |
| 10001 · Petty Cash | -1,000.00 | | | -1,000.00 |
| 110021 · Cathay Bank - 01128205 | -18,364.90 | | | -18,364.90 |
| 110021 · Cathay Bank -01128221 | | -41,573.94 | | -41,573.94 |
| 150012 · Citibank CD 287-0094535 | | 2,306.54 | | 2,306.54 |
| **Total Checking/Savings** | -19,364.90 | -39,267.40 | | -58,632.30 |
| | | | | |
| **Accounts Receivable** | | | | |
| 12001 · Accounts Receivable | | 4,515,723.94 | | 4,515,723.94 |
| 12002 · Allowance for AR | | -1,226,999.04 | | -1,226,999.04 |
| **Total Accounts Receivable** | | 3,288,724.90 | | 3,288,724.90 |
| | | | | |
| **Other Current Assets** | | | | |
| 13004 · Prepaid Expenses | | | | |
| 130046 · Prepaid Expenses -Others | | | | |
| 130046 · Prepaid Expenses -Others - Other | 19,200.00 | | | 19,200.00 |
| **Total 130046 · Prepaid Expenses -Others** | 19,200.00 | | | 19,200.00 |
| | | | | |
| 130045 · Prepaid Mktg & Show Expenses | | 101,437.00 | | 101,437.00 |
| 130047 · Prepaid Advertising | | 25,000.00 | | 25,000.00 |
| **Total 13004 · Prepaid Expenses** | 19,200.00 | 126,437.00 | | 145,637.00 |
| | | | | |
| 13006 · Inventory | | | | |
| 130061 · Fin. Goods - Returns in Transit | 513,555.00 | | | 513,555.00 |
| 130063 · Materials & Supplies | | | | |
| 1300631 · Diamonds | 11,271,232.65 | | | 11,271,232.65 |
| **Total 130063 · Materials & Supplies** | 11,271,232.65 | | | 11,271,232.65 |
| | | | | |
| **Total 13006 · Inventory** | 11,784,787.65 | | | 11,784,787.65 |
| | | | | |
| **Total Other Current Assets** | 11,803,987.65 | 126,437.00 | | 11,930,424.65 |
| | | | | |
| **Total Current Assets** | 11,784,622.75 | 3,375,894.50 | | 15,160,517.25 |
| | | | | |
| **Fixed Assets** | | | | |
| 14001 · Machinery & Equipment | 100,467.50 | 36,766.23 | | 137,233.73 |
| 14002 · Vehicles/Autos/Trucks | 55,810.15 | | | 55,810.15 |
| 140031 · Computers | 133,649.98 | 326,458.89 | | 460,108.87 |
| 140032 · Office Equipment | 214,376.06 | | | 214,376.06 |
| 140033 · Furniture & Fixtures | 51,646.27 | 71,294.50 | | 122,940.77 |
| 140034 · Shop Tools & Small Equipment | 48,180.41 | | | 48,180.41 |
| 14004 · Leasehold Improvements | 88,446.72 | 132,950.00 | | 221,396.72 |
| 14007 · Construction in Process | 215,159.94 | 23,033.62 | | 238,193.56 |
| 14099 · Accumulated Depreciation | -541,442.88 | -233,732.00 | | -775,174.88 |
| **Total Fixed Assets** | 366,294.15 | 356,771.24 | | 723,065.39 |
| | | | | |
| **Other Assets** | | | | |
| 150025 · Security Deposits | 3,718.87 | 3,545.52 | | 7,264.39 |
| 150011 · Centurion Jewelry B.I.O., LLC | | 2,616.00 | | 2,616.00 |
| **Total Other Assets** | 3,718.87 | 6,161.52 | | 9,880.39 |
| | | | | |
| **TOTAL ASSETS** | 12,154,635.77 | 3,738,827.26 | | 15,893,463.03 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Page 2 of 10

88

Cen.....one Diamonds, Inc. and Michael Bea.....  , Inc.
**Combined Balance Sheet**
As of December 31, 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---:|---:|---:|---:|
| **LIABILITIES & EQUITY** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| **Accounts Payable** | | | | |
| 210011 · Accounts Payable | 2,285,484.37 | 1,501,458.42 | | 3,786,942.79 |
| **Total Accounts Payable** | 2,285,484.37 | 1,501,458.42 | | 3,786,942.79 |
| | | | | |
| **Other Current Liabilities** | | | | |
| 22003 · Inter-Company Accounts | | | | |
| 220038 · Due to/from CDI - Beaudry-BH | 176,584.00 | | | 176,584.00 |
| 220036 · Due to/from CDI - B Time Int'l | -199,843.92 | | | -199,843.92 |
| 220032 · Due To/From MBI-CDI | 5,169,314.13 | -5,169,314.13 | | |
| 220034 · Due to/from CDI-8th Street | 1,385,693.59 | | | 1,385,693.59 |
| 220039 · Due to/from MBI - Beaudry-BH | | 33,867.34 | | 33,867.34 |
| 220037 · Due to/from MBI - B Time Int'l | | 223,316.46 | | 223,316.46 |
| 220031 · Due to/from MBI-8th Street | | -968,528.61 | | -968,528.61 |
| 22003 · Inter-Company Accounts - Other | -2,026.92 | | | -2,026.92 |
| **Total 22003 · Inter-Company Accounts** | 6,529,720.88 | -5,880,658.94 | | 649,061.94 |
| | | | | |
| 22004 · Customer Deposits | | 970,000.00 | | 970,000.00 |
| 22005 · Loans Payable - Current | | | | |
| 230031 · Capital Lease - Current Portion | 14,751.91 | 18,219.00 | | 32,970.91 |
| 220057 · Microsoft-CTT Fin. Serv. | | 67,359.78 | | 67,359.78 |
| 220054 · Loan - MB | | 15,000.00 | | 15,000.00 |
| 220051 · GMAC Loan - Current Portion | | 12,015.92 | | 12,015.92 |
| 220053 · LOC - First Capital | | 6,334,076.16 | | 6,334,076.16 |
| **Total 22005 · Loans Payable - Current** | 14,751.91 | 6,446,670.86 | | 6,461,422.77 |
| | | | | |
| 22006 · Payroll Liabilities | | | | |
| 220061 · Accrued Payroll | 31,073.62 | 64,813.11 | | 95,886.73 |
| 220063 · 401K & Pension | | 2,026.92 | | 2,026.92 |
| 2200645 · 401K-Loan Payable E-NB | 76.58 | | | 76.58 |
| 220065 · AFLAC Premium Only | 676.46 | 254.30 | | 930.76 |
| 220066 · Federal Payroll Taxes | 495.74 | | | 495.74 |
| 220067 · California Payroll Taxes | 93.60 | | | 93.60 |
| 22070 · Vacation Accrual | 7,091.12 | 49,737.43 | | 56,828.55 |
| **Total 22006 · Payroll Liabilities** | 39,507.12 | 116,831.76 | | 156,338.88 |
| | | | | |
| 22007 · Sales Tax Payable | | 3,680.31 | | 3,680.31 |
| 22008 · Income Tax Payable | 701,257.08 | 17,446.00 | | 718,703.08 |
| 22001 · Accrued Commisions | | 125,340.00 | | 125,340.00 |
| 22002 · Accrued Coop Advertisement | | 141,179.50 | | 141,179.50 |
| **Total Other Current Liabilities** | 7,285,236.99 | 1,940,489.49 | | 9,225,726.48 |
| | | | | |
| **Total Current Liabilities** | 9,570,721.36 | 3,441,947.91 | | 13,012,669.27 |
| | | | | |
| **Long Term Liabilities** | | | | |
| 230030 · Equipment Lease Payable - FFL | 13,621.07 | | | 13,621.07 |
| 230025 · Equipment Lease Payable - ACG | 42,307.32 | | | 42,307.32 |
| 230011 · Due To/From M Beaudry Personal | 522,694.33 | 304,380.36 | | 827,074.69 |
| 230012 · Airl Beaudry | 55,178.16 | | | 55,178.16 |
| 230033 · Loan - Microsoft - CTT Fin.Serv | | 197,094.36 | | 197,094.36 |
| 220041 · Leases Payable | | 42,509.59 | | 42,509.59 |
| 230022 · GMAC Loan- Cadillac Escalade | | 24,853.76 | | 24,853.76 |
| **Total Long Term Liabilities** | 633,800.88 | 568,838.07 | | 1,202,638.95 |
| | | | | |
| **Total Liabilities** | 10,204,522.24 | 4,010,785.98 | | 14,215,308.22 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Cent... ... one Diamonds, Inc. and ...chael Bee... , Inc.
**Combined Balance Sheet**
As of December 31, 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Equity** | | | | |
| 30002 · Common Stock | 3,000.00 | 1,000.00 | | 4,000.00 |
| 30003 · Retained Earnings | 1,751,616.51 | 3,689,157.34 | | 5,440,773.85 |
| Net Income | 195,497.02 | -3,962,116.06 | | -3,766,619.04 |
| **Total Equity** | 1,950,113.53 | -271,958.72 | | 1,678,154.81 |
| | | | | |
| **TOTAL LIABILITIES & EQUITY** | 12,154,635.77 | 3,738,827.26 | | 15,893,463.03 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Cent. .ine Diamonds, Inc. and Michael Bea. , Inc.
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| 40009 · Other Sales and Revenue | | 2,183.00 | | 2,183.00 |
| 40001 · Jewelry Sales | 10,780,334.13 | 12,403,971.68 | -10,780,334.13 | 12,403,971.68 |
| 40004 · Shipping Income | 108,113.25 | 108,311.41 | -108,113.25 | 108,311.41 |
| 40006 · Recycling Income | 190,523.44 | 191,809.69 | | 382,333.13 |
| 40002 · Loose Stone Sales | | 730,863.35 | | 730,863.35 |
| 40003 · Jewelry Repairs & Rework | | 174,245.71 | | 174,245.71 |
| 40999 · Customer Discounts/Adjustments | | -9,035.06 | | -9,035.06 |
| 41000 · Sales Returns and Allowances | | -1,021,188.60 | . | -1,021,188.60 |
| | | | 0.00 | 0.00 |
| **Total Income** | 11,078,970.82 | 12,581,161.18 | -10,888,447.38 | 12,771,684.62 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| 50014 · Inventory Adjustment-Lost/Damag | 58,409.07 | | | 58,409.07 |
| 50001 · Diamonds | 6,230,615.99 | | | 6,230,615.99 |
| 50002 · Colored Stones | 1,488.75 | | | 1,488.75 |
| 50003 · Jewelry | | 10,780,334.13 | -10,780,334.13 | 0.00 |
| 50005 · Accessories | 1,561.50 | 20,617.60 | | 22,179.10 |
| 50006 · Metal | 6,443.29 | | | 6,443.29 |
| 50007 · Certificates | 3,546.82 | | | 3,546.82 |
| 50010 · Watches - Prototypes | | | | |
| 5010 · Manufacturing Costs | | | | |
| 50101 · Inscription | 846.00 | | | 846.00 |
| 50102 · Polishing | 500.00 | | | 500.00 |
| 501031 · Cutting | 517.50 | | | 517.50 |
| 501032 · Production Staff Payroll | 1,065,393.11 | | | 1,065,393.11 |
| 501033 · Production Shop | 19,258.87 | | | 19,258.87 |
| 50104 · Setting | 350,524.78 | | | 350,524.78 |
| 50105 · Casting | 658,304.33 | | | 658,304.33 |
| 50106 · Engraving | 95,575.00 | | | 95,575.00 |
| 50107 · Fabricating | 108,547.63 | | | 108,547.63 |
| **Total 5010 · Manufacturing Costs** | 2,299,467.22 | | | 2,299,467.22 |
| | | | | |
| 5100 · Fixed Expenses -Production | | | | |
| 510093 · Repairs & Maint - Prod Office | 3,166.96 | | | 3,166.96 |
| 510014 · Travel Security -Prod | 623.00 | | | 623.00 |
| **Total 5100 · Fixed Expenses -Production** | 3,789.96 | | | 3,789.96 |
| | | | | |
| **Total COGS** | 8,605,322.60 | 10,800,951.73 | -10,780,334.13 | 8,625,940.20 |
| | | | | |
| **Gross Profit** | 2,473,648.22 | 1,780,209.45 | -108,113.25 | 4,145,744.42 |
| | | | | |
| **Expense** | | | | |
| 7000 · Marketing Expenses | | | | |
| 70005 · Beaudry Points Program | 16,917.94 | | | 16,917.94 |
| 70009 · Ambassador Program | 2,141.17 | 15,744.11 | | 17,885.28 |
| 70000 · Events | | 122,051.10 | | 122,051.10 |
| 70001 · Creative Services | | 16,334.62 | | 16,334.62 |
| 70002 · Advertising | | 224,695.77 | | 224,695.77 |
| 70003 · Coop Advertising | | 232,686.45 | | 232,686.45 |
| 70005 · Photography | | 156,864.09 | | 156,864.09 |
| 70006 · Public Relations | | 24,633.72 | | 24,633.72 |
| 70007 · Tradeshows | | 583,466.20 | | 583,466.20 |
| 710092 · Outside Services-Mktg | | 25,216.27 | | 25,216.27 |
| 71001 · Travel - Marketing | | | | |
| 710010 · Travel-Airfare - Marketing | | 24,184.13 | | 24,184.13 |
| 710011 · Travel Hotel & Lodging- Mktg. | | 44,074.08 | | 44,074.08 |
| 710012 · Taxi Fare & Car Rental - Mktg. | | 13,329.24 | | 13,329.24 |
| 710013 · Travel - Meals & Entertainment | | 27,713.07 | | 27,713.07 |
| **Total 71001 · Travel - Marketing** | | 109,300.52 | | 109,300.52 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Cent. Sire Diamonds, Inc. and Michael Bea , Inc.
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 71002 · Auto Expense - Marketing | | | | |
| 710024 · Auto Repairs & Maint. - Mktng. | | | | |
| Total 71002 · Auto Expense - Marketing | | | | |
| | | | | |
| Total 7000 · Marketing Expenses | 19,059.11 | 1,510,992.85 | | 1,530,051.96 |
| | | | | |
| 8000 · Gen & Administrative - Expense | | | | |
| 80000 · Utilities | | | | |
| 800001 · Electric | 54,749.74 | | | 54,749.74 |
| 800002 · Trash | 3,722.54 | | | 3,722.54 |
| 800003 · Gas | 470.42 | | | 470.42 |
| 800005 · Water | 15,289.61 | | | 15,289.61 |
| Total 80000 · Utilities | 74,232.31 | | | 74,232.31 |
| | | | | |
| 800004 · Rent Expense | | | | |
| 800004 · Rent Expense - Other | 561,600.00 | | 0.00 | 561,600.00 |
| Total 800004 · Rent Expense | 561,600.00 | | 0.00 | 561,600.00 |
| | | | | |
| 80001 · Professional Fees | | | | |
| 800010 · Accounting | 230,312.19 | 158,421.67 | | 388,733.86 |
| 800011 · Legal Fees | 31,418.25 | 4,546.03 | | 35,964.28 |
| 50011 · Management Fee | -1,050,000.00 | | | -1,050,000.00 |
| 80001 · Professional Fees - Other | | 20,000.01 | | 20,000.01 |
| Total 80001 · Professional Fees | -788,269.56 | 182,967.71 | | -605,301.85 |
| | | | | |
| 80002 · Depreciation Expense | | | | |
| 80002 · Depreciation Expense - Other | 123,599.88 | 23,136.00 | | 146,735.88 |
| Total 80002 · Depreciation Expense | 123,599.88 | 23,136.00 | | 146,735.88 |
| | | | | |
| 80003 · Charitable Contributions | 4,406.36 | 25,560.49 | | 29,966.85 |
| 81001 · Travel | | | | |
| 810010 · Airfare | | 8,275.06 | | 8,275.06 |
| 810011 · Hotel & Lodging | | 2,796.45 | | 2,796.45 |
| 810016 · Travel | 22,002.89 | | | 22,002.89 |
| 810012 · Taxi Fare & Car Rental -Adm | | 770.24 | | 770.24 |
| 810013 · Meals & Entertainment - Adm | | 60,000.49 | | 60,000.49 |
| 810016 · Misc Travel Exp -Adm | | 2,437.06 | | 2,437.06 |
| Total 81001 · Travel | 22,002.89 | 74,279.30 | | 96,282.19 |
| | | | | |
| 81002 · Auto Expense | | | | |
| 810021 · Employee Auto Exp. | 1,975.00 | 11,260.88 | | 13,235.88 |
| 810023 · Insurance | 6,942.76 | | | 6,942.76 |
| 810022 · Fuel - Adm | | 2,024.01 | | 2,024.01 |
| Total 81002 · Auto Expense | 8,917.76 | 13,284.89 | | 22,202.65 |
| | | | | |
| 81003 · Bank Fees - Adm | | | | |
| 810030 · Credit Card Fees-Adm | 625.00 | | | 625.00 |
| 810031 · Service Charges | 7,913.12 | 6,187.87 | | 14,100.99 |
| 810030 · Credit Card Fees | | 847.47 | | 847.47 |
| Total 81003 · Bank Fees - Adm | 8,538.12 | 7,035.34 | | 15,573.46 |
| | | | | |
| 81004 · Computer- Adm | | | | |
| 810040 · Comp. Hardware - Adm | | 162,593.68 | | 162,593.68 |
| 810041 · Internet Services - Adm | 2,497.46 | 764.83 | | 3,262.29 |
| 810042 · Svrce, Support & Repairs-Adm | 14,153.67 | | | 14,153.67 |
| 810043 · Comp. Software -Adm | 1,347.71 | | | 1,347.71 |
| 810044 · Comp. Supplies -Adm | 840.39 | | | 840.39 |
| Total 81004 · Computer- Adm | 18,839.23 | 163,358.51 | | 182,197.74 |
| | | | | |
| 81005 · Transportation Exp. -Adm | | | | |
| 810050 · Employee Parking | 34,343.00 | | | 34,343.00 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Cent ...ne Diamonds, Inc. and Michael Bea ..., Inc.

**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 810051 · Mileage-Adm | 728.31 | | | 728.31 |
| 810052 · Other Transp. Exp.- Adm | 5,106.74 | | | 5,106.74 |
| Total 81005 · Transportation Exp. -Adm | 40,178.05 | | | 40,178.05 |
| | | | | |
| **81006 · Employment Services - Adm** | | | | |
| 810060 · Benefits Administration - Adm | 4,967.00 | | | 4,967.00 |
| 810061 · Recruiting Expenses - Adm | 3,973.50 | 563.98 | | 4,537.48 |
| 810060 · Benefit Adm Exp -Adm | | 1,773.66 | | 1,773.66 |
| 810062 · Other Emplmt Svcs - Adm | | | | |
| 8100620 · Employee Morale-Adm | | 5,516.81 | | 5,516.81 |
| Total 810062 · Other Emplmt Svcs - Adm | | 5,516.81 | | 5,516.81 |
| | | | | |
| Total 81006 · Employment Services - Adm | 8,940.50 | 7,854.45 | | 16,794.95 |
| | | | | |
| **81007 · Delivery Services-Adm** | | | | |
| 810070 · Messenger Service -Adm | 2,609.49 | | | 2,609.49 |
| 810071 · Shipping -Adm | 269,968.66 | 3,966.42 | | 273,935.08 |
| 810072 · Postage | 2,601.07 | | | 2,601.07 |
| Total 81007 · Delivery Services-Adm | 275,179.22 | 3,966.42 | | 279,145.64 |
| | | | | |
| **81008 · Insurance** | | | | |
| 810080 · Dental Insurance | 927.26 | -752.76 | | 174.50 |
| 810081 · Jewelers Block - Adm | 60,062.65 | | | 60,062.65 |
| 810083 · Medical Insurance | 109,568.75 | | | 109,568.75 |
| 810084 · Shipping Ins. -Adm | 102,657.65 | | | 102,657.65 |
| 810085 · Workers' Comp -Adm | 52,355.90 | 399.08 | | 52,754.98 |
| 810087 · General Liability -Adm | 6,559.90 | | | 6,559.90 |
| 810088 · Disability Insurance | | 100.00 | | 100.00 |
| Total 81008 · Insurance | 332,132.11 | -253.68 | | 331,878.43 |
| | | | | |
| **81009 · Office Expense -Adm** | | | | |
| 810098 · Dues & Subscriptions - Adm | 1,827.55 | 941.48 | | 2,769.03 |
| 810092 · Outside Services | 138,102.63 | 64,500.00 | | 202,602.63 |
| 810093 · Repairs & Maint. Office -Adm | 72,324.45 | 702.51 | | 73,026.96 |
| 810094 · Office Supplies - Adm | 21,406.11 | 21,618.39 | | 43,024.50 |
| 810095 · Furnitures / Equipment Adm | 1,082.39 | | | 1,082.39 |
| 810096 · Printing & Reproduction Adm | 1,974.11 | | | 1,974.11 |
| 810099 · Security Monitoring and Service | 19,693.84 | | | 19,693.84 |
| Total 81009 · Office Expense -Adm | 256,411.08 | 87,762.38 | | 344,173.46 |
| | | | | |
| **81010 · Payroll Expenses** | | | | |
| 8101062 · Inventory Staff | 130,723.05 | | | 130,723.05 |
| 810103 · Payroll Tax Expense | 146,141.24 | 105,488.35 | | 251,629.59 |
| 810105 · Payroll Processing Fees | 2,215.83 | 919.75 | | 3,135.58 |
| 8101061 · Office Staff | 356,616.09 | 491,914.57 | | 848,530.66 |
| 810108 · Vacation Expense | | 22,357.95 | | 22,357.95 |
| 810109 · Unallocated Payroll Expense | -55,222.00 | | | -55,222.00 |
| 810100 · Expense Reimbursements | | 22,301.75 | | 22,301.75 |
| 8101062 · Office Staff b | | 36.18 | | 36.18 |
| Total 81010 · Payroll Expenses | 580,474.21 | 643,018.55 | | 1,223,492.76 |
| | | | | |
| **81012 · Telephone** | | | | |
| 810120 · Cellular | 28,697.21 | 432.63 | | 29,129.84 |
| 810122 · Office - Long Distance | 25,329.38 | | | 25,329.38 |
| Total 81012 · Telephone | 54,026.59 | 432.63 | | 54,459.22 |
| | | | | |
| 81013 · Licenses & Permits | 1,780.40 | 737.20 | | 2,517.60 |
| 81014 · Meals & Entertainment | 4,478.59 | 17,041.10 | | 21,519.69 |
| **81019 · Misc. Expenses** | | | | |
| 81019 · Misc. Expenses - Other | | 541.00 | | 541.00 |
| Total 81019 · Misc. Expenses | | 541.00 | | 541.00 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Page 7 of 10

93

**Cen** one Diamonds, Inc. and Michael Ber j, Inc.
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| Total 8000 · Gen & Administrative - Expense | 1,587,467.74 | 1,250,722.29 | 0.00 | 2,838,190.03 |
| | | | | |
| 6000 · Selling Expense | | | | |
| 60002 · Outside Commissions | | 62,815.50 | | 62,815.50 |
| 60004 · Bad Debt | | 205,810.44 | | 205,810.44 |
| 61001 · Travel -Sales | | | | |
| 610010 · Airfare - Sales | | 108,991.63 | | 108,991.63 |
| 610011 · Hotels & Lodging- Sales | | 169,456.17 | | 169,456.17 |
| 610012 · Taxi Fares & Car Rental - Sales | | 63,278.12 | | 63,278.12 |
| 610013 · Meals & Entertainment - Sales | | 27,456.34 | | 27,456.34 |
| 610014 · Travel Security - Sales | | 6,057.65 | | 6,057.65 |
| 610015 · Sales Training - Sales | | 23,490.26 | | 23,490.26 |
| 610016 · Travel Expenses - Sales | | 15,157.27 | | 15,157.27 |
| 610017 · Travel Employee Meals - Sales | | 17,715.51 | | 17,715.51 |
| Total 61001 · Travel -Sales | | 431,602.95 | | 431,602.95 |
| | | | | |
| 610030 · Credit Card Fees -Sales | | 6,552.52 | | 6,552.52 |
| 610052 · Employee Parking - Sales | | 11,372.25 | | 11,372.25 |
| 610072 · Postage and Delivery - Sales | | 108,363.60 | -108,113.25 | 250.35 |
| 61008 · Insurance - Sales | | | | |
| 610080 · Dental Insurance - Sales | | 752.76 | | 752.76 |
| 610083 · Medical Insurance - Sales | | | | |
| 610085 · Workers' Compensation - Sales | | | | |
| Total 61008 · Insurance - Sales | | 752.76 | | 752.76 |
| | | | | |
| 61009 · Office Expense-Sales | | | | |
| 610092 · Outside Services -  Sales | | 10,094.37 | | 10,094.37 |
| Total 61009 · Office Expense-Sales | | 10,094.37 | | 10,094.37 |
| | | | | |
| 610094 · Office Supplies - Sales | | 5,198.14 | | 5,198.14 |
| 61010 · Payroll Expenses - Sales | | | | |
| 610101 · Bonus/Commission - Sales | | 121,030.00 | | 121,030.00 |
| 610105 · Payroll Processing Fees - Sales | | 75.00 | | 75.00 |
| 610106 · Salaries & Wages - Sales | | | | |
| 6101063 · Sales People | | 924,636.31 | | 924,636.31 |
| 610106 · Salaries & Wages - Sales - Other | | 11,809.88 | | 11,809.88 |
| Total 610106 · Salaries & Wages - Sales | | 936,446.19 | | 936,446.19 |
| | | | | |
| Total 61010 · Payroll Expenses - Sales | | 1,057,551.19 | | 1,057,551.19 |
| | | | | |
| Total 6000 · Selling Expense | | 1,900,113.72 | -108,113.25 | 1,792,000.47 |
| 99999 · Suspense | | | | |
| Total Expense | 1,606,526.85 | 4,661,828.86 | -108,113.25 | 6,160,242.46 |
| Net Ordinary Income | 867,121.37 | -2,881,619.41 | | -2,014,498.04 |
| | | | | |
| Other Income/Expense | | | | |
| Other Income | | | | |
| 90000 · Other Income | | | | |
| 900009 · Miscellaneous Income | 7,940.44 | 23,806.11 | | 31,746.55 |
| Total 90000 · Other Income | 7,940.44 | 23,806.11 | | 31,746.55 |
| | | | | |
| Total Other Income | 7,940.44 | 23,806.11 | | 31,746.55 |
| | | | | |
| Other Expense | | | | |
| 9100 · Other Expenses | | | | |
| 94000 · Loss From Investment | | 2,534.00 | | 2,534.00 |
| 93000 · Voided Checks | | | | |
| Total 9100 · Other Expenses | | 2,534.00 | | 2,534.00 |
| | | | | |
| 9110 · Interest Expense | | | | |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Cen~ one Diamonds, Inc. and Michael Be...r, Inc.
**Combined Profit And Loss**
January through December 2008

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 91001 · Alri Beaudry | 3,577.20 | | | 3,577.20 |
| 91250 · Wells Fargo Credit Card | 2,713.73 | | | 2,713.73 |
| 920000 · Interest Expense | | | | |
| 920000 · Interest Expense - Other | 30,299.45 | 27,885.12 | | 58,184.57 |
| Total 920000 · Interest Expense | 30,299.45 | 27,885.12 | | 58,184.57 |
| | | | | |
| 920002 · Finance Charges - LOC FCC | | 408,379.25 | | 408,379.25 |
| 920006 · Interest Expense LOC-FCC | | 629,310.70 | | 629,310.70 |
| 920007 · Late Fee/Charges | | 62.48 | | 62.48 |
| 920008 · Interest Exp.-others | | 2,415.44 | | 2,415.44 |
| Total 9110 · Interest Expense | 36,590.38 | 1,068,052.99 | | 1,104,643.37 |
| | | | | |
| 91200 · Finance Charges | 38,755.20 | | | 38,755.20 |
| 91300 · VOIDED CHECKS | | | | |
| 9500 · Tax Expense | | | | |
| 95001 · Federal Income Taxes | 467,300.70 | | | 467,300.70 |
| 95003 · State Income Tax | 132,114.00 | 30,545.00 | | 162,659.00 |
| 95006 · Property Tax | 4,804.51 | 3,170.77 | | 7,975.28 |
| Total 9500 · Tax Expense | 604,219.21 | 33,715.77 | | 637,934.98 |
| | | | | |
| Total Other Expense | 679,564.79 | 1,104,302.76 | | 1,783,867.55 |
| | | | | |
| Net Other Income | -671,624.35 | -1,080,496.65 | | -1,752,121.00 |
| | | | | |
| Net Income | 195,497.02 | -3,962,116.06 | | -3,766,619.04 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Stone Diamonds, Inc. and Michael Bea___, Inc.
**Combined Statement Of Cash Flow**
January through December 2008

| | TOTAL |
|---|---|
| **OPERATING ACTIVITIES** | |
| Net Income | -3,766,619.04 |
| Adjustments to reconcile Net Income | |
| to net cash provided by operations: | |
| 12001 · Accounts Receivable | 1,727,463.53 |
| 13004 · Prepaid Expenses:130046 · Prepaid Expenses -Others | -19,200.00 |
| 13006 · Inventory:130061 · Fin. Goods - Returns in Transit | -513,555.00 |
| 13006 · Inventory:130063 · Materials & Supplies:1300631 · Diamonds | 4,570,182.12 |
| 210011 · Accounts Payable | -2,473,831.60 |
| 2114 · Wells Fargo 4602-7023 | -34,175.98 |
| 22003 · Inter-Company Accounts | -2,026.92 |
| 22003 · Inter-Company Accounts:220038 · Due to/from CDI - Beaudry-BH | 176,584.00 |
| 22003 · Inter-Company Accounts:220036 · Due to/from CDI - B Time Int'l | -199,843.92 |
| 22003 · Inter-Company Accounts:220034 · Due to/from CDI-8th Street | 540,731.57 |
| 22004 · Customer Deposits | 272,925.00 |
| 22005 · Loans Payable - Current:230031 · Capital Lease - Current Portion | 2,330.91 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | 7,560.87 |
| 22006 · Payroll Liabilities:220063 · 401K & Pension | 2,026.92 |
| 22006 · Payroll Liabilities:220645 · 401K-Loan Payable E-NB | 76.58 |
| 22006 · Payroll Liabilities:220065 · AFLAC Premium Only | 304.78 |
| 22006 · Payroll Liabilities:220066 · Federal Payroll Taxes | 495.74 |
| 22006 · Payroll Liabilities:220067 · California Payroll Taxes | 93.60 |
| 22006 · Payroll Liabilities:22070 · Vacation Accrual | -45,731.38 |
| 22007 · Sales Tax Payable | 1,828.52 |
| 22008 · Income Tax Payable | 494,622.08 |
| 12002 · Allowance for AR | 1,226,999.04 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130032 · Employee Loan | -15,294.91 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | -2,713.35 |
| 13004 · Prepaid Expenses:130047 · Prepaid Advertising | -25,000.00 |
| 22001 · Accrued Commisions | 123,352.00 |
| 22002 · Accrued Coop Advertisement | -34,416.83 |
| 22003 · Inter-Company Accounts:220039 · Due to/from MBI - Beaudry-BH | 33,867.34 |
| 22003 · Inter-Company Accounts:220037 · Due to/from MBI - B Time Int'l | 223,316.46 |
| 22003 · Inter-Company Accounts:220031 · Due to/from MBI-8th Street | -439,000.00 |
| 22005 · Loans Payable - Current:220057 · Microsoft-CTT Fin. Serv. | 67,359.78 |
| 22005 · Loans Payable - Current:220054 · Loan - MB | 15,000.00 |
| 22005 · Loans Payable - Current:220051 · GMAC Loan - Current Portion | -362.34 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | -2,714,481.94 |
| 22006 · Payroll Liabilities:220068 · Levies and Garnishments | -154.95 |
| **Net cash provided by Operating Activities** | -799,287.32 |
| | |
| **INVESTING ACTIVITIES** | |
| 14001 · Machinery & Equipment | -3,500.00 |
| 140031 · Computers | -148,480.70 |
| 14004 · Leasehold Improvements | -30,562.54 |
| 14099 · Accumulated Depreciation | 146,735.88 |
| 150025 · Security Deposits | -509.08 |
| **Net cash provided by Investing Activities** | -36,316.44 |
| | |
| **FINANCING ACTIVITIES** | |
| 230030 · Equipment Lease Payable - FFL | -3,585.51 |
| 230025 · Equipment Lease Payable - ACG | -11,166.42 |
| 230011 · Due To/From M Beaudry Personal | 3,063,808.63 |
| 230012 · Airi Beaudry | -7,822.80 |
| 230021 · GMAC-Yukon | -5,581.51 |
| 30033 · Retained Earnings | -956,706.00 |
| 230033 · Loan - Microsoft - CTT Fin.Serv | 197,094.36 |
| 220041 · Leases Payable | -18,218.64 |
| 230022 · GMAC Loan- Cadillac Escalade | -12,015.36 |
| 23010 · Distributions Payable - 2006 | -1,899,875.00 |
| **Net cash provided by Financing Activities** | 365,931.75 |
| | |
| **Net cash increase for period** | -469,672.01 |
| | |
| **Cash at beginning of period** | 411,039.71 |
| **Cash at end of period** | -58,632.30 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

# EXHIBIT "F"

1

**EXHIBIT "F" – BALANCE SHEET, CASH FLOW STATEMENT, AND INCOME**
**STATEMENT FOR CALENDAR YEAR 2007**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

SECONDTHIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**CENTERSTONE DIAMONDS, INC.**
**and**
**MICHAEL BEAUDRY, INC.**

**COMBINED FINANCIAL REPORT**

**For the year ended December 31, 2007**

Cen    one Diamonds, Inc. and Michael Bea    Inc.
**Combined Balance Sheet**
As of December 31, 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| **Checking/Savings** | | | | |
| 10001 · Petty Cash | 3,500.00 | | | 3,500.00 |
| 1020 · Exchange/Transfer | | 15,294.91 | | 15,294.91 |
| 110021 · Cathay Bank - 01128205 | 122,319.10 | | | 122,319.10 |
| 110021 · Cathay Bank - 01128221 | | 166,369.16 | | 166,369.16 |
| 150012 · Citibank CD 287-0094535 | | 2,306.54 | | 2,306.54 |
| **Total Checking/Savings** | 125,819.10 | 183,970.61 | | 309,789.71 |
| | | | | |
| **Accounts Receivable** | | | | |
| 12001 · Accounts Receivable | 4,520,693.25 | 6,243,187.47 | -4,520,693.25 | 6,243,187.47 |
| **Total Accounts Receivable** | 4,520,693.25 | 6,243,187.47 | -4,520,693.25 | 6,243,187.47 |
| | | | | |
| **Other Current Assets** | | | | |
| **13000 · Other Current Assets** | | | | |
| **13003 · Loans Receivable** | | | | |
| 130032 · Employee Loan | | -15,294.91 | | -15,294.91 |
| **Total 13003 · Loans Receivable** | | -15,294.91 | | -15,294.91 |
| | | | | |
| **Total 13000 · Other Current Assets** | | -15,294.91 | | -15,294.91 |
| | | | | |
| 13001 · Undeposited Funds | | 101,250.00 | | 101,250.00 |
| **13004 · Prepaid Expenses** | | | | |
| 130045 · Prepaid Mktg & Show Expenses | | 98,723.65 | | 98,723.65 |
| **Total 13004 · Prepaid Expenses** | | 98,723.65 | | 98,723.65 |
| | | | | |
| **13006 · Inventory** | | | | |
| **130063 · Materials & Supplies** | | | | |
| 1300631 · Diamonds | 15,841,414.77 | | | 15,841,414.77 |
| **Total 130063 · Materials & Supplies** | 15,841,414.77 | | | 15,841,414.77 |
| | | | | |
| **Total 13006 · Inventory** | 15,841,414.77 | | | 15,841,414.77 |
| | | | | |
| **Total Other Current Assets** | 15,841,414.77 | 184,678.74 | | 16,026,093.51 |
| | | | | |
| **Total Current Assets** | 20,487,927.12 | 6,611,836.82 | -4,520,693.25 | 22,579,070.69 |
| | | | | |
| **Fixed Assets** | | | | |
| 14001 · Machinery & Equipment | 96,967.50 | 36,766.23 | | 133,733.73 |
| 14002 · Vehicles/Autos/Trucks | 55,810.15 | | | 55,810.15 |
| 140031 · Computers | 133,649.98 | 177,978.19 | | 311,628.17 |
| 140032 · Office Equipment | 214,376.06 | | | 214,376.06 |
| 140033 · Furniture & Fixtures | 51,646.27 | 71,294.50 | | 122,940.77 |
| 140034 · Shop Tools & Small Equipment | 48,180.41 | | | 48,180.41 |
| 14004 · Leasehold Improvements | 57,884.18 | 132,950.00 | | 190,834.18 |
| 14007 · Construction in Process | 215,159.94 | 23,033.62 | | 238,193.56 |
| 14099 · Accumulated Depreciation | -417,843.00 | -210,596.00 | | -628,439.00 |
| **Total Fixed Assets** | 455,831.49 | 231,426.54 | | 687,258.03 |
| | | | | |
| **Other Assets** | | | | |
| 150025 · Security Deposits | 3,718.87 | 3,036.44 | | 6,755.31 |
| 150011 · Centurion Jewelry B.I.O., LLC | | 2,616.00 | | 2,616.00 |
| **Total Other Assets** | 3,718.87 | 5,652.44 | | 9,371.31 |
| | | | | |
| **TOTAL ASSETS** | 20,947,477.48 | 6,848,915.80 | -4,520,693.25 | 23,275,700.03 |

FOR INTERNAL MANAGEMENT
PURPOSES ONLY

Cen...one Diamonds, Inc. and Michael Bea...y, Inc.
**Combined Balance Sheet**
As of December 31, 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **LIABILITIES & EQUITY** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| **Accounts Payable** | | | | |
| 210011 · Accounts Payable | 4,825,701.39 | 1,435,073.00 | | 6,260,774.39 |
| 210012 · Intercompany Sales | | 4,520,693.25 | -4,520,693.25 | |
| **Total Accounts Payable** | 4,825,701.39 | 5,955,766.25 | -4,520,693.25 | 6,260,774.39 |
| | | | | |
| **Credit Cards** | | | | |
| 2114 · Wells Fargo 4602-7023 | 34,175.98 | | | 34,175.98 |
| **Total Credit Cards** | 34,175.98 | | | 34,175.98 |
| | | | | |
| **Other Current Liabilities** | | | | |
| 22003 · Inter-Company Accounts | | | | |
| 220032 · Due To/From MBI-CDI | 12,481,514.95 | -12,481,514.95 | | |
| 220034 · Due to/from CDI-8th Street | 844,962.02 | | | 844,962.02 |
| 220031 · Due to/from MBI-8th Street | | -529,528.61 | | -529,528.61 |
| **Total 22003 · Inter-Company Accounts** | 13,326,476.97 | -13,011,043.56 | | 315,433.41 |
| | | | | |
| 22004 · Customer Deposits | | 697,075.00 | | 697,075.00 |
| 22005 · Loans Payable - Current | | | | |
| 230031 · Capital Lease - Current Portion | 12,421.00 | 18,219.00 | | 30,640.00 |
| 220051 · GMAC Loan - Current Portion | | 12,378.26 | | 12,378.26 |
| 220053 · LOC - First Capital | | 9,048,558.10 | | 9,048,558.10 |
| **Total 22005 · Loans Payable - Current** | 12,421.00 | 9,079,155.36 | | 9,091,576.36 |
| | | | | |
| 22006 · Payroll Liabilities | | | | |
| 220061 · Accrued Payroll | 55,221.19 | 33,104.67 | | 88,325.86 |
| 220065 · AFLAC Premium Only | 371.68 | 254.30 | | 625.98 |
| 22070 · Vacation Accrual | 65,316.54 | 37,243.39 | | 102,559.93 |
| 220068 · Levies and Garnishments | | 154.95 | | 154.95 |
| **Total 22006 · Payroll Liabilities** | 120,909.41 | 70,757.31 | | 191,666.72 |
| | | | | |
| 22007 · Sales Tax Payable | | 1,851.79 | | 1,851.79 |
| 22008 · Income Tax Payable | 216,081.00 | 8,000.00 | | 224,081.00 |
| 22001 · Accrued Commisions | | 1,988.00 | | 1,988.00 |
| 22002 · Accrued Coop Advertisement | | 175,596.33 | | 175,596.33 |
| **Total Other Current Liabilities** | 13,675,888.38 | -2,976,619.77 | | 10,699,268.61 |
| | | | | |
| **Total Current Liabilities** | 18,535,765.75 | 2,979,146.48 | -4,520,693.25 | 16,994,218.98 |
| | | | | |
| **Long Term Liabilities** | | | | |
| 230030 · Equipment Lease Payable - FFL | 17,206.58 | | | 17,206.58 |
| 230025 · Equipment Lease Payable - ACG | 53,473.74 | | | 53,473.74 |
| 230011 · Due To/From M Beaudry Personal | 460,526.43 | -2,717,260.37 | | -2,256,733.94 |
| 230012 · Airl Beaudry | 63,000.96 | | | 63,000.96 |
| 230021 · GMAC-Yukon | 5,581.51 | | | 5,581.51 |
| 220041 · Leases Payable | | 60,728.23 | | 60,728.23 |
| 230022 · GMAC Loan- Cadillac Escalade | | 36,869.12 | | 36,869.12 |
| 23010 · Distributions Payable - 2006 | | 1,899,875.00 | | 1,899,875.00 |
| **Total Long Term Liabilities** | 599,789.22 | -719,788.02 | | -119,998.80 |
| | | | | |
| **Total Liabilities** | 19,135,554.97 | 2,259,358.46 | -4,520,693.25 | 16,874,220.18 |
| | | | | |
| **Equity** | | | | |
| 30002 · Common Stock | 3,000.00 | 1,000.00 | | 4,000.00 |
| 30003 · Retained Earnings | 1,802,656.46 | 3,196,005.20 | | 4,998,661.66 |
| Net Income | 6,266.05 | 1,392,552.14 | | 1,398,818.19 |
| **Total Equity** | 1,811,922.51 | 4,589,557.34 | | 6,401,479.85 |
| | | | | |
| **TOTAL LIABILITIES & EQUITY** | 20,947,477.48 | 6,848,915.80 | -4,520,693.25 | 23,275,700.03 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Page 3 of 9

Cent... one Diamonds, Inc. and Michael Be... y, Inc.

**Combined Profit And Loss**
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| 40009 · Other Sales and Revenue | | 3,168.33 | | 3,168.33 |
| 40001 · Jewelry Sales | 17,509,380.27 | 21,034,749.18 | -17,509,380.27 | 21,034,749.18 |
| 40004 · Shipping Income | 111,419.15 | 111,348.16 | -111,419.15 | 111,348.16 |
| 40006 · Recycling Income | 338,740.56 | 49,608.37 | | 388,348.93 |
| 40002 · Loose Stone Sales | | 932,227.20 | | 932,227.20 |
| 40003 · Jewelry Repairs & Rework | | 73,920.45 | | 73,920.45 |
| 40005 · Advertising Sales | | | | |
| 40008 · Misc Customer Fees | | 4,940.00 | | 4,940.00 |
| 40999 · Customer Discounts/Adjustments | | -11,171.33 | | -11,171.33 |
| | | | 0.00 | 0.00 |
| **Total Income** | 17,959,539.98 | 22,198,790.36 | -17,620,799.42 | 22,537,530.92 |
| **Cost of Goods Sold** | | | | |
| 50001 · Diamonds | 7,512,399.66 | 147,088.50 | | 7,659,488.16 |
| 50002 · Colored Stones | 351,675.92 | | | 351,675.92 |
| 50003 · Jewelry | 55,575.72 | 17,509,380.27 | -17,509,380.27 | 55,575.72 |
| 50004 · Vendors - Misc Charges | 4,046.93 | | | 4,046.93 |
| 50005 · Accessories | 4,317.65 | 14,390.00 | | 18,707.65 |
| 50006 · Metal | 98,803.25 | | | 98,803.25 |
| 50007 · Certificates | 5,334.00 | | | 5,334.00 |
| 50010 · Watches - Prototypes | 14,989.22 | | | 14,989.22 |
| **5010 · Manufacturing Costs** | | | | |
| 50101 · Inscription | 6,876.00 | | | 6,876.00 |
| 501032 · Production Staff Payroll | 1,379,975.11 | | | 1,379,975.11 |
| 501033 · Production Shop | 31,019.32 | | | 31,019.32 |
| 50104 · Setting | 761,158.41 | | | 761,158.41 |
| 50105 · Casting | 956,944.64 | | | 956,944.64 |
| 50106 · Engraving | 186,380.00 | | | 186,380.00 |
| 50107 · Fabricating | 828,571.68 | | | 828,571.68 |
| **Total 5010 · Manufacturing Costs** | 4,150,925.16 | | | 4,150,925.16 |
| **5100 · Fixed Expenses -Production** | | | | |
| 510050 · Employee Parking - Prod2,85 | 5.10 | | | 2,855.10 |
| 51015 · Equipment Lease Rental - Prod | 2,143.02 | | | 2,143.02 |
| 51014 · Meals and Entertainment - Prod | 492.57 | | | 492.57 |
| 510094 · Office Supplies - Prod | 1,205.54 | | | 1,205.54 |
| 510092 · Outside Service - Prod | 8,536.08 | | | 8,536.08 |
| 510061 · Recruiting Expenses-Prod | 2,405.00 | | | 2,405.00 |
| 510093 · Repairs & Maint - Prod Office | 13,324.61 | | | 13,324.61 |
| 510042 · Service Support & Repairs -Prod | 14,808.75 | | | 14,808.75 |
| 510071 · Shipping Expenses - Prod | 30,210.56 | | | 30,210.56 |
| 51001 · Travel - Production | 1,001.71 | | | 1,001.71 |
| 510014 · Travel Security -Prod | 3,482.42 | | | 3,482.42 |
| **Total 5100 · Fixed Expenses -Production** | 80,465.36 | | | 80,465.36 |
| **Total COGS** | 12,278,532.87 | 17,670,858.77 | -17,509,380.27 | 12,440,011.37 |
| **Gross Profit** | 5,681,007.11 | 4,527,931.59 | -111,419.15 | 10,097,519.55 |
| **Expense** | | | | |
| **7000 · Marketing Expenses** | | | | |
| 70000 · Events | | 82,835.70 | | 82,835.70 |
| 70001 · Creative Services | | 34,778.14 | | 34,778.14 |
| 70002 · Advertising | | 967,500.00 | | 967,500.00 |
| 70003 · Coop Advertising | | 280,467.68 | | 280,467.68 |
| 70004 · Entertainment | | 6,967.80 | | 6,967.80 |
| 70005 · Photography | | 99,597.09 | | 99,597.09 |
| 70006 · Public Relations | | 41,440.99 | | 41,440.99 |
| 70007 · Tradeshows | | 660,034.35 | | 660,034.35 |
| 710092 · Outside Services-Mktg | | 19,109.34 | | 19,109.34 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Page 4 of 9

Cen... one Diamonds, Inc. and Michael Be... /, Inc.
**Combined Profit And Loss**
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 71001 · Travel - Marketing | | | | |
| 710010 · Travel-Airfare - Marketing | | 40,788.91 | | 40,788.91 |
| 710011 · Travel Hotel & Lodging- Mktg. | | 43,536.54 | | 43,536.54 |
| 710012 · Taxi Fare & Car Rental - Mktg. | | 12,528.83 | | 12,528.83 |
| 710013 · Travel - Meals & Entertainment | | 38,100.08 | | 38,100.08 |
| 710014 · Travel-Security | | 420.00 | | 420.00 |
| 710015 · Travel - Communications | | 2,041.00 | | 2,041.00 |
| Total 71001 · Travel - Marketing | | 137,415.36 | | 137,415.36 |
| | | | | |
| 71009 · Office Expenses | | | | |
| 710094 · Office Supplies | | 175.00 | | 175.00 |
| Total 71009 · Office Expenses | | 175.00 | | 175.00 |
| | | | | |
| 71010 · Payroll Expense-Marketing | | | | |
| 710103 · Payroll Tax Exp-Mktg. | | 4,075.83 | | 4,075.83 |
| 7101061 · Office Staff -Mktg | | 52,881.70 | | 52,881.70 |
| Total 71010 · Payroll Expense-Marketing | | 56,957.53 | | 56,957.53 |
| | | | | |
| Total 7000 · Marketing Expenses | | 2,387,278.98 | | 2,387,278.98 |
| | | | | |
| 8000 · Gen & Administrative - Expense | | | | |
| 80000 · Utilities | | | | |
| 800001 · Electric | 44,098.23 | | | 44,098.23 |
| 800002 · Trash | 4,479.32 | | | 4,479.32 |
| 800003 · Gas | 720.79 | | | 720.79 |
| 800005 · Water | 10,898.09 | | | 10,898.09 |
| Total 80000 · Utilities | 60,196.43 | | | 60,196.43 |
| | | | | |
| 800004 · Rent Expense | | | | |
| 800004 · Rent Expense - Other | 561,600.00 | | 0.00 | 561,600.00 |
| Total 800004 · Rent Expense | 561,600.00 | | 0.00 | 561,600.00 |
| | | | | |
| 80001 · Professional Fees | | | | |
| 800010 · Accounting | 132,362.59 | 94,672.25 | | 227,034.84 |
| 800011 · Legal Fees | 12,000.00 | 2,867.02 | | 14,867.02 |
| 50011 · Management Fee | 2,200,000.00 | -2,200,000.00 | | |
| Total 80001 · Professional Fees | 2,344,362.59 | -2,102,460.73 | | 241,901.86 |
| | | | | |
| 80002 · Depreciation Expense | | | | |
| 80002 · Depreciation Expense - Other | 85,184.12 | 29,967.94 | | 115,152.06 |
| Total 80002 · Depreciation Expense | 85,184.12 | 29,967.94 | | 115,152.06 |
| | | | | |
| 80003 · Charitable Contributions | 2,500.00 | 35,173.96 | | 37,673.96 |
| 81001 · Travel | | | | |
| 810010 · Airfare | 1,223.80 | 18,099.50 | | 19,323.30 |
| 810011 · Hotel & Lodging | 2,062.17 | 4,813.45 | | 6,875.62 |
| 810012 · Taxi Fares & Car Rental | 1,574.22 | | | 1,574.22 |
| 810013 · Meals & Entertainment | 2,086.72 | | | 2,086.72 |
| Total 81001 · Travel | 6,946.91 | 22,912.95 | | 29,859.86 |
| | | | | |
| 81002 · Auto Expense | | | | |
| 810020 · Lease payments | 8,137.90 | | | 8,137.90 |
| 810021 · Employee Auto Exp. | 35,510.58 | 5,940.65 | | 41,451.23 |
| 810023 · Insurance | 3,300.31 | | | 3,300.31 |
| 810025 · Repairs & Maintenance | 1,871.94 | | | 1,871.94 |
| Total 81002 · Auto Expense | 48,820.73 | 5,940.65 | | 54,761.38 |
| | | | | |
| 81003 · Bank Fees - Adm | | | | |
| 810031 · Service Charges | 3,394.68 | 19,776.30 | | 23,170.98 |
| Total 81003 · Bank Fees - Adm | 3,394.68 | 19,776.30 | | 23,170.98 |
| | | | | |
| 81004 · Computer- Adm | | | | |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Page 5 of 9

103

Cent, ...he DiamONds, Inc. and Michael Bea..., Inc.
**Combined Profit And Loss**
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 810040 · Comp. Hardware - Adm | 2,240.90 | 70,658.39 | | 72,899.29 |
| 810041 · Internet Services - Adm | 2,638.97 | | | 2,638.97 |
| 810042 · Svrce, Support & Repairs-Adm | 40,246.52 | 3,317.22 | | 43,563.74 |
| 810044 · Comp. Supplies -Adm | 2,898.72 | | | 2,898.72 |
| 810043 · Software Expenses -Adm | | 4,503.21 | | 4,503.21 |
| **Total 81004 · Computer- Adm** | 48,025.11 | 78,478.82 | | 126,503.93 |
| | | | | |
| **81005 · Transportation Exp. -Adm** | | | | |
| 810050 · Employee Parking | 39,623.15 | 1,783.15 | | 41,406.30 |
| 810051 · Mileage-Adm | 1,410.32 | | | 1,410.32 |
| 810052 · Other Transp. Exp.- Adm | 632.00 | | | 632.00 |
| 81005 · Transportation Exp. -Adm - Other | 1,149.75 | | | 1,149.75 |
| **Total 81005 · Transportation Exp. -Adm** | 42,815.22 | 1,783.15 | | 44,598.37 |
| | | | | |
| **81006 · Employment Services - Adm** | | | | |
| 810060 · Benefits Administration - Adm | 2,896.40 | | | 2,896.40 |
| 810061 · Recruiting Expenses - Adm | 31,353.99 | | | 31,353.99 |
| 8100620 · Employee Morale | 8,482.47 | | | 8,482.47 |
| 810062 · Other Emplmt Svcs - Adm | | | | |
|     8100620 · Employee Morale-Adm | | 19,258.98 | | 19,258.98 |
|     810062 · Other Emplmt Svcs - Adm - Other | | 4,971.90 | | 4,971.90 |
|   **Total 810062 · Other Emplmt Svcs - Adm** | | 24,230.88 | | 24,230.88 |
| | | | | |
| **Total 81006 · Employment Services - Adm** | 42,732.86 | 24,230.88 | | 66,963.74 |
| | | | | |
| **81007 · Delivery Services-Adm** | | | | |
| 810070 · Messenger Service -Adm | 3,351.50 | | | 3,351.50 |
| 810071 · Shipping -Adm | 220,126.63 | | | 220,126.63 |
| 810072 · Postage | 3,325.43 | | | 3,325.43 |
| **Total 81007 · Delivery Services-Adm** | 226,803.56 | | | 226,803.56 |
| | | | | |
| **81008 · Insurance** | | | | |
| 810080 · Dental Insurance | 1,765.81 | -419.84 | | 1,345.97 |
| 810081 · Jewelers Block - Adm | 153,520.15 | | | 153,520.15 |
| 810083 · Medical Insurance | 134,617.86 | | | 134,617.86 |
| 810084 · Shipping Ins. -Adm | 22,453.50 | | | 22,453.50 |
| 810085 · Workers' Comp -Adm | 40,507.55 | | | 40,507.55 |
| 810087 · General Liability -Adm | 13,344.00 | | | 13,344.00 |
| **Total 81008 · Insurance** | 366,208.87 | -419.84 | | 365,789.03 |
| | | | | |
| **81009 · Office Expense -Adm** | | | | |
| 810098 · Dues & Subscriptions - Adm | 2,590.24 | | | 2,590.24 |
| 810092 · Outside Services | 239,599.00 | 14,385.34 | | 253,984.34 |
| 810093 · Repairs & Maint. Office -Adm | 151,744.51 | 23,884.14 | | 175,628.65 |
| 810094 · Office Supplies - Adm | 55,284.34 | 40,675.38 | | 95,959.72 |
| 810099 · Security Monitoring and Service | 11,324.83 | | | 11,324.83 |
| **Total 81009 · Office Expense -Adm** | 460,542.92 | 78,944.86 | | 539,487.78 |
| | | | | |
| **81010 · Payroll Expenses** | | | | |
| 810103 · Payroll Tax Expense | 185,754.29 | 49,599.66 | | 235,353.95 |
| 8101061 · Office Staff | 739,755.48 | 302,762.38 | | 1,042,517.86 |
| 810108 · Vacation Expense | 9,552.81 | 19,343.50 | | 28,896.31 |
| 810109 · Unallocated Payroll Expense | 55,221.19 | 33,104.67 | | 88,325.86 |
| 810100 · Expense Reimbursements | | | | |
| 8101062 · Office Staff b | | -11,550.08 | | -11,550.08 |
| **Total 81010 · Payroll Expenses** | 990,283.77 | 393,260.13 | | 1,383,543.90 |
| | | | | |
| **81012 · Telephone** | | | | |
| 810120 · Cellular | 29,379.13 | | | 29,379.13 |
| 810122 · Office - Long Distance | 22,006.56 | | | 22,006.56 |
| **Total 81012 · Telephone** | 51,385.69 | | | 51,385.69 |

**FOR INTERNAL MANAGEMENT**
**PURPOSES ONLY**

Page 6 of 9

104

Cent... one Diamonds, Inc. and Michael Bea...i, Inc.
**Combined Profit And Loss**
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| 81013 · Licenses & Permits | 1,377.43 | 1,343.60 | | 2,721.03 |
| 81014 · Meals & Entertainment | 3,829.93 | 20,738.06 | | 24,567.99 |
| 81015 · Equipment Lease/Rental | | 22,544.76 | | 22,544.76 |
| 81019 · Misc. Expenses | | | | |
|   81019 · Misc. Expenses - Other | | | | |
| Total 81019 · Misc. Expenses | | | | |
| | | | | |
| 810191 · Miscellaneous Credits | | | | |
| Total 8000 · Gen & Administrative - Expense | 5,347,010.82 | -1,367,784.51 | 0.00 | 3,979,226.31 |
| | | | | |
| 6000 · Selling Expense | | | | |
|   60000 · Sales Discounts | | | | |
|     60000 · Sales Discounts - Other | | | | |
|   Total 60000 · Sales Discounts | | | | |
| | | | | |
|   60002 · Outside Commissions | | 10,460.36 | | 10,460.36 |
|   60004 · Bad Debt | | 1,757.00 | | 1,757.00 |
|   61001 · Travel -Sales | | | | |
|     610010 · Airfare - Sales | | 175,618.31 | | 175,618.31 |
|     610011 · Hotels & Lodging- Sales | | 220,905.90 | | 220,905.90 |
|     610012 · Taxi Fares & Car Rental - Sales | | 76,890.22 | | 76,890.22 |
|     610013 · Meals & Entertainment - Sales | | 44,695.92 | | 44,695.92 |
|     610014 · Travel Security - Sales | | 8,020.00 | | 8,020.00 |
|     610016 · Travel Expenses - Sales | | 7,859.42 | | 7,859.42 |
|   Total 61001 · Travel -Sales | | 533,989.77 | | 533,989.77 |
| | | | | |
|   610030 · Credit Card Fees -Sales | | 10,968.99 | | 10,968.99 |
|   610052 · Employee Parking - Sales | | 8,320.00 | | 8,320.00 |
|   61006 · Employment Services - Sales | | | | |
|     610061 · Recruiting Expenses - Sales | | 4,026.16 | | 4,026.16 |
|   Total 61006 · Employment Services - Sales | | 4,026.16 | | 4,026.16 |
| | | | | |
|   610072 · Postage and Delivery - Sales | | 112,000.14 | -111,419.15 | 580.99 |
|   61008 · Insurance - Sales | | | | |
|     610080 · Dental Insurance - Sales | | -896.48 | | -896.48 |
|     610083 · Medical Insurance - Sales | | -19,506.95 | | -19,506.95 |
|   Total 61008 · Insurance - Sales | | -20,403.43 | | -20,403.43 |
| | | | | |
|   61009 · Office Expense-Sales | | | | |
|     610092 · Outside Services - Sales | | 5,316.98 | | 5,316.98 |
|   Total 61009 · Office Expense-Sales | | 5,316.98 | | 5,316.98 |
| | | | | |
|   610094 · Office Supplies - Sales | | 2,635.92 | | 2,635.92 |
|   61010 · Payroll Expenses - Sales | | | | |
|     610103 · Payroll Tax Expense - Sales | | 18,705.96 | | 18,705.96 |
|     610106 · Salaries & Wages - Sales | | | | |
|       6101061 · Office Staff - Sales | | 15,233.22 | | 15,233.22 |
|       6101062 · Sales Staff | | 16,544.32 | | 16,544.32 |
|       6101063 · Sales People | | 559,788.09 | | 559,788.09 |
|     Total 610106 · Salaries & Wages - Sales | | 591,565.63 | | 591,565.63 |
| | | | | |
|   Total 61010 · Payroll Expenses - Sales | | 610,271.59 | | 610,271.59 |
| | | | | |
|   610120 · Cellular -Sales | | 2,790.22 | | 2,790.22 |
|   61014 · Meals & Entertainment-Sales | | 14,724.57 | | 14,724.57 |
|   Total 6000 · Selling Expense | | 1,296,858.27 | -111,419.15 | 1,185,439.12 |
| | | | | |
| 99999 · Suspense | | | | |
| Total Expense | 5,347,010.82 | 2,316,352.74 | -111,419.15 | 7,551,944.41 |
| Net Ordinary Income | 333,996.29 | 2,211,578.85 | | 2,545,575.14 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Cent... Jim Diamonds, Inc. and Michael Be..., Inc.
**Combined Profit And Loss**
January through December 2007

| | CDI | MBI | Interco. Elim. | TOTAL |
|---|---|---|---|---|
| **Other Income/Expense** | | | | |
| **Other Income** | | | | |
| **90000 · Other Income** | | | | |
| 81021 · Prior Year Correction | -20,246.98 | 20,006.88 | | -240.10 |
| 900002 · Interest Income | | 85.27 | | 85.27 |
| 90000 · Other Income - Other | | | | |
| **Total 90000 · Other Income** | -20,246.98 | 20,092.15 | | -154.83 |
| **Total Other Income** | -20,246.98 | 20,092.15 | | -154.83 |
| **Other Expense** | | | | |
| **9110 · Interest Expense** | | | | |
| 91001 · Airl Beaudry | 4,021.64 | | | 4,021.64 |
| 91210 · LOC - Cathay Bank | 177,247.88 | | | 177,247.88 |
| **920000 · Interest Expense** | | | | |
| 920000 · Interest Expense - Other36,1 | 29.58 | 3,237.39 | | 39,366.97 |
| **Total 920000 · Interest Expense** | 36,129.58 | 3,237.39 | | 39,366.97 |
| 930000 · Factor Fees | | 163,248.50 | | 163,248.50 |
| 920002 · Finance Charges - LOC FCC | | 648,293.97 | | 648,293.97 |
| **Total 9110 · Interest Expense** | 217,399.10 | 814,779.86 | | 1,032,178.96 |
| **9500 · Tax Expense** | | | | |
| 95001 · Federal Income Taxes | 84,199.66 | | | 84,199.66 |
| 95003 · State Income Tax | 800.00 | 24,339.00 | | 25,139.00 |
| **95004 · Penalties** | | | | |
| 95004 · Penalties - Other | 4,954.50 | | | 4,954.50 |
| **Total 95004 · Penalties** | 4,954.50 | | | 4,954.50 |
| 95006 · Property Tax | 130.00 | | | 130.00 |
| **Total 9500 · Tax Expense** | 90,084.16 | 24,339.00 | | 114,423.16 |
| **Total Other Expense** | 307,483.26 | 839,118.86 | | 1,146,602.12 |
| **Net Other Income** | -327,730.24 | -819,026.71 | | -1,146,756.95 |
| **Net Income** | 6,266.05 | 1,392,552.14 | | 1,398,818.19 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

Cert-lone Diamonds, Inc. and Michael Bet-126 Inc.

**Combined Statement Of Cash Flow**

January through December 2007

|  | TOTAL |
|---|---|
| **OPERATING ACTIVITIES** | |
| Net Income | 1,398,818.19 |
| Adjustments to reconcile Net Income | |
| to net cash provided by operations: | |
| 12001 · Accounts Receivable | 795,862.99 |
| 130031 · Employee Loan | 825.00 |
| 13006 · Inventory:130063 · Materials & Supplies:1300631 · Diamonds | -3,344,674.08 |
| 210011 · Accounts Payable | 5,291,641.49 |
| 2114 · Wells Fargo 4602-7023 | 34,000.00 |
| 210021 · American Express Corporate | -83,632.93 |
| 210013 · Accrued AP | -1,550,084.85 |
| 22003 · Inter-Company Accounts:220034 · Due to/from CDI-8th Street | 586,524.00 |
| 22004 · Customer Deposits | 11,775.00 |
| 22005 · Loans Payable - Current:230031 · Capital Lease - Current Portion | 30,640.00 |
| 22005 · Loans Payable - Current:220053 · LOC - Cathay Bank | -5,532,610.21 |
| 22006 · Payroll Liabilities:220061 · Accrued Payroll | -78,834.14 |
| 22006 · Payroll Liabilities:220063 · 401K & Pension | -4,538.20 |
| 22006 · Payroll Liabilities:2200641 · 401K - Loan Payable A- BF | -355.83 |
| 22006 · Payroll Liabilities:2200642 · 401K - Loan Payable B- CE | -158.19 |
| 22006 · Payroll Liabilities:220065 · AFLAC Premium Only | -81.50 |
| 22006 · Payroll Liabilities:220066 · Federal Payroll Taxes | 0.01 |
| 22006 · Payroll Liabilities:22070 · Vacation Accrual | 102,559.93 |
| 22007 · Sales Tax Payable | -12,950.96 |
| 22008 · Income Tax Payable | 140,390.00 |
| 13000 · Other Current Assets:13003 · Loans Receivable:130031 · MD | 4,617.19 |
| 13004 · Prepaid Expenses:130044 · Prepaid CA State Income Tax | -495.00 |
| 13004 · Prepaid Expenses:130045 · Prepaid Mktg & Show Expenses | -77,940.65 |
| 210012 · Intercompany Sales | -4,365,276.71 |
| 22001 · Accrued Commisions | -38,012.00 |
| 22002 · Accrued Coop Advertisement | -3,007.55 |
| 22003 · Inter-Company Accounts:220031 · Due to/from MBI-8th Street | -349,285.77 |
| 22005 · Loans Payable - Current:220051 · GMAC Loan - Current Portion | 12,058.72 |
| 22005 · Loans Payable - Current:220053 · LOC - First Capital | 9,048,558.10 |
| 22006 · Payroll Liabilities:220068 · Levies and Garnishments | 154.95 |
| **Net cash provided by Operating Activities** | 2,016,487.00 |
|  | |
| **INVESTING ACTIVITIES** | |
| 14001 · Machinery & Equipment | -90,347.50 |
| 140031 · Computers | -110,896.10 |
| 140033 · Furniture & Fixtures | -71,294.50 |
| 14004 · Leasehold Improvements | -57,884.18 |
| 14007 · Construction in Process | -238,193.56 |
| 14099 · Accumulated Depreciation | 115,152.06 |
| 150025 · Security Deposits | -6,155.31 |
| **Net cash provided by Investing Activities** | -459,619.09 |
|  | |
| **FINANCING ACTIVITIES** | |
| 230030 · Equipment Lease Payable - FFL | 17,206.58 |
| 230025 · Equipment Lease Payable - ACG | 53,473.74 |
| 230011 · Due To/From M Beaudry Personal | -1,521,103.38 |
| 230012 · Airi Beaudry | -7,378.36 |
| 230021 · GMAC-Yukon | -11,161.92 |
| 30003 · Retained Earnings | -1,899,788.32 |
| 220041 · Leases Payable | 60,728.23 |
| 230022 · GMAC Loan- Cadillac Escalade | -24,036.73 |
| 30999 · Shareholder Distributions | 1,899,875.00 |
| **Net cash provided by Financing Activities** | -1,432,185.16 |
|  | |
| **Net cash increase for period** | 124,682.75 |
| **Cash at beginning of period** | 286,356.96 |
| **Cash at end of period** | 411,039.71 |

**FOR INTERNAL MANAGEMENT
PURPOSES ONLY**

# EXHIBIT "G"

1

## EXHIBIT "G" – ASSETS AND LIABILITIES

2

| Value of Assets | Chapter 11 |
|---|---|

3

| | |
|---|---|
| Cash | 61,659 |
| FCC Consignment Inventory[11] | 8,702,931 |
| Other Inventory[12] | 64,554 |
| A/R[13] | 568,681 |
| FFE[14] | 531,933 |
| IP | 500,000 |
| Other Assets | 9,880 |
| **Total Value of Assets** | **$10,439,638** |

## Liabilities

| | |
|---|---|
| FCC Consignment Inventory[15] | 8,702,931 |
| Priority Claims | 0 |
| Unsecured Claims | 5,545,322 |
| Chapter 7 Fees and Expenses | 0 |
| Chapter 11 Administrative Expenses | 285,000 |
| **Total Claims** | **$14,533,253** |

---

[11] The FCC Consignment Inventory is the inventory of saleable goods consigned to the Debtor by FCC, pursuant to the settlement agreement between them. In the event of a Chapter 7 liquidation, the FCC Consignment Inventory will be transferred to FCC and therefore is not an asset of the estate. The FCC Consignment Inventory is valued at the Debtor's cost basis.

[12] At inventory cost.

[13] Assumes 100% collectable as Chapter 11 case, and 50% in Chapter 7.

[14] Net of accumulated depreciation, and reduced by 50% in Chapter 7.

[15] The Debtor's possession of the FCC Consignment Inventory is valued at the Debtor's cost basis and creates a liability of $8,702,931 for purposes of a Chapter 11 analysis. That liability is not present in a Chapter 7 liquidation, because the Chapter 7 Trustee could not sell the FCC Consignment Inventory.

ERVIN COHEN & JESSUP LLP

THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**ERVIN COHEN & JESSUP** LLP

1

### BALLOT FOR ACCEPTING OR REJECTING PLAN

2 Centerstone Diamonds, Inc. ("CDI") and Michael Beaudry Inc. ("MBI"), the debtors and debtors in possession herein in these jointly administered bankruptcy cases (collectively, the "Debtor" or

3 "Beaudry") filed a Plan of Reorganization on or about January 24, 2011. By this ballot you will decide whether to accept or reject this Plan.

4

5 The Plan referred to in this ballot can be confirmed by the Court and thereby bind you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting

6 on the Plan.

7 If the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and

8 otherwise satisfies the requirements of 11 U.S.C.A. § 1129(b) (West 2004 & Supp. 2006).

9 Check the appropriate line below, which describes your interest:

10 _____ The undersigned, a creditor with an allowed claim in the amount of $_____;

11 _____ The undersigned, the holder of _____ shares of _____ (explain type of stock) stock, with a certificate(s) No. _____:

12 [ ] Accepts the Plan

13 [ ] Rejects the Plan

14

15

16

17 Print or type name: _____

State which class you are a member of: _____

18 Signed: _____

19 If appropriate, by: _____ as _____

20          Address:

21          After carefully reviewing this document and the attached exhibits, please vote on

22 the enclosed ballot and return it in the enclosed envelope to:  Michael S. Kogan, Esq., Ervin,

23 Cohen & Jessup LLP, 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212, or

24 email mkogan@ecjlaw.com.  The Debtor will file with the Court and serve the results of voting by

25 March 1, 2011.

26          Your ballot must be received by 4:00 p.m. on February 22, 2011, or it may not be

27 counted.  The Debtor will file with the Court and serve it confirmation brief by March 1, 2011.

28

IDOCS:12999.3:1114103.3

54

THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

| In re:  CENTERSTONE DIAMONDS INC.<br>*(Jointly Administered with)*<br>In re: MICHAEL BEAUDRY, INC.                                         Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-23944-VZ<br>*(Jointly Administered with)* 2:09-bk-23945-VZ |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212

A true and correct copy of the foregoing documents described as: THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC. will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 18, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On January 18, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 18, 2011 | Kimberly Anthony | /s/Kimberly Anthony |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: CENTERSTONE DIAMONDS, INC. /MICHAEL BEAUDRY INC. Debtor(s). | CHAPTER: 11 |
|---|---|
| | CASE NUMBER: 2:09-bk-23944-VZ (Jointly Administered With 2:09-bk-23945-VZ) |

**ADDITIONAL SERVICE INFORMATION (if needed):**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Dan E Chambers on behalf of Defendant Gail Levine - dan.chambers@troutmansanders.com
Glen Dresser on behalf of Creditor BANK OF AMERICA - gombd@aol.com
Elaine T Fuller on behalf of Creditor INTERNAL REVENUE SERVICE - elaine.t.fuller@irscounsel.treas.gov
Scott F Gautier on behalf of Creditor FCC LLC - sgautier@pwkllp.com
Matthew A Gold on behalf of Creditor Argo Partners - courts@argopartners.net
Julian I Gurule on behalf of Creditor First Capital Western Region, LLC - jgurule@milbank.com
Jeff D Kahane on behalf of Defendant Bernie Robbins Jewelers, Inc., a New Jersey corporation dba Bernie Robbins Jewelers - jkahane@duanemorris.com
Louis E Kempinsky on behalf of Creditor FCC LLC - lkempinsky@pwkllp.com
Andy Kong on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone Diamonds, Inc., and Michael Beaudry, Inc. - Kong.Andy@ArentFox.com
Mette H Kurth on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone Diamonds, Inc., and Michael Beaudry, Inc. - kurth.mette@arentfox.com
Dare Law on behalf of U.S. Trustee United States Trustee (LA) - dare.law@usdoj.gov
Jennifer Leland on behalf of Creditor FCC LLC - jleland@pwkllp.com
Frank F McGinn on behalf of Interested Party Courtesy NEF - ffm@bostonbusinesslaw.com
Monserrat Morales on behalf of Creditor First Capital Western Region, LLC - mmorales@pwkllp.com
Aram Ordubegian on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone Diamonds, Inc., and Michael Beaudry, Inc. - ordubegian.aram@arentfox.com
Meghan C Sherrill on behalf of Defendant Gail Levine - meghan.sherrill@troutmansanders.com
Deborah Terranova on behalf of Creditor Jason Hoffman - dterranova9@yahoo.com
United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
Kimberly S Winick on behalf of Interested Party Courtesy NEF - kwinick@clarktrev.com

## II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL:** Via U.S. Mail

Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
255 E. Temple St. #1360
Los Angeles, CA 90012

<u>Debtors</u>
Centerstone Diamonds Inc./
Michael Beaudry Inc.
323 W. 8th St.
Los Angeles, CA 90014

<u>Request for Special Notice</u>

Yahalomei Espeika International Ltd.
c/o Benjamin Kiss
Fischer Zisblatt & Kiss
1901 Avenue of the Stars # 1020
Los Angeles, CA 90067

L.A. County Treasurer and Tax Collector
Attn: Linda D. Ramos, Tax Service Specialist
POB 54110
Los Angeles, CA 90051

EDF Resource Capital Inc.
c/o Real Estate Law Group LLP
Jason L. Hoffman
3455 American River Dr. Ste. C
Sacramento, CA 95864

<u>Landlord</u>
MGB 8th Street
323 W. 8th St.
Los Angeles, CA 90014

<u>COMMITTEE OF UNSECURED CREDITORS</u>

Olympic Diamonds Corp.
c/o Barry R. Edwards, Esq.
433 N. Camden Dr. 6th Floor
Beverly Hills, CA 90210

Modern Luxury Inc.
Mike Eisenberg, Assistant Credit Manager
5455 Wilshire Blvd. #1412
Los Angeles, CA 90036

Curtco Robb Media LLC
Chris Fabian, CFO
29160 Heathercliff Rd.
Malibu, CA 90265

C. Publishing LLC
Nicholas Hale, CFO
1543 7th St., 2nd Floor
Santa Monica, CA 90401

Ambrish Sethi, Executive Officer
101 Utah St. #207
San Francisco, CA 94103

## SECURED CREDITORS

FCC, LLC dba First Capital Western Region LLC
700 S. Flower St., #2325
Los Angeles, CA 90017

First Capital Western Region LLC
4355 Technology Way #500
Boca Raton, FL 33431

## UNSECURED PRIORITY CREDITORS

EDD - State of California
Bankruptcy Unit – MIC 92E
POB 826880
Sacramento, CA 94280

State Board of Equalization
POB 942879
Sacramento, CA 94279

IRS
POB 21126
Philadelphia, PA 19114

Franchise Tax Board
Bankruptcy Unit
POB 2952
Sacramento, CA 95812

## UNSECURED CREDITORS

Olympic Diamonds Corp.
580 Fifth Ave., #1200
New York, NY 10036

Espeka Israel
52 Bezalel St.
Noam Building, Room 501
52521 Ramat-Gan Israel

Inter Gems – CLAES Hoveniersstraat
2 BUS 248 B-2018
Antwerpen Belgium

American Express
Box 0001
Los Angeles, CA 90096

Elite Traveler Magazine
801 Second Ave. 11th Floor
New York, NY 10017

Diamond Investment Partners LLC
367 S. Rimpau Blvd.
Los Angeles, CA 90020

Dell Financial Services
c/o Bank of America
4307 Collection Center Dr.
Chicago, IL 60693

Kothari Trading Co. Ltd.
Takshing House
20 Des Voeux Rd. #506
Central, Hong Kong

Lili Diamonds
580 5th Ave., #2500
New York, NY 10036

Curtco Robb Media LLC
Robb Report, Inc.
POB 6167
Malibu, CA 92264

American Express Publishing Corp.
4624 Paysphere Cir.
Chicago, IL 60674

Modern Luxury Inc.
POB 512808
Los Angeles, CA 90051

Novel Collection
580 Fifth Ave. #1608
New York, NY 10036

Fancy Colors USA, Inc.
579 Fifth Ave. #602
New York, NY 10017

Los Angeles Magazine
File #55469
Los Angeles, CA 90074

Inga Moubaiajian
4555 Finley Ave. #4
Los Angeles, CA 90027

Rosy Blue Trading Inc.
529 Fifth Ave. 17th Floor
New York, NY 10017

C Publishing LLC
1543 7th St., 2nd Floor
Santa Monica, CA 90401

Superb Jewelstar
101 Utah St. #207
San Francisco, CA 94103

Eurostar Belgium Inc.
18 E. 48th St. Rm. 1201
New York, NY 10017

Microsoft Financing
CIT Technology Fin. Serv. Inc.
23896 Network Place
Chicago, IL 60673

Elite Traveler Magazine
801 Second Ave. 11th Floor
New York, NY 10017

Diamond Investment Partners LLC
367 S. Rimpau Blvd.
Los Angeles, CA 90020

Penta Diamonds Ltd.
Diamond Exchange Bldg., #18/01
Jabotinski 1 52620 Ramat-Gan Israel

Great American Leasing Corp.
8742 Innovation Way
Chicago, IL 60682

Premium Assignment Corp.
POB 3066
Tallahassee, FL 32315

Airi Beaudry
4133 W. Wilson St. #9
Banning, CA 92220

ACG Equipment Finance LLC
POB 790448
St. Louis, MO 63179

Beaudry-Beverly Hills, L.P./Beaudry Time International/
Beaudry International/Beaudry Tine Domestic
323 W. 8th St.
Los Angeles, CA 90014

PDD Diamonds Ltd.
54 Bezalei St.
Diamond Exchange Diamond Tower
52521
Ramat-Gan **Israel**

Entrée/Southern Accents
Entrée/Southern Progress
2314 Paysphere Cir.
Chicago, IL 60674

Brink's Incorporated
POB 651696
Charlotte, NC 28265

Federal Express
POB 7221
Pasadena, CA 91109

Finesse Diamonds Corp.
590 Fifth Ave. 15th Floor
New York, NY 10036

Crown Color
Crown Color 41/15-17
Maneesap Building 7th Floor
Soi Silom 19
Silom Road Bangkok, 10500 Thailand

Avles Dani 1
Jabotinsky Street
Maccabi Bldg. 246
Ramat Gan, **Israel** 52520

Michael Zelichov Insurance Services, Inc.
12327 Santa Monica Blvd.
Los Angeles, CA 90025

Wells Fargo
POB 54349
Los Angeles, CA 90054

Aloni Diamonds
36 W. 47th St. #5
New York, NY 10036

Moshe Namdar & Co. (USA)
579 Fifth Ave. #602
New York, NY 10017

Gumbiner Savett Inc.
Rodney Fingleson
1723 Cloverfield Blvd.
Santa Monica, CA 90404

Capitol File Media LLC
POB 30630
New York, NY 10087

Gotham Media LLC
POB 30630
New York, NY 10087

United Parcel Service
POB 894820
Los Angeles, CA 90189

AIG Workers Compensation Group
AIU Holdings
22427 Network Place
Chicago, IL 60673

Platinum Guild International USA
4 Hutton Centre #220
South Coast Metro, CA 92707

Ultimate Diamond Co.
592 Fifth Ave. 5th Fl.
New York, NY 10036

Manatt Phelps & Phillips
13355 W. Olympic Blvd.
Los Angeles, CA 90064

McMonigle Residential Group
140 Newport Center Dr. #100
Newport Beach, CA 92660

E.F.D. Inc.
130 W. 42nd St. #655
New York, NY 10036

Employers Compensation Insurance Group
POB 52791
Phoenix, AZ 85072

Simply Diamonds
550 S. Hill St. #1213
Los Angeles, CA 90013

Action Support Inc.
2107 Troy Ave. So.
El Monte, CA 91733

First Federal Leasing
POB 1145
Richmond, IN 47375

Ragar Company Inc.
2106 Kings Hwy.
Ocean, NJ 07712

Continental Exhibit Group
3960 Howard Hughes Parkway #500
Las Vegas, NV 89169

Eran Michovitz
50 Dizingof St. #1208
Tel Aviv, Israel

Tahitian South Sea Pearls
510 W. 6th St. #523
Los Angeles, CA 9004

Diamond Concepts Inc.
550 S. Hill St., #978
Los Angeles, CA 90013

Varsha Diamonds Inc.
550 S. Hill St. #1153
Los Angeles, CA 90013

Robert Siragusa
10701 Wilshire Blvd. #901
Los Angeles, CA 90024

Citibusiness Card
P.O. Box 6049
The Lakes, NV 88901

GemWave Inc.
36 West 44th Street, Suite 1103
New York City, NY 10036

Disons Gems, Inc.
415 Madison Avenue, Suite 800
New York, NY 10017

H.K. Mallak Inc.
98 Cutter Mill Rd., Suite 477-North
Great Neck, NJ 11021

Caron Jewelry Design
John Thomassian
728 S. Hill Street, Suite 700
Los Angeles, CA 90014

S.A. Casting
411 W. 7th St. #618
Los Angeles, CA 90014-3614

Quail Lodge Resort & Golf Club
8000 Valley Greens Drive
Carmel, CA 93923

City of Los Angeles Public/Works/Sanitation
File #56689
Los Angeles, CA 90074-6689

Craig Gebauer
12816 Gilmore Avenue
West Los Angeles, CA 90066

Manak Jewels
101 Utah Street, Suite 207
San Francisco, CA 94103

Imperial Gems S.A.
4, Avenue Calas 1206
Geneva Switzerland

Advanta Bank Corp.
P.O. Box 8088
Philadelphia, PA 19101-8088

Verizon Wireless
P.O. Box 4001
Inglewood, CA 90313-4001

Aspen Peak Media, LLC
P.O. Box 30630
New York, NY 10087-0630

M.K. Diamond & Jewelry
606 S. Olive Street, Ste. 900
Los Angeles, CA 90014

AG Heating & Air Conditioning
14620 Keswick Street
Van Nuys, CA 91405

Pinkerton Consulting & Investigations
P.O. Box 406394
Atlanta, GA 30384-6394

Staples Credit Plan
P.O. Box 689020

Des Moines, IA 50368-9020
State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279-8063

SDNY
580 5th Avenue, Suite #627
New York, NY 10036

LADWP (Power)
L.A. Department of Water & Power
P.O. Box 30808
Los Angeles, CA 90030-0808

Navco Security Systems
1300 Kellogg Drive, Suite A
Anaheim, CA 92807

Benefit Planning Inc.
4640 Admiralty Way, 9th Floor
Marina Del Rey, CA 90292

Yerudiam Yossi Yerushami Diamond Cutters
Yerudiam Yossi Yerushami
580 Fifth Avenue, Suite 1506
New York, NY 10036

Office Cleaning Pros, LLC
2621 Carnegie Ln. #C
Redondo Beach, CA 90278

Principal Financial Group (Dental Ins)
PLIC – SBD Grand Island
P.O. Box 10372
Des Moines, IA 50306-0372

Century Rooter
1609 South California Avenue
Montana, CA 91016

Universal Diamonds
3343 Peachtree Road, N.E. Suite 1100
Atlanta, GA 30326

Ronald Beaudry
4133 W. Wilson St. Space 9
Banning, CA 92220-1313

Nicholas G. Koontz
Video Arts Systems & Technology, Inc.
737 Howe Street, Suite 114A
Pt. Pleasant, NJ 08742

Professional Security Consultants
11454 San Vicente Blvd., 2nd Floor
Los Angeles, CA 90049

K. Girdharlal
551 Fifth Ave., 32nd Floor
New York, NY 10176

AICCO, Inc.
Department 7615
Los Angeles, CA 90084-7615

GIA Laboratory
5355 Armada Drive
Carlsbad, CA 92008-4699

The Hartford
P.O. Box 2907
Hartford, CT 06104-2907

Positive Lab Service
781 East Washington Blvd.
Los Angeles, CA 90021

Home Depot/Home Depot Credit Services
Dept. 32-2000897920
P.O. Box 6029
The Lakes, NV 88901

Pitney Bowes Purchase Power (Postage)
Purchase Power
P.O. Box 856042
Louisville, KY 40285-6042

Paetec
P.O. Box 1283
Buffalo, NY 14240-1283

TimeClock Sales and Services
2950 Airway Ave. D-7
Costa Mesa, CA 92626

Myers Dawes Andras & Sherman LLP
19900 Macarthur Blvd. 11th Floor
Irvine, CA 92612

City of LA Office of Finance Tax & Permit Division
File 57065
Los Angeles, CA 90074-7065

The Bureau of National Affairs, Inc.
P.O. Box 64284
Baltimore, MD 21264-4284

Truog-Ryding Company, Inc.
2659 Townsgate Rd., Ste. 101
Westlake Village, CA 91361-2710

PaperGirl
2158 Lawton Street
Fullerton, CA 92833

LAFD Unified Program
File 55643
Los Angeles, CA 90074-5643

Detection Logic
7605 N. San Fernando Road
Burbank, CA 91505

Schindler Elevator Corporation
P.O. Box 93050
Chicago, IL 60673-3050

Accurate Messenger Service
5431 Cleon Avenue
North Hollywood, CA 91601

Edge Solutions Group/11500 Olympic Group
11500 Olympic Blvd. Suite 400
Los Angeles, CA 90064

TelePacific Communications
P.O. Box 526015
Sacramento, CA 95852

Freeman Companies
P.O. Box 650036
Dallas, Texas 95265-0036

Superfit, Inc.
780 Fifth Avenue
King of Prussia, PA 19406

Arrowhead
P.O. Box 856158
Louisville, KY 40285-6158

MXLogic
P.O. Box 60157
Los Angeles, CA 99060

Chief Fire Protection, Inc.
8117 McKim Ct.
Los Angeles, CA 90046

Employment Background Investigations
P.O. Box 629
Owings Mills, Maryland 21117

American Gem Trade Association
3030 LBJ Freeway, Suite 840
Dallas, TX 75234

Sistems Integration, Inc.
606 South Hills St., Ste. 1009
Los Angeles, CA 90014

De Beer Watch Bands
881 Onyx Avenue, Suite A
Rancho Cucamonga, CA 91730

Pitney Bowes
Global Financial Services
P.O. Box 856460
Louisville, KY 40285-6460

Millennium Business Solutions Group, Inc.
31255 Cedar Valley Drive, Suite 312
Westlake Village, CA 91362

Office Of Finance, City Of Los Angeles
City of Los Angeles Office of Finance File 55604
Los Angeles, CA 90074-5604

Encover Contract Services
P.O. Box 49305
San Jose, CA 95161-9906

Massimo Jewelry
607 South Hill St. Suite 731
Los Angeles, CA 90014

Artin Amirayan Jewelers
607 South Hill St. Suite 731
Los Angeles, CA 90014

Dilco Ind, Inc.
205 E. Bristol Lane
Orange, CA 92865

AT&T
Payment Center
Sacramento, CA 95887-0001

Lord Lewelry Sinork Agdere
607 S. Hill St., Suite 534
Los Angeles, CA 90014

Malca-Amit CHB, Inc
153-66 Rockaway Blvd.
Jamaica, NY 11434

Vyacheslav Kalenyuk
18322 Collins St.Unit B
Tarzana, CA 91356

Uline
Attn: Accounts Receivable
2200 S. Lakeside Dr.
Waukegan, IL 60085

Cappello Capital Corp.
100 Wilshire Blvd., Suite 1200
Santa Monica, CA 90401

JBT
P.O. Box 6928
Providence, RI 02940

The Jewelers Board of Trade
P.O. Box 6928
Providence, RI 02940

Sally Phillips
27469 Latigo Bay View Drive
Malibu, CA 90265

Hostasaurus, Inc.
3250 Parkside Center Circle
Tampa, FL 33619

New York State Insurance Fund Workers' Compensation
P.O. Box 4788
Syracuse, NY 13221

Ceridian
P.O. Box 10989
Newark, NJ 07193

NK Supply, Inc.
608 S. Hill Street #602
Los Angeles, CA 90014

Royal Gem USA Inc.
576 5th Avenue, Ste. 405
New York, NY 10036

Bevan Bellevue Jewelers
10047 Main St. #102
Bellevue, WA 98004

Terminix Processing Center
P.O. Box 742592
Cincinnati, OH 45274

AT&T Mobility
P.O. Box 60017
Los Angeles, CA 90060-0017

Iron Mountain/Iron Mountain Records Management
P.O. Box 601002
Los Angeles, CA 90060-1002
DIRECTV
P.O. Box 60036
Los Angeles, CA

Design Kart
6217 Franklin Ave., Suite 303
Hollywood, CA 90028

Illuminex Diamonds Corp.
1 West 47 Street
New York, NY 10036

Bergman & Dacey, Inc.
10880 Wilshire Blvd., Suite 900
Los Angeles, CA 90024

A to Z Jewelry Tools & Supply
414 W. 6th Street
Los Angeles, CA 90014

Barry I. Rogoff Diamond Cutters, Inc.
550 S. Hill St., Ste. 1612
Los Angeles, CA 90013

J & P Oxygen
10702 Vanowen Street
North Hollywood, CA 91605

California Chamber of Commerce
1332 N. Market Blvd.
Sacramento, CA 95834-1912

Employment Development Dept.
P.O. Box 826846
Sacramento, CA 94246-0001

LA County AGR COMR/WTS & MEAS
P.O. Box 512399
Los Angeles, CA 90051-0399

L.A. Department of Water & Power
P.O. Box 30808
Los Angeles, CA 90030-0808

Sara Gem Corp.
580 Fifth Avenue, Suite 1700
New York, NY 10036-4701

EGL USA
550 S. Hill, Ste. 840
Los Angeles, CA 90013

Dunbar Armored
P.O. Box 333
Baltimore, MD 21203]

Travelers Remittance Center
One Tower Square
Hartford, CT 06183-1001

Albert Cohen
314 West 6th Street, Ste. 200
Los Angeles, Ca 90014

Steven Moore
6534 Hedding St.
Los Angeles, CA 90045

Gemelody Inc.
580 Fifth Avenue, Suite 1416
New York, NY 10036

Hershel Horowitz Corp.
580 Fifth Ave., Suite 1201 A & B
New York, NY 10036

B.B. Mukker Inc.
12800 N. Meridan St., Suite 330
Carmel, Indiana 46032

Gottlieb & Sons
1100 Superior Avenue
20th Floor - Suite 2050
Cleveland, OH 44114

4G's Trading Corp.
2 W. 46th St.
New York, NY 10036

Los Angeles County Dept. of Public Health
License/Permit Unit
5050 Commerce Dr., Rm. 117
Baldwin Park, CA 91706

Humandental Ins. Co.
P.O. Box 0884
Carol Stream, IL 60132-0884

Exclusive Protection
331 N. Beverly Dr., #3
Beverly Hills, CA 90210

Guild Laboratories
550 S. Hill St., #1188
Los Angeles, CA 90013

Carey International
PO Box 631414
Baltimore, MD 21263

FedEx
PO Box 7221
Pasadena, CA 91109

Great America Leasing Corp.
8742 Innovation Way
Chicago, IL 60682-0087

Microsoft Financing
CIT Technology Fin Serv, Inc.
23896 Network Place
Chicago, IL 60673-1238

ACG Equipment Finance LLC
P.O. Box 790448
St. Louis, MO 63179-0448

Dell Financial Services Payment Processing Center
4307 Collection Center Drive
Chicago, IL 60693