1  Michael S. Kogan (SBN 128500)
   Michael V. Mancini (SBN 263799)
2  **ERVIN, COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
3  Beverly Hills, California 90212-2974
   Telephone  (310) 273-6333
4  Facsimile  (310) 859-2325
   mkogan@ecjlaw.com
5

6  Attorneys for Debtor

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11  In re CENTERSTONE DIAMONDS, INC.,     )    Case No. 2:09-bk-23944-VZ
                                          )
12        Debtor.                         )    Chapter 11
                                          )
13  *Jointly Administered with*           )    (Jointly Administered With 2:09-bk-23945-VZ)
                                          )
14  In re MICHAEL BEAUDRY, INC.,          )    **MOTION FOR APPROVAL OF THIRD**
                                          )    **AMENDED JOINT DISCLOSURE**
15        Debtor.                         )    **STATEMENT AND PLAN OF**
                                          )    **REORGANIZATION FOR**
16                                        )    **CENTERSTONE DIAMONDS, INC. AND**
    ☐ Applies only to Centerstone Diamonds, Inc. )  **MICHAEL BEAUDRY, INC.**
17                                        )
    ☐ Applies only to Michael Beaudry, Inc.  )    Confirmation Hearing:
18                                        )    Date:      March 24, 2011
                                          )    Time:      1:30 p.m.
19                                        )    Place:     Courtroom 1368
                                          )
20                                        )
                                          )
21                                        )
                                          )
22  _____ )

23

24

25

26

27        Centerstone Diamonds, Inc. ("CDI") and Michael Beaudry Inc. ("MBI"), the debtors and

28  debtors in possession herein in these jointly administered bankruptcy cases (collectively, the

IDOCS:12999.3:1180629.1

Ervin, Cohen
& Jessup LLP

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................2

II.   JURISDICTION.................................................................................................2

III.  ATTACHMENTS ..............................................................................................2

IV.   SUMMARY OF THE PLAN ............................................................................3

V.    CONFIRMATION CRITERIA........................................................................3

      A.    11 U.S.C. § 1129(a)(1).............................................................................4

      B.    11 U.S.C. § 1129(a)(2)...........................................................................10

      C.    11 U.S.C. § 1129(a)(3)...........................................................................11

      D.    11 U.S.C. § 1129(a)(4)...........................................................................11

      E.    11 U.S.C. § 1129(a)(5)...........................................................................12

      F.    11 U.S.C. § 1129(a)(6)...........................................................................12

      G.    11 U.S.C. § 1129(a)(7)...........................................................................12

      H.    11 U.S.C. § 1129(a)(8)...........................................................................13

      I.    11 U.S.C. § 1129(a)(9)...........................................................................14

      J.    11 U.S.C. § 1129(a)(10).........................................................................14

      K.    11 U.S.C. § 1129(a)(11).........................................................................15

      L.    11 U.S.C. § 1129(a)(12).........................................................................18

      M.    11 U.S.C. § 1129(a)(13).........................................................................18

      N.    11 U.S.C. § 1129(a)(14).........................................................................18

      O.    11 U.S.C. § 1129(a)(15).........................................................................19

      P.    11 U.S.C. § 1129(b)(1)...........................................................................19

VI.   CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

## CASES

In re Prudential Energy Co.,
    58 B.R. 857, 862-63 (Bankr. S.D.N.Y. 1986) .................................................................17

## STATUTES

11 U.S.C. § 1114 .................................................................18

11 U.S.C. § 1114(e)(1)(B) .................................................................18

11 U.S.C. § 1114(g) .................................................................18

11 U.S.C. § 1122 .................................................................4, 12

11 U.S.C. § 1123 .................................................................4, 9, 12

11 U.S.C. § 1123(a) .................................................................9

11 U.S.C. § 1123(a)(1) .................................................................9

11 U.S.C. § 1123(a)(2) .................................................................9

11 U.S.C. § 1123(a)(3) .................................................................9, 10

11 U.S.C. § 1123(a)(4) .................................................................10

11 U.S.C. § 1123(a)(5) .................................................................10

11 U.S.C. § 1123(a)(6) .................................................................10

11 U.S.C. § 1123(a)(7) .................................................................10, 11

11 U.S.C. § 1123(b) .................................................................9, 11

11 U.S.C. § 1123(b)(1) .................................................................11

11 U.S.C. § 1123(b)(2) .................................................................11

11 U.S.C. § 1123(b)(3) .................................................................11

11 U.S.C. § 1123(b)(4) .................................................................11

11 U.S.C. § 1125 .................................................................12

11 U.S.C. § 1126(c) .................................................................14

11 U.S.C. § 1129 .................................................................2, 4

11 U.S.C. § 1129(a) .................................................................4, 15

1   | 11 U.S.C. § 1129(a)(1)................................................................................4, 12

2   | 11 U.S.C. § 1129(a)(10)..............................................................................16

3   | 11 U.S.C. § 1129(a)(11)..............................................................................17

4   | 11 U.S.C. § 1129(a)(12)..............................................................................18

5   | 11 U.S.C. § 1129(a)(13)..............................................................................18

6   | 11 U.S.C. § 1129(a)(14)..............................................................................19

7   | 11 U.S.C. § 1129(a)(15)..............................................................................19

8   | 11 U.S.C. § 1129(a)(2)................................................................................12

9   | 11 U.S.C. § 1129(a)(3)................................................................................12

10  | 11 U.S.C. § 1129(a)(4)................................................................................13

11  | 11 U.S.C. § 1129(a)(5)................................................................................13

12  | 11 U.S.C. § 1129(a)(6)................................................................................13

13  | 11 U.S.C. § 1129(a)(7)................................................................................14

14  | 11 U.S.C. § 1129(a)(8)................................................................4, 14, 15, 19

15  | 11 U.S.C. § 1129(a)(9)..........................................................................15, 16

16  | 11 U.S.C. § 1129(a)(9)(A)..........................................................................16

17  | 11 U.S.C. § 1129(a)(9)(C)..........................................................................16

18  | 11 U.S.C. § 1129(b)................................................................................4, 19

19  | 11 U.S.C. § 1129(b)(1)................................................................................19

20  | 11 U.S.C. § 507(a)(3)..................................................................................16

21  | 11 U.S.C. § 507(a)(4)..................................................................................16

22  | 11 U.S.C. § 507(a)(5)..................................................................................16

23  | 11 U.S.C. § 507(a)(6)..................................................................................16

24  | 28 U.S.C. § 1334..........................................................................................2

25  | 28 U.S.C. § 157............................................................................................2

26  | 28 U.S.C. § 157(b)(1)....................................................................................2

27  | 28 U.S.C. § 157(b)(2)(L)................................................................................2

28  | 28 U.S.C. § 1930..........................................................................................18

1  **<u>RULES</u>**

2  Bankruptcy Rule 3020(b)(2) ....................................................................................................12

3  Federal Rule of Evidence 201 ...................................................................................................3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ervin, Cohen
& Jessup LLP

1    "Debtor" or "Beaudry") (the "Plan Proponent"), hereby moves the Court, and herewith submits

2    this memorandum of points and authorities (the "Memorandum") in support of the confirmation of

3    its Third Amended Joint Plan of Reorganization (the "Plan").

## I.

## INTRODUCTION

6    This Memorandum, together with the Declaration of Michael Beaudry filed concurrently

7    herewith, presents a comprehensive analysis of the issues before the Court regarding the Plan and

8    will demonstrate that the Plan complies with all of the relevant requirements for confirmation

9    pursuant to 11 U.S.C. § 1129.[1]  Each of the requirements for confirmation of the Plan will be

10   reviewed in this Memorandum, and the evidence to be adduced at the time of hearing on

11   confirmation will establish that the Plan satisfies each of those requirements.

## II.

## JURISDICTION

14   Pursuant to 28 U.S.C. § 1334, jurisdiction over this Chapter 11 case is vested in the United

15   States District Court for the Central District of California.  Pursuant to 28 U.S.C. § 157 and the

16   order of the Chief Judge of the United States District Court, Central District of California, all

17   cases and proceedings under Title 11, Central District of California, including this Chapter 11

18   case, have been referred to the bankruptcy court.  Pursuant to 28 U.S.C. § 157(b)(1) and

19   § 157(b)(2)(L), this Court has jurisdiction to and may enter an order confirming the Plan.

## III.

## ATTACHMENTS

22   Concurrent with the hearing on confirmation of the Plan, the following papers, declaration

23   and documents should be before this Court and the Plan Proponent requests that the Court take

24   judicial notice of these documents under Federal Rule of Evidence 201.

26   <u>EXHIBITS</u>          <u>NAME OF DOCUMENT</u>

27   [1]  The Ballots for Accepting or Rejecting the Plan (the "Ballots") and the Report on the
28   Balloting (the "Ballot Report") will be filed concurrent to the filing of the Memorandum.

IDOCS:12999.3:1180629.1                              2

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

Ervin, Cohen
& Jessup LLP

A.        Third Amended Joint Disclosure Statement and Joint Plan of Reorganization for Centerstone Diamonds, Inc. and Michael Beaudry.

B.        Proof of Service showing service of the Plan and Disclosure Statement on all parties.

C.        Order approving Disclosure Statement.

D.        Ballots for Accepting or Rejecting the Plan.

E.        Analysis of Ballots For Plan of Reorganization.

## IV.

## SUMMARY OF THE PLAN

Pursuant to the Plan, creditors are to be paid over time. The Plan Proponent believes that approval of the Plan is the best means for the Debtor to emerge from chapter 11, creditors to maximize their recoveries, and the business operations of the Debtor to succeed.  The Plan is a reorganization plan in which the Debtor has reorganized its business operations to enable it to make orderly distributions to creditors of the Debtor's estate (the "Estate") on their prepetition claims.  The Debtor has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs. The Debtor estimates that such distributions will be accomplished within two (2) years from the Effective Date of the Plan.  In addition, the Plan will substantively consolidate the CDI and MBI estates for the sole purpose of paying creditors.  Payments under the Plan will be made from cash on hand and the proceeds of the operation of the Debtor's business.  The proposed "Effective Date" of the Plan is thirty (30) days from the entry of a final non-appealable order confirming the Plan (the "Confirmation Order"). The Debtor, following the Effective Date, will be referred to herein as the "Reorganized Debtor."

## V.

## CONFIRMATION CRITERIA

The Plan may be confirmed only if all of the requirements set forth in 11 U.S.C. § 1129 are satisfied.  Section 1129(a) lists sixteen requirements for confirmation of a proposed plan.  Section 1129(b) provides that if all of the requirements of § 1129(a) are met, except for § 1129(a)(8), the

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                                          3
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1  Court can confirm the Plan if certain additional criteria contained in § 1129(b) are met. As

2  discussed below, each requirement for confirmation is met and the Debtors' Plan should be

3  confirmed.

4       **A.    11 U.S.C. § 1129(a)(1).**

5       11 U.S.C. § 1129(a)(1) requires that the Plan comply with the applicable provisions of

6  Chapter 11. The most important of these provisions are set forth in 11 U.S.C. §§ 1122 and 1123.

7       <u>Classification:  11 U.S.C. § 1122</u>.

8       11 U.S.C. § 1122 permits a plan to place a claim or interest in a particular class only if

9  such claim or interest is substantially similar to the other claims or interests in such class. The

10  Plan clearly satisfies this requirement as it provides for the creation and treatment of the following

11  classes of claims:

12       **<u>Administrative Expenses</u>**

13       1.    These include the "actual, necessary costs and expenses of preserving the

14  estate" as determined by the Court after notice to creditors of a request for payment and after a

15  hearing thereon. The amounts set forth below are estimates and actual amounts required to be

16  paid may be substantially greater or less depending on the extent of opposition and/or other

17  litigation with respect to the Plan and/or the extent of litigation regarding claims and/or other

18  matters in this case and the extent of services required in connection with the case. Further, the

19  amounts estimated may differ substantially from the amounts required to be paid on the Effective

20  Date depending upon the amount of cash collateral used to pay such claims prior to confirmation

21  of the Plan. Also included within this category of administrative expenses are any allowable

22  claims asserted pursuant to 11 U.S.C. § 503(b)(9) for the value of goods delivered within 20 days

23  before the commencement of this Chapter 11 case. The Debtor is not aware of any such claims.

24       2.    The Code requires that allowed administrative expenses be paid on the

25  effective date unless the party holding the administrative expense agrees otherwise.

26            i.    Administrative Expense #1.

27                 Claimant: Ervin Cohen & Jessup LLP

28                 Debtor's bankruptcy counsel).

Ervin, Cohen
& Jessup LLP

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1          $200,000, subject to court approval

2          ii.    Administrative Expense # 2.

3                 Claimant: Gumbiner Savett, Inc.

4                 (Debtor's Accountants)

5                 $25,000, subject to Court approval

6          iii.   Administrative Expense # 3.

7                 Claimant: Arent Fox LLC

8                 (Creditors' Committee Counsel)

9                 $60,000, subject to Court approval

10         iv.    Administrative Expense # 4.

11                Claimant: Stonepine Holdings, Ltd.

12                (Debtor's Financial Advisor)

13                $0, subject to Court approval

14                ESTIMATED TOTAL: $285,000

15   **Priority Tax Claims**

16         1.     These include certain types of property, sales, and income taxes.

17         2.     The Code requires that the holders of such claims receive regular

18   installment payments in cash over a period ending not later than five years after the date of the

19   order for relief, unless agreed otherwise.  Any such claimant has not agreed otherwise.  The total

20   cash payments must have a present value equal to the amount of the allowed claim.  The treatment

21   of any such claims must be in a manner not less favorable than the most favored nonpriority

22   unsecured claim provided in this Plan (other than any cash payments to an administratively

23   convenient class).

24         3.     Pursuant to the IRS's Third Amended Proof of Claim filed on November 17,

25   2010, the IRS has asserted a priority tax claim in the amount of $27,883.01.

26         On the Effective Date, each holder of an allowed priority tax claim equal to the amount of

27   undisputed amount of taxes owed on the Effective Date shall be paid in full over three and one-

28   half ($3^{1}/_{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during

Ervin, Cohen
& Jessup LLP

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1   the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance

2   with section 511 of the Bankruptcy Code.  Payments will be made semi-annually, due on the 5th

3   day of the first month following the Effective Date, and every six (6) months thereafter until

4   satisfied.  Holders of priority tax claims are not entitled to vote on the Plan.  The Plan Proponent

5   reserves the right to prepay all or any part of the principal, accrued interest, or other charges,

6   without penalty or fees. The Plan Proponent also reserves the right to dispute the IRS Claim, and

7   to defer any and all payments until the dispute is resolved. If the Debtor disputes all or part of the

8   IRS Claim it will file such objection within sixty (60) days of the Effective Date, unless extended

9   by the Bankruptcy Court.

10          4.      On September 7, 2010 the Franchise Tax Board ("FTB") filed a Proof of

11   Claim alleging a total claim of $28,287.36 (the "FTB Claim").

12          On the Effective Date, each holder of an allowed priority tax claim equal to the amount of

13   undisputed amount of taxes owed on the Effective Date shall be paid in full over three and one-

14   half ($3{}^{1}/_{2}$) years from the Effective Date with interest (the rate in effect under I.R.C. § 6621 during

15   the calendar month in which the Plan is confirmed) in equal amortizing payments in accordance

16   with section 511 of the Bankruptcy Code.  Payments will be made semi-annually, due on the 5th

17   day of the first month following the Effective Date, and every six (6) months thereafter until

18   satisfied.  Holders of priority tax claims are not entitled to vote on the Plan.  The Plan Proponent

19   reserves the right to prepay all or any part of the principal, accrued interest, or other charges,

20   without penalty or fees. The Plan Proponent also reserves the right to dispute the FTB Claim, and

21   to defer any and all payments until the dispute is resolved. If the Debtor disputes all or part of the

22   FTB Claim it will file such objection within sixty (60) days of the Effective Date, unless extended

23   by the Bankruptcy Court.

24                          **Class One**

25          This class, consisting of the claim of FCC, has released all claims through a settlement

26   with the Debtor, pursuant to which the inventory of finished goods, works in progress and raw

27   materials for the design and production of finished goods (collectively, "Inventory") owned by

28   Beaudry as of March 12, 2010 (the "FCC Inventory" or the "Purchased Assets"), was sold to FCC

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                                6
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1  free and clear of all liens, claims and interests.  The Consideration was a credit bid, pursuant to 11

2  U.S.C. § 363(k), by FCC of Seven Million Three Hundred Thousand Dollars ($7,300,000).

3  Pursuant to the settlement, FCC released all claims and accepted the Inventory and certain other

4  collateral by its credit bid sale in full satisfaction of the Debtor's indebtedness to FCC.

5       Therefore, Class One will not receive any payout under the Plan and is not impaired under

6  the Plan.  Please refer to Section XVII(D) – (E) herein for a full explanation of the settlement and

7  consignment between the Debtor and FCC.

8               **Class Two**

9       This Class is impaired and includes all allowed general unsecured claims against the

10  Debtor.  The total amount of such claims is $5,545,322. See Exhibit "A" to the Plan for a list of

11  claimants and amounts owed. The bar date for filing claims was October 30, 2009.  The bar date

12  for hearings on objections to claims was March 15, 2010.  The explanation of the payments to be

13  made on the allowed general unsecured claims is as follows:

14       Total amount of payments (over time) to satisfy allowed claims:  $500,000, with

15  the first and second payments in the amount of $250,000 on a pro rata basis.

16       Total amount of claims:  $5,545,322

17       Total amount of payments (over time) to satisfy allowed claims:  $500,000

18       Interest Rate:  None

19       Impaired

20       First payment date:  commencing one year following the Effective Date of the Plan

21       Amount of each installment:  equal installments of $250,000

22       Frequency of payments:  payments will be made following one year and two years

23  from the Effective Date of the Plan.

24       Total yearly payments:  $250,000

25       Final payment due:  Two Years after the Effective Date

26       The Debtor shall have 10 business days to cure any payment default to members of this

27  class.

28               **Class Three**

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1        This Class is impaired and includes any subordinated amount of insider/affiliate claims

2    against the Debtor.  Subordinated unsecured claims are unsecured claims not entitled to priority

3    under Bankruptcy Code section 507(a).  Here, the insiders/affiliates, through the consent of the

4    Principals, have voluntarily forgiven their General Unsecured Claims, which have been

5    accordingly subordinated to Class 3 and 4 Allowed General Unsecured Claims.  The total amount

6    of such claim is undetermined at this time, however it is estimated at $2,554,119.  Allowed claims

7    in this class are to be paid $0.

8        Total amount of payments (over time) to satisfy allowed claims: $0

9        Total amount of claims:  estimated at $2,554,119

10       Total amount of payments (over time) to satisfy allowed claims:

11       $0

12       Interest Rate:  None

13       Impaired – non-voting

14       First payment date:  N/A

15       Amount of each installment:  N/A

16       Frequency of payments:  N/A.

17       Total yearly payments:  N/A

18       Final payment due:  N/A

19       **Class Four**

20       This Class includes the equity interests in the Debtor.  Under the Plan, equity interest-

21   holders simply retain their interests.  The Plan leaves unaltered the legal, equitable, and

22   contractual rights to which the equity interests in the Debtor entitle the holders thereof.

23   Accordingly, the Debtor believes that this class is unimpaired. In accordance with applicable

24   law, the holders of equity interests shall not receive any distribution or other payment from the

25   Debtor on account of their equity interests until after all allowed claims against the Debtor have

26   been paid in full pursuant to the Plan.

27       Mandatory And Permissive Contents Of the Plan:  11 U.S.C. § 1123(a) And (b) .

28       Mandatory Contents:  11 U.S.C. § 1123(a).

IDOCS:12999.3:1180629.1

8

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

The Plan must comply with the requirements of 11 U.S.C. § 1123. As detailed below, Section 1123(a) sets forth seven mandatory provisions which the Plan must contain:

### Section 1123(a)(1).

Section 1123(a)(1) requires that the Plan designate classes of claims or interest. Article IX of the Plan designates classification of claims or interest in accordance with this requirement.

### Section 1123(a)(2).

Section 1123(a)(2) requires that the Plan specify classes of claims or interest that are not impaired under the Plan. Article IX of the Plan designates classes unimpaired under the Plan in accordance with this requirement.

### Section 1123(a)(3).

Section 1123(a)(3) requires that the Plan specify the treatment of any classes of claims or interests that are impaired under the Plan. Article IX of the Plan indicates the treatment afforded to the various impaired classes of claims and interests under the Plan.

### Section 1123(a)(4).

Section 1123(a)(4) requires that the Plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of such claim or interest. The Plan clearly satisfied this requirement as Article IX, provides for the same treatment of claims within each class.

### Section 1123 (a)(5).

Section 1123(a)(5) requires that the Plan provide adequate means for its execution and includes several examples of appropriate means for execution of the Plan. Articles X, XV of the Plan indicate the means for execution of the Plan including but not limited to, the Source of Money to Pay Claims and Interest-Holders, Management of Debtor, Disbursing Agent, Future Financial Outlook.

### Section 1123(a)(6).

Section 1126(a)(6) is inapplicable to the Debtor and the Plan.

### Section 1123(a)(7).

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                                9
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1    Section 1123(a)(7) provides that a Plan may include only provisions which are consistent

2    with the interests of creditors and equity security holders and with public policy with respect to the

3    manner of selection of any officer, director, or trustee under the Plan and any successor to such

4    officer, director, or trustee.  The Plan does not provide for selection of officers, directors, or

5    trustees other than those in place, therefore, § 1123(a)(7)  is inapplicable.

6    Permissive Contents:  11 U.S.C. § 1123(b).

7    Section 1123(b)  specifies five (5) permissive provisions that may be included in a Plan,

8    and the applicable provisions are discussed below.

9    Section 1123(b)(1).

10    Section 1123(b)(1) provides that the Plan may impair or leave unimpaired any class of

11    claims or interests.  This provision is included in the Plan at Article IX.

12    Section 1123(b)(2).

13    Section 1123(b)(2) permits the Plan to provide for the assumption or rejection of executory

14    contracts not previously rejected.  This provision is included in the Plan at Article XVI.

15    Section 1123(b)(3).

16    Section 1123(b)(3) provides that the Plan may include the settlement or adjustment of

17    claims or interests belonging to the Debtor or to the estate, or the retention and enforcement by the

18    Debtor, the trustee, or a representative of the estate of any such claim or interest.  This provision is

19    included in the Plan at Article XVI.

20    Section 1123(b)(4).

21    Section 1123(b)(4) provides that the Plan may provide for the sale of all or substantially all

22    of the property of the estate, and the distribution of the proceeds of such sale among holders of

23    claims and interests.  This provision is included in the Plan at Article XVI.

24    As is shown in the foregoing analysis, the Plan satisfies the requirements of 11 U.S.C.

25    §§ 1122 and 1123.  Hence, the Plan complies with the provisions of 11 U.S.C. § 1129(a)(1).

26    **B.    11 U.S.C. § 1129(a)(2).**

27    11 U.S.C. § 1129(a)(2) provides that a plan may be confirmed only if a proponent of the

28    plan has complied with the applicable provisions of Chapter 11.  The most important of these

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                                10
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1   requirements is set forth in 11 U.S.C. § 1125. 11 U.S.C. § 1125 provides that acceptances or

2   rejections of a plan may not be solicited after the commencement of the case unless, at the time of

3   or before such solicitation, there is transmitted to the party being solicited, the plan or a summary

4   of the plan and a written disclosure statement approved by the Court as containing adequate

5   information. Section 1125 also requires that the same disclosure statement be transmitted to each

6   holder of a claim or interest of a particular class.

7         The Plan Proponents have complied with this provision by transmitting to holders of

8   claims and interest, the S.E.C., and all parties in interest, the Disclosure Statement, and a Notice of

9   the hearing which has been approved by the Court after notice and hearing. Any and all

10  solicitations by the Plan Proponents of acceptance of the Plan have been in accordance with the

11  provisions of 11 U.S.C. § 1125.

12        **C.        11 U.S.C. § 1129(a)(3).**

13        11 U.S.C. § 1129(a)(3) requires that a plan be proposed in good faith and not by any

14  means forbidden by law. The Plan provides for the payment of unsecured claims and shall pay

15  unsecured creditors pro rata of their allowed claims. Bankruptcy Rule 3020(b)(2) provides that

16  the Court need not require evidence that a plan has been proposed in good faith and not by any

17  means forbidden by law if no objection has been filed challenging the proponent's good faith.

18        The Plan will achieve a result consistent with the objectives and purposes of the

19  Bankruptcy Code. The Plan Proponents have satisfied that standard. Pursuant to the Plan, the

20  Plan Proponents shall pay claims in accordance with the Plan's provisions. In connection

21  therewith, the Plan provides that the estate shall have sufficient funds with which to pay

22  unimpaired Claims in accordance with the provisions of the Plan, and the unsecured claims shall

23  receive distributions pro rata of their allowed claims. Accordingly, and as further set forth below,

24  the Plan is fully consistent with the objectives and purposes of the Bankruptcy Code.

25        **D.        11 U.S.C. § 1129(a)(4).**

26        11 U.S.C. § 1129(a)(4) requires that all payments made or promised by the proponent of

27  the Plan to any person for services or for costs and expenses in connection with the case or in

28  connection with the Plan and incident to the case be approved by the Court, or be subject to the

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:180629.1                                            11
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1   approval of the Court.  Any payments made or to be made by the estate to professional persons for

2   services or for costs and expenses, in or in connection with, the Chapter 11 case, have been

3   disclosed to the Court in the Disclosure Statement, and/or in applications to employ or compensate

4   the professionals.  Additionally, pursuant to the Plan, the Court retains jurisdiction to determine

5   and allow compensation.

6          **E.      11 U.S.C. § 1129(a)(5).**

7          11 U.S.C. § 1129(a)(5) requires the proponent of the Plan to disclose the identity and

8   affiliations of any individual proposed to serve, after confirmation of the Plan, as a director,

9   officer, or voting trustee of the Debtors, an affiliate of Debtors participating in a joint plan with the

10  Debtors, or a successor to Debtors under the Plan, and the identity of any insider that will be

11  employed or retained by the reorganized Debtors, and the nature of any compensation for such

12  insider.  The Plan provides the identity and background of the Management of the Debtors in

13  Article XV.

14         **F.      11 U.S.C. § 1129(a)(6).**

15         11 U.S.C. § 1129(a)(6) is inapplicable in that no regulatory approval is necessary.  11

16  U.S.C. § 1129(a)(6) requires that the appropriate regulatory commission must approve any

17  changes in the rates provided in a plan.  This section is inapplicable to the Plan because the

18  Debtors are not subject to the jurisdiction of any governmental regulatory commission with

19  respect to rate matters; or are any rate changes proposed in the Plan.

20         **G.      11 U.S.C. § 1129(a)(7).**

21         11 U.S.C. § 1129(a)(7) provides that with respect to each impaired class of claims or

22  interests, each holder of a claim or interest in such class has accepted the Plan, or such holders will

23  receive under the Plan property of a value, as of the Effective Date of the Plan, that is not less than

24  the amount such holder would receive if the Debtor liquidated under Chapter 7.

25         Here, the Plan satisfies the "best interests" test, in that under the Plan, either (1) the holder

26  of each claim or interest will receive, as of the Effective Date, property of a value that is not less

27  than the amount such holder would receive if the Debtor were to liquidate under Chapter 7 (see

28  liquidation analysis in the Disclosure Statement) or has agreed in advance to his treatment.  As set

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                                    12
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1    forth in the Disclosure Statement, the Plan Proponents believe that under Chapter 7 creditors

2    would receive less than under the Plan.  Based upon the foregoing, the Plan satisfies 11 U.S.C.

3    § 1129(a)(7).

4    **H.    11 U.S.C. § 1129(a)(8).**

5    11 U.S.C. § 1129(a)(8) requires each class of claims or interests to either accept the Plan

6    or not be impaired.  The Plan Proponents have tabulated the votes required by 11 U.S.C. § 1126(c)

7    in order to determine if individual classes of creditors voted in favor or against their proposed

8    treatment under the Plan.

9    As the Ballot Report indicates, Class 2's votes numbered in favor of the Plan, as 21 of 25

10   voted in favor of the Plan with $1,154,374.80 of $1,233,959.70 in favor of the Plan or 84% of

11   those voting and 93% in amount, indicating that the majority of creditors in Class 2 favored their

12   proposed treatment. No other creditors voted on the Plan.  The Plan Proponents have consent from

13   every class entitled to vote on the Plan.  Under this scenario, § 1129(a)(8) is met and the Plan

14   Proponents will comply with the provisions of § 1129(a).  Accordingly, the Plan can be

15   confirmed.

16   Even if all class of claims or interests voted in favor of the plan or were not impaired as

17   required by§ 1129(a)(8), the Plan can still be confirmed.  The Code allows the Plan to be

18   "crammed down" on nonaccepting classes of claims or interests if it meets all consensual

19   requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate

20   unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the

21   Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.  A plan is "fair and equitable"

22   if, with respect to a class of secured claims, it provides, *inter alia,* "for the realization by such

23   holders of the indubitable equivalent of such claims."  In more basic terms, if a reorganization plan

24   is to bind an unconsenting creditor, the creditor should hold at least the same value of claims

25   under the plan as it would hold without the plan: an "indubitable equivalence."  The Ninth Circuit

26   has recognized two components of an indubitably equivalent substitute: It must both "compensate

27   for present value" and "insure the safety of the principal." Crocker Nat'l Bank v. Am. Mariner

28   Indus., Inc. (In re Am. Mariner Indus., Inc.), 734 F.2d 426, 433 (9th Cir.1984) (abrogated on other

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                    13
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

grounds). "To the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the 'indubitable equivalent' requires that the substitute collateral not increase the creditor's risk exposure." <u>Arnold & Baker Farms v. United States</u> (<u>In re Arnold & Baker Farms</u>), 85 F.3d 1415, 1422 (9th Cir.1996) (citation omitted).

Here, the Plan has been accepted by Class 2, which is an impaired class of creditors, and as set forth above, it satisfies the "best interest of creditors" test.   In addition, it is fair and equitable toward all other classes.

Thus, results of the Ballot Report indicate that the Plan can be confirmed.

### I.    11 U.S.C. § 1129(a)(9).

11 U.S.C. § 1129(a)(9) requires that priority claims be treated in accordance with that section's provisions unless the holder of a priority claim consents to a less favorable treatment.

Under subparagraph (A) of 11 U.S.C. § 1129(a)(9), administrative claims and expenses entitled to priority under 11 U.S.C. § 507(a)(1) are entitled to receive, on the Effective Date of the Plan, cash equal to the allowed amount of the claims unless the holder of the claim agrees to a different treatment.  The Plan provides for treatment of such claims, designated as administrative claims. Therefore, in light of the above, the Plan complies with the requirements of 11 U.S.C. § 1129(a)(9)(A).

Under subparagraph (B) of 11 U.S.C. § 1129(a)(9), the class of claims of the kind specified in 11 U.S.C. §§ 507(a)(3), (a)(4) , (a)(5)  or (a)(6)  will receive cash on the effective date, or, if accepted by class, deferred cash payments.  The Plan provides for treatment of such claims.

Under subparagraph (C) of 11 U.S.C. § 1129(a)(9), each holder of a priority tax claim as specified in 11 U.S.C. § 507(a)(8) is entitled to receive deferred payments over a period not exceeding five years after the order of relief, as of the effective date of the plan, equal to the allowed amount of such claim.  In the instant case, the Plan complies with this requirement because holders of 11 U.S.C. § 507(a)(8) claims have agreed to the treatment provided by the Plan.  Thus, the Plan provides for treatment of such claims..

### J.    11 U.S.C. § 1129(a)(10).

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1    11 U.S.C. § 1129(a)(10) requires that if a class of claims is impaired under the Plan, at

2    least one class of claims that is impaired under the Plan has accepted the Plan, determined without

3    including any acceptance of the Plan by any insider.  The Plan Proponent contends that at least one

4    class has agreed to accept the Plan, and such is reflected in the Ballot Report.

5    **K.      11 U.S.C. § 1129(a)(11).**

6    11 U.S.C. § 1129(a)(11) requires that the Court find that confirmation of the Plan is not

7    likely to be followed by liquidation or the need for further financial reorganization of Debtors or

8    any successor of Debtors under the Plan, except to the extent such liquidation or reorganization is

9    contemplated in the Plan.

10    Factors to be considered when assessing the feasibility of a plan include: (a) the soundness

11    and adequacy of the capital structure of the post-confirmation debtor; (b) current and projected

12    economic market conditions; (c) the ability of the post-confirmation debtor's management; (d) the

13    probability of continuation of the same management; and (e) any other related matters which

14    determine the prospects of a sufficiently successful operation to enable performance of the

15    provisions of the plan.

16    As previously discussed, the estate shall have sufficient funds available with which to pay

17    all Allowed Claims pursuant to the distribution scheme contemplated by the Plan.  The Plan will

18    be funded by the Debtor's cash on hand, additional cash contributions, and the future operations of

19    the Reorganized Debtor.

20    Prior to the filing of the bankruptcy case, given the worsening condition in 2008, the

21    Debtor began implementing various measures designed to stabilize the business and increase

22    profitability, including (i) refocusing their marketing strategies and branding; (ii) cutting

23    operational costs, particularly labor costs through reductions in workforce and outsourcing

24    production and manufacturing of jewelry; (iii) reworking any inventory that was deemed not

25    easily marketable and scrapping some inventory for sale at commodity value as diamonds and/or

26    precious metal; (iv) focusing more strongly on the special order Beaudry business; and (v) selling

27    some of their aged or lower priced inventory at smaller margins through special events, private

28    buyer sales and other extraordinary efforts, and marketing to retailers with customers in markets

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                                              15
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1  commensurate with the nation's economic environment.  Continuing these efforts should facilitate

2  the ongoing operations of the Debtors' business in an efficient and productive manner.  Based on

3  current indications that the economic climate is improving, increasing number of sales and

4  inquiries about new production, and discussions with existing Beaudry accounts, the Debtor now

5  expects their 2011 performance to substantially exceed 2010's performance.  Because of the

6  Debtor's success since filing bankruptcy, the Debtor anticipates business growth.  Thus, the

7  Debtor expects income to continue to increase because the numbers relating to 2010 indicate

8  increased sales as compared to 2009, and the Debtor is confident that 2011 will improve.

9        Moreover, the Debtor has made significant adjustments to the operation of its business, as

10  outlined immediately below.  As part of the Plan, the Debtor has significantly restructured its

11  operations with respect to three key areas, resulting in (1) new merchandising methodology to sell

12  its inventory; (2) updated marketing strategies and structures; and (3) a leaner, more efficient cost

13  structure.

14        With respect to the selling of inventory, the Debtor entered into the Settlement Agreement

15  with FCC, however, as of the date of confirmation the Debtor anticipates selling inventory that it

16  obtains from other parties other than FCC, co-ventures with other strategic partners or produces on

17  its own. It is anticipated that the Debtor will do little or no future business with FCC, however, the

18  Debtor is confident that it will still exceed its projections based upon its marketing strategy and

19  the demand for Beaudry goods.

20        In addition to this new merchandising plan, the Debtor has undertaken a revamped

21  marketing strategy.  For example, the Debtor recently reached an agreement with OPT, a business-

22  to-business specialist company, that will enable the Debtor to market its inventory online to a wide

23  variety of retailers at little cost.  In addition, OPT will be managing many aspects of the Debtor's

24  internet operations, including updating the Debtor's website on a regular basis with the latest

25  technologies and layouts.  The Debtor has also modified its advertising strategy and replaced

26  traditional print media with a more focused and less expensive online campaign, including

27  capitalizing on new media opportunities provided by Twitter and Facebook.  These mediums

28

Ervin, Cohen
& Jessup LLP

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1 | allow the Debtor to virally reach many of its customers at little or no cost, directing them to

2 | purchase goods online with the new infrastructure provided by OPT.

3 |     The Debtor's restructured marketing strategy also involves leveraging its celebrity and

4 | financially elite client-base.  For example, pieces of jewelry designed by Michael Beaudry were

5 | recently worn by celebrities at the Academy Awards, providing the Debtor with a peerless

6 | advertising opportunity.  In addition, the Debtor is also working on an initiative that will target its

7 | jewelry to professional athletes and personality-centric entertainers, thereby increasing the

8 | Debtor's brand-name and image.

9 |     Furthermore, the Chapter 11 process has enabled the Debtor to efficiently trim its

10 | operations to more accurately meet current demand and reduce its cost structure.  For example, it

11 | has shed employees, and many executive-level employees have taken pay cuts of approximately

12 | 20% or more.  In addition, it has replaced some of its more expensive trunk show travel with

13 | focused VIP events. Because the new marketing and cost-cutting strategies, the Debtor expects

14 | that trend to continue.  The Debtor therefore expects to pay all claims as outlined in the Plan from

15 | the sales it makes as it continues to operate the business.

16 |     The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that

17 | the Plan Proponent has timely submitted evidence establishing that the Debtor will have sufficient

18 | funds available to satisfy all expenses, including the scheduled creditor payments discussed above.

19 | What follows is a statement of projected cash flow for the duration of the Plan.  The focus is on

20 | projected cash receipts and cash disbursements.  All non-cash items such as depreciation,

21 | amortization, gains and losses are omitted.  A positive number reflects a source of cash; a

22 | (negative number) reflects a use of cash.  A more detailed statement of cash flow projections for

23 | the duration of Plan payments is attached to the Plan as Exhibit "B."

|  | **Years of Plan Payments** | | |
|---|---|---|---|
|  | **2010**[2] | **2011** | **2012** |
| **Net cash flow** | | | |
| **From operating activities:** | | | |
| **Total Receipts** | 5,896,192 | 8,969,300 | 9,222,800 |

[2] Includes the months of January, 2010 through July, 2010 of actual financial performance.

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

| | | | |
|---|---|---|---|
| Operation Disbursements | <4,260,050> | <7,713,900> | <7,705,900> |
| Payroll | <1,128,208> | <1,154,151> | <1,096,896> |
| FCC Account Protection | <217,570> | 0 | 0 |
| Beginning Cash Available | 0 | 290,364 | 141,613 |
| **Total** | 290,364 | 391,613 | 561,617 |
| **Yearly plan payments:** | | | |
| **Unsecured** | 0 | 250,000 | 250,000 |
| **Net cash available to Debtor** | | | |
| after all plan payments made: | 290,364 | 141,613 | 311,617 |

Once all other Allowed Administrative Claims, Allowed Priority Claims, and Unsecured Payments are made, the Debtor will promptly close the bankruptcy case after distributions have commenced as set forth in the Plan. It is anticipated that the Debtor will cease to exist after consummation of the Plan. Accordingly, the Plan Proponent submits that the Plan is reasonable and feasible.

**L.      11 U.S.C. § 1129(a)(12).**

11 U.S.C. § 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the Plan, must have been paid or the Plan must provide for the payment of all of such fees on the Effective Date of the Plan.  All fees, if any are due, will be paid as of the hearing on confirmation.

**M.      11 U.S.C. § 1129(a)(13).**

11 U.S.C. § 1129(a)(13) requires that the Plan provide for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in 11 U.S.C. § Section 1114 of title 11, of the level established pursuant to subsection (e)(1)(B)  or (g) of Section 1114 of this title, at any time prior to confirmation of the Plan, for the duration of the period the debtor has obligated itself to provide such benefit.  The Debtors provide no such benefits.  This provision is inapplicable.

**N.      11 U.S.C. § 1129(a)(14).**

11 U.S.C. § 1129(a)(14) requires that the debtor pay a domestic support obligation, the debtor has paid all amounts payable under such order for such obligation that first became payable after the date of filing of the petition. This provision is inapplicable.

Ervin, Cohen
& Jessup LLP

MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

**O.    11 U.S.C. § 1129(a)(15).**

11 U.S.C. § 1129(a)(15) requires certain payments if an allowed unsecured claim objects to confirmation. This provision is inapplicable.

**P.    11 U.S.C. § 1129(b)(1).**

11 U.S.C. § 1129(b)(1) provides that if the proposed Plan meets all of the requirements of 11 U.S.C. § 1129(a) except for 11 U.S.C. § 1129(a)(8), the Court can confirm the Plan notwithstanding § 1129(a)(8) "if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan." 11 U.S.C. § 1129(a)(8). Here, the Plan has been accepted by Class 2, which is an impaired class of creditors, and as set forth above, it satisfies the "best interest of creditors" test. In addition, it is fair and equitable.

**Clarification of Plan**

1.    EDF Resource Capital, Inc. ("EDF") has requested clarification that the Plan at page 42, starting at line 2 regarding "Guarantors" does not prohibit EDF from getting paid pursuant to the provisions of the Plan as a Class 2 creditors. The Debtor confirms that the provision does not prohibit EDF from asserting its claim as a class 2 creditor.

2.    The Franchise Tax Board ("FTB") filed amended claims (the "Amended Claims") after the filing of the Plan, and the Debtor acknowledges the Amended Claims, and they will be paid pursuant to the provisions of the Plan, and the Debtor anticipates having sufficient funds to pay the Amended Claims.

**VI.**

**CONCLUSION**

The foregoing analysis demonstrates that the Plan has met all of the requirements of the Bankruptcy Code and should, therefore, be confirmed. The Plan Proponent is submitting the Report on Balloting, the Ballots, and a declaration regarding the balloting.

It is respectfully requested that the Court confirm the Plan in accordance with the provisions of 11 U.S.C. §§ 1129(a) and (b).

Ervin, Cohen
& Jessup LLP

IDOCS:12999.3:1180629.1                    19
MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

1  DATED: February 28, 2011                    ERVIN, COHEN & JESSUP LLP
                                               Michael S. Kogan
2

3
                                          By:  /s/Michael S. Kogan
4                                              Michael S. Kogan

5                                              Attorneys for Debtor

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ervin, Cohen    MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF
& Jessup LLP    REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC.

| | |
|---|---|
| In re: CENTERSTONE DIAMONDS INC.<br>*(Jointly Administered with)*<br>In re: MICHAEL BEAUDRY, INC.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-23944-VZ<br>*(Jointly Administered with)* 2:09-bk-23945-VZ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 9401 Wilshire Boulevard, 9th Floor, Beverly Hills, California 90212

A true and correct copy of the foregoing documents described as: MOTION FOR APPROVAL OF THIRD AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR CENTERSTONE DIAMONDS, INC. AND MICHAEL BEAUDRY, INC. will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 1, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On March 1, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.   Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 1, 2011 | Kimberly Anthony | /s/Kimberly Anthony |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: CENTERSTONE DIAMONDS, INC. /MICHAEL BEAUDRY INC.                Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-23944-VZ<br>(Jointly Administered With 2:09-bk-23945-VZ) |
| --- | --- |

**ADDITIONAL SERVICE INFORMATION (if needed):**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Dan E Chambers on behalf of Defendant Gail Levine - dan.chambers@troutmansanders.com
Glen Dresser on behalf of Creditor BANK OF AMERICA - gombd@aol.com
Elaine T Fuller on behalf of Creditor INTERNAL REVENUE SERVICE - elaine.t.fuller@irscounsel.treas.gov
Scott F Gautier on behalf of Creditor FCC LLC - sgautier@pwkllp.com
Matthew A Gold on behalf of Creditor Argo Partners - courts@argopartners.net
Julian I Gurule on behalf of Creditor First Capital Western Region, LLC - jgurule@milbank.com
Jeff D Kahane on behalf of Defendant Bernie Robbins Jewelers, Inc., a New Jersey corporation dba Bernie Robbins Jewelers
jkahane@duanemorris.com
Louis E Kempinsky on behalf of Creditor FCC LLC - lkempinsky@pwkllp.com
Andy Kong on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone Diamonds, Inc., and
Michael Beaudry, Inc. - Kong.Andy@ArentFox.com
Mette H Kurth on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone Diamonds, Inc.,
and Michael Beaudry, Inc. - kurth.mette@arentfox.com
Dare Law on behalf of U.S. Trustee United States Trustee (LA) - dare.law@usdoj.gov
Jennifer Leland on behalf of Creditor FCC LLC - jleland@pwkllp.com
Monserrat Morales on behalf of Creditor First Capital Western Region, LLC - mmorales@pwkllp.com
Aram Ordubegian on behalf of Creditor Committee Official Committee of Unsecured Creditors of Centerstone Diamonds,
Inc., and Michael Beaudry, Inc. - ordubegian.aram@arentfox.com
John W Shenk on behalf of Debtor Centerstone Diamonds Inc - jshenk@ecjlaw.com
Meghan C Sherrill on behalf of Defendant Gail Levine - meghan.sherrill@troutmansanders.com
Deborah Terranova on behalf of Creditor Jason Hoffman - dterranova9@yahoo.com
United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
Kimberly S Winick on behalf of Interested Party Courtesy NEF - kwinick@clarktrev.com
Daniel K Fujimoto on behalf of Creditor Bank of America, N.A. - wdk@wolffirm.com
Frank F McGinn on behalf of Interested Party Courtesy NEF - ffm@bostonbusinesslaw.com

Via U.S. Mail

Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
255 E. Temple St. #1360
Los Angeles, CA 90012

Debtors
Centerstone Diamonds Inc./
Michael Beaudry Inc.
323 W. 8th St.
Los Angeles, CA 90014

Request for Special Notice

Yahalomei Espeika International Ltd.
c/o Benjamin Kiss
Fischer Zisblatt & Kiss
1901 Avenue of the Stars # 1020
Los Angeles, CA 90067

L.A. County Treasurer and Tax Collector
Attn: Linda D. Ramos, Tax Service Specialist
POB 54110
Los Angeles, CA 90051

EDF Resource Capital Inc.
c/o Real Estate Law Group LLP
Jason L. Hoffman
3455 American River Dr. Ste. C
Sacramento, CA 95864

IDOCS:12999.3:906626.1/

COMMITTEE OF UNSECURED CREDITORS

Olympic Diamonds Corp.
c/o Barry R. Edwards, Esq.
433 N. Camden Dr. 6th Floor
Beverly Hills, CA 90210


Modern Luxury Inc.
Mike Eisenberg, Assistant Credit Manager
5455 Wilshire Blvd. #1412
Los Angeles, CA 90036

Curtco Robb Media LLC
Chris Fabian, CFO
29160 Heathercliff Rd.
Malibu, CA 90265

C. Publishing LLC
Nicholas Hale, CFO
1543 7th St., 2nd Floor
Santa Monica, CA 90401

Ambrish Sethi, Executive Officer
101 Utah St. #207
San Francisco, CA 94103